Anita Mazumdar Chambers, Admitted Pro Hac Vice
achambers@employmnetlawgroup.com
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2821
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| SUZANNE IVIE, | ) |
| *Plaintiff*, | ) Case No.: 3:19-cv-01657-HZ |
| v. | ) PLAINTIFF'S FIRST AMENDED |
| | ) CIVIL COMPLAINT FOR |
| ASTRAZENECA PHARMACEUTICALS, LP, | ) EQUITABLE AND MONETARY |
| | ) RELIEF AND DEMAND FOR |
| *Defendant*. | ) JURY |

## FIRST AMENDED CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY

Plaintiff Suzanne Ivie brings this lawsuit against Defendant AstraZeneca

Pharmaceuticals, LP ("AstraZeneca") for discriminating against her due to her age; for

retaliating against her due to her complaints of off-label marketing, age discrimination and

FMLA use; and for wrongfully discharging her.

Specifically, Ivie alleges violations under the Age Discrimination in Employment Act, 29

U.S.C. §§ 621, *et seq.* ("ADEA"); the False Claims Act, 31 U.S.C. § 730(h) ("FCA"); section

828 of the 2013 National Defense Authorization Act, 41 U.S.C.A. § 4712 *et. seq.* ("NDAA"),

The Family Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq.* ("FMLA"), the Oregon

Page 1 of 19 – Plaintiff's First Amended Complaint For Equitable and Monetary Relief and
Demand for Jury

Unlawful Employment Discrimination statute, O.R.S. §§ 659A.030, *et seq*.; the Oregon

Discrimination for Whistleblowing statute, O.R.S. §§ 659A.199, *et seq*.; the Oregon Employer

Violations of Family Leave, O.R.S. §§ 659A.183, *et seq*.; and Oregon's Common Law Wrongful

Discharge Based on Public Policy Violations, *Nees v. Hocks,* 536 P.2d 512 (Or. 1975).

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

this is an action arising under the laws of the United States, specifically the ADEA, the FCA, the

NDAA, and the FMLA

2.      The Court has supplemental jurisdiction over the claims brought under O.R.S. §§

659A.030, *et seq*.; O.R.S. §§ 659A.199, *et seq*.; O.R.S. §§ 659A.183, *et seq*.;  and the tort of

wrongful discharge under *Ness v. Hocks* because the claims are based on the same underlying

nucleus of facts that give rise to the federal claims.

3.      This Court has personal jurisdiction over AstraZeneca because it is a Delaware

corporation and conducts significant business in this judicial district.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a

substantial portion of the unlawful employment practices occurred within this judicial district.

## PARTIES

5.      Ivie is a citizen of the United States and is domiciled in Utah.

6.      AstraZeneca is a Delaware corporation and conducts significant business in

Oregon.

## ADMINISTRATIVE EXHAUSTION

7.      Ivie timely filed a charge of discrimination against AstraZeneca with the United

States Equal Employment Opportunity Commission ("EEOC") on July 25, 2019.  The EEOC

issued Ivie a right-to-sue letter on or about July 31, 2019.

8.    Ivie filed a complaint with the Office of Inspector General, U.S. Department of Health and Human Services on July 26, 2019. More than 210 days have passed since that date.

## FACTUAL ALLEGATIONS

9.    AstraZeneca is a nationwide pharmaceutical company that sells to customers under various commercial and government mandated contracts and reimbursement arrangements that include rebates for certain products, of which the most significant are Medicare Part D, Managed Care and Medicaid. As just one example, Symbicort, an AstraZeneca inhaler, is reimbursed by Tricare, Medicare, and Medicaid. Thus, AstraZeneca causes claims to be submitted for certain drugs prescribed to patients, which are paid for by Medicaid and Medicare Part D or other publicly-funded health care programs. Further, in AstraZeneca's full year and Q4 2018 results, it references U.S. sales declining due to several factors, including "the timing of government buying and the impact of managed-market rebates" as it relates to Symbicort. [1]

10.    As of in or about 2009 through the present, according to AstraZeneca's company website, it serves a subcontractor to various contracts with the U.S. federal government (many of which Medimmune functions as the prime contractor). [2]

