IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUZANNE IVIE,

                  Plaintiff,

     v.

ASTRAZENECA PHARMACEUTICALS,
LP,

                  Defendant.

No. 3:19-cv-01657-HZ

OPINION & ORDER

Anita Mazumdar Chambers
Robert Scott Oswald
The Employment Law Group
888 17th Street, NW
Washington, DC 20006

David C. Rocker
Catalyst Law, LLC
810 NW Marshall St, Ste 300
Portland, OR 97209

Collin C. McKean
McKean Smith LLC
1140 SW 11th Ave Ste 400
Portland, OR 97205

       Attorneys for Plaintiff

Courtney Sanders
Ryan P. McCarthy
Morgan, Lewis & Bockius LLP
1000 Louisiana St.
Suite 4000
Houston, TX 77002

John C. Dodds
Philadelphia Litigation
1701 Market Street, Ste 14th Floor
Philadelphia, PA 19103-2921

Anne M. Talcott
Schwabe, Williamson & Wyatt
1211 SW 5th Ave, Ste. 1900
Portland, OR 97204

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Suzanne Ivie brings this employment discrimination and retaliation action against Defendant AstraZeneca Pharmaceuticals, LP. Defendant moves for summary judgment on each of Plaintiff's claims. The Court grants in part and denies in part Defendant's motion for summary judgment.

## BACKGROUND

     AstraZeneca is a global biopharmaceutical company that focuses on the discovery, development, and commercialization of prescription medications. Answer ¶ 9. Plaintiff worked at AstraZeneca for 19 years. *Id.* ¶ 11. In her last role she was an Executive District Sales Manager (DSM) in Defendant's respiratory products division. First Talcott Decl. Ex. B at 13, ECF 42-1. The respiratory products division sells several products including Symbicort, Dalisrep, and Bevespi. Pl.'s Opp'n Mem. Ex. NN (DiNunzio Dep.) 40:18-22, ECF 43-40.

///

///

## I.    Plaintiff's Off-Label Marketing and Discrimination Complaints

In October 2017, Stephanie DiNunzio became Plaintiff's direct supervisor as the commercial business director. First Talcott Decl. Ex. C (DiNunzio Dep.) 51:9-15, 19:19-20:2, ECF 42-1. DiNunzio over saw the respiratory and health therapeutic sales area for the Seattle region. *Id.*

The respiratory sales team uses a sales strategy called "Selling with Insights" to approach customer physicians. Pl.'s Opp'n Mem. Ex. RR (Craig Dep.) 20:14-21:6, ECF 43-44. This strategy involves discussing various drugs' indications with physicians in order to start a conversation about the AstraZeneca pharmaceutical product. *Id.* The "insights" are not about the pharmaceutical product itself, but about the problem or patient type the medication might be used to treat. Pl.'s Opp'n Mem. Ex. NN (DiNunzio Dep.) 119:2-5. "Insights" can be developed by members of the sales team, but they must be true and meet AstraZeneca's compliance standards. *Id.* at 119:6-11.

In August 2018 DiNunzio contacted Plaintiff regarding some possible "new insights" for Symbicort. Pl.'s Opp'n Mem. Ex. C at 3, ECF 43-3. At the time, Plaintiff was a Compliance Ambassador for the company. Answer ¶ 40. DiNunzio asked and then allegedly pressured Plaintiff to approve the use of the proposed Symbicort insights. Pl.'s Opp'n Mem. Ex. D at 1, ECF 43-4. Plaintiff became concerned that the Symbicort insights proposed by DiNunzio raised compliance issues. *Id.* She contacted an AstraZeneca's compliance officer about her concerns. Pl.'s Opp'n Mem. Ex. C at 1–3. After a phone conversation with Plaintiff, the compliance officer sent Plaintiff and DiNunzio an email describing AstraZeneca's "Selling with Insights" rules and recommending DiNunzio follow-up with further team training on the insights program. *Id.* at 2. DiNunzio allegedly responded to the email by telling Plaintiff that she should not have gotten

anyone else involved and that she needed to reevaluate Plaintiff's role as a Regional Compliance Ambassador. Pl.'s Opp'n Mem. Ex. D. At two other points in August 2018 DiNunzio allegedly responded to Plaintiff's compliance concerns with threats of cutting back Plaintiff's national leadership exposure and "reevaluating her role as a compliance champion." *Id.*

In December 2018 Plaintiff became concerned about another set of insights proposed for the drug Daliresp. Plaintiff testified that in a meeting discussing insights for Daliresp, DiNunzio said that 50% of patients with mild to moderate conditions die when they have their first exacerbation. Pl.'s Opp'n Mem. Ex. SS (Ivie Dep.) 172:10-21, ECF 43-45. Plaintiff felt that this insight was "pushing the limits" and "illegal." *Id.* at 172:22-25. During a follow-up investigation, another employee at the same meeting recalled DiNunzio bringing up the need to increase the Daliresp patient population by promoting Daliresp for primary prevention. Pl.'s Opp'n Mem. Ex. E at 2, ECF 43-5.

On December 19, 2018 Plaintiff filed a formal complaint against DiNunzio. Pl.'s Opp'n Mem. Ex. D. Her complaint raised concerns of off-label marketing based on the improper proposed insights described above and retaliation after voicing her concerns. *Id.* Plaintiff also reported age discrimination. *Id.* Her complaint references multiple incidents in 2018 where DiNunzio allegedly made comments referencing age such as "you are all about the old way, and if you can't get on this new bus you have to leave," "the old bus is too expensive to the organization," "the old people need to get off the bus," and allegedly called Plaintiff an "old bus person." *Id.* at 1.

On February 5, 2019 Plaintiff filed a second formal complaint related to the unethical use of insights for Daliresp, Symbicort, and Bevespi. Pl.'s Opp'n Mem. Ex. G at 2, ECF 43-7. The concerns stemmed from insights shared on a call and later forwarded in an email that suggested

patients with Chronic Obstructive Pulmonary Disease and anxiety and/or depression were at a higher risk for exacerbations and severe illness. Pl.'s Opp'n Mem. Ex. F at 1, ECF 43-6.

