Anita M. Chambers, *admitted pro hac vice*
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
achambers@employmentlawgroup.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SUZANNE IVIE,** | ) |
| | ) |
| **Plaintiff,** | )    **Case No.: 3:19-cv-01657-JR** |
| | ) |
| **v.** | )    **PLAINTIFF'S TRIAL** |
| | )    **MEMORANDUM** |
| | ) |
| **ASTRAZENECA PHARMACEUTICALS LP,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## PLAINTIFF'S TRIAL MEMORANDUM

### I.    INTRODUCTION

Plaintiff Suzanne Ivie alleges violations under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"); the False Claims Act, 31 U.S.C. § 730(h) ("FCA"); The Family Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq.* ("FMLA"), the Oregon Unlawful Employment Discrimination statute, O.R.S. §§ 659A.030, *et seq.*; the Oregon Discrimination for Whistleblowing statute, O.R.S. §§ 659A.199, *et seq.*; and the Oregon Employer Violations of Family Leave, O.R.S. §§ 659A.183, *et seq.*

II.     FACTS

Ivie worked at AstraZeneca for 19 years, most recently as an Executive District Sales Manager ("DSM") within AstraZeneca's respiratory products division. Throughout her tenure, prior to when she began raising complaints, she was consistently issued strong performance ratings and had no disciplinary actions or performance concerns raised against her. Additionally, she was selected to serve in a national-level leadership team and as a Compliance Ambassador and was recognized for successful performance by the Circle of Excellence award. Ivie was one of the oldest employees in her division, as most other DSM's and Sales Representatives were significantly younger than her.

Ivie reported directly to Stephanie DiNunzio, her immediate supervisor, who, as of July 2020, had ten less years of management experience than Ivie did. The Employee Relations department knew of two complaints that had been made against DiNunzio, in addition to concerns raised by two other employees, whose direct supervisor, Larry Hinson, ultimately left AstraZeneca because he could no longer work in the toxic work environment DiNunzio created.

Beginning in about April 2018, Ivie was victim to several inappropriate comments made by DiNunzio about her older age, including, "You are aging well," "I thought you'd have more wrinkles," and comparisons to singer Pat Benatar, who is now in her 60s. DiNunzio also told Ivie that she loved Aaron Griffith, a coworker, because he brought a "newer, younger point of view," whereas Ivie remained "old style." Ivie requested that DiNunzio stop referring to her, and encouraging others to refer to her, as "Benatar," however DiNunzio did not stop and asked Ivie to "lighten up."

Also beginning in about August 2018, Ivie started to raise legal, ethical, and compliance concerns about DiNunzio's misleading and off-label marketing tactics she instructed her DSMs to

employ. Other employees had also expressed similar concerns. Again, DiNunzio did not take Ivie's concerns seriously and continued to engage in off-label marketing. Ultimately, this led Ivie to file a complaint to AstraZeneca's compliance department in December 2018, during which she also filed a discrimination complaint to the human resources department. Karen Belknap and Mike Pomponi were assigned to investigate Ivie's complaints, respectively.

Almost immediately after Ivie submitted her complaints, DiNunzio began retaliating against her. DiNunzio removed Ivie from her leadership positions, withheld Ivie's district goals, pressured her to work on weekends, and reduced her bonus. Hinson also noticed DiNunzio began to become more short, curt, and impolite towards Ivie.

AstraZeneca failed to appropriately investigate Ivie's complaints. This was primarily because the same department that was charged with investigating Ivie's complaints of off-label marketing and discrimination, was also simultaneously tasked with investigating allegations of Ivie's underperformance—brought forth by DiNunzio. Critically, *after* Belknap opened Ivie's complaint but *before* she properly began her investigation on it, Belknap began looking into Ivie's performance.

