Anita M. Chambers, *admitted pro hac vice*
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
achambers@employmentlawgroup.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **SUZANNE IVIE,** | |
| ***Plaintiff,*** | |
| **v.** | **Case No.: 3:19-cv-01657-JR** |
| **ASTRAZENECA PHARMACEUTICALS LP,** | **ORAL ARGUMENT REQUESTED** |
| ***Defendant.*** | |

**IVIE'S OPPOSITION TO ASTRAZENECA'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, FOR A NEW TRIAL**

## TABLE OF CONTENTS


**I. Introduction. 1**

**II. AstraZeneca waived its right to argue that Oregon law does not apply to Ivie and even if it did not waive its right, its arguments are without merit. 1**

A. AstraZeneca waived its right to argue that Oregon state law does not apply to Ivie. 3

1. AstraZeneca failed to timely plead avoidances and affirmative defenses. 3

2. AstraZeneca failed to preserve these issues in the pretrial order. 3

3. AstraZeneca did not properly preserve the currently asserted issues in its Rule 50(a) motion. 5

4. AstraZeneca can only rely on the "plain error" doctrine, which is insufficient here to grant its motion for judgment as a matter of law. 7

B. Even if AstraZeneca has not waived its arguments on which it now attempts to rely, its arguments are without merit. 8

1. AstraZeneca is essentially requesting that this Court rewrite an Oregon statute. 8

2. The Oregon Whistleblower Protection Law applies to Ivie as she worked in Oregon for part of her employment and her complaints involved conduct injuring Oregon residents. 10

3. AstraZeneca's arguments on the Dormant Commerce Clause and the Fourteenth Amendment's Due Process Clause are meritless. 14

4. AstraZeneca has not shown a meaningful conflict of laws, and thus there is no conflict to be resolved. 15

**III. No new trial is warranted because AstraZeneca fails to argue that any of the strict situations that warrant a new trial are present here and fails to show that an award of non-economic damages is excessive. 17**

A. AstraZeneca fails to argue that any of the strict situations that warrant a new trial are present here. 17

B. AstraZeneca fails to show that the award of non-economic damages is excessive because the standard to overturn damages Oregon and federal law is high – and Ivie set forth significant evidence to support emotional distress and reputational harm. 21

1. AstraZeneca ignored the applicable Oregon standards for evaluating a damages verdict. 21

2. AstraZeneca has not adequately demonstrated that the award of damages violated federal standards. .......... **22**

3. Ivie presented substantial evidence to support the award of non-economic damages. .......... **25**

4. AstraZeneca routinely minimizes the effects and harm caused by its unlawful actions and this Court should not indulge it. .......... **28**

5. Ivie's counsel provided sufficient guidance to the jury on the appropriate amount of damages to award. .......... **30**

6. AstraZeneca's comparison of verdicts is not persuasive. .......... **30**

**IV. Conclusion. .......... 33**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) .......... 14

*Anderson v. Anderson*,
840 F. App'x 92 (9th Cir. 2020) .......... 7

*Artuz v. Bennett*,
531 U.S. 4 (Nov. 2000) .......... 9

*Aued v. Converse, Inc*
2009 WL 10667411 (S.D. Fla. July 7, 2009) .......... 13

*Babb v. Wilkie*
140 S. Ct. 1168 (2020) .......... 20

*Bobo v. Clark County Collection Serv., LLC*,
2018 WL 4778035 (D. Nev. Oct. 3, 2018) .......... 4

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) .......... 28

*Busch v. McInnis Waste Sys., Inc.*,
366 Or. 628, 468 P.3d 419 (2020) .......... 22, 32

*California Prolife Council Political Action Committee v. Scully*,
989 F.Supp. 1282 (E.D. Cal. 1998) .......... 9

*Chalmers v. City of Los Angeles*,
762 F.2d 753 (9th Cir. 1985) .......... 22

*Cleavenger v. Univ. of Oregon*,
2016 WL 814810 (D. Or. Feb. 29, 2016) .......... 5

*Coach, Inc. v. Celco Customs Services Co.*,
2014 WL 12573411 (C.D. Cal. June 5, 2014) .......... 6

*Dimanche v. Massachusetts Bay Transportation Auth.*,
893 F.3d 1 (1st Cir. 2018) .......... 2

*Dubeau v. Dartmouth Hitchcock Med. Ctr.*,

2012 WL 1928441 (D. Vt. May 25, 2012) ..... 12

*E.E.O.C. v. Go Daddy Software, Inc.*,
581 F.3d 951 (9th Cir. 2009) ..... 7

*E.E.O.C. v. Kovacevich "5" Farms*,
2006 WL 3060149 (E.D. Cal. Oct. 27, 2006) ..... 9

*Erwin v. Thomas*,
264 Or. 454 (1973) ..... 15, 16

*Gasperini v. Ctr. for Humans., Inc.*,
518 U.S. 415 (1996) ..... 21

*Goddard v. DHL Exp. (USA), Inc.*,
357 Fed. Appx. 80 (9th Cir. 2009) ..... 22

*Grove City Veterinary Serv., LLC v. Charter Pracs. Int'l LLC*,
2014 WL 3371918 (D. Or. July 9, 2014) ..... 14

*Grove City Veterinary Serv., LLC*,
2016 WL 1573830 (D. Or. Apr. 19, 2016) ..... 16

*Guillot v. Potlatch Corporation*,
2004 WL 7338344 (E.D. Wash. 2004) ..... 13

*Hemmings v. Tidyman's Inc.*,
285 F.3d 1174 (9th Cir. 2002) ..... 7

*Huang v. Fluidmesh Networks, LLC*
2017 WL 3034672 (N.D. Ill. July 18, 2017) ..... 12

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ..... 22

*Janes v. Wal-Mart Stores Inc.*,
279 F.3d 883 (9th Cir. 2002) ..... 6

*Johnson v. Albertsons LLC*,
2020 WL 3604107 (W.D. Wash. July 2, 2020) ..... 31

*Johnson v. City of San Diego*,
2019 WL 1538410 (S.D. Cal. Apr. 9, 2019) ..... 4

*Johnson v. Hale*,
13 F.3d 1351 (9th Cir. 1994) ..... 23

*Lewis v. City of Chicago*,
560 U.S. 205 (2010) .......... 9

*Longfellow v. Jackson County*,
2007 WL 682455 (D. Or. Feb. 28, 2007) .......... 31

*Martin v. Interstate Distributor Co.*,
2008 WL 11512369 (D. Or. Dec. 18, 2008) .......... 8

*Memphis Cmty. Sch. Dist. V. Stachura*,
477 U.S. 299 (1986) .......... 25

*Monterey, Ltd. V. City of Monterey*,
95 F.3d 1422 (9th Cir. 1996) .......... 22

*Newton v. Equilon Enterprises, LLC*,
411 F. Supp. 3d 856 (N.D. Cal. 2019) .......... 24

*Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*,
841 F.2d 918 (9th Cir. 1988) .......... 4

*Ogden v. Bureau of Lab*, *Grove City Veterinary Serv.*,
682 P.2d 802 (Or. Ct. App. 1984) .......... 13, 14

*Oncale v. Sundowner Offshore Services, Inc.*,
523 U.S. 75 (1998) .......... 9

*Passantino v. Johsnon & Johnson Consumer Prods., Inc.*,
212 F.3d 493 (9th Cir. 2000) .......... *passim*

*Patterson v. Hughes Aircraft Co.*,
11 F.3d 948 (9th Cir. 1993) .......... 4

*Paul v. Asbury Automotive Grp.*, LLC,
2009 WL 188592 (D. Or. Jan. 23, 2009) .......... 31

*Person v. Bank of Am. N.A.*,
2013 WL 3353773 (D. Or. June 28, 2013) .......... 13

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 .......... 14

*Pierce Cnty. Hotel Emp. & Rest. Empl. Health Tr. v. Elks Lodge, B.P.O.E. NO. 1450*,
827 F.2d 1324 (9th Cir. 1987) .......... 4

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) ........ 15

*Preston v. Heckler*,
734 F.2d 1359 (9th Cir. 1984) ........ 9

*Raymond v. Wilcox Memorial Hospital*,
403 F. Supp. 3d 868 (D. Haw. 2019) ........ 6

*San Diego Comic Convention v. Dan Farr Productions*,
2018 WL 4078588 (S.D. Cal. Aug. 23, 2018) ........ 5

*Shah v. Meier Enterprises, Inc.*,
2018 WL 4374166, (D. Or. Sept. 13, 2018) ........ 17

*Skydive Arizona, Inc. v. Quattrocchi*,
673 F.3d 1105 (9th Cir. 2012) ........ 30