11.    AstraZeneca last entered into a corporate integrity agreement with the U.S. Department of Justice in or about 2010. This was part of a settlement to resolve allegations that AstraZeneca illegally marketed the anti-psychotic drug, Seroquel; this is often known as "off-label" use because it is not included in the drug's FDA-approved product label. A pharmaceutical company many not market or promote a drug for off-label uses as this is contrary

---

[1] Source: https://www.astrazeneca.com/content/dam/az/PDF/2018/full-year/Full-Year_2018_Results_announcement.pdf at 22-23.
[2] Source: https://www.astrazeneca.com/government-contract-t-cs.html

to FDA guidelines and may implicate the False Claims Act, and the Anti-Kickback statute to the extent that the drug was paid for the by government. Ivie is 51 years old and began working at AstraZeneca in or about September 2000.

12.     Ivie worked as an Executive District Sales Manager ("E-DSM") within AstraZeneca's respiratory products division, and it consistently issued Ivie strong performance ratings, many times ranking her in the top 5% of all employees nationwide.

13.     AstraZeneca also selected Ivie to serve in a national-level leadership team in or about September 2018 and selected her to be a Compliance Ambassador in or about 2017 due to her strong performance and numerous awards.  Ivie oversaw approximately eight Sales Representatives who worked on accounts in Utah, Idaho, and parts of Oregon.

14.     Ivie was one of the oldest employees in her division, and most other AstraZeneca District Sales managers ("DSM") and Sales Representatives are significantly younger than Ivie.

15.     In or about October 2017, Stephanie DiNunzio, who was approximately 45 years old, became the respiratory business director and Ivie's direct supervisor.

16.     On or about April 2018, DiNunzio told Ivie "You are aging well" during an in-person meeting.  DiNunzio then asked Ivie how old she was, to which Ivie replied that she was 50.  DiNunzio looked surprised and said, "Oh really? You don't have any wrinkles, I thought you'd have more wrinkles."

17.     In or about April or May 2018, DiNunzio began calling Ivie "Benatar," in reference to the 1980s singer Pat Benatar, who is now in her 60s.

18.     At a district meeting in July or August 2018, DiNunzio brought Ivie a water bottle with "Benatar" engraved in it.  Ivie told DiNunzio that she wanted to be called by her first name, Suzanne, in a professional setting and that the "Benatar" nickname embarrassed her.  DiNunzio

replied, "Oh its funny, just lighten up. It's really funny."  When people would call Ivie by her first name, DiNunzio would interrupt them and tell them to call her "Benetar."

19.     On or about August 24, 2018, Ivie, DiNunzio, and others were on a call discussing the marketing of a drug to treat asthma, Symbicort.  DiNunzio wanted to draft questions for Sales Representatives to ask doctors to get them engaged and interested in the product. Ivie reported to DiNunzio her concerns that the questions were misleading and not supported by medical literature (i.e. off-label marketing) and stated that she could not approve the questions as written because doctors and pharmacists could misconstrue the drug's use, which could result in patient harm.

20.     After the call ended, DiNunzio continued to call and e-mail Ivie, asking Ivie to approve the statements. However, Ivie consistently refused and then requested guidance from Teresa Grey, an attorney in AstraZeneca's legal department.  Grey told Ivie that the questions were misleading and recommended that DiNunzio and her team obtain more training on the issue.  Ivie agreed that training would be helpful, but on September 4, 2018, DiNunzio instructed Ivie to "pause" on the issue and not schedule any training.

21.     On or about September 2018, DiNunzio angrily told Ivie that she should simply approve DiNunzio's requests.  DiNunzio then told Ivie that she would need to re-evaluate her position as AstraZeneca's Compliance Ambassador and remove her from the training district manager lead position.

22.     On or about November 30, 2018, DiNunzio told Ivie that she was the "old style" of AstraZeneca and that AstraZeneca was now looking for "newer" points of view.

23.     On or about December 12, 2018, in discussing recent employees who were no longer with the company, DiNunzio said that they were the "right" people to leave, explaining

that the "old bus" was too expensive for AstraZeneca and the released employees did not

contribute.  When talking about the old bus, DiNunzio looked directly at Ivie, and Ivie asked,

"Are we talking about age?" Everyone in the room laughed uncomfortably, but DiNunzio did not

respond and continued with her presentation.