In response to the first formal complaint, Karen Belknap, a senior employment practices partner, was as assigned to investigate Plaintiff's complaints of discrimination. Pl.'s Opp'n Mem. Ex. OO (Belknap Dep.) 16:16, ECF 43-41. Mike Pomponi, Senior Manager of Commercial Compliance Monitoring, was assigned to investigate Plaintiff's compliance complaints related to off-label marketing. Pl.'s Opp'n Mem. Ex. TT (Pomponi Dep.) 47:13-48:5, ECF 43-46.

## II.    Plaintiff's Job Performance

Before 2018 Plaintiff was considered a top performer. Pl.'s Opp'n Mem. Ex. NN (DiNunzio Dep.) 43:21-44:11, 45:24-46:25. In June 2018 DiNunzio met with Plaintiff to raise concerns about Plaintiff's coaching of sale specialists on her team. First Talcott Decl. Ex. E., ECF 42-1 at 37. These concerns were based on a policy AstraZeneca had at the time that stated that "Coaching without Customer Engagement" and "Business Development" could count towards a district sales manager's total coaching days but should not comprise more than 20% of total coaching days.[1] First Talcott Decl. Ex. L at 2, ECF 42-2. According to the policy, "Coaching without Customer Engagement" refers to coaching done by district sales managers when not in the field such as distance and virtual coaching. *Id.*; First Talcott Decl. Ex. K at 1, ECF 42-2. "Coaching with Customer Engagement" refers to coaching conducted in the field with pharmaceutical sales specialists making calls on customer physicians. *Id.*; First Talcott Decl. Ex. M at 1, ECF 42-2. This policy was discussed in and attached to emails Plaintiff was copied on

---

[1] In its briefing, Defendant repeatedly refers to this policy as the "80/20 rule." The written policy in the record is titled "Capturing Time Allocation in Veeva Frequently Asked Questions" (Capturing Time FAQ). First Talcott Decl. Ex. L. As a matter of convenience, the Court refers to the policy as the 80/20 rule and 80/20 policy throughout this opinion and order.

before the June 2018 meeting. First Talcott Decl. Ex. J at 1, ECF 42-2; First Talcott Decl. Ex. K at 1, ECF 42-2.

In December 2018, at Plaintiff's 2018 yearend review, DiNunzio raised similar concerns about Plaintiff's coaching practices. She conducted a quarterly audit of Plaintiff's coaching entries in company database before their meeting and found that Plaintiff had not conducted 80% of her coaching days in the field and had been inconsistent in her data entry. First Talcott Decl. Ex. L at 1. DiNunzio emailed Plaintiff prior to the yearend review with her findings. *Id.* The performance review report shows Plaintiff received a 2 out of 5 rating for her overall performance as a manager and a 4 out of 5 rating for her overall performance as an employee. First Talcott Decl. Ex. I at 2, ECF 42-2. The negative 2018 yearend review occurred the day before Plaintiff filed her first formal complaint against DiNunzio.

On January 15, 2019, DiNunzio emailed Karen Belknap in human resources (HR) documenting her concerns about Plaintiff's lack of in-person coaching and other "abnormalities" in her data entry. First Talcott Decl. Ex. D at 1, ECF 42-1. This included a six-month audit of Plaintiff's coaching activities. *Id.* Belknap, the same HR person assigned to investigate Plaintiff's complaints of discrimination and retaliation, was also assigned to investigate her performance case. Pl.'s Opp'n Mem. Ex. NN (DiNunzio Dep.) 107:7-15. On February 18, 2019 DiNunzio and Belknap spoke with Plaintiff to discuss DiNunzio's concerns and allow her an opportunity to respond. Pl.'s Opp'n Mem. Ex. M at 1, ECF 43-13. The case report states that in response Plaintiff said she did not fully understand the coaching expectations, limited in-person coaching based on budget concerns, and was stretched thin because of other leadership responsibilities. First Talcott Decl. Ex. BB at 3–4, ECF 42-4. Belknap concluded that Plaintiff did not have an adequate explanation for her lack of in-person coaching. *Id.* at 4. Plaintiff was

made aware of the negative findings on February 25, 2019, and Defendant issued Plaintiff a First Written Warning with an effective date of March 1, 2019. Pl.'s Opp'n Mem. Ex. M at 1.

After receiving the First Written Warning, Plaintiff took one and half months of medical leave. Pl.'s Opp'n Mem. Ex. II at ¶ 39, ECF 43-35. The day Plaintiff returned from protected leave, April 16. 2019, she was subjected to new supervisory requirements and removed from one of her leadership roles. *Id.* She was required to submit a weekly calendar to DiNunzio, complete additional training, and was removed as a Compliance Ambassador. *Id.* ¶ 40. Defendant contends that these actions related to Plaintiff's written warning and "a change in brand materials and strategy." *Id.* While Plaintiff was on protected leave, the in-person coaching requirement also increased from 140 days to 160 days. *Id.*

On April 25, 2019, after learning of these requirements and changes, Plaintiff complained to human resources about Family Medical Leave Act (FMLA) retaliation. Pl.'s Opp'n Mem. Ex. NN (DiNunzio Dep.) 181:1-12. Plaintiff also took intermittent FMLA leave days through spring 2019. Pl.'s Opp'n Mem. Ex. II at ¶ 39

During this same time frame, Karen Belknap retired, and Plaintiff's job performance case was transferred to Dawn Ceaser. Pl.'s Opp'n Mem. Ex. PP (Ceaser Dep.) 22:10-23:11, ECF 43-42. In May 2019, Plaintiff sent Ceaser an email that included new complaints of age discrimination. *Id.* at 25:20-27:22. Ceaser investigated these complaints while working on the investigation into Plaintiff's performance. *Id.* at 40:4-21.

As for Plaintiff's performance case, business leaders DiNunzio and Matt Gray reported to Ceaser that Plaintiff had not met the in-person coaching requirements. *Id.* at 42:1-44:5. Ceaser recommended Plaintiff for termination based on conversations with DiNunzio and Matt Grey. *Id.* at 58:11-18. Ceaser testified that at the time of the final investigation into Plaintiff's performance

she was aware Plaintiff had taken intermittent FMLA leave but did not know that Plaintiff had

taken an extended period of FMLA leave in the spring. *Id.* 47:2-24.