DiNunzio alleged that Ivie was failing to properly execute her coaching responsibilities as a DSM, because Ivie did not conduct sufficient field coaching days. However, Ivie maintains, and AstraZeneca has failed to clearly demonstrate otherwise, that there is no strict coaching policy that DSM's must follow and no clear instructions regarding the number of field coaching days required. Ivie and other employees are aware of many DSM's, including some supervisors, who also conducted virtual coaching. Nonetheless, AstraZeneca issued Ivie a first written warning in February 2019, the first of her career, before Human Resource's interviews were completed and while the investigation into Ivie's complaints was still open.

Just a month later, Belknap closed the case into Ivie's complaints, providing only a summary of Ivie's age discrimination allegations, and no notes or summary of her retaliation claim.

In addition, in March 2019, Ivie notified her supervisors that she needed to take medical leave due to periodic migraines, anxiety, and depression. Despite following all appropriate procedures, immediately upon her return, DiNunzio told Ivie that she would be required to complete additional training, that she would be removed from her position as Compliance Ambassador, that she now needed to complete 160 days of in-person coaching, and she needed to check in with DiNunzio every week.

Ivie's complaints about retaliation continued to remain unresolved, and when Belknap transitioned Ivie's case to Belknap's replacement, Dawn Ceasar, Belknap told Ivie that she needed to forget the past and move on.

In June 2019, without any response on her retaliation claim, AstraZeneca terminated Ivie. Ceasar only reviewed Ivie's performance for the past two years and spoke with DiNunzio and Matthew Gray to make her decision. She was not aware, and did not look further into, Ivie's compliance complaints of off-label marketing. Upon her termination, Ivie's discrimination and retaliation concerns still remain inadequately investigated or answered, and her concerns regarding off-label marketing remained unaddressed. As a result of AstraZeneca's actions, Ivie has endured financial loss, professional obstacles in securing employment, and mental anguish.

## III.    LEGAL ISSUES

### A.    Age Discrimination – ADEA and ORS 659A.030

Ivie's state and federal age discrimination claims are analyzed under the same framework of elements.

Under the ADEA, a plaintiff must first establish a prima facie case of discrimination, after which the burden of persuasion shifts to the employer to articulate a legitimate nondiscriminatory reason for its adverse action, and then shifts back to the employee to demonstrate that the employer's proffered reason is pretext. *See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994) (*McDonnell Douglas* burden shifting framework applied in Title VII cases applies to claims under the ADEA); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case of discrimination can be demonstrated if the employee shows they were (1) at least 40 years old; (2) performing their job satisfactorily; (3) terminated or discharged; and (4) replaced by substantially younger employees with equal or inferior qualifications. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1997).

Oregon's age discrimination statute applies the same elements of a prima facie case as federal law. *See Pascoe v. mentor Graphics Corp.*, 192 F. Supp. 2d 1032, 1052 (D. Or. 2001) (citing *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 657 (1986)). However, Oregon has rejected the *McDonell Douglas* burden shifting framework, holding instead that if an inference of discrimination may "reasonably be drawn, then the claim should be submitted to the trier of fact." *Lansford v. Georgetown Manor, Inc.*, 192 Or. App. 261, 277 (Ct App. Or. 2004).

First, AstraZeneca does not dispute that Ivie is in a protected class (above 40) and that she suffered an adverse action when her employment was terminated. Second, Ivie has performed her job satisfactorily. She consistently received positive performance reviews, consistently ranked in the 5% of all employees nationwide, and received numerous performance awards. The only time any criticism arose regarding her performance coincided with her complaints about discrimination, retaliation, and off-label marketing. Finally, Ivie was replaced with a younger employee, Chris Thomsen who was 45 when he took over Ivie's position, who also had inferior qualifications.,

Although AstraZeneca attempted to articulate a nondiscriminatory reason for terminating Ivie—that she failed to adhere to its coaching policy—Ivie has presented evidence to illustrate that the proffered reason is pretext. Several other AstraZeneca employees will testify that the coaching policy is simply a guideline and not a requirement. Additionally, Ivie can present additional evidence of age discrimination: DiNunzio's inappropriate comments about her age, favoring younger employees, and the close temporal proximity between DiNunzio's comments and personnel actions taken against Ivie. This evidence can lead a reasonable trier of fact to conclude that the personnel actions taken against her were caused in part by discrimination on the basis of age.