*Sram Corp. v. Shimano, Inc.*,
25 Fed. Appx. 626 (9th Cir. 2002) ........ 4

*State v. Meyer*,
183 Or. App. 536, 53 P.3d 940 (2002) ........ 10

*Sullivan v. Oracle Corp.,*
662 F.3d 1265 (9th Cir. 2011) ........ 15

*Swift & Co. v. Peterson*,
192 Or. 97 (1951) ........ 10

*Swinton v. Potomac Corp.*,
270 F.3d 794 (9th Cir. 2001) ........ 30

*Szucs v. L & D Scaffolding, Inc.*,
78 F.3d 594 (9th Cir. 1996) ........ 30

*Tortu v. Las Vegas Metro. Police Dep't*,
556 F.3d 1075 (9th Cir. 2009) ........ 6, 25

*Trulsson v. Cty. Of San Joaquin Dist. Attorney's Off,*
49 F. Supp. 3d 685 (E.D. Cal. 2014) ........ 24, 31

*United States v. McDonald*,
611 F.2d 1291 (9th Cir. 1980) ........ 9

*Vahora v. Valley Diagnostics Laboratory, Inc.*,
2019 WL 5960205 (E.D. Cal. Nov. 13, 2019) ........ 5

*Velez v. Roche*,
335 F. Supp. 2d 1022 (N.D. Cal. 2004) ........ 23, 24, 31

*Ward v. United Airlines, Inc.*,
686 F.3d 1234 (9th Cir. 2021) ........ 15

*W. Gas Const. Co. v. Danner,*
97 F. 882 (9th Cir. 1899) ........ 23

*Weinberg v. Valeant Pharms. Int'l*
2017 WL 6543822 (C.D. Cal. Aug. 10, 2017) ........ 12

*Wu v. Doucette*,
2010 WL 1444505 (C.D. Cal. Apr. 8, 2010) ........ 4

*Zhang v. American Gem Seafoods, Inc.*,
339 F.3d 1020 ........ 23, 24

*Zweizig v. Rote*,
368 Or. 79, 486 P.3d 763 (2021) ........ 21

*Zweizig v. Rote*,
854 F. App'x 806 (9th Cir. 2021) ........ 22

**Statutes**

Oregon Whistleblower Protection Law, ORS 659A.199 … ........ *passim*

42 U.S.C. § 2000e-3(a) ........ 28

Or. Rev. Stat. Ann. § 659A.199 (West 2021) ........ 1, 8, 13

**Rules**

Fed. R. Civ. P. 50 ........ *passim*

Fed. R. Civ. P. 59........ *passim*

Fed. R. Civ. P. 16(d) ........ 3

Fed. R. Civ. Pro. Rule 8(c)(1) ........ 1, 3

Oregon Rule of Civil Procedure 64(B) ........ 22

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 11 Federal Practice and Procedure §§ 1271, 2810.1 (3d ed. 2002) ........ 18

## MEMORANDUM

## I. Introduction.

Defendant AstraZeneca Pharmaceutical LP's motion for judgment as a matter of law as to Plaintiff Suzanne Ivie's claim under the Oregon Whistleblower Retaliation statute, O.R.S. §§ 659A.200, *et seq.* should be denied because AstraZeneca waived its right to argue that Oregon law does not apply to Ivie by not timely pleading avoidances and affirmative defenses and also failing to preserve the issues in the pretrial order. Even if AstraZeneca did not waive its arguments, Ivie is protected under Oregon's Whistleblower Protection Law as she worked in Oregon for part of her employment. Further, AstraZeneca fails to show that any award of non-economic damages is excessive because it does meet the standard to overturn the verdict, and Ivie set forth significant evidence to support emotional distress and reputational harm. Thus, this Court should deny AstraZeneca's motion.

## II. AstraZeneca waived its right to argue that Oregon law does not apply to Ivie and even if it did not waive its right, its arguments are without merit.

AstraZeneca's motion for judgment as a matter of law is not well taken as AstraZeneca does not have the right to make the arguments it presently makes on any basis other than plain error review, as it waived its rights earlier in the litigation.

First, AstraZeneca did not preserve the affirmative defenses of the inapplicability of the Oregon Whistleblower Retaliation law, ORS §§ 659A.200, ("Oregon law" or "Oregon Act" "Oregon Statute") to this case, of the Utah choice of law issue, or of the infringement on the Dormant Commerce Clause caused by the application of Oregon law. AstraZeneca was required to plead these defenses much earlier in the litigation under Rule 8(c), which states that "a party

must affirmatively state any avoidance or affirmative defense," but it never pleaded these nor sought to an amendment to do so.

Second, AstraZeneca did not preserve any of the presently asserted issues in the pretrial order and this court's precedent makes it clear that failing to preserve such any legal arguments or issues in the pretrial order constitutes a waiver of raising them at a later time.

Third, AstraZeneca never introduced evidence to demonstrate that its decisions had no effect on Ivie's employment in Oregon, to rebut the inferences from Ivie's evidence that she spent part of her AstraZeneca employment and supervision of AstraZeneca employees in Oregon, that she objected to DiNunzio's actions affecting Oregon and its residents, or that her termination opened the door for DiNunzio to continue improper off-label marketing practices in Oregon.

Finally, AstraZeneca did not preserve any issue beyond the asserted lack of geographic connection between Oregon and the events in this case in its Rule 50(a) motion, thereby waiving all other issues.

Consequently, AstraZeneca has waived all but plain-error review. *See Dimanche v. Massachusetts Bay Transportation Auth.*, 893 F.3d 1, 3 (1st Cir. 2018) ("Like the proverb that a battle can be lost for want of a nail, the party lost its appeal largely for want of its making appropriate objections and offers of proof before the trial court.") (footnote omitted). Further, even if the Court finds that AstraZeneca has not waiver all but plain-error review, Defendant's arguments lack merit for the reasons outlined below.

**A. AstraZeneca waived its right to argue that Oregon state law does not apply to Ivie.**

**1. AstraZeneca failed to timely plead avoidances and affirmative defenses.**

Federal Rule 8(c)(1) provides that "In responding to a pleading, a party must affirmatively state any *avoidance or affirmative defense*." Fed. R. Civ. Pro. Rule 8(c)(1) (emphasis added). The list of defenses that the rule outlines is not exhaustive. Rather, Professors Wright and Miller explain that "The draftsmen of the original federal rules recognized that certain defenses other than those enumerated in Rule 8(c) should be set forth affirmatively by the defendant in order to provide the plaintiff and the district court with sufficient notice that the matter has been put in issue." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1271 (3d ed. 2002).

AstraZeneca is attempting to rely on the avoidance that Oregon law does not apply, that there is no geographic connection between Oregon and the events at issue, that there is an applicable Utah choice of law, and that the application of the Oregon would infringe on the Dormant Commerce Clause. These were all matters that had to be preserved by pleading them. *See id.* (Examples of an avoidance or defense that must be pleaded under Rule 8(c)(1) include "the availability of a remedy under another state's law" and "the unconstitutionality of a statute relied on by the plaintiff.") (footnote omitted). Defendant failed to preserve these arguments in its Answer and never sought to amend its Answer to correct its error.

**2. AstraZeneca failed to preserve these issues in the pretrial order.**

Once approved by the court, the pretrial order controls the course of the litigation unless either party moves for an amendment or modification. Fed. R. Civ. P. 16(d). Generally, the Ninth Circuit has held that "[a] pretrial order generally supersedes the pleadings, and the parties are

bound by its contents." *See Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) (holding that the parties were bound by the contents of the pretrial order when the order did not leave the question of plaintiff's total disability for determination at trial). If a defendant fails to raise a defense in the pretrial order or prior to trial, that defense is waived. *See Sram Corp. v. Shimano, Inc.*, 25 Fed. Appx. 626, 629 (9th Cir. 2002); *see also Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) (finding that the Appellants waived the defense of contract novation when novation was not raised in the pretrial order or before trial began).

Thus, even if a defendant has raised a defense in its Answer or in any other pleadings, failure to preserve the defense in the pretrial order constitutes a waiver of the defense and eliminates it from the action. *See Pierce Cnty. Hotel Emp. & Rest. Empl. Health Tr. v. Elks Lodge, B.P.O.E. NO. 1450*, 827 F.2d 1324, 1329 (9th Cir. 1987) (holding that defenses which were asserted in trial briefing but omitted from the pretrial order were "not preserved" and thus "eliminated from the action."); *see also Johnson v. City of San Diego*, No. 3:17-cv-00410-L-NLS, 2019 WL 1538410, at *4 (S.D. Cal. Apr. 9, 2019); *Bobo v. Clark County Collection Serv., LLC*, No. 2:16-cv-02911-APC-CWH, 2018 WL 4778035, at *1–2 (D. Nev. Oct. 3, 2018); *Wu v. Doucette*, No. EDCV 07-1584 VAP (OPx), 2010 WL 1444505, at *8 (C.D. Cal. Apr. 8, 2010).