24.    DiNunzio then drew a picture of the "old" and "new" bus of AstraZeneca people

and explain what each meant.  DiNunzio explained that AstraZeneca wanted "newer" people like

28-year-old Aaron Griffin, whom DiNunzio had recently promoted.  DiNunzio then told Ivie,

"We want more people like Aaron. He has the young point of view. You are just stuck."

25.    Daliresp is an anti-inflammatory drug used to prevent the *symptoms* of Chronic

Obstructive Pulmonary Disease (COPD) from worsening.  It is indicated for adults with Severe

COPD.  On or about December 14, 2018, DiNunzio was discussing obtaining more business and

proposed promoting Daliresp as a *prevention* drug and a treatment for *mild to moderate* COPD

exacerbations, and Ivie complained to DiNunzio that she was advocating trying to sell the drug

for off-label use. Off-label use is a violation of the drug's approval from the Food and Drug

Administration and could put the public at risk. DiNunzio ignored Ivie's concerns.

26.    On or about December 17, 2018, DiNunzio told Ivie that she would remove Ivie

from all regional and national positions because Ivie allegedly, "Doesn't appreciate the need to

make a profit" and that "profit and loss is very important to AstraZeneca."  Ivie responded that

she wanted AstraZeneca to make a profit, but she was tired of feeling like she was sneaking

around; referring to circumventing their legal and ethical obligations. At the end of the call, Ivie

then told DiNunzio that she would not violate the law, and this caused Ivie to lose out on a raise

and bonus.

27.    On or about December 19, 2018, Ivie filed a complaint with AstraZeneca's legal

department and ethics department reporting age discrimination and off-label marketing.

28.     On January 14, 2019, another DSM sent Ivie a photo of Benatar with the words "We Are Young" on it in a group text message, copying DiNunzio and all other DSMs, in acknowledgement of Ivie's birthday.

29.     On January 15, 2019, Human Resources director Karen Belknap and legal head Mike Pomponi called Ivie to interview her about the complaint she filed on December 19, 2018. Ivie provided more details about her concerns of age discrimination and off-label marketing and also reported that she was concerned that DiNunzio would promote off-label again at an upcoming district meeting. In response Pomponi and Belknap told Ivie not to "jump the gun" and that it may not happen.

30.     However, DiNunzio again proposed Daliresp as a prevention medicine in order to increase the number of users during a district meeting on or about January 17, 2019, as Ivie had disclosed to Belknap and Pomponi.  Ivie reported this off-label marketing to Belknap and Pomponi on or about January 18, 2019.

31.     On or about January 30, 2019, at the direction of DiNunzio, Pharmaceutical Sales Specialist Kateri Broussard sent an e-mail to all DSMs circulating the improper information about Daliresp that Ivie previously refused to approve.

32.     On or about February 1, 2019, DiNunzio notified Ivie that she was no longer part of the Utah leadership decision team.

33.     On or about February 5, 2019, Ivie reported another complaint to compliance regarding the January 30, 2019 e-mail.  Ivie reported that DiNunzio was trying to illegally expand AstraZeneca's patient base to increase market share and illegally ask for patients outside of their division.  Ivie also reported that DiNunzio's e-mail instructed Sales Representatives to

insinuate that AstraZenca's respiratory products (Bevespi, Symibort, and Daliresp) have a COPD anxiety and depression indication. Ivie also complained that DiNunzio's claims were misleading and elicited pushback from doctors and pharmacists about how AstraZenca promoted its respiratory products.  Ivie also reported that she feared retaliation and termination.

34.     On or about February 8, 2019, DiNunzio sent out the first quarter 2019 goals for all districts except Ivie's even though Ivie needed these goals to create a business plan.  Ivie requested her goals, but DiNunzio did not respond until a few days later when she reported she could not capture the information and that the tool she used for it was closed.  Later, Ivie's division was singled out by upper management for not having this information for a business review.  Because of DiNunzio, Ivie was the only district and manager without the full information.  Then at 5:00 PM on Friday, February 15, 2019, DiNunzio told Ivie that she would verbally test and certify Ivie on new verbalization material for a drug called Farxiga on Monday at 8:00 AM.  Accordingly, Ivie cancelled her family weekend travel plans to prepare for the test.

35.     On or about February 13, 2019, DiNunzio promoted the idea of telling physicians that Farxiga can be used to prevent primary cardiovascular events, which is an off-label use.