Defendant terminated Plaintiff on June 6, 2019. Pl.'s Opp'n Mem. Ex. MM, ECF 43-39.

## EVIDENTIARY OBJECTIONS

Defendant argues that the Court should not consider the following evidence in resolving

its motion for summary judgment: (1) comments made by Linda Truax regarding DiNunzio's

qualifications and personal contacts within AstraZeneca; (2) observations made by Chad

Cederlof about other employees' impressions of a team meeting; (3) Larry Hinson's observations

of DiNunzio's conduct towards Plaintiff; and (4) comments Larry Hinson's former employees

made to him after he left the company. Def.'s Reply at 6, ECF 44. The Court need not consider

this evidence to determine whether Plaintiff has raised a question of fact concerning Defendant's

conduct. The Court thus declines to rule on whether this evidence is admissible for proving

Plaintiff's claims at this time.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff asserts the following claims: (1) age discrimination in employment in violation of the Age Discrimination in Employment Act (ADEA) and Oregon's unlawful employment discrimination statute; (2) retaliation for ADEA protected activity; (3) discrimination and retaliation in violation of the Family Medical Leave Act (FMLA) and Oregon Family Leave Act; (4) retaliation in violation of the False Claims Act and Oregon whistleblower statute; (5) retaliation in violation of the National Defense Authorization Act (NDAA); and (6) wrongful termination in violation of public policy. Defendant moves for summary judgment on all of Plaintiff's claims.

## I.    Age Discrimination under the ADEA and Oregon Revised Statute § (O.R.S.) 659A.030

A plaintiff in an employment discrimination suit may prevail on summary judgment by providing actual evidence of discrimination or by using the burden-shifting framework of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *Lowe v. City of Monrovia*, 775 F.2d 998, 1005–07 (9th Cir. 1985). As a general matter, "the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1042–43 (9th Cir. 2017) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)). "The requisite degree of proof necessary to establish a prima facie case ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Schechner v. KPIX–TV*, 686 F.3d 1018, 1022 (9th Cir. 2012) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

The parties agree that Plaintiff's ADEA claim is based on circumstantial evidence and, thus, is analyzed under the framework of *McDonnell Douglas*. *See France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015); *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (holding that the *McDonnell Douglas* framework applies to ADEA claims). Therefore, Plaintiff must first make a *prima facie* case of age discrimination. *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012). If Plaintiff can establish a *prima facie* case, the burden of production shifts to Defendant to articulate a nondiscriminatory reason for the challenged action. *Id.* If Defendant meets that burden, then Plaintiff must establish that there is a material issue of fact as to "whether the employer's purported reason is pretext for age discrimination." *Id.*

A plaintiff may rely on the *McDonnell Douglas* burden-shifting framework for Oregon Chapter 659 claims adjudicated in federal court, regardless of the jurisdictional basis for the claim. *Dawson v. Entek Int'l*, 630 F.3d 928, 934–35 (9th Cir. 2011); *see also Kennedy v. Interfor*

*U.S.*, Inc., No. 1:16-CV-01959-CL, 2018 WL 3097556, at *5 (D. Or. Mar. 9, 2018), *report and recommendation adopted sub nom. Kennedy v. Intefor U.S. Inc.*, No. 1:16-CV-01959-CL, 2018 WL 3094875 (D. Or. June 21, 2018); *Lanyon v. Interfor U.S. Inc.*, No. 1:16-CV-2058-MC, 2018 WL 1976023, at *6 (D. Or. Apr. 26, 2018). Thus, Plaintiff's ADEA claim and state law claim can be analyzed together.

### A.    *Prima Facie* Case

In order to establish a *prima facie* case of age discrimination, Plaintiff must show that she was "(1) at least forty years old, (2) performing her job satisfactorily, (3) was discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of discrimination.'" *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1146 (9th Cir. 2017) (citing *Schechner*, 686 F.3d at 1023).

Defendant concedes that Plaintiff has established the first and third elements of her *prima facie* case—that she was at least forty years old and discharged from AztraZeneca. The two issues in dispute are whether Plaintiff was performing her job in a satisfactory manner, and whether she was replaced by a substantially younger employee with equal or inferior qualifications or that the discharge occurred under circumstances giving rise to an inference of age discrimination.

### i.    Prong Two: Satisfactory Performance

Defendant argues Plaintiff failed to perform her job satisfactorily because she repeatedly violated AstraZeneca's 80/20 rule on in-person coaching. Def.'s Mot. at 12–13. Plaintiff argues that this reason is pretextual and that she was meeting performance expectations. Pl.'s Opp'n Mem. at 32.

Defendant shows that Plaintiff had some notice of the 80/20 policy and did not meet the policy's requirements throughout 2018. DiNunzio copied Plaintiff on two emails with the policy in spring 2018, and DiNunzio met with Plaintiff in June 2018 to discuss coaching and data entry. First Talcott Decl. Ex. J; First Talcott Decl. Ex. K; First Talcott Decl. Ex. E. DiNunzio's audit of Plaintiff's coaching entries at her end of year review and before her First Written Warning show that 80% of Plaintiff's coaching days in 2018 were not in the field per the policy. First Talcott Decl. Ex. L; First Talcott Decl. Ex. D at 1, ECF 42-1.

Plaintiff offers evidence that the coaching policy may not have been a true requirement and that it was possibly not widely enforced. Plaintiff testified that "it was never clarified that this [the 80% in-person coaching requirement] was an absolute policy." Pl.'s Opp'n Mem. Ex. SS (Ivie Dep.) 306:21-25. Two other AstraZeneca employees also testified that the alleged 80/20 rule was not as clear as Defendant suggests. Hinson testified that "when he was employed at AstraZeneca there was no policy on field coaching and no policy that mandated a certain percentage to be virtual versus in-person."[2] Pl.'s Opp'n Mem. Ex. QQ (Hinson Dep.) 138:8-11, ECF 43-43. Truax testified that "[i]n terms of field coaching days, I know both face-to-face and virtual visits count" and that "[i]t's never been explained or never heard anyone say [sic] which percentage count as virtual versus field." Pl.'s Opp'n Mem. Ex. KK ¶ 14, ECF 43-37.