**B.      Retaliation – ADEA**

A *prima facie* case of retaliation under the ADEA requires Ivie to prove that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *See Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

Ivie engaged in protected activity when she complained about age discrimination to DiNunzio and the Human Resources department, and she suffered an adverse employment action when she was issued a first written warning and later terminated. Furthermore, a causal link is demonstrated by the fact that the decisionmakers had knowledge Ivie engaged in protected activity and that less than a month passed between Ivie's final complaint of age discrimination in May 2019 and her termination from employment in June 2019. *See, e.g., Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1068 (9th Cir. 2002).

**C.**    **Discrimination and Retaliation – FMLA and ORS 659A.186**

Both the Family Medical Leave Act and Oregon medical leave statute require the same prima facie elements, including proof that Ivie (1) availed herself of a protected right under the act; (2) was subjected to an adverse employment decision; and (3) a causal connection exists between Ivie's medical leave and the subsequent personnel account. *Price v. Multnomah County*, 132 F. Supp. 2d 1290, 1295-96 (D.Or. 2001); *see also Zsenyuk v. City of Carson*, 99 F. Appx. 794, 796 (9th Cir. 2004).

AstraZeneca does not dispute that Ivie availed herself of her protected right to take medical leave and that her termination constituted adverse action. With regards to causation, after Ivie returned from her medical leave, she was subjected to additional training, coaching requirements, and scrutiny by DiNunzio. Ivie complained to Human Resources about FMLA retaliation just a week after returning and was subsequently told by DiNunzio to stop filing complaints. A month later, Ivie was terminated. The temporal proximity between Ivie's FMLA leave and the fact that AstraZeneca reached its termination decision in part by relying on DiNunzio's subjective evaluation of Ivie following her FMLA leave establishes an inference of causation between her FMLA leave and termination.

**D.**    **Retaliation – FCA and ORS 659A.199**

The False Claims Act and Oregon's whistleblower statute apply similar tests for establishing a prima facie case. They both require Ivie to demonstrate that she engaged in protected activity under the statute. However, the FCA requires Ivie to show that AstraZeneca knew she engaged in protected activity and that it discriminated against her because of her protected activity, and Oregon's whistleblower statute requires Ivie to show that she suffered an adverse employment decision and that there was a causal link between the protected activity and adverse action. If the

defendant successfully rebuts the inference of retaliation, the burden of persuasion shifts back to the plaintiff to show that the defendant's explanation is mere pretext. Or. Rev. Stat. Ann. § 659A.199.

AstraZeneca does not dispute that Ivie engaged in protected activity, that it knew she engaged in protected activity, and that she suffered an adverse employment action when she was terminated.

Ivie demonstrated that her complaints of off-label marketing, retaliation, and discrimination were *one* but-for cause for her termination and that the temporal proximity between her complaints and written warning fall within the time ranges that have been held to establish causation in this circuit. *See Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738-40 (2020 (holding that employees only need to show that their complaint was one but-for cause of the adverse action and that employers cannot avoid liability for citing another factor that also contributed); *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (a period of seven weeks between the protected activity and the adverse action sufficiently established a causal connection); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (a period of eight months was insufficient to establish a causal connection. Although the period between Ivie's first complaint and her written warning was six months, there were only two months between the written warning and her other two complaints in December 2018 and January 2019.

Finally, Ivie has presented significant evidence of pretext. First, she illustrated that AstraZeneca failed to adequately investigate her claim of retaliation, as Ivie was not provided with any information or explanation as to what the outcome of the investigation was and how the HR department reached the conclusion that her complaints were "unsubstantiated." *See Trujillo v. PacifiCorp.*, 524 F.3d 1149, 159 (10th Cir. 2008) *and Humphries v. CBOCS West*, 474 F.3d 387,

407 (7th Cir. 2007) (noting the quality of an investigation can shed light on pretext in a discrimination or retaliation claim).