While AstraZeneca did raise certain affirmative defenses related to jurisdiction and failure to state a claim upon which relief can be granted in its Answer (Dkt. 14), AstraZeneca failed to preserve those defenses in the parties' joint pretrial order (Dkt. 66). Moreover, the joint pretrial order has a section titled "Other Legal Issues" and neither party noted any issues. Dkt. 66 at 20. Therefore, its failure to include the applicability of Oregon state law as a legal issue in the pretrial order prevents AstraZeneca from arguing it in any subsequent motion, let alone one

at the conclusion of trial. Significantly, AstraZeneca used the exact same argument when Ivie moved to file a second amended complaint following the submission of the pretrial order yet fails to acknowledge its own failure in its current motion. Dkt. 100 at *3.

Further, Ivie moved to amend her complaint *prior* to the start of trial so that, in the event her motion was granted, AstraZeneca would have the opportunity to litigate the amendments at trial. However, AstraZeneca offered no such courtesy and, instead, blindsided Ivie by raising such issues at the close of her case. If Ivie had prior notice that AstraZeneca intended on raising such an argument, she would have presented evidence that specifically demonstrated the connection to Oregon which AstraZeneca now raises as necessary to state a claim. Granting AstraZeneca's motion on these issues would be significantly prejudicial, as Ivie properly relied on AstraZeneca's position in the joint pretrial order and did not waste the court or jury's time with presenting evidence on matters that were supposedly not in dispute prior to trial.

**3. AstraZeneca did not properly preserve the currently asserted issues in its Rule 50(a) motion.**

AstraZeneca did not raise, and therefore did not properly preserve, the arguments of Constitutional protections and Oregon choice of laws in its Rule 50(a) motion. Generally, the court may only consider an issue raised in a Rule 50(b) motion if that same issue was previously raised in a Rule 50(a) motion. *See Cleavenger v. Univ. of Oregon*, No. CV 13-1908-DOC, 2016 WL 814810, at *7 (D. Or. Feb. 29, 2016) (denying Rule 50(b) motion on certain grounds when such grounds were not raised anywhere or mentioned in Defendants' Rule 50(a) motion); *Vahora v. Valley Diagnostics Laboratory, Inc.*, No. 1:16-cv-01624-SKO, 2019 WL 5960205, at *8 (E.D. Cal. Nov. 13, 2019) (denying Rule 50(b) motion when "[e]ven liberally construing [] Rule 50(a) motion, Defendants did not make the remaining arguments made in the Rule 50(b) motion"); *San Diego Comic Convention v. Dan Farr Productions*, No. 14-cv-1865-AJB-JMA, 2018 WL

4078588 (S.D. Cal. Aug. 23, 2018) (finding that plaintiff waived any arguments under Rule 50(b) motion that were not articulated in its Rule 50(a) motion). Even a purely legal issue or sub-issue is waived if it was not addressed in the Rule 50(a) motion. *Tortu v. Las Vegas Metro. Police Dep't,* 556 F.3d 1075, 1085 n.9 (9th Cir. 2009) ("However, without the requisite Rule 50(a) motion, this purely legal issue could not be revived under Rule 50(b). There is no authority that this legal issue could be revived as a ground for a new trial under Rule 59.").

AstraZeneca is attempting to take its specific argument that Ivie has no claim under Oregon state whistleblowing law because, allegedly, no discriminatory or retaliatory acts occurred in Oregon, and use it as an instrument to bring two additional defenses—that under choice of laws principles Oregon state law does not apply and that applying Oregon law would violate the Dormant Commerce Clause and Fourteenth Amendment Due Process Clause. Neither of these two issues were even mentioned in AstraZeneca's Rule 50(a) motion and the Court should thus consider them as waived extraneous defenses.

While a party may argue that certain issues or defenses are a logical extension of the defense that was raised in its Rule 50(a) motion, this is not the case here. A logical extension of the defense is a high burden to meet because "substantial compliance [with Rule 50] is not enough." *Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 887 (9th Cir. 2002). One argument is only the logical extension of the other if the arguments are highly interrelated. *See Raymond v. Wilcox Memorial Hospital*, 403 F. Supp. 3d 868, 877 (D. Haw. 2019); *see also Coach, Inc. v. Celco Customs Services Co.*, No. CV 11-10787 MMM (FMOx), 2014 WL 12573411, at *8 (C.D. Cal. June 5, 2014) ("This suggests that an argument is a "logical extension" of a second argument if it concerns a common issue, and one argument is dependent on the other."). AstraZeneca's Constitutional protection and choice of law arguments do not concern a common

issue with its argument that Ivie failed to state a claim by failing to allege discriminatory or retaliatory acts occurred in Oregon. In fact, they are entirely separate arguments that do not depend on one another and are not highly interrelated.

**4. AstraZeneca can only rely on the "plain error" doctrine, which is insufficient here to grant its motion for judgment as a matter of law.**

If a defendant has waived its right to make an argument by failing to raise it in prior pleadings or motions, as AstraZeneca has done here, it can only rely on the "plain error" doctrine. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Under that standard, "if there is *any evidence* to support the jury's verdict, it must be upheld." *Id.* (internal citation and quotations omitted) (emphasis added). The Ninth Circuit has explained that:

> … Plain error review in the civil context requires: "(1) an error, (2) the error is plain or obvious, (3) the error was prejudicial or [a]ffects substantial rights, and (4) review is necessary to prevent a miscarriage of justice." *Draper*, 836 F.3d at 1085 (alteration in original) (citation omitted). "Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault envisioned by the standard set forth above." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (citation omitted). Thus, reversal is only appropriate in *extraordinary* cases. *See Draper*, 836 F.3d at 1085.
>
> *Anderson v. Anderson*, 840 F. App'x 92, 97 (9th Cir. 2020) (emphasis added).

AstraZeneca has made no showing that its case is so extraordinary, or that any of its waived arguments were so substantial that they must be granted to prevent a miscarriage of justice. Therefore, it fails to demonstrate that the Court committed plain error in upholding the jury's verdict.

**B. Even if AstraZeneca has not waived its arguments on which it now attempts to rely, its arguments are without merit.**

**1. AstraZeneca is essentially requesting that this Court rewrite an Oregon statute.**

AstraZeneca's narrow reading of the Oregon Whistleblowing suggests that an employee can only avail herself of the law's protections if she is a resident of Oregon or if she can demonstrate that the discriminatory and retaliatory acts occurred in Oregon. Accepting AstraZeneca's limitations, this would mean that an employer could discriminate, with impunity, against any resident of Vancouver, Washington, who spends 100 percent of her time working in Portland, as long as the employer assigns the decision-making to someone outside of Oregon. Defendant has not proffered any plausible reason as to why the Oregon Legislature would intend to limit its protections to such a degree, or why this court should rewrite the statute to do what the Legislature did not.

The Oregon Statute, as written, does not indicate that the decision in question has to take place within the state of Oregon, or that the plaintiff must be a resident of the state. The statute reads:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

OR. REV. STAT. ANN. § 659A.199 (West 2021).

In construing the meaning of a statute, courts review the text of the statute first, giving undefined terms their plain meaning and considering the context of the statutory provision at issue. *See Martin v. Interstate Distributor Co.,* No. 08-896-KI, 2008 WL 11512369 (D. Or. Dec. 18, 2008).

AstraZeneca is asking the Court to rewrite the statute when asking it to presume, without appropriate language, that a person who is not an inhabitant of Oregon is not covered by this statute if no decision on the retaliatory or discriminatory act took place in Oregon. This would violate the principle of the separation of powers for any court,[1] but is particularly inappropriate for a federal court construing State law. *See California Prolife Council Political Action Committee v. Scully*, 989 F.Supp. 1282, 1300 (E.D. Cal. 1998) ("A federal court . . . which derives its power from the federal Constitution and is bound by principles of federalism, has no power by virtue of California's separation of powers doctrine, or otherwise, to rewrite a state statute, even to save it from unconstitutionality."); *see also E.E.O.C. v. Kovacevich "5" Farms*, No. 1:06 CV 0165 OWW TAG, 2006 WL 3060149, at *10 (E.D. Cal. Oct. 27, 2006) ("A district court cannot rewrite a state statute to impose conditions not specifically required by the Legislature."). The Ninth Circuit has declined to rewrite statutes and stated that it "possess[es] no power to rewrite legislation." *See Preston v. Heckler*, 734 F.2d 1359, 1370 (9th Cir. 1984) (quoting *United States v. McDonald*, 611 F.2d 1291, 1295 (9th Cir. 1980)).