36.     On or about February 25, 2019, DiNunzio and Belknap issued Ivie a final written warning, the first write-up in Ivie's 19-year career, for allegedly not adhering to AstraZeneca's coaching guidelines of having a certain percentage of in-person coaching sessions with subordinates.  Other younger employees did not adhere to the coaching guidelines, but DiNunzio did not issue them discipline.

37.     On or about February 25, 2019, DiNunzio and Belknap removed Ivie from AstraZenca's national team, which is an elite team of high-performing Sales Managers. DiNunzio also removed Ivie from all leadership positions and reduced her bonus by 70%.

38.      On or about February 25, 2019, Tekia Douglass from AstraZenca's compliance department responded to Ivie's e-mail notifying her that none of AstraZenca's materials supports the position that Daliresp could be used as a preventative drug, contrary to the way DiNunzio was instructing her employees to market the drug.

39.      On or about March 1, 2019, Ivie took medical leave for migraines, anxiety, and depression.  On or about April 11, 2019, Ivie notified DiNunzio and Belknap about her migraines, anxiety and depression and that she planned to return to work on April 16, 2019, with intermittent FMLA leave.

40.      Ivie and DiNunzio had a telephonic meeting with Ivie on or about April 16, 2019, the day she returned from medical leave.  DiNunzio notified Ivie that: she was required to coach subordinates in-person for 160 days (though the company guideline was previously 140 days); she was required to undergo additional training and testing; she must send DiNunzio her calendar every week so DiNunzio could monitor all her activities; she would be trained by a subordinate with 1.5 years of management experience who is approximately 40 years old;  that she was removed from national compliance and coaching teams; and that she had no recourse for her final written warning.

41.      On or about April 19, 2019, Ivie sent an e-mail to Belknap summarizing her meeting with DiNunzio, reporting her concerns and asking for help. However, Belknap refused to provide Ivie guidance and instead scheduled a call between DiNunzio and Ivie.

42.      Belknap, DiNunzio, and Ivie met on or about April 25, 2019, and Belknap told Ivie that human resources was not there to support employee complaints and that Ivie needed to go straight to DiNunzio with concerns.  Ivie expressed her concerns of retaliation, and Belknap said that it was a "harsh accusation."  When Ivie raised the issue of her intermittent FMLA leave,

DiNunzio chuckled on the phone, and Belknap told Ivie that she needed to continue traveling despite her FMLA leave and that she had no recourse to dispute her final written warning.

43.     In or about May 2019, Belknap advised Ivie that she could actually dispute her final written warning and that Dawn Cesar would be taking over Belknap's role as she was leaving the company.   Belknap told Ivie to "move on" and "forget the past" in reference to her prior complaints of age discrimination and off-label marketing.

44.     Ivie reported her concerns of discrimination and retaliation to Cesar on or about May 3, 2019, and Cesar notified Ivie that her concerns were unsubstantiated, DiNunzio was not at fault, that Ivie should "move on" and any future complaints Ivie had would be sent back to DiNunzio.  Ivie appealed her final written warning on or about May 23, 2019.

45.     In a meeting on or about May 15, 2019, DiNunzio falsely accused Ivie of not performing her job correctly and instructed her not to make any more complaints to human resources. Ivie then reported her concerns of age discrimination, off-label marketing, and retaliation to Terry Gray in compliance and Mike Pomponi in AstraZenca's legal department on or about May 16, 2019, but she received no response from Pomponi.

46.     Ivie met with Senior Employment Practices Partner Linda Abbonizio about her appeal of the final written warning on or about June 6, 2019, and Ivie reported to Abbonizio that she believed the written warning was in retaliation of her earlier complaints. Ivie received a response on June 12, 2019 that her first written warning was consistent with AstraZeneca practice.

47.     On or about June 6, 2019, Cesar called Ivie, acknowledged her complaints of age discrimination, off-label marketing, and retaliation, and terminated Ivie.

48.     As the result of AstraZenca's illegal actions, Ivie has been caused to suffer

economic damages and mental anguish, and she will continue to sustain damages into the foreseeable future.

## Count I
### ADEA Discrimination
### Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

49.     Ivie incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

50.     Ivie was an "employee" as defined in 29 U.S.C. § 630(f).

51.     AstraZeneca was an "employer" as defined in 29 U.S.C. § 630(b).

52.     AstraZeneca discriminated against Ivie because of her age when it issued her a written warning and later terminated her.