Plaintiff also puts forth evidence that the 80/20 policy may not have been consistently enforced. An email from Barbara McCollough, VP of North American Compliance states, "[s]ales leaders had not been consistently enforcing the requirement across the field to ensure field rides were being performed/recorded consistently" and raises a concern that she wanted to

---

[2] Hinson left the company in August 2018 but was there in the spring of 2018 and July 2018 when Defendant alleges Plaintiff should have been aware of the rule.

ensure that "this particular DSM was not being singled out as the only one who was coaching via the phone as opposed to actually doing physical field rides." Pl.'s Opp'n Mem. Ex. X at 3, ECF 43-24. McCollough's email states that in April 2019, months after HR began investigating Plaintiff's performance, the company sent "clear guidance to the field sales org so that all DSMs are clear on expectations" regarding the 80/20 coaching policy. *Id.*

Plaintiff also offers evidence that in 2018 she was performing her job satisfactorily as an employee and casts doubt on her negative review a manager. She received a 4 out of 5 rating for her overall performance as an employee and a 2 out of 5 rating for her overall performance as a manager in her 2018 performance review. First Talcott Decl. Ex. I, ECF 42-2 at 3. The review indicates that the managerial low score was because she did not meet the expectation "to be above [sales] goal[s] every quarter with all products." *Id.* The performance review cites mitigating circumstances for her sales performance as to Symbicort, which is the drug most heavily weighted in her performance measures, but not for the other products she was responsible for promoting. *Id.* She also offers the declaration of Truax to suggest that her goals as a manger may have been inflated. Truax testified that a finding that Plaintiff was not meeting her goals is misleading because she was "such a high performer her goals increased periodically" and she was thus "working with higher goals." Pl.'s Opp'n Mem. Ex. KK (Truax Decl.) ¶ 7. She also testified that based on her experience "most managers would be fine with a 98% completion of goals" which Plaintiff had achieved at the time of her yearend review. *Id.*

The Court finds Plaintiff has carried her burden on the second prong. Plaintiff provides some evidence that she was performing her job satisfactorily and establishes a question of fact regarding the universally and enforcement practices of the 80/20 rule—Defendant's main basis

for Plaintiff's alleged underperformance. With this evidence, Plaintiff establishes a genuine issue of material fact as to whether she was performing her job satisfactorily.

> ### ii. Prong Four: Replaced by a Substantially Younger Employee With Equal or Inferior Qualifications or Discharged Under Circumstances Otherwise Giving Rise to an Inference of Discrimination

Defendant argues that Plaintiff cannot satisfy this prong because her replacement was not substantially younger than her and the circumstances do not give rise to an inference of discrimination. Def.'s Mot. at 13. Defendant notes that Plaintiff's replacement was only six years younger than her. First Talcott Decl. Ex. V at 6. Plaintiff contends that besides being younger than her, her replacement has less management experience and held a lower title than Plaintiff. Pl.'s Opp'n Mem. at 31–33.

An employee can establish a *prima facie* age discrimination case with evidence that his or her replacement was substantially younger with equal or inferior qualifications. *Schechner*, 686 F.3d at 1023. An age difference of six years appears to be right on the line in the Ninth Circuit. A difference of ten years or more between a plaintiff and his or her replacement is presumptively substantial. *France*, 795 F.3d at 1174. In *Diaz v. Eagle Produce Ltd. P'ship*, the Ninth Circuit held that a nine-and half-year difference, established via a small data set of statistical evidence in a general reduction in workforce case, was not enough to establish an inference of discrimination. 521 F.3d 1201, 1209 (9th Cir. 2008). However, an earlier case, cited by the Ninth Circuit as recently as 2017, found a five-year difference "sufficient to establish a *prima facie* case of age discrimination." *Santillan*, 853 F.3d at 1044 (citing *Douglas v. Anderson*, 656 F.2d 528, 530, 533 (9th Cir. 1981)). Generally, district courts have found that six years is the smallest possible age difference for a finding that the replacement is "substantially younger." *See Starling v. Banner Health,* No. CV-16-00708-PHX-NVW, 2018 WL 1015469, at *1 (D. Ariz.

Feb. 21, 2018) ("Ninth Circuit has not decided what qualifies as 'substantially younger'" and []
"courts routinely require an age difference of at least six years.") (citations omitted). Given that
this is Defendant's motion, a six-year difference is enough for Plaintiff to meet her burden on
prong four. This finding is bolstered by the fact that Plaintiff's replacement had inferior
qualifications to be a manager. He had three years management experience compared to her
eighteen years. Pl.'s Opp'n Mem. Ex. UU (Thomsen Dep.) 10:4-11, ECF 43-74; Pl.'s Opp'n
Mem. Ex. NN (DiNunzio Dep.) 45:24-46:4. Viewing the evidence in the light most favorable to
the non-moving party, Plaintiff can meet the minimal burden to establish her *prima facie* case.

**B.     Defendant's Legitimate Nondiscriminatory Reason**

A *prima facie* case raises a rebuttable presumption that Defendant violated the ADEA.
*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000). The burden then shifts to
Defendant to "articulate legitimate, non-discriminatory reasons for the adverse employment
action" *Id.*

Defendant argues Plaintiff's inadequate job performance and her repeated violations of
its 80/20 in-person coaching policy throughout 2018 constitute a legitimate nondiscriminatory
reason for termination. Def.'s Mot. at 14–15. Violations of company policy can constitute a
legitimate nondiscriminatory reason for termination. *See Hudson v. Chertoff*, 304 F. App'x 540,
541 (9th Cir. 2008). Accordingly, the Court finds that Defendant has met its burden to articulate
a legitimate, nondiscriminatory reason for terminating Plaintiff. The burden now shifts back to
Plaintiff to establish pretext.

**C.     Pretext**

At this point in the analysis, the "presumption of unlawful discrimination 'simply drops
out of the picture.'" *Wallis*, 26 F.3d at 889 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.