Second, Ivie demonstrated that AstraZeneca deviated from its normal practice or procedures when the same department simultaneously investigated Ivie's complaints of discrimination and Ivie's alleged misconduct and when they placed Ivie on a disciplinary track instead of a performance improvement plan, which was the regular response to coaching deficiencies. *See Village of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 267 (1977) (finding that deviation from established practice or procedures can show pretext).

Third, Ivie presented evidence that AstraZeneca has no formal coaching policy and inconsistently applies coaching requirements among its sales representatives. This subjective criteria for evaluating performance has been held to illustrate pretext. *See Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496 (4th Cir. 1988); *Stewart v. General Motors*, 222 F. Supp. 2d 845 (W.D. Ky. 2002).

Fourth, Ivie brought forth comparator evidence when she revealed that Andrew Maratas, another employee who was allegedly failing to adhere to coaching guidelines, was not issued a written warning or terminated, and was instead placed on a performance improvement plan.

Fifth, AstraZeneca has been inconsistent in its statements regarding Ivie's termination. Although DiNunzio alleges that she was not involved in the investigation into Ivie's coaching, first written warning, and the termination, she had several conversations with Belknap and Ceaser and sent documentation to support her position and recommendations.

IV.    **DAMAGES**

For AstraZeneca's unlawful discrimination and retaliation against Ivie, Ivie seeks

damages including, but not limited to, reinstatement, economic and compensatory damages, pre-

judgement interest, reasonable costs and attorneys' fees, and any other relief that this Court

deems just and equitable.

For AstraZeneca's malice and reckless indifference in continuing to retaliate against Ivie

despite her repeated complaints of off-label marketing, age discrimination, and FMLA

retaliation—in violation of ORS 659A.200, Ivie also seeks punitive damages.

V.    **CONCLUSION**

The evidence in the instant case supports a finding that AstraZeneca subjected Ivie to age

discrimination and retaliation, FCA and Oregon whistleblower retaliation, and FMLA and Oregon

medical leave retaliation. Additionally, the evidence supports a finding that Ivie suffered lost past

and future wages and benefits, that Ivie suffered emotional distress and mental anguish for which

she is entitled to compensation, and that AstraZeneca engaged in a willful violation of Oregon's

whistleblower retaliation statute such that Ivie is entitled to punitive damages. Verdict should be

entered in Ivie's favor with damages awarded as determined by the jury, and such other declaratory

and equitable relief as is determined by the Court.

Dated: May 10, 2021                    Respectfully submitted,

                                        _____/s/ Anita M. Chambers_____
                                        R. Scott Oswald, *admitted pro hac vice*
                                        Anita M. Chambers, *admitted pro hac vice*
                                        The Employment Law Group, P.C.
                                        1717 K St. NW, Ste. 1110
                                        Washington, D.C. 20006
                                        (202) 261-2812
                                        (202) 261-2835 (facsimile)
                                        achambers@employmentlawgroup.com
                                        soswald@employmentlawgroup.com

                                        Ashley A. Marton, OSB No. 171584
                                        CRISPIN EMPLOYMENT LAW PC
                                        1834 SW 58th Avenue, Ste. 200
                                        Portland, Oregon 97221
                                        Fax: (503) 293-5770
                                        Email: ashley@employmentlaw-nw.com

                                        *Counsel for Plaintiff Suzanne Ivie*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 10, 2021, a true and correct copy of the foregoing was served via email:

Anne M. Talcott, OSB # 965325
Schwabe, Williamson & Wyatt, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204-3719
(503) 796-2911
(503) 796-2900 (facsimile)
atalcott@schwabe.com

John C. Dodds Admitted Pro Hac Vice
Ryan McCarthy, Admitted Pro Hac Vice
Melinda R. Riechert, Admitted Pro Hac Vice
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-4942
(215) 963-5001 (facsimile)
john.dodds@morganlewis.com
ryan.mccarthy@morganlewis.com
melinda.riechert@morganlewis.com

*Counsel for Defendant AstraZeneca Pharmaceuticals, LP*

/s/ Anita M. Chambers
Anita M. Chambers