If the Court were to interpret the statute with the added language that AstraZeneca so wants to add, then the Court would be setting the precedent that non-resident persons who work in Oregon are not covered by Oregon's Whistleblower Protection statute if the decision on the discrimination or retaliation did not occur in Oregon. Courts in this Circuit have previously rejected this notion for that very reason. *See Guillot v. Potlatch Corporation,* No. CS-03-0465-

[1] "It is not for us to rewrite the statute so that it covers only what we think is necessary to achieve what we think Congress really intended." *See Lewis v. City of Chicago,* 560 U.S. 205, 215–16 (2010) (citing *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 79–80 (1998)); *see also Artuz v. Bennett*, 531 U.S. 4, 10 (Nov. 2000) ("Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them.").

JLQ, 2004 WL 7338344 (E.D. Wash. 2004) (finding that limiting the application of Washington's employment discrimination statute's application to Washington inhabitants would "allow Washington employers to discriminate freely against non-Washington inhabitants, thus undermining the fundamental purpose of the act, deterring discrimination[,]" construing "inhabitants" in the statute generally, and not imposing a residency requirement).

### 2. The Oregon Whistleblower Protection Law applies to Ivie as she worked in Oregon for part of her employment and her complaints involved conduct injuring Oregon residents.

AstraZeneca argues now, after the evidence has been presented and the jury has issued its verdict, that no evidence was presented allowing Oregon law to be applied to Ivie's grievances about her employment at AstraZeneca and her discharge and that not enough facts have been plead to assert that Ivie's complained of facts connected to Oregon. To the contrary, the facts of the case point to numerous connections to the state, making AstraZeneca's claims of "extraterritoriality" improper. Thus, AstraZeneca's reference and reliance to *State v. Meyer*, 183 Or. App. 536, 544-45, 53 P.3d 940, 944 (2002) and *Swift & Co. v. Peterson*, 192 Or. 97, 121 (1951) regarding the presumption of extraterritorial application is irrelevant here as Ivie partially worked in Oregon.

There is no dispute that Ivie performed work in Oregon. In Ivie's first amended complaint, she alleged that she "oversaw approximately eight Sales Representatives who worked on accounts in Utah, Idaho, and parts of Oregon." Dkt. 23-1 at 3. In AstraZeneca's Answer, it admitted the same. Dkt. 36 at 4. Ivie was hired for the purpose of supervising, coaching, and training AstraZeneca sales representatives, some of whom worked in Oregon. In Ivie's email signature, she is a District Sales Manager – Respiratory Division, for AstraZeneca in the states of Utah, Idaho, Wyoming, and **Oregon**. *See e.g.* PX-046, at *2.

Additionally, Ivie's complaints had a connection to Oregon in that they involved conduct injuring and financially harming Oregon residents and state and local governments. DiNunzio served as the Commercial Business Director for the Seattle region and supervised Ivie. Tr. Vol. 3, 345:18-21, 347:4-5, 19-20 (June 16, 2021)[2] Two other employees, Linda Truax and Larry Hinson, within DiNunzio's chain of command lived and worked in Oregon. Importantly, there were no geographic limits to DiNunzio's problematic instructions to her employees or Ivie's complaints. Any harm that could have arisen from DiNunzio's instructions would have a significant effect on Oregon residents. This is because DiNunzio was encouraging sales representatives to market certain drugs for off-label uses. The practical implication of that is that sales representatives would share this information to doctors, who would in turn prescribe off-label to their patients, which spanned across DiNunzio's district, which included Oregon. Moreover, Ivie's complaints have financial implications for the state of Oregon. As DiNunzio testified, AstraZeneca sells its drugs through insurance companies, including government insurance like Medicare and Medicaid. Tr. Vol. 3, 375:17-24 (June 16, 2021).[3] Consequently, since certain government health insurance is funded by the state, off-label marketing could cost Oregon and Oregonian citizens money that they did not need to spend.

AstraZeneca argues that the court should hesitate to allow the Oregon law protect Ivie because "extraterritorial application of employment statutes" has been limited by other courts. AstraZeneca attempts to further support its position by citing to a litany of non-binding authority which analyze whistleblower statutes in different states. The claim at issue here is the Oregon Whistleblower Protection law, not whistleblower statutes in California or Illinois, which have

[2] Citing to the complete transcript.
[3] Citing to the complete transcript.

different requirements and coverage. For example, in *English,* the California court noted that California prior case law protected employees where the adverse decision was made in the state. *English*, No. EDCV 18-908 JGB (SHKx), 2019 WL 2619658, at *8 (C.D. Cal. May 8, 2019). In *Weinberg,* the California court in that case did not extend California protections because the plaintiff's work there only "affected" California servers and databases through work on financial infrastructure system based in various states. *Weinberg v. Valeant Pharms. Int'l*, No. 8:15-CV-1260-KES 2017 WL 6543822, at *6 (C.D. Cal. Aug. 10, 2017), *aff'd sub nom. Weinberg v. Valeant Pharms. N. Am., LLC*, 765 F. App'x 328 (9th Cir. 2019). Both *English* and *Weinberg* involve California whistleblower statutes and California authority – which are simply not at issue here. Moreover, AstraZeneca assigned Oregon as part of Ivie's territories to work with Oregon doctors, and ultimately sell AstraZeneca's products to Oregon residents.

AstraZeneca cites to *Huang v. Fluidmesh Networks, LLC,* a case involving the Illinois Whistleblower Act and the interpretation of Illinois legislation, where the plaintiff "was not responsible for developing business relationships in the United States, his employment was never based in Illinois, and he never physically worked in or traveled to Illinois as part of his employment with Defendant." No. 16-CV-9566, 2017 WL 3034672, at *2 (N.D. Ill. July 18, 2017). Again, this is not comparable to the statute at issue – or the facts in this matter since Ivie partially worked in Oregon.

*Dubeau v. Dartmouth Hitchcock Med. Ctr.*, is also distinguishable because that court held that Vermont whistleblower protection laws could not extend to apply against an employer based out of New Hampshire because the statute's language *specifically included* a geographical limitation; there is no such limiting language in the Oregon statute. No. 1:11-CV-255-JGM, 2012

WL 1928441, at *2 (D. Vt. May 25, 2012) (noting that the legislative history of the statute in question specifically stated that it was intended to apply only to Vermont hospitals).

AstraZeneca uses *Aued v. Converse, Inc.,* another case with no precedential value in this district and overlooks a key distinguishable element that led the court not to extend Florida's Whistleblower Statute to the plaintiff's claims. No. 08-021132-CIV, 2009 WL 10667411, at *5 (S.D. Fla. July 7, 2009). In *Aued*, the plaintiff pled that he was retaliated against for blowing the whistle on the wrongful termination of another employee. *Id.* The court's decision not to extend Florida law to the claim was not because the plaintiff did not have sufficient connections to Florida, but rather because plaintiff had not demonstrated that the employee's termination was *in fact* such a violation, a requirement under the Florida statute. Conversely, here, Oregon's Whistleblower statute does not require a showing of an *actual* violation of law. Instead, it covers even those events where the employee "has in *good faith* reported information that [she] believes is evidence of a violation…," and Ivie sufficiently plead facts of off-label marketing that took place in Oregon, or that she at least believed in good faith were taking place in Oregon. *See* OR. REV. STAT. ANN. § 659A.199 (West 2021) (emphasis added).

Finally, despite having had its Rule 50(a) motion denied when based on *Ogden v. Bureau of Lab*, *Grove City Veterinary Serv., LLC v. Charter Pracs. Int'l LLC.,* and *Person v. Bank of Am. N.A.,* AstraZeneca turns to them again with no improvement or alteration in their argument. *Ogden,* 682 P.2d 802, 807 (Or. Ct. App. 1984), *aff'd in part, rev'd in part on other grounds*, 699 P.2d 189 (1985); *Grove City Veterinary Serv., LLC*, No. 3:13-cv-2276-AC, 2016 WL 1573830 (D. Or. Apr. 19, 2016); *Person*, No. 3:13-CV-00283-JE, 2013 WL 3353773 (D. Or. June 28, 2013). *Ogden* actually offers support for Ivie's case because it extended Oregon protections to a Washington resident who experienced discrimination in Oregon but did not include any specific

limiting language that requires that the discriminatory act itself *must* occur within Oregon for its laws to apply. In other words, the court held that if the effects of the employer's discrimination were experienced in Oregon, this is sufficient. As stated previously, it is undisputed that Ivie performed at least some work in Oregon, which is the only threshold needed under both *Ogden* and the Oregon whistleblowing statute. Additionally, this court dismissed plaintiff's claims in *Person* because there were no allegations that the plaintiff worked in, lived in, or was discriminated against, in the state of Oregon. *Person* at *4. Further, this court clarified that Oregon statutes would apply to individuals residing "and/or" working in the State of Oregon. *Id.* Part of Ivie's territory was in Oregon and thus she worked in Oregon for part of her employment, making Oregon law applicable. *Grove City,* simply states that the definition of employee is broad, and *if* the discrimination took place in the state, then the plaintiff would certainly would be protected. It makes no holding to exclude other potential situations. *Grove City Veterinary Serv., LLC v. Charter Pracs. Int'l LLC*, No. 3:13-CV-02276-AC, 2014 WL 3371918, at *7 (D. Or. July 9, 2014),

**3. AstraZeneca's arguments on the Dormant Commerce Clause and the Fourteenth Amendment's Due Process Clause are meritless.**

AstraZeneca cites to *Phillips Petroleum Co. v. Shutts*, to suggest that a state must have "significant contacts" to the transaction or event at issue such that application of that state's law is not "arbitrary nor fundamentally unfair." 472 U.S. 797, 818 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). AstraZeneca fails to quote the entire relevant portion: "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* Ivie has shown

from the depth of contacts and effects discussed above that the application of Oregon law "is neither arbitrary nor fundamentally unfair."