53.     AstraZeneca's stated and forthcoming reasons for disciplining and terminating Ivie are pretextual.

54.     Ivie has suffered damages as a result of AstraZeneca's unlawful actions.

55.     For AstraZeneca's unlawful retaliation against Ivie in violation of the ADEA, Ivie is entitled to such legal or equitable relief as will effectuate the purposes of the ADEA including but not limited to reinstatement, economic damages, and reasonable costs and attorneys' fees.

## Count II
### ADEA Retaliation
### Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

56.     Ivie incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

57.     Ivie was an "employee" as defined in 29 U.S.C. § 630(f).

58.     Defendant was an "employer" as defined in 29 U.S.C. § 630(b).

59.     Ivie engaged in protected activity under the ADEA when Ivie opposed age

discrimination.  Ivie reported to her supervisors, Belknap, Caesar, Gray and Pomponi that she believed she was being discriminated against due to her age.

60.     AstraZeneca discriminated against Ivie because of her age when it issued her a written warning and later terminated her.

61.     AstraZeneca's stated and forthcoming reasons for Ivie's termination are pretextual.

62.     Ivie has suffered damages as a result of AstraZeneca's unlawful actions.

63.     For AstraZeneca's unlawful retaliation against Ivie in violation of the ADEA, Ivie is entitled to such legal or equitable relief as will effectuate the purposes of the ADEA including but not limited to reinstatement, economic damages, and reasonable costs and attorneys' fees.

**COUNT III**
**FCA Retaliation**
**31 U.S.C. § 3730(h)**

64.     Ivie incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

65.     The False Claims Act, 31 U.S.C. § 3730(h), prohibits AstraZeneca from retaliating against employees who engage in protected conduct by taking lawful actions in furtherance of an FCA claim or by making efforts to stop one or more violations of the FCA.

66.     Ivie engaged in protected activity when she repeatedly reported concerns about AstraZeneca's off-label marketing.

67.     AstraZeneca retaliated against Ivie because of her protected activity when it issued her a written warning and later terminated her.

68.     AstraZeneca's stated reasons for terminating Ivie are pretextual.

69.     For AstraZeneca's unlawful retaliation against Ivie in violation of the FCA, Ivie is

entitled to such legal or equitable relief as will effectuate the purposes of the FCA, including but not limited to reinstatement, economic and compensatory damages, and reasonable costs and attorneys' fees.

## COUNT IV
### Family Medical Leave Act, 29 U.S.C. § 2615, *et seq.*
### Discrimination/Retaliation

70.     Ivie incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

71.     AstraZeneca is an employer as defined by 29 U.S.C. § 2611(4)(A).

72.     Ivie is an employee as defined by 29 U.S.C. § 2611(2)(A).

73.     Ivie had a right under the FMLA to take twelve (12) work weeks of leave during any twelve (12) month period for a serious health condition.  29 U.S.C. § 2612(a)(1)(D).

74.     Ivie engaged in protected activity under the FMLA from April 16, 2019 through June 6, 2019, Ivie exercised her right under the FMLA to take leave.

75.     Ivie suffered an adverse action on June 6, 2019 when AstraZeneca terminated her employment.

76.     AstraZeneca retaliated and discriminated against Ivie by terminating her employment in response to Ivie exercising her rights under the FMLA.

77.     AstraZeneca's stated and forthcoming reasons for terminating Ivie are pretext for unlawful discrimination.

78.     Ivie has been damaged as a result of the unlawful acts of AstraZeneca.

79.     Accordingly, Ivie demands such legal or equitable relief as will effectuate the purposes of the FMLA, including, but not limited to economic damages, liquidated damages,

reasonable attorney's fees and costs, pre-judgment interest, and any other relief that this Court deems just and equitable.

## Count V
### Oregon Unlawful Employment Discrimination
### ORS §§ 659A.030 *et seq.*
### (age discrimination)

80.     Ivie incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

81.     Ivie was an "employee" as defined in ORS §§ 659A.001(3).

82.     Defendant was an "employer" as defined in ORS §§ 659A.001 (4).

83.     AstraZeneca discriminated against Ivie because of her age when it issued her a written warning and later terminated her.