502, 511 (1993)). To succeed on an ADEA claim a plaintiff must prove by a preponderance of

the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the

challenged employer decision.[3] *Gross v. FBL Fin. Servs., Inc.*, 55 U.S. 167, 177 (2009). The

Supreme Court explained, "[t]he ordinary meaning of the ADEA's requirement that an employer

took adverse action 'because of' age is that age was the 'reason' that the employer decided to

act." *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (explaining that the claim

"cannot succeed unless the employee's protected trait actually played a role in [the employer's

decision making] process and had a determinative influence on the outcome"). The plaintiff may

attempt to satisfy that burden by presenting, in addition to its *prima facie* case, indirect evidence

that the legitimate reasons offered by the employer are not worthy of credence and thus a pretext

for discrimination. *Grimsley v. Charles River Laboratories*, No. 3:08-CV-004820LRH-VPC,

2011 WL 4527415, at \*7 (D. Nev. Sept. 28, 2011) (citing *Reeves v. Sanderson Plumbing

Products*, 530 U.S. 133, 143, 147–48 (2000)).

    When viewing the facts in the light most favorable to Plaintiff and drawing all reasonable

inferences in her favor, the Court finds Plaintiff has created a triable issue as to whether

Defendant's proffered reasons for her termination were pretextual. First, Plaintiff can show that

Defendant's proffered reason may be unworthy of credence and thus could be found to be pretext

---

[3] Plaintiff argues that Oregon courts have rejected the "but for" standard of causation under the
*McDonnell Douglas* framework and instead have held that an employer's wrongful purpose must
be a "factor that made a difference." Pl.'s Opp'n Mem. at 3. She cites *Hardie v. Legacy Health
System* for this proposition. 167 Or. App. 425, 435, 6 P.3d 531, 538 (2000). Plaintiff
mischaracterizes this case. The court does not "reject" the "but for" standard in *Hardie*; rather,
the court states, "[t]he crux of the [but for] standard, regardless of which phraseology is attached
to it, is whether, in the absence of the discriminatory motive, the employee would have been
treated differently." *Id.* at 435.; *see also Siring v. Oregon State Bd. of Higher Educ. ex rel. E.
Oregon Univ.*, 977 F. Supp. 2d 1058, 1061 (D. Or. 2013) (finding "the 'substantial factor'
causation standard" defined as "a 'but for' standard.").

for discrimination. Although ADEA claims have a higher "but for" causation standard, the Supreme Court has held that evidence that the proffered reason is false can be enough. *See Reeves*, 530 U.S. at 148 (concluding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). As discussed above, Plaintiff puts forward evidence that her low score as a manager may have been skewed by the fact that her goals were higher because of past success. Most importantly, she offers evidence that creates a question of fact regarding the legitimacy of the 80/20 rule as the basis for her First Written Warning and termination. This includes Plaintiff's own testimony that she was unaware that the 80/20 split was mandatory, testimony of two other employees that the 80/20 rule was not known to be required, and a statement from a senior executive raising concerns that the "rule" may have been unfairly enforced against Plaintiff and not clearly established until spring 2019.

Plaintiff also contends that she can establish pretext via a comparator, Andrew Maratas. Pl.'s Opp'n Mem. at 26. When Maratas did not meet Defendant's coaching requirements he was placed on a performance plan rather than issued a written warning or terminated. First Talcott Decl. Ex. Q (Belknap Dep.) 99:11-100:3, ECF 42-3; First Talcott Decl. Ex. HH, ECF 42-5. Defendant argues Maratas is not a valid comparator because he was disciplined for the quality of his coaching rather than for violations of the 80/20 coaching policy. Def.'s Reply at 8–9, ECF 44.

Comparator evidence can establish pretext when a similarly situated employee is being treated more favorably. A valid comparator is one who is "similarly situated [to the plaintiff] in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). "Individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County*

*of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). "[W]hether a plaintiff and a coworker are similarly situated will generally be a question of fact." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1161 (9th Cir. 2010).

Plaintiff and Maratas were similarly situated in all material respects. Maratas held the same position as Plaintiff and was also supervised by DiNunzio. Pl.'s Opp'n Mem. Ex. NN (DiNunzio Dep.) 197:18–198:5. Both Plaintiff and Maratas were disciplined for issues related to coaching their team members. First Talcott Decl. Ex. Q (Belknap Dep.) 99:11-100:3, ECF 42-3; First Talcott Decl. Ex. HH, ECF 42-5; First Talcott Decl. Ex. L; First Talcott Decl. Ex. D, ECF 43-1, First Talcott Decl. Ex. BB, ECF 42-4. While Maratas was not disciplined for violations of the exact same coaching policy as Plaintiff, he was disciplined for similar conduct – the quality of his coaching and field coaching reports. First Talcott Decl. Ex. Q (Belknap Dep.) 99:11-100:3; First Talcott Decl. Ex. HH. Drawing all inferences from the underlying facts in the light most favorable to Plaintiff, this is enough to establish Maratas as a comparator.

Plaintiff also offers circumstantial evidence of age discrimination. At her deposition, Plaintiff testified that DiNunzio referred to her using the nickname "Benatar" and gave her a water bottle with the word "Benatar" engraved on it. Pl.'s Opp'n Mem. Ex. SS (Ivie Dep.) 51:8–52:24, 17:14-18:20. Benatar was allegedly a reference to Pat Benatar, a singer popular in the 1980s. Pl.'s Opp'n Mem. Ex. II ¶ 14. Plaintiff also testified that DiNunzio had made other comments regarding her age such as, "you're aging really well" and "thought you'd have more wrinkles." Pl.'s Opp'n Mem. Ex. SS (Ivie Dep.) 51:8–52:24. Plaintiff testifies that DiNunzio made comments suggesting a preference for younger employees. She testified that DiNunzio told her that she absolutely loved Aaron Griffith because he had a "newer, younger point of view." *Id.* at 302:7-303:15. Finally, Plaintiff testified that in a mid-December 2018 meeting, DiNunzio

talked about an "old bus" and a "new bus" while looking at Plaintiff and that when Plaintiff

asked if this was a reference to age everyone laughed and said they were not talking about age.

*Id.* at 303:16-304:18.