Similarly, AstraZeneca's reliance on *Sullivan v. Oracle Corp.* is misguided because while the court held that the decisions made in California and the fact that the overtime pay at issue was for work done in California were sufficient contacts "creating California interests" to "permit the application of California's Labor Code," it did not hold that these were the exclusive ways by which one can create contacts in a state. 662 F.3d 1265, 1271 (9th Cir. 2011). Ivie has presented evidence that establishes contacts with Oregon. She performed work in the State of Oregon, supervised individuals that performed work in Oregon, and complained of harm that could have befallen citizens of Oregon. Therefore, there are sufficient contacts such that Oregon law can apply to her claims under the Due Process Clause.

AstraZeneca's argument on the Dormant Commerce Clause is likewise inapplicable. As the Ninth Circuit stated in *Ward v. United Airlines, Inc.*, which AstraZeneca cites to, "non-discriminatory laws that have only incidental effects on interstate commerce will generally be upheld 'unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Ward*, 686 F.3d 1234, 1239 (9th Cir. 2021) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Importantly, *Ward* rejected the requirement that the employee needed to live in the state and also rejected any requirement that the majority of work be performed in the state. *Id.* at 1241.

**4. AstraZeneca has not shown a meaningful conflict of laws, and thus there is no conflict to be resolved.**

A difference in whether two states offer a particular cause of action does not automatically trigger a conflicts of laws analysis. In *Erwin v. Thomas*, the Supreme Court of Oregon held that there was no need to engage in a conflict of laws analysis simply because

Oregon law afforded the spouse of a tortiously injured person a cause of action for loss of consortium whereas Washington law did not. 264 Or. 454 (1973) (*en banc*). The defendants were Oregon residents and the plaintiffs were Washington residents. The Supreme Court first asked whether either state had a strong interest in the outcome and held that neither did:

> Let us examine the interests involved in the present case. Washington has decided that the rights of a married woman whose husband is injured are not sufficiently important to cause the negligent defendant who is responsible for the injury to pay the wife for her loss. It has weighed the matter in favor of protection of defendants. No Washington defendant is going to have to respond for damages in the present case, since the defendant is an Oregonian. Washington has little concern whether other states require non-Washingtonians to respond to such claims. Washington policy cannot be offended if the court of another state affords rights to a Washington woman which Washington does not afford, so long as a Washington defendant is not required to respond. The state of Washington appears to have no material or urgent policy or interest which would be offended by applying Oregon law.
> *Id.* at 458-59.

Similarly, here, AstraZeneca is a Delaware corporation[4] and no Utah defendant will have to pay damages in this case.

The court then held that there was no substantial Oregon interest—which Ivie has already established—but went on to elaborate that, "Even if Oregon were so concerned, it would offend no substantial Washington interest." *Id.* at 496. Oregon's strong interests here do not offend any substantial Utah interest. This led the court to conclude that "neither state has a vital interest in the outcome of this litigation and there can be no conceivable material conflict of policies or interests if an Oregon court does what comes naturally and applies Oregon law." *Id.* at 459-60. Effectively, *Erwin* crafted a rule of thumb that fits this case like a glove:

> Where, in the particular factual context, the interests and policies of one state are involved and those of the other are not (or, if they are, they are involved in only a minor way), reason would seem to dictate that the law of the state whose policies and interests are vitally involved should apply; or, if those of neither state are vitally

[4] Defendant's Answer and Affirmative Defenses to First Amended Complaint. Dkt. 36, ¶ 6.

> involved, that the law of the forum should apply. It may well be that determining what interests or policies are behind the law of a particular state is far from an exact science and is something about which there can be legitimate disagreement; but, on the other hand, it is the kind of an exercise, for better or for worse, which courts do every day and, therefore, feel secure in doing. If such a claimed conflict can be so disposed of, whether it is called false or not, the disposition certainly seems preferable to wandering off into the jungle with a compass which everyone but its maker says is defective.
>
> *Id.* at 458.

Therefore, there is no conflict of laws issues that challenges the application of Oregon law here. Either Utah does not have a strong enough state interest to challenge the application of Oregon law—which does have a strong state interest—or, neither state has a strong interest, in which case the law of the forum (Oregon here) should apply. AstraZeneca's reference to *Shah v. Meier Enterprises, Inc.* does not challenge this conclusion, as there, the plaintiff brought claims of whistleblower retaliation under Oregon *and* Washington law, which led the court to conduct a conflicts of laws analysis. No. 3:17-CV-00226-JE, 2018 WL 4374166, (D. Or. Sept. 13, 2018), *aff'd*, 855 F. App'x 384 (9th Cir. 2021). Other than claims under Oregon law, Ivie only brought claims under federal law, and no other state's laws were ever in question. Nonetheless, all the discussion on the choice of law during the Ninth Circuit's appellate review in *Shah* involved the use of the forum state's (Oregon's) laws for the claims at issue. *Id.* at 385.AstraZeneca's attempt to argue a conflict of laws issue should be dismissed as no issue exists.

## III. No new trial is warranted because AstraZeneca fails to argue that any of the strict situations that warrant a new trial are present here and fails to show that an award of non-economic damages is excessive.

### A. AstraZeneca fails to argue that any of the strict situations that warrant a new trial are present here.

AstraZeneca bases its entire argument for its Rule 59 motion on the assertion that the evidence is insufficient to support any award of damages because the jury verdict shows that

AstraZeneca would have terminated Ivie even in the absence of retaliation.[5] While this opposition explains why this line of reasoning is meritless further below, as a preliminary matter, Rule 59 is not concerned with the sufficiency of evidence, but only with much stricter standards that are not met here. Professors Wright and Miller explain:

> Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion.12 However, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.13 There are four basic grounds upon which a Rule 59(e) motion may be granted.14 First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based.15 Of course, the corollary principle applies and the movant's failure to show any manifest error may result in the motion's denial.16 Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence.17 Third, the motion will be granted if necessary to prevent manifest injustice.18 Serious misconduct of counsel may justify relief under this theory.19 Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.20
>
> The Rule 59(e) motion may not be used to relitigate old matters,21 or to raise arguments22 or present evidence23 that could have been raised prior to the entry of judgment. …

Grounds for Amendment or Alteration of Judgment, 11 FED. PRAC. & PROC. CIV. § 2810.1 (3d ed.) (2021) (footnotes omitted). Professor Gensler agrees:

> **Grounds justifying relief under Rule 59(e).** As noted above, Rule 59(e) "gives a district court the chance to rectify its own mistakes in the period immediately following its decision."118 While that language might be read to suggest a broad role for the rule, the view prevailing in the circuits is that motions to alter or amend the judgment are generally appropriate only in four situations: (1) to correct a manifest error of fact or law; (2) to incorporate newly discovered and previously unavailable evidence; (3) to prevent manifest injustice; and (4) to address an intervening change in controlling law.119

---

[5] Ivie understands that AstraZeneca is arguing that the evidence is insufficient to award damages and that the damages awarded were excessive under Rule 59. To the extent that AstraZeneca is asserting such an argument in its Rule 50(b) motion, Ivie maintains that AstraZeneca has waived its right to raise this argument because it did not properly preserve this issue in its Rule 50(a) motion.

> **Not a second chance opportunity**. The key to understanding Rule 59(e) is to recognize that it does not exist to give the losing party a second chance at persuading the court to rule in its favor. Absent a claim of manifest error (see infra),120 the court will not revisit the arguments it has already rejected.121 Nor may parties use Rule 59(e) to raise arguments or theories that they could have raised prior to judgment but did not.122 Motions that simply "rehash" the losing party's failed arguments or that attempt to rescue failed positions by introducing new arguments are routinely and summarily rejected as being outside the proper scope of the limited relief available under Rule 59(e).
>
> Rule 59. New Trial; Altering or Amending a Judgment, 2 Gensler, FED. RULES CIV. PROC., RULES AND COMMENTARY (footnotes omitted).