84.     AstraZeneca's stated and forthcoming reasons for disciplining and terminating Ivie are pretextual.

85.     Ivie has suffered damages as a result of AstraZeneca's unlawful actions.

86.     For AstraZeneca's unlawful retaliation against Ivie in violation of ORS §§ 659A. *et seq.,* Ivie is entitled to such legal or equitable relief as will effectuate the purposes of the ORS §§ 659A. *et seq.* including but not limited to reinstatement, economic damages, and reasonable costs and attorneys' fees.

## Count VI
### Whistleblower Retaliation
### ORS §§ 659A.200 *et seq.*
### (FMLA, age discrimination, off-label marketing whistleblowing)

87.     Ivie incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

88.     Ivie was an "employee" as defined in ORS §§ 659A.200(2).

Page 14 of 19 – Plaintiff's First Amended Complaint For Equitable and Monetary Relief and Demand for Jury

89.     Defendant was an "employer" as defined in ORS §§ 659A.200(1).

90.     Ivie engaged in protected activity when Ivie opposed off-label marketing, her FMLA use, and off-label marketing.

91.     Ivie reported these concerns to her supervisors, Belknap, Caesar, Gray and Pomponi.

92.     AstraZeneca's stated and forthcoming reasons for Ivie's termination are pretextual.

93.     Ivie has suffered damages as a result of AstraZeneca's unlawful actions.

94.     For AstraZeneca's unlawful retaliation against Ivie, she is entitled to such legal or equitable relief as will effectuate the purposes of the ORS §§ 659A.200 *et seq*. including but not limited to reinstatement, economic damages, and reasonable costs and attorneys' fees.

**Count VII**
**Oregon Employer Violations of Family Leave**
**ORS §§ 659A.183 *et seq.***

95.     Ivie incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

96.     Ivie was an "employee" as defined in ORS §§ 659A.200(2).

97.     Defendant was an "employer" as defined in ORS §§ 659A.200(1).

98.     Ivie had a right under the FMLA to take twelve (12) work weeks of leave during any twelve (12) month period for a serious health condition.  29 U.S.C. § 2612(a)(1)(D).

99.     Ivie engaged in protected activity under the FMLA from April 16, 2019 through June 6, 2019, Ivie exercised her right under the FMLA to take leave.

100.    Ivie suffered an adverse action on June 6, 2019 when AstraZeneca terminated her employment.

101.    AstraZeneca retaliated and discriminated against Ivie by terminating her employment in response to Ivie exercising her rights under the FMLA.

102.    AstraZeneca's stated and forthcoming reasons for terminating Ivie are pretext for unlawful discrimination.

103.    Ivie has been damaged as a result of the unlawful acts of AstraZeneca.

104.    Accordingly, Ivie demands such legal or equitable relief as will effectuate the purposes of the FMLA, including, but not limited to economic damages, liquidated damages, reasonable attorney's fees and any other relief that this Court deems just and equitable.

**Count VIII**
**Wrongful Termination Against Public Policy**
**Oregon Common Law**
***Nees v. Hocks*, 536 P.2d 512 (Or. 1975).**

105.    Ivie incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

106.    Where an employer discharges an employee for a socially undesirable motive, the employer is liable for damages for wrongful discharge. *Nees v. Hocks*, 272 Or. 210, 218, 536 P.2d 512, 515 (1975).

107.    In order to sustain a claim of wrongful discharge, plaintiff must prove that she was fulfilling an important societal obligation." *Borough v. D.G. Averill Trucking*, 151 Or.App. 723, 725 (1997).

108.    An important societal obligation consists at least of (1) conduct that, by statute or rule, is explicitly described as being of high social value; and (2) conduct that is similar to that giving rise to legally compelled obligations to act in other, analogous contexts. *Lamson v. Crater Lake Motors, Inc.*, 216 Or. App. 366, 378 (2007).).

Page 16 of 19 – Plaintiff's First Amended Complaint For Equitable and Monetary Relief and Demand for Jury

109.    There is a strong societal interest in disclosing and preventing off-label marketing as articulated in Oregon's Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. Ann. § 646.605 to 646.652 (inter alia providing that "A person engages in an unlawful practice if in the course of the person's business . . . [r]epresents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have").