The record contains evidence that Defendant's proffered reason for Plaintiff's termination

may have been false and circumstantial evidence of age discrimination. Plaintiff has thus raised a

genuine issue of fact as to whether Defendant's asserted justification is pretextual and has

provided sufficient evidence to survive summary judgment on her ADEA discrimination and

O.R.S. 659A.030 claims. Defendant's motion for summary judgment on these claims is denied.

## II.     Retaliation for ADEA Protected Activity

To establish a claim of ADEA retaliation, a plaintiff must prove that (1) she engaged in a

protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link

between her protected activity and the adverse employment action. *Poland v. Chertoff*, 494 F.3d

1174, 1179–80 (9th Cir. 2007). The third element requires that the plaintiff show but-for

causation. *See Gross*, 557 U.S. at 177–76.

The parties agree that Plaintiff engaged in protected activity and suffered an adverse

employment action. The issue in dispute is whether Plaintiff can establish a causal link between

the two elements.

Defendant argues Plaintiff cannot rely on an inference of causation because "more than

two months passed between her initial complaint of age discrimination in December 2018 and

receipt of her First Written Warning in March 2019." Def.'s Mot. at 19. Defendant also argues

that the performance issues that led to Plaintiff's termination existed before she filed her first age

discrimination complaint. *Id.* Plaintiff argues that timing alone can establish causation on an

ADEA retaliation claim and notes that only one month elapsed between her May 2019 age

discrimination complaint and her termination. Pl.'s Opp'n Mem. at 34–35.

The Ninth Circuit has recognized that in some cases, "temporal proximity can by itself

constitute sufficient circumstantial evidence of retaliation for purposes of both the *prima facie*

case and the showing of pretext." *Dawson*, 630 F.3d at 937 (citing *Bell v. Clackamas Cty.*, 341

F.3d 858, 865-66 (9th Cir. 2003)). "Courts have made clear that when a plaintiff 'attempts to

establish the causal connection indirectly, relying on mere temporal proximity between the

events, the events must be "very close" in time.'" *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d

1179, 1193 (D. Or. 2016) (quoting *Boynton–Burns v. Univ. of Or.*, 197 Or. App. 373, 381, 105

P.3d 893 (2005)). There is no bright-line rule on what constitutes "very close" in time, but a

period of months, without other evidence supporting causation, is too long. *See Swan v. Bank of*

*America*, 360 F. App'x 903, 906 (9th Cir. 2009) (citations omitted) (four months too remote);

*Govan v. Sec. Nat. Fin. Corp.*, 502 F. App'x 671, 674 (9th Cir. 2012) (six-months too long);

*Redwind v. W. Union*, LLC, No. 3:14-CV-01699-AC, 2016 WL 3606595, at *19 (D. Or. May 2,

2016) (five months insufficient); *Talbot v. New Seasons Mkt.*, *LLC*, No. 03:12-CV-00141-HZ,

2012 WL 6738271, at *7 (D. Or. Dec. 27, 2012) (two months insufficient).

Two months elapsed between when Plaintiff made her first age discrimination complaint

and the issuance of her First Written Warning. Plaintiff. Pl.'s Opp'n Mem. Ex. D; Pl.'s Opp'n

Mem. Ex. M at 1. The HR lead assigned to investigate her age discrimination complaint, Karen

Belknap, was also the HR lead working with DiNunzio on Plaintiff's performance issues in

January and February 2019. Pl.'s Opp'n Mem. Ex. OO (Belknap Dep.) 16:16; Pl.'s Opp'n Mem.

Ex. NN (DiNunzio Dep.) 107:7-15. She therefore had knowledge of Plaintiff's age

discrimination complaints while working on the First Written Warning. DiNunzio was unaware

of Plaintiff's first age discrimination complaint until Feb. 21, 2019, a few days before the First Written Warning was issued. DiNunzio Decl. ¶ 6, ECF 41.

Three weeks elapsed between Plaintiff's second age discrimination complaint and her termination, and all of the AstraZenca employees involved in Plaintiff's termination were aware of her age discrimination complaints at the time of her termination. Pl.'s Opp'n Mem. Ex. P.; Pl.'s Opp'n Mem. Ex. PP 58:11-18.

Plaintiff's evidence of temporal proximity creates a question of fact regarding causation. While the initial two-month spread between Plaintiff's age discrimination complaint and the First Written Warning alone may not have been close enough in time without other evidence, her second complaint came within three weeks of her termination. This is short enough to be considered "very close" in time and support an inference of causation. Accordingly, Plaintiff has established her *prima facie* case on summary judgment.

Once the plaintiff has established her *prima facie* case, the burden of production then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its treatment of the plaintiff. *Yartzoff*, 809 F.2d at 1377.[4] If the defendant articulates a legitimate, non-retaliatory reason, the burden of production shifts back to the plaintiff to establish that the defendant's reason is pretextual. *Id.*

Defendant offers the same legitimate nondiscriminatory reason for Plaintiff's First Written Warning and her termination as it did for her ADEA discrimination claim—substandard performance based on violations of the 80/20 in-person coaching rule. Thus, the same evidence Plaintiff offered to support pretext on that claim applies here. As with the ADEA discrimination

---

[4] Retaliation claims under Title VII and the ADEA are treated alike. *Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997).

claim, Plaintiff provides sufficient evidence to raise an issue of fact about whether Defendant's

asserted justification is pretextual. Defendant's motion for summary judgment on Plaintiff's

ADEA retaliation claim is denied.

## III. Discrimination and Retaliation in Violation of FMLA and the Oregon Family Leave Act

To establish a *prima facie* case under FMLA and the Oregon Family Leave Act, O.R.S.

659A.186, Plaintiff must show that (1) she availed herself of a protected right, (2) she was

subjected to an adverse employment decision, and (3) a causal connection exists between

Plaintiff's medical leave and the subsequent personnel action. *Price v. Multnomah Cty.*, 132 F.

Supp. 2d 1290, 1296 (D. Or. 2001); *see also Zsenyuk v. City of Carson*, 99 F. App'x 794, 796

(9th Cir. 2004). Both statutes are evaluated using the *McDonnell Douglas* burden shifting

framework. *Price*, 132 F. Supp. 2d at 1296; *see also Leinenbach v. Washington Cty., Oregon*,

No. 3:17-CV-01703-HZ, 2018 WL 6531646, at *11 (D. Or. Dec. 11, 2018).