AstraZeneca's motion for a new trial fails to argue that any of the aforementioned rare situations occurred in this case, much less that they drove the jury's verdict. It does not argue that any supposed error on this court's part is a "manifest error of fact or law," that any new evidence was discovered, that the judgment should be altered or amended to "prevent manifest injustice," that there was serious misconduct of counsel, or that there was any intervening change in controlling law. Significantly, AstraZeneca cited no case that approved the grant of a new trial without any of these elements.

Indeed, AstraZeneca largely ignored at trial the question of the appropriate amount of damages to be awarded in the event that Ivie prevailed on any of her claims. It did not bother to cross-examine Ivie about any damages question except putting up Christmas lights, it did not bother to cross-examine many of the damages witnesses, it did not bother to call rebuttal witnesses on the amount of non-economic damages, it did not bother to object to Ivie's closing argument on evaluating non-economic damages, it did not bother to respond in its own closing argument to any other facts or arguments concerning the amount of non-economic damages, other than undignified scorn on some of Ivie's emotional distress testimony, and it did not bother to offer the jury any guidance of its own on the amount of non-economic damages the jury

should award. AstraZeneca was an almost complete no-show on the issue throughout the entire litigation.

When a defendant does not care enough about an issue to litigate it seriously at trial, it is difficult to see how there was "manifest injustice" when it simply does not like the result of its strategy. AstraZeneca simply wants a do-over in which it can try some different approaches to see if they will work any better than the ones it tried at trial. That is not enough.

One approach AstraZeneca now attempts is arguing, without any supporting citation, that although the language of the Oregon Whistleblower Law does not require a "but for" standard to prove causation, it does so to prove damages, and that since the jury did not find for Ivie on the False Claims Act Claim because it demanded a "but for" causation standard, Ivie cannot prove damages. Dkt 152, Def. Renewed Mot. J. Matter Law at 13. AstraZeneca cites to *Babb v. Wilkie* to support its assertion, however, the relevant statute in *Babb* was the ADEA, which is not the statute that Ivie prevailed on in this case, and there is no language in the Oregon whistleblowing statute or anywhere else that supports that the holding from *Babb* should be applied to Oregon state law. 140 S. Ct. 1168, 1177 (2020).

Another approach AstraZeneca attempts is that the fact that the jury found Ivie would've been discharged regardless of her whistleblowing, which means that there was no basis by which to award her damages. Dkt 152, Def. Renewed Mot. J. Matter Law at 15. However, this finding is irrelevant. The relevant facts were that Ivie was terminated, the jury found she was retaliated against, and she suffered damages as a result of AstraZeneca's adverse actions. This is all that was required for the jury to award Ivie damages. Further, the emotional damages were not only awarded for injuries Ivie suffered after the termination. Since the jury was instructed to compensate Ivie for any injury she suffered as a result of any unlawful activity on the part of

AstraZeneca, it was valid for the jury to find she incurred damages even while she was employed, since the termination was not the only adverse action she experienced.[6] The witness testimony supported that her termination was not the leading cause of Ivie's emotional distress, as explained below, majority of Ivie's emotional distress developed while she was still employed. Rather, they identified that her anxiety, depression, loss of energy, and migraines developed or worsened before her termination, as a result of the complaints she made and adverse actions she experienced while she was still employed.

**B. AstraZeneca fails to show that the award of non-economic damages is excessive because the standard to overturn damages Oregon and federal law is high – and Ivie set forth significant evidence to support emotional distress and reputational harm.**

**1. AstraZeneca ignored the applicable Oregon standards for evaluating a damages verdict.**

In evaluating damages awards on State-law claims, Federal courts follow the substantive State law in evaluating the verdicts, where this can be done without contravening the Seventh Amendment's right to trial by jury and barring the re-examination of facts found by juries other than by common law. *Gasperini v. Ctr. for Humans., Inc.,* 518 U.S. 415, 418-19 (1996).

The applicable Oregon standards are highly favorable to Ivie. First, the Oregon Supreme Court has held that the Legislature placed claims of employment discrimination in a favored position compared to claims for bodily injury, because the cap on non-economic damages applicable to bodily-injury claims does not apply to employment discrimination claims. *Zweizig v. Rote*, 368 Or. 79, 81, 486 P.3d 763, 764 (2021) (en banc) (answering a question certified by the Ninth Circuit. The court did not comment on the size of the $1 million verdict for non-economic damages, and neither did the Ninth Circuit when it remanded the case to the District

[6] Ivie's leadership positions were taken away and her performance ratings were downgraded.

Court "for further proceedings consistent with the Oregon Supreme Court's decision." *Zweizig v. Rote*, 854 F. App'x 806 (9th Cir. 2021).

Second, the Supreme Court of Oregon has held that a statutory damages cap violates due process unless it is indexed to inflation or otherwise increases to take account of inflation. *Busch v. McInnis Waste Sys., Inc.,* 366 Or. 628, 652 &n.13, 468 P.3d 419, 433 & n.13 (2020).

Third, the Oregon standards for grant of a new trial are parallel to, but narrower than, the standards of Rule 59, Fed.R.Civ.P. Oregon Rule of Civil Procedure 64(B) sets out an exhaustive list of the standards for granting a new trial in cases involving a jury verdict, where the court has not granted a new trial on its own initiative within 30 days after the entry of judgment. None of these standards assist Defendant in arguing that the damages awarded here were excessive.

Finally, under Oregon law, the defendant waives its right to seek a new trial based on Oregon Rule 65(B)(5) ("Insufficiency of the evidence to justify the verdict…") unless it objects to the verdict before the jury is discharged.

**2. AstraZeneca has not adequately demonstrated that the award of damages violated federal standards.**

The Ninth Circuit has made it clear that the burden for the moving party to demonstrate that a jury's award of damages must be decreased or warrants a new trial is high.

First, there is a presumption that the jury's award is valid and entitled to great deference and should only be disturbed if the moving party has adequately demonstrated that the amount is "grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork." *In re First All. Mortg. Co.,* 471 F.3d 977, 1001 (9th Cir. 2006); *Monterey, Ltd. V. City of Monterey,* 95 F.3d 1422, 1435 (9th Cir. 1996); *Goddard v. DHL Exp. (USA), Inc.,* 357 Fed. Appx. 80, 81 (9th Cir. 2009) ("The damages award must be affirmed unless it is 'shocking to the conscience.'"); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760

(9th Cir. 1985) ("We will not disturb an award of damages [] unless it is clearly unsupported by the evidence…").

Second, "awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." *Velez v. Roche*, 335 F. Supp. 2d 1022, 1037 (N.D. Cal. 2004); W. Gas Const. Co. v. Danner, 97 F. 882, 890 (9th Cir. 1899) ("the amount of the verdict must be determined by the jury in the exercise of their sound and deliberate judgment…"). Since such damages "cannot be measured 'with any degree of mathematical certainty,'" there is no requirement that they be demonstrated or proven by "objective" evidence. *W. Gas Const*. at 890; *Passantino v. Johsnon & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 513 (9th Cir. 2000).

Third, the plaintiff's testimony and corroborating testimony of other witnesses are enough and there is no requirement or expectation to present discrete evidence of economic loss, visits to medical professionals, or extreme and lengthy symptoms to support claims of mental anguish. *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) ("[C]ompensatory damages may be… established by testimony or inferred from the circumstances, whether or not plaintiff[] submit[s] evidence of economic loss or mental or physical symptoms."); *Zhang v. American Gem Seafoods, Inc*., 339 F.3d 1020, 1040 ("the holding of [another case] that 'evidence of the emotional distress must be demonstrable, genuine, and adequately explained' is not the law of this Circuit.").

In *Velez*, evidence of plaintiff's harm came primarily from her testimony and that of her husband's, who testified that his wife repeatedly cried, used to be a high energy person but later became depressed, was unable to sleep, lost interest in doing the regular activities and hobbies she used to enjoy doing with her friends and family, and did not seek the help of any medical

professional. *Velez* at 1037 (noting that "the jury could have reasonably awarded [the plaintiff] less than [the amount awarded] because she did not formally consult a doctor or seek counsel for her depression, did not take any medication for her mental condition, and continued to work at [the company]… however, the fact that the jury could have awarded less" does not mean it should have done so) (emphasis added). Additionally, the court held it was reasonable for the jury to find that the plaintiff's perception of the harm to her reputation contributed to her emotional distress, which supported upholding the award of non-economic damages. *Id.* (*citing Passantino* at 513 and *Zhang* at 1040-41 which supported that reputational damage can validly lead to anxiety and humiliation that the jury can decide defendant should compensate).