110.    Ivie was fulfilling an important societal obligation when she sought to prevent AstraZeneca from engaging in an unlawful practice under the UTPA and reported to her supervisors, Belknap, Caesar, Gray and Pomponi that she believed DiNunzio was engaging in off-label marketing of AstraZeneca's pharmaceutical products.

111.    Ivie suffered an adverse action when AstraZeneca terminated her employment.

112.    AstraZeneca terminated Ivie because of her protected activity.

113.    AstraZeneca's stated and forthcoming reasons for Ivie's termination are pretextual.

114.    Ivie has suffered damages as a result of AstraZeneca's unlawful actions.

115.    For AstraZeneca's wrongful termination of Ivie, she is entitled to such legal or equitable relief, including but not limited to, economic damages, compensatory damages, reasonable attorney's fees, and any other relief that this Court deems just and equitable.

### COUNT IX
**NDAA Retaliation**
**41 U.S.C. § 4712, *et seq.***

116.    Ivie incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

117.    At all times relevant to this complaint, Ivie was an "employee of a contractor, subcontractor, grantee, or subgrantee" as defined under the NDAA, 41 U.S.C. § 4712(a)(1).

118.    At all times relevant to this complaint, AstraZeneca was a "contractor, subcontractor, grantee, or subgrantee or personal services contractor" as defined a under the NDAA, 41 U.S.C. § 4712(a)(1).AstraZeneca serves as a subcontractor for numerous government contractors, causes money to be reimbursed by government-funded programs (such as Medicare, Medicaid, and TriCare), and has previously held contracts with the U.S. Department of Justice through corporate integrity agreements.

119.    Ivie engaged in protected activity when she repeatedly reported concerns about AstraZeneca's off-label marketing. Off-label marketing reporting is a substantial and specific danger to public health and safety.

120.    AstraZeneca retaliated against Ivie because of her protected activity when it issued her a written warning and later terminated her.

121.    AstraZeneca's stated reasons for terminating Ivie are pretextual.

122.    For AstraZeneca's unlawful retaliation against Ivie in violation of the NDAA, Ivie is entitled to such legal or equitable relief as will effectuate the purposes of the NDAA, including but not limited to reinstatement, economic and compensatory damages, and reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

Based on the foregoing, Ivie respectfully requests that the Court enter judgment in her favor and award her the following relief:

a)    Reinstatement or, in lieu thereof, full front pay;

b)    Economic damages for lost compensation and damages to Ivie's career;

c)      Compensatory damages, including but not limited to pain and suffering,

emotional distress and reputational damage;

d)      Pre-judgment interest;

e)      Liquidated damages;

f)      Reasonable costs and experts' and attorneys' fees; and

g)      Any other such relief that the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Ivie requests a trial by jury for any and all issues proper to be so tried.

Dated: June 9, 2020                         Respectfully submitted,


                                */s/ Anita M. Chambers*
                                David Rocker, OSB # 944218
                                Attorney for Plaintiff Suzanne Ivie
                                Catalyst Law LLC
                                810 NW Marshall St., Suite 300
                                Portland, OR 97205
                                (503) 207-1711
                                (503) 710-9057 (facsimile)
                                david@catalystlawllc.com

                                R. Scott Oswald, Admitted Pro Hac Vice
                                Anita M. Chambers, Admitted Pro Hac Vice
                                Attorneys for Plaintiff Suzanne Ivie
                                The Employment Law Group, P.C.
                                888 17th Street, NW, 9th Floor
                                Washington, D.C. 20006
                                (202) 261-2812
                                (202) 261-2835 (facsimile)
                                achambers@employmentlawgroup.com
                                soswald@employmentlawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 9, 2020, a true and correct copy of the foregoing was

served electronically though CM/ECF and via email:

Anne M. Talcott, OSB # 965325
Schwabe, Williamson & Wyatt, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204-3719
(503) 796-2911
(503) 796-2900 (facsimile)
atalcott@schwabe.com

John C. Dodds Admitted Pro Hac Vice
Ryan McCarthy, Admitted Pro Hac Vice
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-4942
(215) 963-5001 (facsimile)
john.dodds@morganlewis.com
ryan.mccarthy@morganlewis.com

*Counsel for Defendant AstraZeneca Pharmaceuticals, LP*

/s/ Anita M. Chambers
Anita M. Chambers