The parties do not dispute that Plaintiff engaged in protected activity by taking protected

leave and was subjected to an adverse employment action when Defendant terminated her

employment. At issue is prong three—whether Plaintiff can show a causal connection between

her protected leave and the adverse employment action.

Defendant argues Plaintiff's performance issues began in June 2018, nearly a year before

she took protected leave and that her violations of the 80/20 rule were the sole reason for her

termination. Def.'s Mot. at 23. Plaintiff argues the temporal proximity between her FMLA leave

and negative subjective evaluation establish an inference of causation. Pl.'s Opp'n Mem. at 36–

37.

Plaintiff establishes a genuine issue of material fact regarding the cause of her

termination. Plaintiff faced heightened scrutiny and lost a significant leadership position the day

she returned from FMLA leave. Pl.'s Opp'n Mem. Ex. II, ¶ 40. Less than two months later she

was terminated. Pl.'s Opp'n Mem. Ex. MM. She was also taking intermittent protected leaving

during the eight-week period preceding her termination. Pl.'s Opp'n Mem. Ex. II, ¶ 39. She

complained about FMLA retaliation less than two months before her termination. Pl.'s Opp'n

Mem. Ex. NN (DiNunzio Dep.) 181:1-12. Despite testifying that only the days Plaintiff worked

were considered in her performance evaluation, Ceaser, the HR decision maker in charge of

Plaintiff's termination, also testified that she was unaware that Plaintiff took an extended period

of leave in the spring of 2019. First Talcott Decl. Ex. AA (Ceaser Dep.) 84:22-85:7, ECF 42-4.

Temporal proximity, together with Plaintiff facing increased scrutiny and removal from a

leadership position on her return from leave, is enough to establish an inference of causation.

Plaintiff, therefore, has met her burden on prong three and established her *prima facie* case.

Because the *McDonnell Douglas* framework applies to these claims, at this point, the

burden shifts to Defendant to offer a nondiscriminatory reason for her termination and then back

to Plaintiff to establish pretext. The same analysis discussed above applies here. Defendant offers

Plaintiff's violations of the 80/20 rule as its legitimate nondiscriminatory reason for Plaintiff's

termination. However, when drawing all reasonable inferences in Plaintiff's favor, she can

establish a question of fact regarding whether this reason deserves credence and thus whether it

is pretext. Accordingly, the Court finds that Defendant is not entitled to summary judgment on

Plaintiff's FMLA and Oregon Family Leave Act discrimination and retaliation claims.

## IV.    Retaliation for False Claims Act Reporting and in Violation of Oregon's Whistleblower Statute

To make out a *prima facie* retaliation claim under 31 U.S.C. § 3730(h), Plaintiff must

prove three elements: "(1) that [she] engaged in activity protected under the statute; (2) that

[Defendant] knew that [she] engaged in protected activity; and (3) that [Defendant] discriminated

against [her] because she engaged in protected activity." *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). "The Ninth Circuit has not expressly determined whether the burden shifting analysis utilized by the courts in analyzing claims under Title VII of the Civil Rights Act also applies to whistleblowing claims under the FCA. However, every court to address this issue directly has concluded an affirmative defense is available to the employer." *Dunlap v. Imaging Assocs.*, LLC, No. 3:14-CV-00143-TMB, 2019 WL 4580611, at *15 (D. Alaska Sept. 20, 2019) (citing *U.S. ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 2d 1020, 1040 (D. Or. 2011)) (collecting cases); *see also Moore*, 275 F.3d at 848 (applying Title VII retaliation analysis to one element of the plaintiff's FCA claim).

To establish a *prima facie* case of retaliation under Oregon's whistleblower statute, O.R.S. 659A.199, Plaintiff must show that she (1) engaged in protected activity, (2) suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse employment decision. *See* O.R.S. 659A.199; *Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1102 (D. Or. 2012). Courts in this District have interpreted the causation requirement to mean that the employee's protected activity "must have been a factor that made a difference ... in the decision." *El v. United Parcel Serv., Inc.*, No. 3:19-CV-333-SI, 2020 WL 2616397, at *4 (D. Or. May 22, 2020) (citing *Tornabene v. Nw. Permanente, P.C.*, 156 F. Supp. 3d 1234, 1246 (D. Or. 2015)) (citation and quotation marks omitted). Once a *prima facie* case has been established, the burden shifts to the defendant to rebut the inference of retaliation by offering a legitimate, nondiscriminatory reason for the employee's termination. *Neighorn*, 870 F. Supp. 2d at 1102. If the defendant successfully rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is mere pretext. *Id.*

The parties do not dispute that Plaintiff was engaged in protected activity and that Defendant knew that she was engaged in protected activity. Defendant argues Plaintiff cannot establish causation—that she was selected for termination because of her reports of off-label marketing. Defendant argues underperformance and violations of the 80/20 rule were the reasons for Plaintiff's termination. Def.'s Mot. at 24. They also offer Ceaser's deposition testimony that in deciding whether to terminate Plaintiff the decision-makers did not consider her complaints of off-label promotion. First Talcott Decl. Ex. AA (Ceaser Dep.) 98:8-14. Plaintiff argues temporal proximity supports an inference of retaliation. Pl.'s Opp'n Mem. 19–20. She also offers her own testimony that DiNunzio rejected her initial complaints and told her that she "didn't appreciate the need to make a profit." Pl.'s Opp'n Mem. Ex. ¶ 23.

Plaintiff made multiple formal and informal complaints of off-label marketing. Less than two months elapsed between her first formal complaint of off-label marketing in December 2018 and Plaintiff learning she would be subjected to a written warning. Pl.'s Opp'n Mem. Ex. D; Pl.'s Opp'n Mem. Ex. M. She also made a second formal complaint related to off-label marketing on February 5, 2019, one month before the First Written Warning. Pl.'s Opp'n Mem. Ex. G at 2. Along with these formal complaints, Plaintiff reported that on multiple occasions when she raised compliance concerns with DiNunzio, DiNunzio responded by suggesting that Plaintiff might not be fit for her compliance leadership role and did not appreciate the need to make a profit. Pl.'s Opp'n Mem. Ex. D. Regarding her relationship with DiNunzio, Plaintiff testified that "everything turned when I made a complaint of off-label marketing, illegal practice in August and September." Pl.'s Opp'n Mem. Ex. NN (DiNunzio Dep.) 307:21-24. She also shows that the key decision makers involved in investigating her First Written Warning and termination, Belknap, Ceaser, DiNunzio, and Grey, had knowledge of her off-label complaints.