Fourth, Ivie's testimony alone can be sufficient. *Zhang v. American Gem Seafoods, Inc.,* 339 F.3d 1020, 1040 (upholding emotional distress award based solely on a plaintiff's testimony that his termination killed his dream of working in America and impacted his dignity and reputation); *Newton v. Equilon Enterprises, LLC*, 411 F. Supp. 3d 856, 877 (N.D. Cal. 2019) ("emotional distress damages… may be supported by observation of others, appropriate inferences from the circumstances, or solely by plaintiff's own testimony.").

For example, in *Trulsson v. Cty. Of San Joaquin Dist. Attorney's Off*., the defendant argued that the jury's award of $1.5 million for emotional distress was excessive because plaintiff didn't demonstrate any evidence "beyond disappointment that her career ended before she anticipated it would end." 49 F. Supp. 3d 685, 697-98 (E.D. Cal. 2014). The court upheld the award solely based on plaintiff's testimony, in which she expressed how she was well-respected by her subordinates in her job, how she cried in her office after being told she was being eliminated, that she had problems with her sleep, that she felt humiliated and embarrassed, and that her friends were surprised she was laid off. *Id.* at 698-99. The court had nothing to say about

any shortcomings in plaintiff's evidence and found that her testimony itself was sufficient for the jury to find that she "suffered substantial emotional damages based on defendant's retaliatory acts against her." *Id.* at 699.

Finally, non-economic damages do not only encompass emotional pain and suffering but also reputational harm and personal humiliation. *Tortu v. Las Vegas Metro. Police Dep't.,* 556 F.3d 1075, 1086 (9th Cir. 2009) (*citing Memphis Cmty. Sch. Dist. V. Stachura,* 477 U.S. 299, 307 (1986)).

**3. Ivie presented substantial evidence to support the award of non-economic damages.**

The jury instructions made clear that the jury should include within its award of non-economic damages, in the form of emotional pain and suffering, humiliation that the plaintiff suffered or "with reasonable probability [would] experience in the future," inconvenience and interference with the plaintiff's normal and usual activities, and injury to plaintiff's reputation. Tr. Vol. 6, , 123:19, 124:111 (June 21, 2021).[7]

Throughout the trial, Ivie presented significant evidence that all support she suffered economic damages, mental anguish, and reputational harm. AstraZeneca focuses its damages argument on Ivie's emotional distress and fails to acknowledge the damage to her reputation. However, the jury verdict form specifically instructed the jury that non-economic damages include "emotional distress, suffering, or reputational harm." Dkt 146. Ivie's evidence consisted of her own testimony, which was corroborated by the testimony of four other witnesses, including a medical professional, medical records, and documentation and testimony from a

[7] Citing to rough draft transcript.

vocational rehabilitation expert who explained how Ivie's whistleblowing was damaging to her ability to seek similar employment in the future.

First, Ivie repeatedly testified that she felt "devastated," "anxious," and "depressed." Tr. Vol. 4, Ivie Testimony, 46:2-15, 54:4-21, 90:20-91:8 (June 17, 2021).[8] After Stephanie DiNunzio told her she may receive a two on an upcoming performance evaluation, she said she went into her bedroom and "started to cry." Tr. Vol. 4, Ivie Testimony, 54:4-21 (June 17, 2021).[9] Unsettled by the instruction to engage in off-label marketing, Ivie testified she had severe trouble thinking straight and sleeping after making her ethics hotline complaint, making her feel like she had a "knot in the stomach." Tr. Vol. 4, Ivie Testimony, 57:1-7 (June 17, 2021).[10] Sharing how Christmas time is a special occasion for her and her family, Ivie expressed how the retaliation she experienced left her unable to celebrate as usual, instead feeling depressed, anxious, and tired throughout the holiday, including during the subsequent vacation she had planned for her family. Tr. Vol. 4, Ivie Testimony, 57:17 - 59:9 (June 17, 2021).[11] Although AstraZeneca's counsel attempted to make a mockery out of Ivie's emotions by asking why her kids weren't old enough to decorate the Christmas tree, the jury clearly found Ivie's testimony compelling. Tr. Vol. 4, Ivie Testimony, 163:14 (June 17, 2021).[12] Finally, Ivie expressed how her last couple years at AstraZeneca contributed to increased and more painful migraines which ultimately led to taking FMLA leave and a visit to the emergency room in early 2018, which had never happened before. Tr. Vol. 4, Ivie Testimony, 76:7-15; 90:20-91:8, 203:8-20 (June 17, 2021).[13]

[8] Citing to rough draft transcript.
[9] Citing to rough draft transcript.
[10] Citing to rough draft transcript.
[11] Citing to rough draft transcript.
[12] Citing to rough draft transcript.
[13] Citing to rough draft transcript.

Second, Ivie's testimony was corroborated by four other witnesses. First, Dr. Cheryl Johnson testified that Ivie visited her office for migraines, insomnia, anxiety, depression, and dysphoria, which she defined as "uneasiness" and "unhappiness." Tr. Vol. 4, Johnson Testimony, 181:11182:22;[14] *see also* PX-129. While AstraZeneca argued that Ivie's evidence about her migraines was irrelevant because she experienced them before she was terminated, this argument holds no weight. Both parties stipulated, and Dr. Johnson testified, that although Ivie's migraines began in 2012, they began to increase in intensity in February of 2019, leading her to seek increased medical attention from Dr. Byrne. *See* Jury Instructions Dkt. 143 at 7; Tr. Vol. 4, Johnson Testimony, 182:24 - 183:10 (June 17, 2021).[15]

In addition to Dr. Johnson, Judy Gibbs and Dawn Benson both testified that they used to know Ivie as being a highly energetic, excited and happy friend who enjoyed the reunion trips they would have. However, during one of their most recent reunions, which occurred after Ivie began raising concerns about off-label marketing, they found that she struggled with more migraines, was quieter and more distracted than normal, and had unusually low levels of energy. Tr. Vol. 4, Gibbs Testimony, 207:24-208:13 (June 17, 2021);[16] Tr. Vol. 4, Benson Testimony, 212:11-213:15 (June 17, 2021).[17] They then shared how her participation in their group chats also changed as Ivie became more distanced with only "surfacey" engagement. Tr. Vol. 4, Gibbs Testimony, 208:14-19 (June 17, 2021);[18] Tr. Vol. 4, Benson Testimony, 213:17 214:5 (June 17, 2021).[19] Further, Jenny Capell, whose son plays basketball with Ivie's, testified that Ivie

[14] Citing to rough draft transcript.
[15] Citing to rough draft transcript.
[16] Citing to rough draft transcript.
[17] Citing to rough draft transcript.
[18] Citing to rough draft transcript.
[19] Citing to rough draft transcript.

originally used to regularly attend her son's basketball games and would be cheery and chatty throughout, however around late 2018 and 2019, Ivie stopped coming to as many games, wouldn't sit by Capell or engage in much conversation, and would get worked up which didn't happen before. Tr. Vol. 4, Capell Testimony, 188:4-17; 188:18- 190:10 (June 14, 2021).[20]

Third, Scott Sevart testified that Ivie's reputation was adversely impacted by her termination. Tr. Vol. 4, Sevart Testimony, 222:19-22 (June 17, 2021).[21] He explained that since whistle blowers "are seen by other employers as untrustworthy, [troublemakers], and not a good candidate," it will be unlikely that Ivie will be able to get another comparable job in the pharmaceutical industry, let alone one that puts her at the same professional level or offers comparable compensation. Tr. Vol. 4, Sevart Testimony, 223:1-3, 223:16- 224:21, 224:22- 225:3.[22][23]

**4. AstraZeneca routinely minimizes the effects and harm caused by its unlawful actions and this Court should not indulge it.**

In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72-73 (2006), the Supreme Court delivered a stern rebuke to defendants seeking to minimize the effects of their actions. There, the question was not whether damages were excessive, but the far more serious question whether the anti-retaliation provisions of § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), even applied to the conduct in question. Its discussion required a real-world evaluation of the harm from the perspective of the plaintiff, not from the perspective of the defendant corporation:

[20] Citing to rough draft transcript.
[21] Citing to rough draft transcript.
[22] ("Ms. Ivie will not recover to the level of salary she enjoyed at AstraZeneca… [because] whistle blowers suffer a lifetime's loss of earnings.").
[23] Citing to rough draft transcript.