Thus, genuine issues of material fact are presented with respect to whether there is a causal connection between Plaintiff's protected activity and the allegedly retaliatory termination.

Defendant again argues Plaintiff's violations of the 80/20 rule were a legitimate, non-retaliatory reason for her termination. Defendant is not entitled to summary judgment on these claims, however, because Plaintiff can establish a question of fact as to pretext. As discussed above, Plaintiff has enough evidence to create an issue of fact about whether the proffered 80/20 reason was pretextual. Plaintiff also offers additional evidence of pretext specific to the off-label reporting retaliation claims.

First, it is not clear that Defendant thoroughly investigated Plaintiff's complaints of retaliation based on off-label marketing. AstraZeneca's investigations appear to largely focus on her age-based discrimination claims and the legitimacy of the off-label marketing allegations, but not the retaliation she allegedly experienced based on reporting off-label marketing. Pl.'s Opp'n Mem. Ex. FF, ECF 43-32, Pl.'s Opp'n Mem. Ex. GG, ECF 43-33.

Additionally, the same HR employee, Karen Belknap, who investigated Plaintiff's retaliation and discrimination complaints also investigated her for misconduct. Pl.'s Opp'n Mem. Ex. OO (Belknap Dep.) 89:21-90:3. This suggests there could be a legitimate question as to the neutrality of these investigations.

The Court finds genuine issues of material fact regarding Plaintiff's retaliation claims related to her reporting of off-label marketing. Defendant's motion for summary judgment on Plaintiff's retaliation claims pursuant to the False Claims Act and Oregon's whistleblower statute is denied.

///

///

V.      **Retaliation in Violation of the NDAA**

The NDAA protects an employee of a federal contractor who discloses information he or she "reasonably believes" evidences one of these five types of misconduct: (1) "gross mismanagement of a Federal contract"; (2) "a gross waste of Federal funds"; (3) "an abuse of authority relating to a Federal contract"; (4) "a substantial and specific danger to public health or safety"; or (5) "a violation of law, rule, or regulation related to a Federal contract." 41 U.S.C. § 4712(a)(1). The employee must also show, "(2) he or she made the protected disclosures to a 'required person,' defined as a 'management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct[,]' and (3) the protected disclosure was a 'contributing factor' to an adverse personnel action." *Pritchard v. Metro. Washington Airports Auth.*, No. 118CV1432AJTTCB, 2019 WL 5698660, at *12 (E.D. Va. Nov. 4, 2019). The NDAA is relatively new, and there is "scant interpretive case law" to rely on. *Busselman v. Battelle Mem'l Inst.*, No. 4:18-CV-05109-SMJ, 2019 WL 7763845, at *5 (E.D. Wash. Nov. 15, 2019).

Plaintiff alleges the misconduct basis for her NDAA claim is "a substantial and specific danger to public health or safety." Am. Compl. ¶ 119. Plaintiff raised concerns about the threat of off-label marketing by AstraZeneca sales representatives. Pl.'s Opp'n Mem. Ex. C at 3; Pl.'s Opp'n Mem. Ex. SS (Ivie Dep.) 172:10-21. Her concerns were based on possibly non-compliant insights proposed by DiNunzio and others to be used in selling respiratory products to physician clients. *Id.* Plaintiff testified that she "couldn't sleep at night" due to her concerns. Pl.'s Opp'n Mem. Ex. SS, 173:1-3.

Plaintiff does not provide evidence that actual off-label marketing occurred by AstraZenca sales representatives. She also does not show that the off-label insights proposed by

DiNunzio and others, if followed by physicians, could reasonably cause harm to patients. Plaintiff has not established a question of fact as to whether she had a "reasonable belief" that the information she disclosed posed a "a substantial and specific danger to public health or safety." The Court grants Defendant's motion for summary judgment on Plaintiff's claim for retaliation in violation of the NDAA.

## VI.      Common Law Wrongful Termination in Violation of Public Policy

"Under Oregon law, the common law remedy for wrongful discharge or termination is available only in the absence of an adequate statutory remedy." *Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1145 (D. Or. 2013). Courts in this district have "repeatedly held that O.R.S. 659A.030 and 659A.199 provide an adequate statutory remedy to plaintiffs complaining of retaliation or discrimination in the workplace, precluding a common law wrongful discharge claim." *Linggi v. TE Connectivity Corp.*, No. 3:17-CV-1992-SI, 2019 WL 2870825, at *15 (D. Or. July 3, 2019); *see also Luke v. Target Corp.*, Case No. 3:18-381-SI, 2018 WL 2144347, at *2 (D. Or. May 9, 2018) ("This Court has previously found that a common law wrongful discharge claim provides the same remedies as a whistleblower retaliation claim under O.R.S § 659A.199 and that two claims cannot be pursued simultaneously when based upon the same conduct.").

Plaintiff brought claims under O.R.S. 659A.030 and O.R.S. 659A.199. Plaintiff provides no authority for her argument that she should be permitted to plead a common law wrongful termination claim in the alternative. Cases in this District demonstrate that a wrongful termination claim is reserved for instances where plaintiffs are without an adequate statutory remedy. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for wrongful termination in violation of public policy.

///

**CONCLUSION**

The Court GRANTS IN PART Defendant's Motion for Summary Judgment [38].

Plaintiff's claim under 41 U.S.C. § 4712(a)(1) and her claim for common law wrongful

termination are DISMISSED. The Court DENIES Defendant's motion for summary judgment as

to Plaintiff's remaining claims.

IT IS SO ORDERED.


DATED:   March 28, 2021




MARCO A. HERNANDEZ
United States District Judge