> Neither do we find convincing any claim of insufficient evidence. White did receive backpay. But White and her family had to live for 37 days without income. They did not know during that time whether or when White could return to work. Many reasonable employees would find a month without a paycheck to be a serious hardship. And White described to the jury the physical and emotional hardship that 37 days of having "no income, no money" in fact caused. Brief for Respondent 4, n. 13 (" 'That was the worst Christmas I had out of my life. No income, no money, and that made all of us feel bad. ... I got very depressed' "). Indeed, she obtained medical treatment for her emotional distress. A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former. That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay. Cf. Mitchell, 361 U.S., at 292, 80 S.Ct. 332 ("[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions"). Thus, the jury's conclusion that the 37-day suspension without pay was materially adverse was a reasonable one.

The Ninth Circuit engaged in virtually identical reasoning in *Passantino v. Johnson & Johnson Consumer Prod., Inc.,* 212 F.3d 493, 513 (9th Cir. 2000):

> CPI also challenges the district court's decision upholding the jury's compensatory damage award. CPI claims that the evidence of emotional damage arising from lost promotional opportunities can only be attributed to Passantino's gender discrimination claims. This argument is misguided. The jury could have found that Passantino suffered substantial emotional damage because of CPI's retaliation against her. Her "promotability" status within the company plummeted after she complained. She testified, and her husband and sister corroborated, that she experienced substantial anxiety as a result of her sense that she could no longer advance within the company. The jury could have attributed this anxiety, as well as her rashes, stomach problems, and other symptoms, to CPI's retaliatory action. While the jury could have believed, as CPI argues, that these problems were caused by her unwarranted perception that she suffered discrimination (or even some pre-existing condition), we cannot reverse its findings merely because our reading of the evidence might have been different, especially where the district court concluded that the "evidence at trial was sufficient to support the verdict [ ] on emotional distress damages." Here, there is evidence which, if believed, would support the verdict. See Herring, 914 P.2d at 78.

Plaintiff's evidence is superior to that in White and in Passantino, but it is abundantly clear from Defendant's motion that it is making the same kinds of arguments the Supreme Court rejected in White and the Ninth Circuit rejected in Passantino.

### 5. Ivie's counsel provided sufficient guidance to the jury on the appropriate amount of damages to award.

In addition to the guidance provided by the Court's instructions - to which AstraZeneca took no exception – Ivie's counsel's closing argument presented substantial additional guidance. One of the touchstones for review of damages awards is whether there is any evidence that the jury's decision was the result of "passion or prejudice." *Szucs v. L & D Scaffolding, Inc.,* 78 F.3d 594 (9th Cir. 1996); *Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105, 1115 (9th Cir. 2012). The Court of Appeals has held that when counsel provide any guide or explanation into the amount of damages requested, this weighs against a finding of excessiveness, especially when the jury returns an award that was less than the amount asked for. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 819 (9th Cir. 2001) (finding that plaintiff's counsel's statements such as the jury "[should] not get carried away," and should "[b]e moderate" limits or tempers the potential for the jury's decision to be swayed by passion or prejudice.).

Ivie's counsel provided specific numerical amounts of the back pay and non-economic damages Ivie requested from the jury, and explained what calculations or evidence were considered into determining these amounts. Additionally, although plaintiff's counsel requested $2.1 million dollars in non-economic damages, the jury returned an award of $1.8 million. This strongly suggests that the jury properly considered the evidence and testimony and came up with a number through its own sound judgment, rather than being influenced by emotion or guesswork.

### 6. AstraZeneca's comparison of verdicts is not persuasive.

There is little point in engaging at any length with distinguishing AstraZeneca's cherry-picked examples of low awards in ancient cases under other laws and facts, not subject to Oregon's standards. Further, none of them reflect the valuation of a June 2021 jury, in a time of

great economic uncertainty, and hence none legitimately place enough weight on the injury of probably being unemployed for life in the only field of work in which Ivie has training and experience, going from being a respected member of the community that mattered most to her to a pariah in their eyes. Defendant offers only three verdicts for comparison. Dkt 152, Def. Renewed Mot. J. Matter Law at 16. None are persuasive.

In *Longfellow v. Jackson County,* No. CV-06-3043-PA, 2007 WL 682455, at *2 (D. Or. Feb. 28, 2007), the court found that the jury's award was excessive because the plaintiff didn't seek medical help, wasn't hospitalized, and didn't require medication. However, not only did Ivie seek medical help, did go to the hospital for her injuries, and did require medication, but Ninth Circuit precedent emphasizes that visiting a doctor or seeking medical help is not a prerequisite for damages.

In *Paul v. Asbury Automotive Grp*., LLC, No. CIV. 06-1603-KI, 2009 WL 188592 (D. Or. Jan. 23, 2009), the court found that plaintiffs' testimony of being stressed, depressed, and experiencing strained interpersonal relationships was insufficient. Again, the courts have upheld awards with similar if not less evidence, including only on the basis of plaintiff's testimony alone. *See Velez* at 1037-41; *Trulsson* at 697-99. Ivie's testimony was corroborated by three other witnesses, as well as testimony from a medical professional.

In *Johnson v. Albertsons LLC*, No. 2:18-1678-RAJ, 2020 WL 3604107, at *5 (W.D. Wash. July 2, 2020), the court reduced the jury's award because it found the evidence to be "garden variety." Oregon law, not Washington law, governs the review of this verdict and does not require evidence taking the case out of the range of what some defendants or district courts might consider typical. In any event Ivie's case is far from "garden variety," no matter how that phrase is construed.

In none of AstraZeneca's comparator cases was there similar evidence like the evidence Ivie presented here. That evidence did not disappear from the record simply because AstraZeneca chose to ignore most of it at trial. Consequently, AstraZeneca has not articulated any meritorious basis by which the jury's award of damages should be rescinded or decreased. Ivie presented substantive and diverse evidence that all worked together to convince the jury she suffered mental anguish and reputational harm that warranted compensation. The propriety of an award has to differ based on the facts of different cases. In *Passantino*, where the evidence of non-economic injury involved "anxiety, as well as her rashes, stomach problems, and other symptoms," 212 F.3d at 513, the Ninth Circuit upheld a jury award of "a large verdict in Passantino's favor": $100,000 in back pay, $2 million in front pay, $1 million in compensatory emotional distress damages, and up to $300,000 in punitive damages. *Passantino*, 212 F.3d at 504. The case has 1997 and 1998 docket numbers, so to be conservative we can assume the jury verdict was entered in mid-1998, or June 1998. That was 23 years ago. Using the same inflation calculator the Supreme Court or Oregon used in *Busch v. McInnis Waste Sys., Inc.*, 366 Or. 628, 652 &n.13, 468 P.3d 419, 433 & n.13 (2020), the award of $1 million in non-economic damages in *Passantino* in June 1998 is the equivalent of an award of $1,666,846.63 in June 2021. That is very close to the jury's award here, where the evidence of non-economic injury was far more extensive than in *Passantino*, and cannot reasonably be called excessive.

The alternative effectively suggested by Defendant's cherry-picking of cases would rewrite the Oregon statute by imposing a ceiling on relief, where the maximum award is set by the lowest amount a court would allow in some other case having nothing to do with the case at bar. That cannot be the law. And if it were, there would be no principled reason not to do the

reverse, and set a *minimum* recovery consisting of the most that any court would allow in some other case having nothing to do with the case at bar. This equally cannot be the law.

**IV. Conclusion.**

AstraZeneca has either waived the arguments it asserts in its present motion or the arguments are without merit. For these and the aforementioned reasons, Ivie respectfully requests this court to deny AstraZeneca's motion.

Dated: September 3, 2021

Respectfully submitted,

*/s/ Anita M. Chambers*

R. Scott Oswald, *admitted pro hac vice*
Anita M. Chambers, *admitted pro hac vice*
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
achambers@employmentlawgroup.com
soswald@employmentlawgroup.com

Ashley A. Marton, OSB No. 171584
CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Ste. 200
Portland, Oregon 97221
Fax: (503) 293-5770
Email: ashley@employmentlaw-nw.com

*Counsel for Plaintiff Suzanne Ivie*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 3, 2021, a true and correct copy of the foregoing was served via electronic service:

Anne M. Talcott, OSB # 965325
Schwabe, Williamson & Wyatt, P.C.
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204-3719
(503) 796-2911
(503) 796-2900 (facsimile)
atalcott@schwabe.com

John C. Dodds Admitted Pro Hac Vice
Ryan McCarthy, Admitted Pro Hac Vice
Melinda R. Riechert, Admitted Pro Hac Vice
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-4942
(215) 963-5001 (facsimile)
john.dodds@morganlewis.com
ryan.mccarthy@morganlewis.com
melinda.riechert@morganlewis.com

*Counsel for AstraZeneca AstraZeneca Pharmaceuticals, LP*

*/s/ Anita M. Chambers*
Anita M. Chambers