1                IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF OREGON

3   SUZANNE IVIE,                    )
                                     )
4            Plaintiff,              )      3:19-cv-01657-JR
                                     )
5   vs.                             )      June 21, 2021
                                     )
6   ASTRAZENECA PHARMACEUTICALS, LP,  )      Portland, Oregon
                                     )
7            Defendant.              )

8

9

10                    (Jury Trial - Volume 6)

11             BEFORE THE HONORABLE JOLIE A. RUSSO

12           UNITED STATES DISTRICT COURT MAGISTRATE

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                         APPEARANCES

 2
      FOR THE PLAINTIFF:       Anita Mazumdar Chambers
 3                             Robert Scott Oswald
                               The Employment Law Group
 4                             1717 K Street, NW, Suite 1110
                               Washington, DC  20006
 5

 6    FOR THE DEFENDANT:       Melinda S. Riechert
                               Morgan, Lewis & Bockius, LLP
 7                             1400 Page Mill Road
                               Palo Alto, CA  94304
 8

 9                             Ryan P. McCarthy
                               Morgan, Lewis & Bockius, LLP
10                             1701 Market Street
                               Philadelphia, PA  19103
11
                               Anne M. Talcott
12                             Schwabe, Williamson & Wyatt
                               1211 SW Fifth Avenue, Suite 1900
13                             Portland, OR  97204

14

15

16

17

18

19

20

21    COURT REPORTER:         Dennis W. Apodaca, RDR, FCRR, CRR
                               United States District Courthouse
22                             1000 SW Third Avenue, Room 301
                               Portland, OR  97204
23                             (503) 326-8182

24

25
```

1

INDEX

2   Ruling on motions/jury instruction conference        983

3   Closing statement by Mr. Oswald                      1014

4   Closing statement by Ms. Riechert                    1037

5   Rebuttal argument by Mr. Oswald                      1079

6   Instructions                                         1091

7   Motions                                              1109

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (June 21, 2021)

2             P R O C E E D I N G S

3        (Open court; jury not present:)

4        THE COURT:  Good morning, Counsel.  It is

5   eight o'clock.  We are going to get going.  We have an hour

6   before the jury arrives, so I want to try to accomplish all of

7   our business.

8        Thank you for the briefing and the oral argument on

9   both motions.  I will give you my rulings on both of those

10  motions.  We will then move directly to jury instructions; go

11  through the instructions.  You are welcome to give me your

12  comments, or a very brief comment on a different proposed

13  instruction, and you may then take your objections on the

14  record.  Then we are going to move on to the verdict form; same

15  thing.  So my goal is to be finished and perhaps even give all

16  of us a five-minute break before I bring the jury in.

17       Turning first to plaintiff's oral motion for judgment

18  as a matter of law, pursuant to Federal Rule of Civil Procedure

19  50(a), I find that a reasonable jury would have a legally

20  sufficient basis to find there was a legitimate business reason

21  to terminate the plaintiff.  For that reason, plaintiff's

22  motion is denied.

23       Turning next to defendant's motion for judgment as a

24  matter of law, those are documents 134 and plaintiff's

25  response, 136, regarding plaintiff's fifth, sixth, and seventh

1    claim, and the Oregon state law claim.

2        Turning first to plaintiff's argument of waiver, I

3    find that plaintiff mischaracterizes this as a personal

4    jurisdiction argument.  I find no legal basis to assert waiver.

5        Turning next to the defendant's argument, an

6    interesting argument, I was unable to find any controlling law

7    on whether the discriminatory act had to have occurred in

8    Oregon in order for plaintiff to take advantage of Oregon's

9    employment statute.  As long as plaintiff was an employee who

10   performed work in Oregon, she is covered.  So in other words,

11   as long as defendant is an employer under Oregon law, and

12   plaintiff is a employee who worked at least some of her time in

13   Oregon, the Oregon employment laws applied even if the

14   discriminatory conduct occurred outside of Oregon.

15       I could not find any case law that held Oregon law

16   would not apply in plaintiff's situation.  I don't find the

17   District of Oregon cases sufficiently persuasive to justify

18   granting relief on a Rule 50 motion.  I did find a recent law

19   review article that dealt with presumptions against

20   extraterritoriality of state law, which unsurprisingly found

21   the status of the presumption in Oregon to be unclear.  That's

22   further evidence, in my mind, that there does not exist an

23   Oregon state court opinion that is on point on this topic.

24   Therefore, defendant's Rule 50(a) motion is denied.

25       Turning now to the jury instructions, what I would

1  like to do is just literally go through them one page at a

2  time, and I will ask both sides if there are any objections.

3  If there are no objections, it is in as drafted.  If there is

4  an objection, I'll hear briefly about why you think it should

5  be different, and we will go from there.

6          The other thing I will say, every opportunity I had

7  to list from the Ninth Circuit model instruction, I did.  If

8  there was a choice, I lifted from the Ninth Circuit model, just

9  FYI.

10          Duty of the jury, 1.4.  I am going to give you the

11  number of the Ninth Circuit model that I took it from.

12          Any objection?  If I hear nothing, I'm going to

13  assume no objection.

14          Page 3, burden of proof, 1.6.

15          Page 4, what is evidence, 1.9.

16          Page 5, what is not evidence, 1.10.

17          Direct and circumstantial, page 6, 1.12.

18          Page 7.  Are there stipulations of fact that you

19  would like me to read to the jury?  I wasn't sure

20          MR. OSWALD:  Yes, Your Honor.  There is one.

21          THE COURT:  Okay.

22          MR. OSWALD:  It is a joint stipulation.

23          THE COURT:  Okay.  Then that's something you can hand

24  to me?

25          MR. OSWALD:  Yes.  Do you want me to pass it up now?

1          THE COURT:  Pass it up now just so I don't forget.

2          MR. OSWALD:  May I approach, Your Honor?

3          THE COURT:  Yes, please.  Thank you, sir.

4          So I will read this stipulation.  And that is from

5   2.2.

6          Page 8, expert opinion, 2.13.

7          Page 9, I used both 2.14 and 2.15, charts and

8   summaries.

9          Page 10, evidence in electronic format, came from

10  2.16.  We will roll the entire JERS cart in the jury room.  It

11  has a nice, big projector.  The IT person, probably Pat, will

12  go in the jury room and show them how to operate it.

13          Page 12, corporations, 4.1.

14          Page 13, liability of corporations, 4.2.

15          Moving next to page 14, both claims, that came from

16  10.8.

17          Any objections?

18          MR. OSWALD:  Yes, Your Honor.  This is on the False

19  Claims Act.

20          THE COURT:  Yes.

21          MR. OSWALD:  Your Honor, I don't have any issue at

22  all with using the text from the statute.  It says, "Because

23  of," and certainly I don't have an issue there.  It is when we

24  delve into the use of "but for" that I have a concern, because

25  the formulation that you have identified here is in fact

1    incomplete.  The statute says "because of."  The Supreme Court

2    says that that means "but for."  But the Supreme Court and the

3    Ninth Circuit, in the wake of the Bostock case and Thomas case,

4    have said what that means.

5         So here is what I propose:  What I proposed is that

6    we change the current formulation to "the plaintiff's

7    complaints were one 'but for' cause of defendant's decision."

8         THE COURT:  Where are you on the draft instruction?

9         MR. OSWALD:  So this is -- this would be in lieu of,

10   "A plaintiff is subjected to an adverse employment action

11   because she engaged in activity protected by the False Claims

12   Act," and then the following formulation:  "If the plaintiff's

13   complaints were one 'but for' cause of defendant's decision or

14   defendant's adverse actions."

15        THE COURT:  So your proposal is, "A plaintiff is

16   'subjected to an adverse employment action' because she engaged

17   in activity protected by the False Claims Act."

18        MR. OSWALD:  "Where the plaintiff's protected

19   activity were one 'but for' defendant's decision to fire her."

20        THE COURT:  Defendant.

21        MS. TALCOTT:  Your Honor, we object to an instruction

22   outside of what the model Ninth Circuit instructions provide.

23   Plaintiff's reliance on Bostock is misplaced.  It is not a

24   False Claims Act case.

25        The Sixth Circuit declined to apply Bostock to claims

1  outside of Title VII.  So we just think this language isn't

2  applicable, and we should stick to the model jury instruction.

3          THE COURT:  Okay.

4          MR. OSWALD:  Your Honor, Thomas is from the

5  Ninth Circuit.  It was issued on April 21st.  Although it was a

6  Mine Safety Act case, it uses the same formulation, "because

7  of."  The Ninth Circuit in Thomas stated specifically that this

8  is the correct formulation.  So I think that there is

9  controlling authority in the Ninth Circuit, in light of Thomas,

10  that compels the Court, if you are going to go to "but for" --

11  look, I don't have any problem with "because of."  It is in the

12  statute.  If you stray beyond the statute by using "but for," I

13  just want to make sure it is not misleading and that it is

14  consistent with Ninth Circuit case law.

15          MS. TALCOTT:  Your Honor, as plaintiff stated, the

16  Thomas case is a Mining Act case.  That's a wholly separate

17  statute.  You can't take an interpretation from a very

18  different statute and apply it here.  What we need to do is

19  look at what the Ninth Circuit has said about the proper

20  standard is for jury instructions under the False Claims Act,

21  and that's the model jury instruction.

22          MR. OSWALD:  Your Honor, the other formulation is to

23  simply take out that paragraph in its entirety.  It is

24  surplusage.  We simply have the three elements, and then we go

25  right to, "Here, the parties agree."

1          MS. TALCOTT:  Your Honor, the jury needs to be

2    instructed as to what the causation standard is.  Again, the

3    model jury instruction for the False Claims Act provides that

4    standard.  Relying on or speculating as to what might be

5    applied from a different statute down the road isn't

6    appropriate here, when we have a model jury instruction right

7    on point.

8          THE COURT:  Okay.  I'm going to go with the

9    instruction, as written.

10          Plaintiff, you are entitled to take any objections at

11    the conclusion of this conference.

12          MR. OSWALD:  Understood, Your Honor.

13          THE COURT:  Page 15, the whistleblower, 58.01.

14          Any objection?

15          MR. OSWALD:  No, not for the plaintiff.

16          MS. TALCOTT:  No, Your Honor.

17          THE COURT:  ADEA.  That's 11.1.  Page 16.

18          Page 17, the --

19          MR. OSWALD:  I'm sorry.  Yes, I do have an objection

20    on page 16, Your Honor.

21          THE COURT:  Okay.

22          MR. OSWALD:  It is under sub-header No. 3.

23          THE COURT:  Okay.

24          MR. OSWALD:  Again, for the record, the formulation,

25    which is that the defendant would not have terminated plaintiff

1   but for her age is now misleading, in light of Bostock, which

2   specifically did reference Nassar, which was the Supreme

3   Court's ADEA decision.

4           The Ninth Circuit has gone on, in Thomas, to

5   specifically identify "because of" as having a particular

6   formulation; that simply saying "but for" is not enough; that

7   it is important to explain what that means to a jury.

8           And here is the reason why, Your Honor, and the

9   rationale is important:  Without this additional formulation,

10  the jury could conclude, as an example, that this is a

11  sole-cause case, or even a primary-cause case.  And it is

12  not -- not after Bostock and not after Thomas.

13          So that's why we have to give "but for" some context,

14  to make it clear to the jury that it is not a sole motivation.

15  It is not the primary motivation, in light of Bostock and

16  Thomas, but that it is one factor.  It is a "but for" cause.

17          To do otherwise is misleading to the jury, when we

18  don't have to be misleading.  We simply either can cut it off

19  and add "because of," as the statute says, or we can go forward

20  and state specifically what "but for" means.

21          I understand your point of view, which is, look, we

22  got Ninth Circuit jury instructions, but those jury

23  instructions were enacted for ADEA and that were enacted for

24  the anti-retaliation provision of the federal False Claims Act

25  were written before Bostock and before Thomas.  So they are

1    guides, for sure, but they need to reflect the current status

2    of the Ninth Circuit case law.

3            MS. TALCOTT:  Your Honor, the status of the

4    Ninth Circuit case law hasn't changed.  Again, plaintiff's

5    reliance on Bostock, it is inappropriate here.  In fact, the

6    Sixth Circuit in the Pelcha V. MW Bancorp. case held that

7    Bostock doesn't apply to the ADEA claims and that Gross was

8    still controlling.  Again, we encourage the Court to rely on

9    the model jury instructions provided by the Ninth Circuit, and

10   there is no controlling case law that changes that.

11           MR. OSWALD:  In reply, Your Honor, I would say that

12   Thomas really eviscerates the defendant's argument here.

13   Thomas is a Ninth Circuit case, on April 21st, that

14   specifically defines what "but for" means and what is required.

15   And it specifically states -- this is on page 1209 -- what the

16   danger is here in not giving the additional instruction.  So

17   the jury could be misled potentially in finding that it is

18   solely or primarily a type of causation case, which is not the

19   case in light of the case law.

20           So I think it if we are going to go down a road of

21   including words that are not in the statute, that we have to be

22   complete and not misleading.  I think to do that, I think we

23   have to embrace the notion that it is a "but for" cause or one

24   "but for" cause or add some modifier, which simply states that

25   it doesn't have to be the primary cause.  It doesn't have to be

1 the sole cause, or even the primary cause; that a "but for"

2 cause is enough.  Then that would give context what "but for"

3 means, and I ask the Court to include it in the jury

4 instruction.

5    THE COURT:  Any response on Thomas?

6    MS. TALCOTT:  It's the same.  That is a Mine Safety

7 case.  It isn't applicable here.  It is a different statutory

8 scheme.  We can't cherrypick that language out and think it is

9 going to be applicable to the ADEA.

10    THE COURT:  Okay.  I am going to give the

11 instruction, as drafted, on page 16.

12    Page 17, the retaliation claim.  That is, again, 11.3

13 and 10.8.

14    Any objection?

15    MR. OSWALD:  Your Honor, just for the record, I do

16 object.  The formulation here should be changed.  Specifically

17 this is in the section that begins, "A plaintiff is subjected

18 to an adverse employment action because she engaged in an

19 activity protected by the ADEA, if the adverse employment act

20 action would not have occurred but her engagement in that

21 activity."

22    The reason, Your Honor, is, once we add the "but for"

23 formulation, as before, we are misleading the jury that it

24 could be a sole cause or a primary cause type of causation

25 standard, which it is not, after Bostock and confirmed by

1    Thomas.   Therefore, I raise the same objection for the record.

2              THE COURT:  Thank you.

3              Page 18, willfulness, 11.14.

4              MR. OSWALD:  No objection.

5              MS. TALCOTT:  No objection.

6              THE COURT:  Page 19.  I think you agreed to this one.

7              MR. OSWALD:  No objection, Your Honor.

8              THE COURT:  Page 20, FMLA.  Any objection?

9              MR. OSWALD:  No objection, Your Honor.

10             MS. TALCOTT:  Your Honor, defendant objects to this

11   instruction.  We think that the negative factor test should not

12   be applied under Price v. Multnomah County, which was a FMLA

13   case.  They applied the "but for" standard.  Plaintiff is

14   relying on Nassar.  In Nassar, the same "but for" standard that

15   applies in ADEA claims applies to Title VII retaliation claims,

16   because the retaliation section of Title VII does not contain

17   the motivating factor language found in the discrimination

18   section.

19             Given that the FMLA anti-retaliation standard also

20   does not include the motivating factor language, we think that

21   the "but for" standard applicable to Title VII retaliation

22   claims should apply.  Also, that decision predates the Nassar

23   decision.  Therefore, the deference to the DoL regulation is no

24   longer tenable.

25             Additionally, if the Court is inclined to give this

1  instruction, we ask that they separate out an instruction under

2  OFLA.  OFLA actually applied a higher standard of substantial

3  factor, so if the Court is inclined to give the negative factor

4  causation standard for FMLA, which we object to, we think that

5  at least for OFLA there should be a different instruction with

6  the substantial factor test.

7         THE COURT:  Thank you.

8         MR. OSWALD:  Your Honor, two things:  First off,

9  what's sauce for the goose is sauce for the gander.  You're

10 using the Ninth Circuit pattern instruction, I'd ask you to be

11 consistent and use it here.  There is a reason why the

12 Ninth Circuit pattern instruction is the way it is.  It's

13 because the Family Medical Leave Act does not use the term

14 "because of."  It's because FMLA doesn't use "because of."  It

15 uses the term "discriminate."  So because it does not use

16 "because of," Gross and Nassar and all of those cases are

17 simply inapplicable.

18        What the courts have done, they've said,

19 "'discriminate' is ambiguous; and therefore, we are going to

20 look to the Department of Labor regulations, which we give

21 Chevron deference, because the regulations themselves have been

22 offered, there has been a notice and comment period, and, in

23 fact, then the regulation and formulation should control."

24 Thus, it's the negative factor test.

25        There's nothing about any of the cases interpreting

1   the term "because of" changed that.  It is simply a different

2   statute with a different word that is used.  So for that

3   reason, I asked Court to maintain the Ninth Circuit jury

4   instruction as stated here.

5            THE COURT:  Thank you.  I am going to give the

6   instruction, as is.  I am relying on three cases:  Magee v.

7   Trader Joe Company.  That was an April 2021 case.  The cite is

8   2021WL1550336.  I am relying on Schultz v. Wells Fargo Bank, a

9   District of Oregon case in 2013, 970 F.Supp. 2d at 1039 at page

10  cite 1052.  And finally, Rieman v. Evraz, 848 F.3d 306, page

11  cite 307.  That's a Ninth Circuit 2021 case.

12           Moving to page 21, state law employment

13  discrimination of 59A.02, any objection?

14           MR. OSWALD:  No objection.

15           MS. TALCOTT:  No, Your Honor.

16           THE COURT:  Thank you.

17           Moving now to the final portion, damages, page 22, it

18  is a page and a half.  The front pay language comes directly

19  from 5.4, and we've had this conversation.  I understand that

20  front pay is awarded at the Court's discretion only if the

21  Court determines that Restatement is inappropriate.  There is a

22  Ninth Circuit 2010 case on point, Traxler v. Multnomah County,

23  596 F.2d 1007.

24           Any objection to pages 22 and 23?

25           MR. OSWALD:  None from the plaintiffs, Your Honor.

1          MS. TALCOTT:  No, Your Honor.

2          Just to clarify, so the jury's determination of front

3     pay is just advisory?

4          THE COURT:  Correct.  Yes.

5          MS. TALCOTT:  Thank you.

6          MR. OSWALD:  Your Honor, forgive me.  It would be

7     certainly advisory on the claims that are other than the Oregon

8     whistleblower statute, which, in fact, is legal in nature.

9          THE COURT:  Right.

10         MR. OSWALD:  So at least as it relates to that claim,

11    it would not be advisory.

12         THE COURT:  Right.

13         MR. OSWALD:  It would be advisory as to the others.

14         MS. TALCOTT:  Your Honor, defendant objects to that.

15    Although there is language that says "compensatory damages,"

16    all of the Oregon employment statutes are intended to follow

17    the federal scheme, and there is case law indicating that the

18    jury's determination of front pay is advisory in Oregon as

19    well.

20         MR. OSWALD:  Your Honor, that's just not right.  The

21    statute says, "All common law remedies."  It's one or the

22    other.  In Oregon, "common law" means legal in nature.  "Legal"

23    means for the jury.  So there are, in fact, cases not on this

24    particular provision but in the companion provision.  These

25    were cited in our motion to amend the complaint initially to

 1   include punitive damages, which makes this point precisely.  So

 2   it is "legal" in nature.  The case law is clear, and that

 3   should go to the jury.

 4          But honestly, for today's purposes, the way I'm going

 5   to present it is backpay and front pay.  The Court doesn't

 6   necessarily have to rule on that issue today, because the jury

 7   will get it.

 8          THE COURT:  I agree.

 9          Ms. Talcott, maybe when you have a minute -- I agree

10   it is not emergent -- but please forward those cases.

11          MS. TALCOTT:  Correct.  I just needed to make a

12   record.

13          THE COURT:  Page 24, you agree, non-economic damages.

14          Page 25, damages/mitigation, that came from 11.13.

15          Page 26, duty to deliberate, 3.1.

16          27, communications, 3.3.

17          And finally, page 28, return of the verdict.

18          Are there any additional objections up to the

19   instructions that counsel would like to make on the record?

20          MR. OSWALD:  Yes, Your Honor.  Thank you.

21          THE COURT:  Go ahead, sir.

22          MR. OSWALD:  Your Honor, I will renew my objections

23   that I previously stated.  They are to jury instructions

24   Nos. 14, 16, 17.  My objection is the same.  It is that

25   including an incomplete formulation of "but for" is likely to

1    mislead the jury, thinking that this is a sole-cause or

2    primary-cause case.

3         We have articulated a formulation that indicates that

4    the jury should be instructed that plaintiff's protected

5    activity were one "but for" or a "but for" cause of the

6    defendant's decision to fire here.  That would be adequate from

7    a plaintiff's perspective on each of those jury instructions --

8    14, 16, and 17

9         THE COURT:  Thank you very much.

10        Turning now to the draft verdict form, as well as the

11   email we received from the defendants this morning, I agree

12   with suggestion A, spelling out the ADEA in Instructions 4 and

13   12.

14        Plaintiff, any objection to that?

15        MR. OSWALD:  No, Your Honor.

16        THE COURT:  Thank you.  We will make that change.

17        The second suggestion was clarifying the time frame

18   that applies to backpay in Question No. 7.

19        Plaintiff.

20        MR. OSWALD:  I'm not sure what the clarification is,

21   Your Honor.  We put backpay before the jury.  What's in

22   evidence is the amount of backpay from the date of firing up

23   through the first day of trial consistent with the case law.

24   That's what we are going to present.  So I don't think it needs

25   to be changed.

1          MS. TALCOTT:  Your Honor, just a simple clarification

2     to mirror the next question, which clarifies the forward time

3     frame, just to make sure they don't make the mistake and apply

4     it twice.  It doesn't prejudice anybody.  It is just a simple

5     clarification for the jury.

6          THE COURT:  So what language would you like added?

7          MS. TALCOTT:  At the end, say, "from the date of her

8     termination through the date of your verdict."

9          THE COURT:  Okay.  I will add that language.

10          MR. OSWALD:  Your Honor, I think it is through the

11     first day of the trial actually.  That's how we calculated it.

12     I think I prefer it that way to make sure it is calculated the

13     same.

14          MS. TALCOTT:  We don't object to that.

15          THE COURT:  "From the date of plaintiff's termination

16     through the first day of trial."  Okay.  We will add that

17     language.

18          The final suggestion, as to questions 10 and 11,

19     adding language to clarify that only economic damages as

20     opposed to all damages are subject to mitigation.

21          Are you sure that's correct, defendant?  I found some

22     cases indicating that might not be correct.

23          Do you see case law supporting that?

24          MR. OSWALD:  I'm sorry.  Forgive me, Your Honor.  I

25     am a little bit blindsided by this.

1         What is the proposed change?  Is this to question 10?

2         THE COURT:  It is to questions 10 and 11.

3         MS. TALCOTT:  Your Honor, we will withdraw it.

4         THE COURT:  I will say, for the record, there are two

5 cases that I found, one Ninth Circuit, 1999, and a recent

6 Eastern District of California case, 2019, that find the

7 argument that mitigation should have applied only to economic

8 damages is unpersuasive.  And finding, again, defendant

9 correctly argued plaintiffs have a duty to mitigate both

10 economic and non-economic damages.  Again, if you have case law

11 that says something different, please.

12         MS. TALCOTT:  No.  We withdraw the request.

13         THE COURT:  Back to the verdict form to the jury form

14 as drafted, objections or any misspellings or if you see

15 something that's going to make it more difficult for the jury,

16 I would really appreciate knowing.

17         MR. OSWALD:  Question No. 9, so that it is consistent

18 with the jury instruction, should say, "Emotional distress,

19 suffering" is fine, but then also reputational harm.  The jury

20 instruction says -- this is the last sentence of the first

21 paragraph.  "Finally, you should consider any injury to

22 plaintiff's reputation."  So just so it is consistent with the

23 jury instruction, I would like the title to say "Emotional

24 distress, suffering, reputational harm."

25         Then the question itself, "What damages for emotional

1   distress, suffering, or reputational harm" --

2           THE COURT:  Okay.  That does track.

3           MR. OSWALD:  -- "if any, plaintiff proved by a

4   preponderance of the evidence."

5           THE COURT:  Okay.  Defendant, any objection?

6           MS. TALCOTT:  I mean, they are instructed on it.  I

7   don't know that it is necessary on the verdict form.

8           THE COURT:  I will give it, as modified.  I think it

9   is helpful to the jury.  I know they go back and forth between

10  the verdict form and the instructions, and I appreciate that

11  the language tracks.

12          Any other objections?  Suggestions?

13          MR. OSWALD:  Yes, Your Honor.  For the reasons that I

14  raised with the Court with the jury instructions, here, I think

15  it is even more important that we don't stray into a false

16  instruction on the verdict form itself.

17          Question No. 1 is -- it should simply say, "Did

18  plaintiff prove by a preponderance of the evidence that

19  defendant terminated plaintiff because she complained about her

20  manager's alleged encouraging of off-label drug marketing,"

21  period.

22          There is no reason to continue with, "That is, the

23  defendant would not have terminated plaintiff but for that

24  complaint."  The Court has already included a "but for"

25  instruction.  To do it here, especially in light of the

1    concerns that I have raised about the fact that it is

2    potentially misleading under Supreme Court and Ninth Circuit

3    precedent, Bostock and Thomas, I think is compounding the

4    problem.

5              I'd ask the Court simply strike "that is" through

6    "but for that complaint" and put a period after "marketing."

7              MS. TALCOTT:  Your Honor, defendant disagrees.  We

8    think this language is helpful to the jurors to have the

9    standard right in front of them when they are answering the

10   question.  We'd ask that it remain as it was drafted.

11             THE COURT:  Okay.  The verdict form will remain, as

12   drafted.

13             Counsel, thank you for making your objections on the

14   record.

15             MR. OSWALD:  Okay.  The formulation here would be

16   that plaintiff's complaints were a or one "but for" cause of

17   defendant's decision to fire her.  That would be the ultimate

18   formulation that we would propose on Question No. 1 on the

19   False Claims Act/retaliation on the verdict form.

20             THE COURT:  Okay.  Thank you.

21             MS. TALCOTT:  Your Honor, just to make our record, we

22   would just renew our objection to the language for the FMLA and

23   OFLA retaliation.

24             THE COURT:  Okay.  Thank you.

25             MR. OSWALD:  Your Honor, for the same reason,

1    Question No. 3, the claim for Age Discrimination in Employment,

2    ADEA discrimination, plaintiff asks that the Court strike, and

3    simply put a period after "because of her age," and strike,

4    "That is, plaintiff would not have terminated plaintiff but for

5    her age."  It is misleading because it doesn't give the

6    complete picture of what "but for," means consistent with case

7    law, Bostock and Thomas.  We would ask the Court either include

8    additional language.  That additional language would simply

9    read, "The plaintiff's complaints were one 'but for' cause for

10   defendant's decision to terminate her," or strike that phrase

11   in its entirety.

12        THE COURT:  Thank you.  Anything further on the

13   verdict form?

14        MR. OSWALD:  Yes, Your Honor.

15        On Question No. 4, the claim for age discrimination,

16   under the Age Discrimination in Employment Act retaliation, for

17   the same reason we ask the Court to strike the part of the

18   instruction that begins, "That is, defendant would not have

19   terminated plaintiff but for that complaint."  We contend that

20   is misleading of a "but for" formulation.  A more accurate

21   formulation would be the plaintiff's complaints were one "but

22   for" cause or a "but for" cause of defendant's decision to fire

23   her, or to strike that provision in its entirety, consistent

24   with Bostock and Thomas.

25        THE COURT:  Thank you.  Keep going, if there is

1    anything further.

2              MR. OSWALD:  Your Honor, that is all we have.

3              THE COURT:  Okay.  There are no misspellings, really?

4    Double-check.  That's so embarrassing when a jury gets that.

5              MS. TALCOTT:  Your Honor, defendant filed two motions

6    yesterday that may result in jury instructions.

7              Would you like to hear argument on those?

8              THE COURT:  Yes.  I'm sorry.  I did not see those.

9              MS. TALCOTT:  We filed a motion yesterday to have the

10   Court strike the hearsay portion of Mr. Sevart's, plaintiff

11   vocational rehab expert's testimony.  Although an expert can

12   rely on hearsay, it is still improper, even if they are an

13   expert, for them to repeat the hearsay statements to the jury.

14             Mr. Sevart testified to what plaintiff told him about

15   his job search efforts and how the number of interviews went

16   and even what she was relaying to him that the interviewers

17   told her.  So that's the double hearsay.

18             Again, Mr. Sevart can rely on what the plaintiff

19   tells him in coming to his opinions, but it was improper for

20   him to repeat those out-of-court statements.  That is per se

21   hearsay.  There is a great danger to the defendant that the

22   jury is going to rely on those for the truth.  And because

23   plaintiff in this case did not testify to any of those facts

24   herself and, in fact, her expert testified after she testified,

25   there is no way for the defendant to correct any misconception

1  or go into that testimony in the case.

2       So for that reason, we'd ask that the jury be

3  instructed to disregard what Mr. Sevart said regarding

4  statements that plaintiff relayed concerning her job search

5  efforts and her interviews.

6       THE COURT:  Thank you.

7       MS. CHAMBERS:  Judge, in response to that, a few

8  things:  First, defendant's motion that was filed, I think

9  yesterday at midnight, has no case law supporting its position.

10  In fact, the only statute that it references is the Federal

11  Rules of Evidence 703, which supports that an expert can rely

12  on hearsay.  The transcript that defendant attached has the

13  fact that defendant made this objection.  I cited to the rule.

14  You overruled the objections.  So this matter has already been

15  decided on.

16       Further, Mr. Sevart was qualified as an expert in

17  vocational rehab.  It is his job to make opinions and

18  statements based on his conversations with the plaintiff and

19  his review of the documents in this case.  He noted in his

20  report and in his testimony that he reviewed job search records

21  and everything that the plaintiff did to find another job.

22       Further, Ms. Talcott's argument that Ms. Ivie didn't

23  discuss her mitigation at length, defendant could have called

24  Ms. Ivie in their case-in-chief and ask her those questions.

25  It did not.

1    So for those reasons, we ask that the motion be

2    denied.

3    One last thing:  The jury instruction that is

4    provided is extremely misleading, and I think would cause the

5    jury to be confused.  It states, "Mr. Sevart testified about

6    some specific job interviews the plaintiff had and the

7    statements and the responses of prospective statements of

8    employers in those job interviews, and I instruct you not to

9    consider that portion of Mr. Sevart's testimony in reaching

10   your verdict."  It would result in the jurors not considering

11   most of Mr. Sevart's testimony, which he's already qualified as

12   an expert.  He testified about all the materials he relied on,

13   and so this jury instruction would mislead the jury.

14   MS. TALCOTT:  Your Honor, plaintiff continues to

15   focus on what an expert can rely on as opposed to what the jury

16   can hear.  It is not inappropriate for Mr. Sevart to rely on

17   what plaintiff told him.  What was inappropriate was for

18   Mr. Sevart to testify in court about what plaintiff told him,

19   and even more problematic, what plaintiff told him someone else

20   told her.

21   If the Court is not inclined to strike the testimony,

22   we would ask for a limiting instruction that they cannot

23   consider the testimony of Mr. Sevart gave for its truth but

24   just for the fact that he relied upon it.  But here, we think

25   there needs to be a balancing test done in this case, and the

1    Court has to rule that the hearsay comes in after that

2    balancing test if this is not going to be cured.

3              MS. CHAMBERS:  Judge, again, this was Mr. Sevart's

4    expert opinion that was qualified by this Court.  He is allowed

5    to make opinion statements.

6              MS. TALCOTT:  Your Honor, I can respond.  It is not

7    about opinions.  It is about him repeating the hearsay

8    statements from plaintiff.  That's what is objectionable,

9    because the jury's impression is that those are true.

10             THE COURT:  Ms. Chambers, anything further?

11             MS. CHAMBERS:  No, Judge.  There is no legal support

12   for that, and the Federal Rules of Evidence are clear.

13             MS. TALCOTT:  Obviously, Your Honor, we disagree;

14   that there is legal support in the Federal Rules of Evidence.

15             Thank you.

16             THE COURT:  Thank you.  I am going to do my own case

17   law search very quickly into this issue, and I will let you

18   folks know.

19             Moving to the second motion, any objection to

20   Plaintiff's Exhibit 1 and 182?  Tell me what those are.

21             MR. McCARTHY:  Thank you, Judge.  Mr. Magnuson

22   corrects us.  It is a renewed objection, not a motion.  I will

23   describe to you, Judge, the two exhibits at issue.

24             Exhibit 1 is a copy of an AstraZeneca annual report.

25   It is a very long document, sort of in the tradition of the

1    annual reports that public companies do.  Exhibit 182 appears

2    to be an expert from AstraZeneca's website showing sales

3    figures for SYMBICORT.  Now, both of these documents contain

4    references to AstraZeneca's global and U.S. revenues and

5    profits and numbers in the billions of dollars, as you might

6    expect.

7            Now, both of these exhibits, for context, were

8    initially proposed at a time when the plaintiff was trying to

9    add a claim for punitive damages, and that's not surprising,

10   because if there were a punitive damages claim, of course, the

11   jury would be entitled to know what resources AstraZeneca has.

12   Now there is not a punitive damages claim in the case.

13           There is no dispute, Your Honor, in this case that

14   AstraZeneca makes a profit.  There was testimony about that

15   from almost all of the plaintiff's examinations of our

16   witnesses, and I have lost track of the number of times that

17   Mr. Oswald has said the word "profits" to the jury.  It is on

18   his big board over there.

19           Your Honor, for context, this case is about a couple

20   of AstraZeneca drugs in a small part in a small region of

21   AstraZeneca's global operations.  So if they are going to show

22   the jury billion-dollar figures that refer to AstraZeneca's

23   global operations and global wealth, we think there is a real

24   danger the jury is going to consider this evidence for an

25   improper purpose under Rule 403 and to properly take into

1  account AstraZeneca's wealth and think they are supposed to

2  punish the company or somehow consider the company's ability to

3  pay.

4         So we would renew our objections that were previously

5  stated to 1 and 182, for the reasons stated here and in our

6  brief filed last night.

7         Thank you, Your Honor.

8         THE COURT:  Thank you.

9         MS. CHAMBERS:  Judge, in response to that, both of

10  these exhibits are public documents.  They are on AstraZeneca

11  website, and so I don't think a 403 analysis is appropriate

12  here.

13         Also, Mr. McCarthy said these exhibits are being

14  offered to support a punitive damages claim.  I mean, that is,

15  I think, AstraZeneca's position but not the plaintiff's

16  position.  The sales and AstraZeneca's business has been at

17  issue in this case.  It has been discussed.  It is another

18  internal AstraZeneca document in terms of what the sales goals

19  are and what the sales team is trying to do.  So for those

20  reasons, these documents are already in evidence, and we ask

21  that they stay in evidence.

22         MR. McCARTHY:  Your Honor, just by way of brief

23  response, the status of these documents as public documents is

24  irrelevant.  In fact, Your Honor is going to instruct the jury

25  to disregard a whole host of publicly available materials that

1    are not properly within their consideration during the trial.

2    Again, we renew our objections on these two exhibits,

3    Your Honor.

4           THE COURT:  Thank you.  I will have both rulings

5    before nine o'clock.

6           I will retake the bench a couple of minutes before

7    9:00 before we bring in the jury so we know what to expect.

8           Anything further?

9           MR. OSWALD:  Yes, Your Honor.  I just wanted to be

10    clear.

11           So we will bring the jury in at nine o'clock.  We

12    will go right into closing arguments; is that right?

13           THE COURT:  Correct.

14           MR. OSWALD:  So plaintiff will close; defendant will

15    close; we will have a rebuttal period.  Then once that's done,

16    then you are going to instruct at that point; is that correct?

17           THE COURT:  Yes.

18           MR. OSWALD:  Will there be a break at any point?

19           THE COURT:  I have to give them and Dennis a morning

20    break, and so it just sort of depends how your closings roll

21    out.  I will break when it is appropriate and not break in the

22    middle of either one of your closings obviously.  We will take

23    a morning recess and then keep going.

24           MR. OSWALD:  Understood.

25           Then the issue -- are we going to have the exhibit

1    binders go back as well as the electronic or just the

2    electronic?

3              THE COURT:  Mr. Magnuson?

4              THE CLERK:  Just the electronic.

5              MR. McCARTHY:  As Ms. Riechert mentioned, we do have

6    a set of binders, I think similar to what Mr. Oswald handed to

7    the jurors.  So we can hand those out whenever Your Honor

8    prefers.

9              THE COURT:  I think the jury already has copies of

10   your specific exhibits.

11             MR. OSWALD:  I meant the exhibit binders with all of

12   them.

13             THE COURT:  I guess not.  No hard copies other than

14   the exhibit binders --

15             MR. OSWALD:  The jury notebooks?

16             THE COURT:  The jury notebooks, yes.  Everything else

17   is an e-version that will go to the jury.

18             MR. OSWALD:  Understood.  Okay.

19             How does that work?  Usually Ms. Riechert and I will

20   get together, and we would look at the books and go through

21   them and make sure they are all right.

22             THE COURT:  I know.

23             MS. RIECHERT:  We are looking at thumb drives

24   instead.

25             MR. OSWALD:  Then once we have done that, we sign a

1    page, and back they go.  How does that work?

2              THE COURT:  Mr. Magnuson.

3              THE CLERK:  We will figure it out.

4              THE COURT:  This is all new to us as well.

5              THE CLERK:  I will have to get the machine set up

6    while you guys are doing closings.  At some point I'm going to

7    have you go in there, once everything I believe is taken care

8    of the way it should be, for you guys to go through, click

9    through, I guess, and be able to verify what's on there.

10   That's the only way we can do it.

11             MR. OSWALD:  Understood.  Thank you, Your Honor.

12             THE COURT:  Thank you very much.  We are in recess.

13   So we will come back just a minute or two before 9:00.

14             Thank you.

15             (Recess.)

16             (Open court; jury not present:)

17             THE COURT:  Just quickly, the two motions, Document

18   140, defendant's motion for a curative jury instruction, that's

19   denied.  I find that the statements were not offered for the

20   truth; thus, avoiding any hearsay problem, and I am also

21   relying on FRE 703.

22             Defendant's renewed objections to Plaintiff's

23   Exhibits 1 and 182, Document 138, I agree that the relevance is

24   marginal; however, I don't find that those exhibits satisfy the

25   very high 403 standard in terms undue prejudice.

1          MR. McCARTHY:  Judge --

2          THE COURT:  Gary, will you please get the jury.

3          MR. McCARTHY:  Judge, can I make a quick request?  We

4    would request, in lieu of excluding Exhibits 1 and 182, we

5    prepared a very short proposed limiting instruction for the

6    jury.  We would ask you to consider giving that instruction.

7    We can hand it up.  We will give a copy's to plaintiff's

8    counsel.

9          MR. OSWALD:  Your Honor, while we are doing that, so

10   the jury isn't confused, the defendant has placed the

11   defendant's jury notebooks on the jurors' seats.  I would like

12   the Court just to say, "Hey, there is a notebook there, and

13   that's the defendant's notebook for reference during the

14   defendant's closing argument."

15         THE COURT:  Okay.  Let me know if there is an

16   objection to defendant's limiting instruction.

17         MR. OSWALD:  Objection, Your Honor.  We already have

18   a jury instruction relating to corporations getting fair

19   treatment under the law.  This is simply another version of the

20   same.  You're already going to instruct all that parties are

21   equal under the law.

22         MR. McCARTHY:  Judge, there is a danger the jury is

23   going to understand from these exhibits or any reference to

24   them that the defendant's wealth is a relevant consideration,

25   and so we ask Your Honor to deliver that instruction.

Closing Statement

1     THE COURT:  Thank you.  I may attach some version of

2  this to the beginning instruction on corporations and equal

3  treatment, specifically that you are not to consider

4  defendant's wealth in determining liability or damages in this

5  case, but I want to look again at the Ninth Circuit model

6  instruction.

7     MR. McCARTHY:  One additional clarification to avoid

8  any dispute in closing argument, we would object during closing

9  to any reference to "billions of dollars" or "AstraZeneca's

10  wealth."  And so we ask for you to rule in limine that no such

11  mention should be made in closing statement.

12     THE COURT:  So ruled.

13     Bring in the jury.

14     (Open court; jury present:)

15     THE COURT:  Good morning.  Welcome.  Thank you for

16  returning.  I hope you all had a nice weekend.

17     You will see on your chairs that there is a notebook.

18  That's a notebook prepared by defendant with some exhibits

19  selected for your information, similar to the notebook that you

20  received from plaintiff.  So please have a seat.

21     Good morning.

22     Mr. Oswald.

23     MR. OSWALD:  Good morning, Your Honor.

24     THE COURT:  Please begin.

25     MR. OSWALD:  Thank you.

Closing Statement

1    Good morning, everyone.  I got to enjoy Portland's

2  wonderful weather this weekend.  And on Saturday, I sat out on

3  the lawn, which is between the road and the river, watching

4  families go by on bicycles and a unicycle -- literally hundreds

5  meeting up at that fountain.  And I sat there trying to get a

6  view of the mountain.  And as I sat there, I just thought how

7  very lucky I was; how lucky that I'm able to bring Suzanne

8  Ivie's case to you -- to a jury.

9    Trial by jury is a privilege.  It is the only thing

10  that's discussed twice in the Bill of Rights and the Sixth and

11  Seventh Amendments, the right to a jury trial.  And we are the

12  only country in the world that has such a right enshrined in a

13  document like our Constitution.  So it is a privilege to be

14  here to exercise that right for Suzanne.

15    The law that we've talked about and that you'll hear

16  in Judge Russo's instructions is powerful.  It protects us.  It

17  makes the world a better place.  In this courtroom we all stand

18  equal under the law.  It doesn't matter if you are an

19  individual or you're a company.  Everyone must stand here and

20  face justice -- justice before jurors; justice before you.

21    You come from the community from different

22  backgrounds, from different points of view, and you sit here as

23  the conscience of the community to speak in the end with one

24  voice.  The date has arrived, and that time is now.

25    AZ is a very powerful corporation, and it does much

Closing Statement

1    good.  It makes medicines that make people better.  But those
2    medicines that they make need to be used in the right way, and
3    that's why we are here.

4           You heard Barbara McCullough say that AstraZeneca
5    intends to launch a COVID-19 vaccine in the United States -- to
6    our friends, available to our family, available to us.  That's
7    what's at stake here, because with power comes responsibility.
8    Without responsibility, there is no accountability.  If there
9    is no accountability, there is no safety -- no safety for any
10   of us; no safety for employers, no safety for patients, no
11   safety for all of us collectively.

12          And AstraZeneca needs to be accountable to the laws,
13   and it makes itself accountable, as its witnesses have told
14   you, through the policies that it issues to all of its
15   employees, through its code of conduct, through, for example,
16   Rule No. 1:  AstraZeneca must market its products only for
17   their approved uses.  That's what is at stake here in our case.

18          Suzanne told you what the potential consequence of
19   violating this rule is if DALIRESP is prescribed for those who
20   suffer anxiety and depression.  It can make actually people who
21   have anxiety and depression suicidal.  When it is marketed for
22   depression and anxiety, it can do the opposite.  It can tip
23   those on the scale -- those very close to the edge -- to take a
24   reckless act.  To market this for anything but an approved use
25   is reckless, and it is dangerous.

Closing Statement

1    So AstraZeneca has a system, and it has a system,

2  when it is working, where commercial business directors, those

3  like Stephani DiNunzio, are accountable and responsible.  But

4  we heard Mike Pomponi say on our screens that when he

5  interviewed Stephani DiNunzio, she took no responsibility for

6  what her reps were telling doctors who then prescribed to

7  patients.  "That's their accountability," Stephani DiNunzio

8  told Mike Pomponi, "not mine."

9    DiNunzio says that her view of what is off-label is

10 better than her compliance department's view of what is

11 off-label.  Remember that I asked -- I read the statement from

12 the May 21st compliance report, the one that said it was

13 off-label.  And what did she say?  "That is in line with the

14 U.S. label," she said.  "It is not off-label.  It is perfectly

15 fine to use."

16    Someone with this level of arrogance is breathtaking,

17 but it is not unforeseeable at a big company -- a big company

18 like AstraZeneca.  That's why companies have rules.  That's why

19 all employees must follow those rules.  As Barbara McCullough

20 said, "If you see something, say something.  Speak up.  And

21 what will happen is we will protect you."

22    She told us, "It is AstraZeneca's responsibility to

23 prevent its managers from retaliating against employees who

24 report concerns about the company marketing its products for

25 unapproved uses; and that it was the company's commitment to

Closing Statement

1    protect employees from retaliation when they report in good

2    faith concerns about the company marketing drugs for unapproved

3    uses.  If you see something, say something, and we will protect

4    you," McCullough says.

5         But when Mike Pomponi goes to investigate Suzanne's

6    complaints, what he finds is that the workforce underneath

7    Stephani DiNunzio doesn't feel that they can speak up; that it

8    is not a safe environment.  In fact, he finds that DiNunzio has

9    retaliated against others.  In fact, if one spoke up, if one

10   were to ask questions, they would be accused of having a fixed

11   mindset, and that they would have to leave the company.

12        So companies create support systems to protect

13   employees.  Having DiNunzios in your workforce is entirely

14   foreseeable.  Having employees in the workforce who will put

15   profits over patients is entirely foreseeable in the workforce,

16   and so a company like AstraZeneca has policies and individuals,

17   guardians of those rules, who protect employees in the

18   workplace.  People like Karen Belknap, Dawn Ceaser,

19   Mike Pomponi, and Barbara McCullough.

20        So the first line of defense is Karen Belknap.  She

21   is hopelessly conflicted.  She is investigating Suzanne at the

22   same time she is investigating Suzanne's complaints.  Now,

23   either she can't see the problem in that through her 150 annual

24   caseload, or she can't see it because she let her HR

25   certification lapse 15 years before, the one that requires

Closing Statement

1  annual training to keep up her skills.

2        And what did she say?  She said that it was routine

3  for a manager to have an employee in a disciplinary meeting

4  where the manager has a complaint of retaliation against that

5  manager.  Underperforming employees, she says, file complaints.

6  For her, complaints about compliance are seen as defiance.

7  It's her playbook.

8        Remember, Larry Hinson told you:  "They make it about

9  behaviors; it's a dog whistle."  DiNunzio tells --

10  then executes that playbook.  She uses coaching reports.  She

11  delves deeply into them.  She surprises the employee with a

12  write-up, and then she tells them, "You have a choice.  You

13  have a choice between the write-up, which will permit you to go

14  no higher than a three in that year's performance evaluation,

15  cut your bonus by 25 percent, and be a scarlet letter in your

16  file for the rest of your AstraZeneca career, or you can sign

17  the package, the package that includes a release of claims."

18  And then the employee simply goes away.

19        But Suzanne, when presented with this choice,

20  surprises Belknap.  For Suzanne, patients really do matter.

21  Belknap sees Suzanne not taking the release, not signing the

22  release of claims, as a sign of insubordination.  She is more

23  concerned about how this will land with DiNunzio than being a

24  proper guardian of the system of protection.

25        Then Belknap ratchets up the pressure:  No virtual

1    field coaching for Suzanne and stripping Suzanne, on

2    April 17th, of Suzanne's compliance role.  She abdicates her

3    responsibility as a guardian of the system to protect employees

4    from retaliation.

5         And then on May 3rd, here, the very last day that she

6    works at AstraZeneca, she tells Suzanne, "Don't come back to

7    HR, because if you come back to HR, I'm going to simply send

8    you back to Stephani DiNunzio.  Go to DiNunzio.  Go to Gray.

9    Don't come to us."

10        Dawn Ceaser picks up the baton on May 3rd, 2019, and

11   she takes what DiNunzio is giving hook, line, and sinker.  No

12   opportunity to respond for Suzanne, in violation of

13   AstraZeneca's own rules.  No opportunity to respond to

14   DiNunzio's allegation that Suzanne has done little work.

15        Then remarkably, Dawn Ceaser joins in the

16   retaliation.  She writes in the employee relations case for

17   terminating Suzanne that they are firing Suzanne because

18   "Suzanne is not accepting the results of the investigations

19   that have occurred and continues to raise similar complaints."

20   Barb McCullough says that this should have never happened; that

21   an employee always has the right to complain.  But not for

22   Belknap and not for Dawn Ceaser.

23        But there is another line of defense, and that line

24   of defense is compliance:  Mike Pomponi, here, and Barbara

25   McCullough.  They are on all of the emails; all of the

Closing Statement

1  complaints.  You'll see them in evidence.  Every complaint has

2  Barbara McCullough and Mike Pomponi, and they know that Suzanne

3  is complaining about what DiNunzio is doing as far back as

4  August of 2018, and they understand the consequence of what it

5  is that Suzanne is saying.  Remember what Mike Pomponi said?

6  The only way that AstraZeneca escaped the corporate integrity

7  agreement the first time on the off-label marketing, the first

8  time, was to enter into a corporate integrity agreement with

9  the Department of Health and Human Services.  And DiNunzio

10  tells us that violating a CIA has consequences.  Those

11  consequences are massive.

12       This is what Pomponi knows:  "But on May 16th, here,

13  when Suzanne reaches out to him for help, Pomponi says, 'I'll

14  get back to you.'"  But he doesn't.  He forwards Suzanne's 5-16

15  complaint directly to HR, and DiNunzio finds out, again, just

16  days later, that Suzanne has complained about her.  Pomponi

17  simply looks the other way.  Worse, Amy Welch told us at the

18  very end that Pomponi helps in preparing the June 6th, 2019,

19  employee relations case for termination.

20       The last guardian at AstraZeneca is Barbara

21  McCullough, the vice president of North America compliance,

22  responsible for compliance for the Bio-Pharma Unit for the

23  entire United States.  Remember what she told us?  The

24  compliance buck stops with her.  And yet what is she really

25  concerned about?  Well, first, she reports this all to

Closing Statement

1    AstraZeneca's top business unit members, Mina Makar and

2    Ruud Dobber, and then instead of being concerned about the

3    things that she should be concerned about, for instance,

4    DiNunzio's insights not being in line with the U.S. label; that

5    compliance had recommended that DiNunzio be retrained and

6    monitored; that field reports had not been recorded or

7    consistently enforced; and that Suzanne is saying she is being

8    fired for retaliatory reasons -- these are the things that she

9    should be concerned about.  But what she is actually concerned

10   about is whether Suzanne signs the release of claims, whether

11   she has accepted it, four days after AstraZeneca has already

12   fired Suzanne.

13            So that is the last line of defense, at least the

14   last line of defense at AstraZeneca for its bad system.  There

15   is another line of defense.  And that line of defense is you,

16   in this courtroom, where AstraZeneca can be forced to take

17   responsibility and held accountable for its actions.  You can

18   fix what happened here, and by your verdict you can help

19   AstraZeneca fix its own bad system for its current employees,

20   for its future employees, for its patients, for all of us.

21            Now, there are three sets of claims in this case that

22   I want to tell you about, and you are going to see them in the

23   jury instructions that Judge Russo is going to pass out at the

24   conclusion of all of the closing arguments.  The first is under

25   the False Claims Act -- a set of claims -- and the Oregon

Closing Statement

1   whistleblower protection law.

2           Now, there are three elements that we need to show.

3   The first is that Suzanne Ivie engaged in what the law calls

4   protected conduct.  And the defendant doesn't contest this.

5   Suzanne Ivie engaged in protected conduct on August 31st, when

6   she notified compliance about her concerns about the insights.

7           She engaged in protected conduct, again, on the

8   17th of December, here, when she says, "Look, I'm not going to

9   do this anymore.  I am willing to win, but I want to win the

10  right way.  What you're doing here is illegal," right before

11  DiNunzio gives her a poor review.

12          She does again on the 19th of December here, when she

13  files a complaint with compliance.  On January 15th, 2019, when

14  she is interviewed by compliance.  Again, on February 5th,

15  2019, when she files her second complaint.  And then finally,

16  on the 16th of May, here, when she goes to compliance the last

17  time for help.

18          And AstraZeneca engaged in adverse actions.  Those

19  adverse actions included, of course, the firing on June 6th,

20  but also the written warning on March 1st and the stripping of

21  her duties, her compliance duties, and ratcheting up the

22  pressure on April 17th.

23          So what this case comes down to on the False Claims

24  Act and on the Oregon Whistleblower Protection Act is

25  causation.  But what is causation?

Closing Statement

1    What you'll see is that it says "because of."  She
2  was fired "because of" her protected conduct; that her firing
3  was the "but for" cause of the termination.  But what is that?
4    I like to think of it in terms of a grocery list.  So
5  I have a grocery list.  I put things on it, and then I use that
6  when I go to the store.  If it is something that is on my list,
7  even if it is one of many, as long as it is a thing that takes
8  me to the store, that is "but for" causation.  In this example,
9  as long as it is sugar that takes me to the store, then I've
10  met a "but for" cause for going to the store.
11    Causation can be shown through a quick reaction by an
12  employer to an employee's protected conduct, an action by the
13  employee, a reaction, a retaliation by the employer in quick
14  succession, and we have that here.
15    First, on August 31st, right after Suzanne forwards
16  DiNunzio's email to compliance, DiNunzio says, "Let's pause on
17  this."  Remember what Suzanne says immediately thereafter?
18  DiNunzio picks up the telephone, and she is angry at Suzanne
19  for going you outside the group; that she doesn't understand
20  what it means to make a profit.
21    On the 17th of December, when she sends the warning
22  shot, remember, Suzanne says, "I'm not going to be sneaking
23  around on this anymore.  I'm not going to do this.  This is
24  illegal."  And right after, DiNunzio hands her the performance
25  evaluation with the one or the two.

Closing Statement

1    On the 7th of February, DiNunzio files a report.  It

2   becomes the complaint that leads to a written warning.  Two

3   days after Suzanne files her complaint, on February 5th -- and,

4   of course, the timing, the same day, just three weeks before,

5   here, when Pomponi from compliance is interviewing Suzanne --

6   interviews Suzanne with Belknap in the morning -- DiNunzio is

7   writing up her case against Suzanne, taking that entire day on

8   the 5th to prepare.

9    Next, March 1st, 2019.  Why were they so concerned

10  about how Stephani DiNunzio would take the fact that on the

11  25th Suzanne didn't take the package; didn't sign the release

12  of claims.  It's because DiNunzio was scheduled to be

13  interviewed on March 1st, 2019, and that report was going to go

14  to the highest levels of AstraZeneca, potentially up the chain

15  to Mina Makar or even Ruud Dobber.

16   And you remember how Stephani DiNunzio talked about

17  Ruud Dobber; about how she felt about that meeting that she had

18  with him; how she prepared.  This was not the way that she

19  wanted to be introduced to him.  That's why HR was worried

20  about how Stephani would take the fact that Suzanne did not

21  sign the package.  The interview had to go forward.

22   Then, of course, the effective date of the written

23  warning is exactly the same day, March 1st, 2019.  In May, more

24  of the same.  On May 16th, Suzanne Ivie goes to the compliance

25  department.  This is her request for help.  Rather than

Closing Statement

1   responding to Suzanne, Mike Pomponi sends it on to HR and that

2   very day DiNunzio and HR files their second complaint against

3   Suzanne.  And then, of course, in the June 6th, 2019, the

4   employee relations case for termination, Dawn Ceaser doesn't

5   hide the ball.  She tells us exactly why AstraZeneca is firing

6   Suzanne.  She is firing Suzanne for not accepting the results

7   of the investigations, and that's even though, on the 21st of

8   May, Suzanne was proved right.

9           There were at least two statements that DiNunzio was

10  distributing amongst her staff, amongst her PSSs, that were not

11  in line with the U.S. label.  But, of course, DiNunzio doesn't

12  know.  She never even saw the report.  No one even ever told

13  her, "Hey, you've got to be retrained and monitored."

14          Now, the Oregon whistleblower protection law mimics

15  the federal False Claims Act --

16          THE COURT:  Mr. Oswald, I'm sorry to interrupt you.

17  Apparently folks are having trouble hearing in the overflow

18  courtroom.

19          MR. OSWALD:  I'll speak up.

20          THE COURT:  Can you move the lecturn?

21          MR. OSWALD:  I will.

22          The Oregon whistleblower protection law mimics the

23  False Claims Act.  A violation of one is a violation of the

24  other.

25          Now, the next set of claims are under the Family and

Closing Statement

1  Medical Leave Act and the Oregon Family Leave Act.  The causal

2  connection here, like you saw with the grocery list, all that

3  needs to happen is one factor.  And again, timing is really

4  what we look at first.  And, boy, the timing couldn't be

5  closer.  On the very day that Suzanne returns from her leave,

6  what happens?  DiNunzio strips her of her compliance ambassador

7  role and institutes an in-field coaching of 100 percent --

8  different from any of the other of her peers.

9      Next, we have the Age Discrimination in Employment

10  Act and the Oregon Age Discrimination in Employment Act.  Here,

11  the causation is the same.  But what's important that we look

12  at is, again, the timing of the actions that happened as a

13  result of her complaint.

14      Of course, we know that there is a direct comparator,

15  Andrew Maratas, her peer.  Andrew Maratas is put on a

16  performance improvement plan for inadequacies in his coaching.

17  Suzanne Ivie, who is the oldest, she is written up and fired.

18      Now, to the timing.  Suzanne makes her complaint for

19  the first time that her boss is treating her differently

20  because of her age on December 19th; here on our timeline.

21  Then a slew of retaliatory actions happen thereafter.

22      On January 15th, on 2-7, on 2-18, that's when they

23  meet with Suzanne to ambush her and ask her about her field

24  coaching.  On 3-1, here, on our timeline; March 1st; on

25  April 17th; on May 3rd; on May 16th, when Dawn Ceaser files the

1    second complaint against Suzanne; and, of course, the firing

2    itself on June 6th.

3           Now, you'll see an instruction on willfulness.

4    Willfulness, under the Age Discrimination in Employment Act is

5    simply that the employer either knew of their obligations under

6    the Act or did not know but were in reckless disregard of their

7    obligations.  DiNunzio understood that it was unlawful to treat

8    someone differently because of their age; so did Belknap; and

9    so did Ceaser.  Yet they did nothing to stop DiNunzio.

10           Now, AstraZeneca will attempt and has attempted to

11    distract you with something they call the 80/20 field virtual

12    split.  If this were, in fact, a requirement, why is it in no

13    HR handbook?  Why is it in no code of ethics?  The only thing

14    that they have shown you that has come from AstraZeneca itself,

15    the only thing is a Frequently Asked Questions attachment to an

16    email from April of 2018.  That's it.

17           And remember that DiNunzio met with Suzanne

18    frequently during her tenure; Suzanne says almost every week.

19    And DiNunzio talked to us and said she reviewed the coaching

20    reports on a monthly basis.  She reviewed the expense reports

21    on a weekly basis.  If this were so important to DiNunzio

22    before the 15th of January, when she knows as of the 9th,

23    because HR has notified her boss that there had been a

24    complaint filed against her, and she can guess who it is, if

25    this were so important, why wouldn't DiNunzio put that

Closing Statement

1   somewhere in Suzanne's 2018 year-end review that she says she

2   gave to Suzanne?  Take a look at this.  You will note that

3   there is not one mention of field versus virtual coaching; not

4   one mention of the 80/20 split -- nothing.

5           What is clear is that on the 15th, when DiNunzio

6   finds out about Suzanne's complaint, as of the 9th, she takes

7   out the playbook.  It is Karen Belknap's playbook.  She does a

8   deep dive into Suzanne's coaching reports.  That's why it takes

9   her that entire day.  That's what she needs to do, because what

10  she knows is that Suzanne's performance up to that point has

11  been exemplary.  Suzanne was No. 3 in the nation in 2016, the

12  top 2 percent.  Suzanne was No. 2 in the nation, top 1 percent.

13  And you'll have in the jury room every one of Suzanne's

14  evaluations, indeed her entire employment file.  Take a look.

15  See what Stephani DiNunzio said about her in 2017; what

16  previous managers have said about her work before that point.

17          So this is what they settle upon; this is what they

18  ambush Suzanne on the 18th of February about when she thinks

19  they are there to talk about her complaints about off-label

20  marketing to get it all worked out.  They ambush her.  But

21  Suzanne is not on trial here.  AstraZeneca is on trial, and

22  AstraZeneca retaliated against Suzanne on March 1st, 2019.

23  They retaliated against her on June 6th, 2019.  And they are

24  continuing to retaliate against her to this very day.

25          They traipse these poor subordinates, who are

Closing Statement

1  beholden to AstraZeneca, to come before you and to sully

2  Suzanne, to say, "Oh, she wasn't a very good coach.  She met me

3  at the coffee shop."  AstraZeneca takes no responsibility for

4  its actions.  And without responsibility, there is no

5  accountability.

6        The only thing that has happened in this case, the

7  only thing is that DiNunzio gets rewarded with a promotion --

8  no retraining, no monitoring, no notice at all.  She is

9  promoted into a new position where she is likely to do it

10  again, but not if you speak with one voice, as a conscience of

11  the community, to tell AstraZeneca that they need to take

12  responsibility.  They need to be accountable for their actions.

13        You are the last line of defense.  And you will have

14  the opportunity, as part of being that last line, to compensate

15  Suzanne for what AstraZeneca took away from her.  When you go

16  back into the jury room, you will see Exhibits 2, 3, and 4.

17  One of those exhibits is Dr. Edelman's calculation of Suzanne's

18  backpay.  The amount of pay that AstraZeneca took away from her

19  between the date of her firing on the 6th of June up through

20  the first day of trial.  And I ask you to compensate Suzanne

21  under that line of backpay in the amount of $575,982.  This

22  will be in the documents that you will have.  Remember that

23  since Suzanne's firing, she has interviewed for 149 jobs; many

24  in the pharma field.  She has gotten a first interview on a few

25  but never a second interview.

Closing Statement

1       Remember what Scott Sevart said from the stand: "She

2   will likely never work in pharma again."  That is what

3   AstraZeneca has taken away from her.  Thus, when you get to the

4   line that says front pay, the amount of pay between the first

5   day of trial and the end of her work life at 65 years old, I

6   ask you to compensate her in the amount of $3,005,021.  This

7   will be in your jury book that you have.

8       Now I want you to look at the verdict form.  When you

9   go back into the jury room, in addition to the exhibits, you

10  will have a verdict sheet that Judge Russo will give you.  I

11  want to walk you through this.

12      "Question No. 1.  Claim for False Claims Act

13  retaliation:

14      "Did the plaintiff prove by a preponderance of the

15  evidence that defendant terminated plaintiff because she

16  complained about her manager's alleged encouragement of

17  off-label marketing; that is, that defendant would not have

18  terminated plaintiff but for that complaint?"

19      Remember the grocery list.

20      I ask you to check "yes" in answer to Question No. 1.

21      "Question No. 2.  Claim for Oregon Whistleblower Law

22  Protection/retaliation.

23      "Did the plaintiff prove by a preponderance of the

24  evidence that defendant terminated plaintiff because she made a

25  good-faith report of conduct by defendant that she believed to

Closing Statement

1  be a violation of a state or federal law, rule, or regulation;

2  that is, the plaintiff's report made a difference in

3  defendant's decision to terminate plaintiff?"

4           I ask that you check "yes" on Question No. 2.

5           "Question No. 3.  Claim for Age Discrimination in

6  Employment Act, ADEA/discrimination.

7           "Did the plaintiff prove by a preponderance of the

8  evidence that the defendant terminated plaintiff because of her

9  age?"

10          Remember, sugar, on the grocery list.

11          "That is, the defendant would not have terminated the

12 plaintiff but for her age."

13          I ask that you answer "yes" to Question No. 3 on the

14 verdict form.

15          "Question No. 4.  Claim for ADEA, Age Discrimination

16 in Employment Act/retaliation.

17          "Did the plaintiff prove by a preponderance of the

18 evidence that defendant terminated the plaintiff because she

19 complained to defendant that she had been discriminated against

20 based on her age; that is, that defendant would not have

21 terminated the plaintiff but for her complaint?"

22          Again, sugar, on the grocery list.

23          I ask that you answer "yes" to Question No. 4.

24          I'm going to skip down to 12, because this is where

25 we deal with age discrimination/willfulness,

Closing Statement

1    "ADEA/willfulness.  Did the plaintiff prove by a

2    preponderance of the evidence that the defendant knew or showed

3    reckless disregard for whether the plaintiff's termination was

4    prohibited by the ADEA?"

5         I ask that you answer "yes" to Question No. 12.

6         Now, back to Question No. 5.

7         "Claim for Family and Medical Leave Act, FMLA; Oregon

8    Family Medical Leave Act, retaliation/discrimination.

9         "Did the plaintiff prove by a preponderance of the

10   evidence that plaintiff's medical leave was a negative factor

11   in the defendant's decision to terminate her employment?"

12        I ask that you answer "yes" to Question No. 5.

13        "Question No. 6.  Claim for state law employment

14   discrimination.

15        "Did plaintiff prove that plaintiff's age was a

16   substantial factor in the defendant's decision to terminate the

17   plaintiff; that is, the defendant would not have terminated the

18   plaintiff but for her age?"

19        Again, as with the ADEA claim, the federal claim,

20   think of the grocery list, sugar on the list, and I ask that

21   you answer "yes" to Question No. 6.

22        And then you'll come to Question No. 7.

23        "Economic damages; backpay.  What lost wages and

24   benefits, if any, did plaintiff prove by a preponderance of the

25   evidence that she sustained as a result of defendant's unlawful

1    actions?"

2        The amount of loss of pay and benefits from the date

3    of firing up through the first day of trial, consistent with

4    Dr. Edelman's calculation, I ask that you insert "$575,982" in

5    response to Question No. 7

6        "Economic damages, front pay.  What lost wages and

7    benefits, if any, did the plaintiff prove by a preponderance of

8    the evidence that she would have earned had her employment not

9    been terminated as a result of defendant's unlawful action for

10   the period from the date of your verdict until the date when

11   the plaintiff would have voluntarily resigned, retired, or

12   obtained other employment?"

13       This is the front pay figure that Dr. Edelman

14   calculated for us.  I ask you insert "$3,005,021" in response

15   to Question No. 8.

16       I want to turn down to Question No. 10.

17       "Mitigation of all damages.  Did defendant prove by a

18   preponderance of the evidence that plaintiff failed to use

19   reasonable efforts to mitigate her damages?"

20       Remember, all of her job interviews -- in pharma and

21   out of pharma; all of her applications for employment; and

22   indeed finding a job that will turn into a full-time job on

23   August 1st.

24       I ask that you answer "no" to this question on

25   Question No. 10.

Closing Statement

1    Under question 11, "By what amount, if any, should

2 plaintiff's damages be reduced because she failed to mitigate

3 her damages," I ask that you insert "none."

4    So now let's turn to Question No. 9.

5    "Non-economic damages, emotional distress, suffering,

6 and reputational harm.  What damages for emotional distress,

7 suffering, or reputation harm, if any, did plaintiff prove by a

8 preponderance of the evidence that she sustained as a result of

9 defendant's unlawful actions?"

10    I ask that you insert "2,102,400" in this section.

11    How did I get there?  Well, remember the testimony

12 from Suzanne and from others that her migraines increased in

13 frequency and in severity.  Her doctor has diagnosed her with

14 anxiety and depression, giving her medication for both.  First,

15 not attending basketball games, as she once did.  And when she

16 did attend basketball games, popping Tums to get through it.

17    The diminished joy of long-time friendships.  We

18 don't live our lives in chunks of time.  We live minute by

19 minute.  We live hour by hour.  How much time is left before

20 lunch?  How many hours before the game starts?  How many hours

21 before the kids get home from school?  Or the grandkids come

22 home to visit?  How many hours before the kids leave?

23    This is important.  Think of it this way, because

24 what AstraZeneca did was not a one-time event.  It affects

25 Suzanne for the rest of her life.  It's not going away, and

Closing Statement

1  it's not going to get better with time.

2       Dr. Edelman has indicated that Suzanne can expect at

3  least 12 more years of work life until age 65.  We don't get to

4  come back in two years or five years or ten years and do it

5  again.  We don't get to update our assessment.  This is it for

6  Suzanne.  This is her one day in court.

7       Given the magnitude of the career-altering impact

8  here, I ask you award 2,102,400.  That amounts to $30 an hour,

9  using just her waking hours between now and the end of her work

10  life over that 12 years.  If this had happened at age 62, we

11  would be talking about less, but it didn't happen at age 62.

12  It happened age 53.

13       So $30 an hour for each working hour through the end

14  of her work life.  Who can argue with that?  And imagine what

15  would happen if you were to do it any differently?  AstraZeneca

16  would learn nothing.  Remember what Ms. Belknap and

17  Ms. Ceaser's testimony was?  They said that if they were given

18  the opportunity, they would change nothing -- they would do

19  nothing differently.  AstraZeneca would be rewarded for firing

20  Suzanne and for promoting DiNunzio.  You can't let that happen.

21  I'm confident that you won't let that happen; that you will

22  speak with one voice, as the conscience of the community, to

23  protect Suzanne, to protect AstraZeneca's current employees, to

24  protect AstraZeneca's future employees, and to protect all of

25  us.

Closing Statement

1       Thank you.

2       THE COURT:  Thank you.  I will have counsel take a

3   quick ten-minute recess.

4       Thank you, ladies and gentlemen of the jury.  Ten

5   minutes.  Then we will come back in the box, and defendant will

6   commence their closing.

7       Thank you.

8       (Recess.)

9       (Open court; jury present:)

10      THE COURT:  Thank you.

11      MS. RIECHERT:  Mr. Oswald argues that this case is

12  about safety.  This case has nothing to do with safety.  The

13  issue in this case is why was Ms. Ivie terminated?  Ms. Ivie

14  was terminated because she was not doing her job.  In fact, she

15  hadn't been doing it for a while.  The sales representatives

16  who came in on Friday told you that.

17      So what changed?  Two things happened:  In 2017, the

18  company instituted the 80/20 rule requiring that all DSMs spend

19  80 percent of their time coaching in the field.  Now, this was

20  a very important rule for AstraZeneca, because it decided that

21  coaching reps in the field was the best way to help them

22  succeed.  Observing the reps as they interacted with the

23  doctors was the best way to provide constructive feedback on

24  how they could improve.  The company wanted to be sure that the

25  DSMs were spending most of their time in the field with the

Closing Statement

1   reps coaching them.

2        The second thing that changed, besides the 80/20

3   rule, occurred at almost the same time.  Things were changing

4   in Ms. Ivie's district, and selling products, AstraZeneca's

5   products, was becoming much harder.  As you heard, generics and

6   competitors were entering the market.  They were becoming more

7   popular.  Then that big healthcare provider in the Salt Lake

8   City region, the biggest healthcare provider, SelectHealth,

9   added some other products to their formulary for patients with

10  asthma.  That meant that doctors could write for prescriptions

11  other than SYMBICORT.  Simply put:  Things started changing in

12  the company, and those changes had nothing to do with

13  Ms. DiNunzio.

14       Now, Ms. DiNunzio has admitted that she did not

15  comply with the 80/20 rule.  She wants you to believe that she

16  was fired for making complaints.  She wants you to ignore the

17  fact that she refused to follow the clear requirements of the

18  job.  She wants you to believe that somehow the meritless

19  complaints were the reason she was fired.  The law does not

20  permit employees who are not meeting expectations from being

21  fired just because they made complaints.

22       Just because an employee makes the complaint does not

23  mean the employee can't be fired.  The employee still has to do

24  her job.  If you conclude, as the evidence has shown, that

25  Ms. Ivie did not do her job, and that's why she was fired, then

Closing Statement

1   you should decide this case in favor of AstraZeneca.  So how do

2   we know that Ms. Ivie was fired for not doing her job?  First,

3   she admits that she didn't spend 80 percent of her time in the

4   field coaching her team throughout the time that she worked for

5   Ms. DiNunzio.

6        When you're deliberating -- and I have a binder of

7   exhibits for you.  I'm going to mention the numbers so you can

8   refer to them in the binder.  If you want to take notes, that's

9   fine with me.  I'm not going to go through all the exhibits.

10  Believe me, there are hundreds of exhibits in this case, but we

11  each have picked out the ones that are most important for you.

12       While you are deliberating look, look at

13  Exhibit 56 -- look at Exhibit 506.  That's the written warning

14  that Ms. Ivie received in March of 2019, making it clear what

15  the job requirements were.  Even after she returned from leave

16  on April 16th, she still didn't do what she was supposed to do.

17  She was still not coaching her team in the field, as

18  AstraZeneca's rules require.  Those rules were applicable to

19  all district sales managers, not just Ms. Ivie.

20       Look at Exhibit 92, those are the notes of the

21  meeting on June 3rd, 2019, right before Ms. Ivie was let go.

22  In those notes, she admits she was out of sync and out of whack

23  with the rest of her team regarding field coaching.  In that

24  same time, after she returned from her leave, she was canceling

25  one-on-one meetings with Ms. DiNunzio.  When she did show up,

Closing Statement

1   she was unprepared and did not know the business strategy.

2   That's Exhibit 95.  She was refusing to communicate with her

3   manager, even after Dawn Ceaser tried to set up a mediation

4   between them.  That's in Exhibit 57.  Ms. Ivie admitted that

5   she had lost trust in her manager.  The team was not receiving

6   the coaching that they needed.

7           Now, remember, the same rule applied to all the DSMs.

8   All the other DSMs understood it.  All the other DSMs followed

9   it.  Not one single witness other than Ms. Ivie came into court

10  to tell you that they didn't understand the rule and that they

11  didn't comply with it.

12          Now, the evidence is also clear that Ms. Ivie knew

13  about the rule but chose not to follow it.  Look at the

14  exhibits -- Exhibit 522.  That's that April 4th email that we

15  showed you many times -- April 4th, 2018.  That's the email

16  from Ms. DiNunzio, including Ms. Ivie.  Ms. Ivie admits she got

17  it; she read it.

18          Attached to that is that FAQ that described the

19  difference of coaching with customer engagement and coaching

20  without customer engagement and said they had to spend no more

21  than 20 percent of their time coaching without customer

22  engagement.

23          Now, Mr. Oswald argues if it is not in the employee

24  handbook, if it is not in the code of conduct, employees don't

25  have to do it.  This is a rule just for the salespeople.  Not

Closing Statement

1   everything your boss tells you you have to do has to be in the

2   code of conduct.  If the boss tells you to write a report, you

3   have to write a report, even though the code of conduct doesn't

4   say so.  If the boss tells you to go to a meeting, and you

5   don't go to a meeting, you still have to go to the meeting,

6   even if the handbook doesn't tell you that you have to do so.

7   You have to do what your boss tells you to do.

8           Look at Exhibit 520.  That's the May 29th email to

9   all of the DSMs, including Ms. Ivie.  Again, Ms. Ivie didn't

10  dispute that she read it; that she received it.  Again,

11  Ms. DiNunzio describes the difference between coaching with and

12  without customer engagement.  And at the end of it, she says,

13  "Please review the attachments and ensure that your time

14  reflects the 80/20 split going forward."

15          Now, let's look at Exhibit 504.  That's

16  Ms. DiNunzio's notes of her meeting with Ms. Ivie on June 15th.

17  Ms. Ivie did not dispute the accuracy of these notes.  And as

18  the notes show, at that meeting Ms. Ivie admits that she was

19  told that she was not to use field coaching reports to capture

20  distance coaching even though she admits that she had been

21  doing that.  As these notes show, Ms. DiNunzio specifically

22  told Ms. Ivie on June 15th, 2018, that she was not to use field

23  coaching reports for conversations except for Spokane.

24          Look at Exhibit 507.  That's the December 18th, 2018,

25  email from Ms. DiNunzio to Ms. Ivie in which she points out for

Closing Statement

1   the first three-quarters of 2018 that Ms. Ivie was only

2   coaching 48 to 53 percent of the time with customer engagement.

3   Again, Ms. DiNunzio attaches those same FAQs, telling her that

4   she is not to spend more than 20 percent of her time coaching

5   without customer engagement.

6           Ms. Ivie did not dispute any of the numbers in this

7   email, because she couldn't.  All of these documents show that

8   Ms. Ivie knew she was supposed to be compliant with the 80/20

9   rule, and she was not doing so.

10          You should look at Ms. Ivie's review.  That's

11  Exhibit 510, which Ms. DiNunzio showed Ms. Ivie when they met

12  on December 19th.  This is really important.  All of these

13  documents occurred before Ms. Ivie made any complaints of

14  off-label marketing or age discrimination.  Keep that in mind

15  when you're deliberating regarding the reason she was

16  terminated.

17          You can't dispute that all of these issues were on

18  the table before any of the alleged complaints of Ms. Ivie;

19  that the complaints that she said were the reason for the

20  termination.  So all of these exhibits, all of these documents,

21  were already on the table before Ms. Ivie makes any complaint

22  of off-label marketing on December 19th.

23          The timeline in this case is very important.  You

24  should look at the fact that it was not until immediately after

25  Ms. DiNunzio and Ms. Ivie had that review meeting in which

Closing Statement

1  Ms. DiNunzio told Ms. Ivie, "You're not meeting expectations;

2  I'm going to give you a one or two on your review," it was

3  immediately after that that Ms. Ivie files her complaint with

4  the ethics line.  Think of the timing of that.  She gets a bad

5  review, and immediately afterwards she raises a complaint for

6  the first time.  The sequence of events is very telling.

7           Now, let's look at the documents that Ms. DiNunzio

8  created after the complaint was filed but before she knew about

9  the complaint.  Exhibits 5 and 6 are the January 15th emails in

10 which Ms. DiNunzio details to Ms. Belknap all the time she has

11 told Ms. Ivie to comply with the 80/20 rule and the fact that

12 she wasn't doing it, wasn't going on field rides with her team,

13 and that she was falsifying her field coaching reports.

14           Then look at Exhibit 91, page 3.  Those are

15 Ms. Belknap's notes of her meeting with Ms. DiNunzio on

16 February 7th, 2019.

17           Look at Exhibit 23.  Those are the exhibits

18 Ms. DiNunzio prepared for her meeting with Ms. Ivie on the

19 18th.  This, too, was before Ms. DiNunzio knew anything of any

20 complaint.

21           Look at page 3 of Exhibit 91.  Those are the notes of

22 the meeting with Ms. DiNunzio and Ms. Ivie on February 18th.

23 Look at the admissions that Ms. Ivie makes in these notes,

24 which are not in dispute.

25           Look at Exhibits 502 and 503.  Those are

Closing Statement

1  Ms. DiNunzio's emails after that meeting on the 18th of
2  February, refuting the allegations that Ms. Ivie had made
3  during that meeting.

4        So the evidence is undisputed that these documents
5  were all written before Ms. DiNunzio even learns that there is
6  a complaint against her.

7        Ms. DiNunzio first learns of the complaint on
8  February 21st, 2019.  All of the witnesses said that.  There
9  was not one single witness who said that she knew about it
10 earlier.

11       Mr. Oswald argues that her boss knew about it,
12 Mike Hartman, but there is no evidence that Mike Hartman ever
13 told Ms. DiNunzio about the complaint.

14       In fact, if you look at the 2-21 text messages --
15 that's Exhibit 96 -- those text messages are the ones that show
16 that was the day that Ms. Belknap tells Ms. DiNunzio about the
17 complaint.  In those text messages, Ms. DiNunzio says, "Does
18 Mike know," meaning does Mike Hartman know about this complaint
19 against me?  If, as Mr. Oswald theorizes that Mr. Hartman had
20 already told her about the complaint, she would have never put
21 that in the text message at the time, because she would know
22 that Mike Hartman knew about the complaint.

23       So DiNunzio does not learn about the complaint until
24 February 21, three days after that February 18th meeting.  And
25 even then Ms. DiNunzio didn't know who made the complaint.  She

Closing Statement

1    didn't know that Ms. Ivie was the one who made the complaint

2    until she was interviewed on March 1st, 2019.

3        So the timeline does not support Ms. Ivie's claim

4    that Ms. DiNunzio retaliated against her.  It's not possible to

5    retaliate if you don't know about the complaint.  Ms. DiNunzio

6    did not know about the complaint until February 21st, and

7    everything she did before that -- to document her concerns

8    about Ms. Ivie -- all of that occurred before she knew of the

9    complaint and could not have been retaliatory for that reason.

10        So what are Ms. Ivie's excuses for not complying with

11   the 80/20 rule?  First, she said she didn't realize it was a

12   requirement.  But the documents in this case show that she did

13   know it was a requirement -- the ones I've already gone through

14   with you -- these emails in April and May and June and December

15   all show that she knew that it was a requirement.

16        And witnesses came into court and told you that it

17   was a requirement, and they knew it.  Ms. Ivie talks about

18   Andrew Maratas, who got a PIP instead of a written warning.

19   But remember, all of the witnesses talked about the discipline

20   track and the performance track.  Ms. Ivie was on the

21   discipline track, because she wasn't doing what she was told to

22   do.  That results in a written warning.  Mr. Maratas was on the

23   performance track.  He was going out into the field coaching

24   his people.  He just wasn't doing it well enough.  That's the

25   performance track.  That's how we get a performance improvement

1  plan.  You don't get both.  You get one or the other.  Ms. Ivie

2  was on the discipline track; she got the warning.  Mr. Maratas

3  was on the performance track; he got the PIP.

4          Mr. Oswald argues that Ms. Ivie was not in the

5  interviews that Ms. Belknap and Mr. Pomponi did of her

6  complaint, yet Ms. DiNunzio was in the meeting with Ms. Ivie to

7  discuss Ms. DiNunzio's concerns about the coaching

8  requirements.  But it's typical to have a manager in a meeting

9  when you're talking about an employee's performance concerns.

10  The HR person doesn't know what those concerns are.  So

11  obviously you need the manager in the meeting to go through the

12  concerns that the employee had -- the manager had about the

13  employee.  But it is not typical to have the complaining party

14  attend an investigation meeting about that complaining party's

15  complaint.

16          The second reason that Ms. Ivie gives for not

17  complying with the 80/20 rule was that she was trying to save

18  the company money, but that doesn't explain why she wasn't

19  coaching the people in Salt Lake City 80 percent of the time.

20  They lived in the same city as she did.

21          Ms. Ivie admits that no one ever told her, "Hey,

22  don't coach your people 80 percent of the time because of

23  budget concerns."  The other district sales managers who

24  testified on Friday, they confirmed that they understood the

25  80/20 rule.  There were no budget constraints on field

Closing Statement

1  coaching, and they continued to coach 80 percent of the time.

2  And even Larry Hinson, Ms. Ivie's witness on Friday morning, he

3  told you that there were no budget limits on coaching in the

4  field, and that's why he continued to do so.

5          So the evidence is clear that Ms. Ivie knew she had

6  to meet the 80/20 rule; that she failed to do so; and that's

7  the reason she was fired.

8          So is it a big deal that she wasn't meeting the 80/20

9  rule, coaching her team in the field?  The evidence showed it

10  was a big deal.  Ms. Ivie's district was not performing.  The

11  members of her team were not performing.  They needed her help.

12  They needed her in the field observing them as they interacted

13  with the doctors and coaching them on how to get better.

14          Even Ms. Ivie's two witnesses, Linda Truax and

15  Larry Hinson, they both agreed that in-person coaching is very

16  important; that the DSMs could not see things if they were

17  doing virtual coaching, and they needed to be in the field with

18  the rep so that they could see what the rep was doing and so

19  that they could coach the rep on how to better communicate with

20  the doctors.

21          In fact, Larry Hinson called virtual coaching a waste

22  of time and energy, and he did almost all of his coaching in

23  the field with his reps so he could give them feedback on what

24  he saw and help them improve their selling skills since that's

25  what DSMs are paid to do.

Closing Statement

1    The witnesses on Friday, who worked for Ms. Ivie --

2  Bob Stickle, Chris Thomsen, Craig Barnes -- they all confirmed

3  that they needed Ms. Ivie's help, and they didn't get it.

4  Remember, after Ms. Ivie was let go, Chris Thomsen interviewed

5  for the job and got it.  And he testified that when he got the

6  job, he was out in the field coaching the team.  And as a

7  result, the district improved significantly.  Under Ms. Ivie,

8  the district was in the bottom 13 percent of the country at the

9  end of 2018.  Mr. Thomsen said that at the end of 2019 every

10  territory in the Salt Lake City district finished in the top

11  30 percent in the nation.  That's how he improved the

12  performance -- due to the in-person coaching that he did of the

13  team.

14    So I know Mr. Oswald has already gone through the

15  verdict form with you, but I'm going to do it one more time.

16    So this is the first question that you are going to

17  be asked to answer on the verdict form when you go back in the

18  jury room.  I've highlighted what I consider to be the most

19  important language.

20    First, the law requires that Ms. Ivie prove her

21  claims.  As the judge will explain to you, this means that

22  Ms. Ivie must convince you that her claim is more probably true

23  than not true.  The evidence is very clear that Ms. Ivie was

24  fired for not meeting the expectations of the job and not for

25  the reasons that Ms. Ivie has come to court today to tell you.

Closing Statement

1  She has not proved her case.

2      Second, Ms. Ivie has to prove that she was fired

3  because she complained.  This means she must prove that

4  AstraZeneca would not have terminated her employment but for

5  her complaint of off-label marketing.  What does that mean?

6  How do you decide that?  The question is:  Would Ms. Ivie have

7  been fired even if she had not made the off-label complaint

8  that she did?  And the evidence has shown that the answer to

9  that question is, yes, she would have been terminated, even if

10  she hadn't complained, because she wasn't doing her job.  This

11  means that complaints were not the reason for her termination;

12  and therefore, Ms. Ivie has not met her burden of proof.

13      Remember, too, that Karen Belknap testified that

14  other DSMs had been fired for not meeting the coaching

15  requirement.  This was not a problem that was unique to

16  Ms. Ivie.  All Ms. Ivie had to do was do her job.  All she had

17  to do is do what Ms. DiNunzio told her to do.  It wasn't hard.

18  All the other DSMs were doing it.  But even after receiving the

19  written warning in March, she continued in April and May 2014

20  not to do the job that everyone else was doing and that she was

21  paid a lot of money to do.  She was paid $223,000 a year to do

22  her job, and she wasn't doing it.

23      Now, Mr. Oswald argued that these August/

24  September 2018 emails were complaints that Ms. Ivie was making

25  about off-label marketing.  I went through these emails with

Closing Statement

1  you.  It is Exhibit 123.  You will see when you look at that

2  email, there is no complaint about illegal or unethical

3  conduct.  There is no statement by compliance that there was

4  any unethical conduct.  There was no statement by compliance

5  that insights couldn't be sent out.  All this email chain

6  showed is that Ms. DiNunzio was asking Ms. Ivie, as the

7  compliance person, is it okay for the sales reps to email local

8  insights between each other?  Ms. Ivie, as she is supposed to

9  do, if she doesn't know the answer, goes to the compliance

10  department and says, "Hey, is it okay for the reps to email

11  insights between each other?"  The compliance department writes

12  back and says, "Hey, we don't regulate these things.  But if

13  you need some training, you can get training from the CL&D

14  department."

15        But Ms. DiNunzio says, "We don't need training; we

16  just got trained in March."  So that's when she says, "Let's

17  put up a pause on this.  Let's put a pause on this," meaning

18  let's not get more training.  Ms. DiNunzio talked about all the

19  training they had in March and the 70-page slide deck and what

20  an insight was and how it had to be compliant.  Now, Ms. Ivie

21  couldn't remember that training and couldn't remember the slide

22  deck.  But Ms. DiNunzio remembered it, and she said, "We don't

23  need more training.  Let's put a pause on more training."

24  There was no complaint about any off-label conduct in that

25  email chain.

Closing Statement

1     The issue in this case is not whether Ms. Ivie's

2 complaints were true or not.  You heard that AstraZeneca

3 investigated her complaints and found them to be

4 unsubstantiated.  But even if they had been substantiated,

5 under the law, if she would have been fired anyway for not

6 doing her job, she cannot prevail on her claims.  So even if

7 the complaints were substantiated, she still has to be able to

8 do her job.  And if she doesn't do her job, then she cannot

9 prevail on her claims.

10     Now, in his closing argument, Mr. Oswald mentioned

11 the fact that that Ms. Amy Welch, the HR business partner who

12 testified on Friday, who, by the way, said she was not even

13 involved in the termination decision, that she sent a document,

14 after Ms. Ivie was let go, to Barbara McCullough, listing the

15 reasons for the termination.  You can see these are the reasons

16 that he quoted from this document.  He focused only on the

17 second bullet, "Suzanne is not willing to engage" -- the first

18 bullet is, "Suzanne is not willing to engage in business as

19 usual work."  That's one of the reasons.  We know that to be

20 true from the testimony.

21     The second one is the one he focused on, "Suzanne is

22 not accepting the results of the investigations that have

23 occurred and continues to raise similar complaints."  It goes

24 on, "Due to the continued performance challenges and concerns

25 with Suzanne delivering against the duties of the job, the

1   business will be proceeding with terminating Suzanne Ivie from

2   the organization as of June 6th, 2019."

3           What Mr. Oswald did not show you was page 1 of that

4   same memo.  Look at page 1.  In it, Ms. Welch writes, "Suzanne

5   is not engaging with Stephani and continuing to push back on

6   Stephani.  Additionally, she would regularly cancel meetings,

7   and the team was still not being coached, as expected as part

8   of the DMS role."

9           This is still in this memo.  "Suzanne continued to

10  raise complaints that were the same as previously raised.  HR

11  and compliance have engaged in conversations with Suzanne to

12  remind her that the complaints that had been previously

13  investigated and had been unsubstantiated."

14          So he didn't show you page 1.  But if you look at the

15  entire memo, you will understand the context of the statement

16  in page 2.

17          On page 1, the memo explains that what Suzanne is

18  doing is refusing to accept complaints that have already been

19  made and investigated, not that she was fired and continuing to

20  make new complaints.  That's why Ms. Ivie says on page 2 that

21  she is being fired for not accepting the results of complaints

22  that were previously made and investigated.

23          Mr. Oswald also mentioned the McCullough email, but

24  remember, Ms. McCullough was not involved in the termination;

25  didn't know anything about the reasons for it.  She just wanted

1   to be sure, as is important, that everything was being handled

2   appropriately.  Ms. McCullough never suggested that the

3   termination was improper.

4          Mr. Oswald talked about the corporate integrity

5   agreement.  Remember that agreement was for a different

6   product, a different group of people, a different group within

7   the company.  It had nothing to do with SYMBICORT.  It had

8   nothing to do with Ms. DiNunzio or her district or Ms. Ivie's

9   district.

10         All of the witnesses, including the plaintiff's own

11  witness, Linda Truax, agreed that the company took compliance

12  seriously.  It instituted annual compliance training for the

13  entire company, as well as a new code of conduct.

14         As the witnesses testified, Ms. Ivie needed to move

15  on, build her relationship with DiNunzio, instead of refusing

16  to meet with her and repeating complaints that had already been

17  raised and investigated and resolved.

18         Let's look at Question No. 2 on the verdict form.

19  This is the claim for Oregon whistleblower retaliation.  Again,

20  "Did the plaintiff prove by a preponderance of the evidence

21  that the defendant terminated plaintiff's employment because

22  she made a good faith report," and it goes on, "and the report

23  made a difference in different's decision to terminate

24  plaintiff?"

25         So the new element in this one is the good-faith

Closing Statement

1    report.  That wasn't in the False Claims Act one.  So you

2    should look at the jury instructions on this claim, and I'm not

3    going to go through all the evidence why she cannot prevail on

4    the complaint, except to note that the complaint had to be in

5    good faith in order to state a claim under Oregon law.

6            Given the timing of the complaint right after the bad

7    review, complaining of conduct that occurred -- of conduct

8    months earlier, you may well conclude that the complaints were

9    because Ms. Ivie was angry at Ms. DiNunzio for the bad review

10   and wanted to get back at her and therefore were not made in

11   good faith.

12           Slide No. 3.  Age discrimination.  Did plaintiff

13   prove by a preponderance of the evidence that the defendant

14   terminated the plaintiff because of her age; that is, that

15   defendant would not have terminated the plaintiff but for her

16   age?

17           It's the same standard as the federal False Claims

18   Act standard that we talked about in response to

19   Question No. 1.  Unless Ms. Ivie has convinced you that she was

20   fired because of her age, that AstraZeneca would not have fired

21   her if she was younger, then you should find in favor of

22   AstraZeneca on this claim.

23           So why does Ms. Ivie think it was her age?  Three

24   things:  Benatar, old pharma, and wrinkles.  I am not going to

25   go through all the evidence on that.  I'm confident that you

Closing Statement

1    will determine that none of these three things showed that

2    AstraZeneca discriminated against Ms. Ivie because her age.

3         In addition, AstraZeneca presented evidence that

4    Ms. Ivie's age had nothing to do with the termination.  She was

5    terminated for not meeting the requirements of the job.

6    Remember, Ms. Ivie is not is that much older than Ms. DiNunzio.

7    In fact, she is about the same age or not much older than the

8    other district sales managers.  Remember Bob Stickle that came

9    into court on Friday?  He is 66 years old.  He still remains

10   employed by AstraZeneca.  He testified that he has never

11   experienced age discrimination from AstraZeneca or from

12   Ms. DiNunzio.  In fact, Ms. Ivie presented no witnesses who

13   supported her claim of age discrimination.  She simply cannot

14   meet the burden of proof.

15        All right.  The next question you get to answer is

16   whether she was retaliated against for complaining of age

17   discrimination, the same standard:  Did the plaintiff prove by

18   a preponderance of the evidence that the defendant terminated

19   plaintiff because she complained to defendant that she had been

20   discriminated against based on her age; that is, that defendant

21   would not have terminated plaintiff but for the complaint?

22        The same standard as the False Claims Act, the one we

23   discussed earlier and the age discrimination that we discussed

24   earlier and the federal law.  Plaintiff has to prove that she

25   was fired because she complained of age discrimination.  This

means that she must prove that AstraZeneca would not have terminated her but for her age discrimination claim.

As with the other claims, Ms. Ivie has failed to prove that she was fired because she complained of age discrimination rather than because she failed to meet the requirements of the job, after being repeated told, orally and in writing, that she had to do so.

The next claim involves the Family Medical and Leave Act and then the Oregon equivalent, the Oregon Family Leave Act. Did plaintiff prove by a preponderance of the evidence that plaintiff's medical leave was a negative factor in the defendant's decision to terminate her employment?

So what evidence did Ms. Ivie present to you to support her claim that AstraZeneca terminated her employment because she took a leave? Ms. Ivie points to a number of things that happened after she returned from leave. I'm not going to go through all of them. They're in Exhibit 94.

Just let me pick out a couple of them. Ms. Ivie claims -- by the way, Ms. Belknap summarizes the entire investigation that she did into -- I think there were nine complaints that Ms. Ivie made when she returned from leave that she felt that Ms. DiNunzio was retaliating against her. Ms. Belknap conducted a thorough investigation, and that exhibit, Exhibit 94, goes through the entire investigation of the findings and the evidence that supported the findings.

Closing Statement

1      Let's take a look at a couple of findings.  Ms. Ivie

2  claimed that the number of coaching days increased from 150 to

3  160 while out on leave.  Instead of asking Ms. DiNunzio, "Hey,

4  how did the number of days go from 150 to 160," she made a

5  complaint with HR about it.  As Ms. Belknap explained, there

6  was an email to the entire U.S. sales team, which is part of

7  Exhibit 94, that increased the number of field coaching days

8  from 150 to 160 for everyone.  That increase wasn't done to

9  retaliate against Ms. Ivie for taking the leave; instead it

10  shows the importance that the company placed on DSMs doing

11  in-person coaching of their reps since now it required even

12  more coaching.

13      Ms. Ivie argued that Ms. Ms. DiNunzio retaliated

14  against her for taking leave when she asked the other DSMs to

15  help her when she returned from leave.  This is what we call in

16  employment law:  No good deed goes unpunished.

17      Ms. DiNunzio was trying to help Ms. Ivie get back up

18  to speed on all the things that she'd missed while she was out

19  on leave.  Now Ms. Ivie turns that around and says that

20  Ms. DiNunzio is retaliating against her by asking other people

21  to help her on the things she missed while out on leave.  The

22  evidence shows this was not retaliation.  In fact, it was quite

23  the opposite:  Ms. DiNunzio was trying to help Ms. Ivie

24  succeed.

25      Look at what DiNunzio says at the very end of the

1 email to the other DSMs, copying Ms. Ivie, asking them to help

2 her out.  It is part of Exhibit 94.  "Thank you for pitching in

3 to make sure that Suzanne has everything she needs to lead and

4 coach her team."

5          Now, another thing that Ms. Ivie claims is

6 retaliation for taking the leave is the fact that her

7 compliance ambassador role was taken away after she returned

8 from leave.  But as the evidence in this case showed,

9 Ms. DiNunzio had asked Ms. Ivie to cut back on these

10 nonessential roles in December of 2018 in that review meeting.

11          Ms. DiNunzio told Ms. Ivie to focus on improving the

12 performance of the team rather than these nonessential things

13 that were taking up her time.  This had nothing to do with

14 Ms. Ivie taking the leave, because it had occurred long before

15 she took her leave.

16          Ms. Ivie presented no other evidence that AstraZeneca

17 terminated her employment as a result of her leave.  She

18 presented no evidence that any other employees were terminated

19 because they took a leave.  On the other hand, AstraZeneca

20 presented substantial evidence that Ms. Ivie was terminated not

21 because she took a leave, but because she wouldn't do her job

22 even after being repeatedly told orally and in writing that she

23 needed to do so.

24          Now, one of Mr. Oswald's arguments is that Ms. Ivie

25 was told only to complain to Ms. DiNunzio, the person she filed

1   the complaint against.  Think of the testimony of

2   Karen Belknap.  Ms. Ivie was complaining when she returned from

3   leave about business decisions that the company has made.

4   Ms. Belknap didn't know the answer to those questions, so she

5   told Ms. Ivie, "If you have these questions, why don't you ask

6   Stephani, why don't you go back to Stephani and ask her the

7   questions."  It's not fair to say that Ms. Belknap just sent

8   her back to Ms. DiNunzio.  When those complaints were made by

9   Ms. Ivie, Ms. Belknap fully investigated them.  She met alone

10  with Ms. Ivie to understand the complaints and then wrote up

11  her report as to the results of the investigation

12          Likewise, Dawn Ceaser didn't refuse to help Ms. Ivie.

13  To the contrary, she too investigated the new complaints that

14  Ms. Ivie was making.  She met with Ms. Ivie without

15  Ms. DiNunzio present to investigate the complaints.  She also

16  tried to set up a meeting between Ms. DiNunzio and Ms. Ivie so

17  that they could get their relationship back on track.  It is

18  not fair to say into these HR people were not trying to help

19  Ms. Ivie and improve her relationship with Ms. DiNunzio so that

20  she could continue to work at AstraZeneca going forward.

21          The next question you're going to be asked to answer

22  is a claim for state law employment discrimination.  Here is

23  the question:  Did plaintiff prove that the plaintiff's age was

24  a substantial factor in the defendant's decision to terminate

25  the plaintiff; that is, that defendant would not have

Closing Statement

 1   terminated the plaintiff but for her age?

 2          This is the claim under Oregon law, similar to but

 3   not identical to the federal law claim.  Look at the jury

 4   instructions on that.  I'm not going to repeat all the reasons

 5   why the evidence does not show that Ms. Ivie cannot prove that

 6   she was discriminated against based on her age.

 7          All right.  The next questions relates to damages.

 8   As the judge will instruct you, and as the verdict form

 9   explains, you don't need to answer any of these damage

10   questions unless you've already found that AstraZeneca had

11   retaliated or discriminated against Ms. Ivie.  So you can skip

12   these questions entirely unless you find AstraZeneca is liable.

13          Now, you will recall that Ms. Ivie submitted two

14   experts in support of her damages claim.  And as the judge will

15   explain to you in the jury instructions, you can accept or

16   reject the testimony of these experts; give it as much weight

17   as you think it deserves.

18          The first expert was Mr. Sevart.  He was that

19   vocational expert.  The second was Dr. Edelman.  Dr. Edelman

20   told you he's just the numbers guy.  He relied entirely on what

21   Mr. Sevart said.  So if you don't find Mr. Sevart credible or

22   reasonable, then you shouldn't rely on the numbers that

23   Dr. Edelman came up with.

24          Now, there are lots of reasons why you shouldn't rely

25   on Mr. Sevart's numbers.  First of all, he said that his

Closing Statement

1 numbers were based on a 100 percent probability that Ms. Ivie

2 would have been promoted and that her pay would have increased

3 by 50- to 60,000 a year, but he did no research to support

4 whether that assumption is true, and there is no evidence to

5 support Ms. Ivie's claim that she would have been promoted.

6 As Amy Welch testified on Friday, there were very few

7 possible openings in the training department when Ms. Ivie

8 thought she might have got a job. All of them were in

9 Delaware, not in Salt Lake City, and it would be a lateral

10 transfer, not a promotion, and, in fact, the training jobs paid

11 less than the 223,000 a year that Ms. Ivie was getting in her

12 district sales manager job.

13 So even if there had been an opening, and even if

14 Ms. Ivie applied for the position, there was no guarantee she

15 would get it.

16 Amy Welch also testified that Ms. Ivie was not on the

17 succession planning list, which is where the high performers

18 are considered for promotion. So if you find that Ms. Ivie

19 would not have been promoted and would not have got a 50 to

20 60 percent pay raise, then Mr. Sevart's numbers go out the

21 door, and Dr. Edelman's numbers likewise go out the door,

22 because he relied on Mr. Sevart's number.

23 Another reason that Mr. Sevart's numbers -- you

24 shouldn't rely on his testimony -- is that he said that

25 Ms. Ivie couldn't get a job because she was a whistleblower.

Closing Statement

But he presented no evidence to support his claim that the reason that she couldn't get a job was because she was a whistleblower or that any of the jobs that she applied for even knew she was a whistleblower.

Ms. Ivie admitted that she certainly didn't tell anyone that she was a whistleblower. In fact, she told some of the people that she hadn't even been fired.

So if a potential employer had Googled Ms. Ivie, and there is no evidence that anybody did, and if they found the lawsuit, perhaps they wouldn't have hired her because they had, in fact, found out she had been fired, and she wasn't accurate in her application.

Third, Mr. Sevart assumed that Ms. Ivie would have stayed at AstraZeneca through retirement. He did not consider the fact that AstraZeneca went through after large reduction in force in December of 2020 that resulted in one of the DSMs in Ms. Ivie's region being laid off. He didn't consider whether Ms. Ivie instead of this other DSM would have been laid off -- instead of the other DSM -- which would have cut off her damages at that time.

So again, all of his calculations assume that she would have stayed employed through retirement, and he didn't discount for the fact that she might have been let go in December of 2020 instead of the other DSM in that district.

Another reason to not rely on the numbers of

Closing Statement

1   Mr. Sevart is that he compared Ms. Ivie with someone who has

2   four to five years of sales management experience, even though

3   Ms. Ivie had 30 years of experience, and even though he agreed

4   that sales management experience can go from one industry to

5   another.

6           Finally, he called Ms. Ivie a C-level executive to

7   explain why it took so long for her to find a new job.  A

8   C-level executive is the chief executive officer, the chief

9   information officer, the chief financial officer -- the ones

10  with this "chief" in their name.  That's what C-level executive

11  means.  Ms. Ivie was not a C-level executive.

12          The next question you are going to be asked to answer

13  relates to economic damages/emotional distress.  What damages

14  for emotional distress or suffering, if any, did plaintiff

15  prove by a preponderance of the evidence that Ms. Ivie

16  sustained as a result of the unlawful conduct?

17          As the judge will instruct you and as the verdict

18  form makes clear -- this verdict form is complicated.  It says

19  if "yes to this, then go to that," or, "no, go here."  You have

20  to draw a little map to show where you are going.

21          But as the judge will explain, and the verdict form

22  explains, you only answer this question on emotional distress

23  if you find in favor of Ms. Ivie on her False Claim Act claim

24  or her Oregon state law whistleblower and retaliation claim.

25  Emotional distress claims are not recoverable under the ADEA

Closing Statement

1    claim -- that's the federal age discrimination claim, the

2    Family and Medical Leave Act claim or Oregon's Family Medical

3    and Leave Act claim.  Even if you find in favor of her on some

4    of those claims, you don't get to emotional distress; only on

5    the other claims.

6          So there is no doubt that being fired was upsetting

7    to Ms. Ivie.  It is to anybody.  But what evidence did Ms. Ivie

8    submit to support her claim that she suffered emotional

9    distress because she was fired?  Well, first, she told you that

10   the emotional distress started in October and November of 2018

11   before she was fired, before she made the complaint in

12   December, before she got the written warning in March.  But it

13   was also at that time that her team was at the bottom of the

14   country in meeting its performance requirements, and that would

15   be upsetting to anybody, and it was no doubt upsetting to

16   Ms. Ivie.  But she doesn't get damages for that, because it was

17   unrelated to complaints and unrelated to her age.

18         Second, Ms. Ivie presented testimony of her doctor

19   who treated her on March 1st.  Again, this was right at the

20   time she knew she was going to get the written warning.  It is

21   not surprising she was upset when she was told she was going to

22   get a written warning.  But that had nothing to do with her

23   complaints; nothing to do with her age.

24         Remember that the discussion with Ms. Ivie about

25   Ms. DiNunzio's concerns about Ms. Ivie not meeting the job

Closing Statement

requirements was on February 18th, and Ms. DiNunzio didn't even know that Ms. Ivie had complained until after then.

Ms. Ivie submitted no testimony from any doctor showing that she was treated after her termination.

Now, Ms. Ivie presented testimony from three of her friends who flew out here from Utah to discuss her emotional distress. That's what good friends do. First, Jenny Capell. She said that Ms. Ivie used to go to basketball games and practices three to four times a week, but towards the end of 2018 she cut back on the number of games and practices she was attending.

Now, as a full-time employee with a job that required travel, it's surprising that Ms. Ivie had enough free time to go to three or four basketball practices or games a week. Remember, Chris Thomsen told you that his son played basketball too, but that didn't stop him from coaching in the field and traveling to reps, even if it meant him missing his son's basketball games.

Ms. Capell's testimony does not support Ms. Ivie's claim that she suffered emotional distress because of her complaints or because of her termination, because Ms. Capell said that that emotional distress started in October or November of 2018, before she made any complaints and at the time that her district's performance was suffering and her numbers were so low.

Closing Statement

1       Now, Ms. Ivie brought in two other friends from her

2  college days.  They talked about the girls' weekend that they

3  had at Ms. Ivie's house in July of 2019 shortly after Ms. Ivie

4  was let go in June of 2019.  They said that Ms. Ivie was not

5  her usual self at that girls' weekend.  In fact, both of them

6  used the same word -- "surfacey" -- to describe Ms. Ivie.

7  Again, it is not surprising that Ms. Ivie was feeling down

8  after being laid off a month earlier.  In fact, it is pretty

9  impressive that she was able to put on a girls' weekend at her

10  house just one month after she was let go.

11       Neither witness supported Ms. Ivie's claim that she

12  suffered any significant emotional distress after being let go.

13  None of these friends worked with Ms. Ivie.  They didn't know

14  anything about her work.  They didn't know whether she was

15  performing her duties in accordance with AstraZeneca's

16  expectations.

17       Then remember Exhibits 546 and 554.  Those are the

18  chatty texts that Ms. Ivie has to friends in June and November

19  of 2019.  She says she's doing great.  She's having the time of

20  her life; spending time with family, friends, and traveling.

21  They do not suggest that Ms. Ivie was suffering significant

22  emotional stress because of the termination of her employment.

23       You also will be asked to look at mitigation of

24  damages.  So mitigation of damages, as the judge explains in

25  the instructions, asks whether Ms. Ivie did enough to look for

Closing Statement

1    another job.  Ms. Ivie claims it took a long time to find

2    another job, and the best job she can get is a part-time job at

3    BYU.  It is not even a district manager's job.  She says that

4    she has applied for a number of jobs, but we have no idea what

5    those jobs were or why she didn't get them.

6         Mr. Sevart suggested it was because she had filed

7    this lawsuit, alleging that she was branded a whistleblower.

8    He presented no evidence to support that claim that any

9    potential employer had any knowledge that Ms. Ivie had filed

10   this lawsuit, and that that's why these people didn't get her

11   the job.

12        If such evidence existed, Ms. Ivie would have

13   presented it to you.  And she didn't.  In addition, even if

14   Mr. Sevart was right, if Ms. Ivie had accepted the severance

15   package that she asked for and which the company offered her,

16   there would have been no lawsuit.  But she didn't.

17        So if you decide to award Ms. Ivie damages, you

18   should decide how quickly Ms. Ivie could have gotten another

19   job if she had used reasonable efforts.  Then you subtract that

20   number from the economic damages you may have awarded to her.

21   And you will recall that Dr. Bierhanzl said that an average

22   employee takes 13 weeks to find a new job and the median was

23   four to five weeks.

24        ADEA/willfulness.  Mr. Oswald went through this with

25   you.  You only answer this question if you find that

Closing Statement

1   AstraZeneca discriminated or retaliated against Ms. Ivie

2   because of her federal age discrimination claim and if you

3   awarded her damages.  If you didn't find in favor of Ms. Ivie

4   on her age claims, and you didn't award her damages, then you

5   don't answer that question.

6        This is the judge's instruction to you on

7   willfulness:  "The plaintiff has the burden of proving

8   willfulness by a preponderance of the evidence.  The

9   defendant's conduct is willful if the defendant knew or showed

10  reckless disregard for whether the plaintiff's termination was

11  prohibited by the federal age discrimination law, the ADEA."

12       As this instruction makes clear, you can only find

13  willfulness if you conclude that AstraZeneca knew or showed a

14  reckless disregard for whether it was firing Ms. Ivie because

15  of her age, or her federal age discrimination claim, or

16  complaint of age discrimination.  She hasn't proved her age

17  discrimination claim.  But even if you disagree, you have heard

18  the witnesses in this case.  I am confident you will conclude

19  that they did not act willfully.  To the contrary, they tried

20  to help Ms. Ivie succeed in her job.  It was only because she

21  refused to do what she was required by her job to do that she

22  was let go.

23       Now, there are some other important jury instructions

24  I want to go through with you.  This one says, "It is your duty

25  to find the facts from all the evidence in the case.  To those

Closing Statement

1    facts, you'll apply the law as I give it to you.  You must

2    follow the law as I give it to you, whether you agree with it

3    or not, and you must not be influenced by any personal likes or

4    dislikes, opinions, prejudices, or sympathy.  This means that

5    you must decide the case solely on the evidence before you.

6    You will recall that you took an oath to do so."

7            So two very important parts of this instruction:  You

8    have got to follow the law as the judge gives it to you,

9    whether you agree with it or not, and you took an oath to do

10   so.  It also tells you that you can't be influenced by personal

11   likes, dislikes, opinions, prejudices, or sympathy.  This is

12   really important.  We can all feel sympathy for Ms. Ivie that

13   she lost her job, but you can't let that sympathy influence

14   your decision.  You have to decide the case on the evidence

15   that you heard, the instructions of the judge, and not because

16   you feel sympathetic to Ms. Ivie.

17           Another important jury instruction:  "All parties are

18   equal before the law and a corporation is entitled to the same

19   fair and conscientious consideration by you as any party."  So

20   this tells you that AstraZeneca is a corporation is entitled to

21   be treated fairly and conscientiously by you.

22           All right.  I am going to talk a little bit about

23   credibility.  One of the jobs of the jury is to decide

24   credibility.  The jurors listen to the witnesses testify, and

25   then they decide which witnesses are more credible than others.

Closing Statement

1    So let's talk first about Ms. Ivie.  Let's look at
2  some of the evidence that you heard in this case that should
3  impact your decision on the credibility of Ms. Ivie.  When she
4  was being questioned by her own lawyer, she spent a large part
5  of her testimony telling you how distraught she was and how
6  upset she was about her belief that Ms. DiNunzio was telling
7  her to sell DALIRESP off-label.

8    She said that there was a team meeting with a team on
9  December 10th to 12th, 2018; that it was discussed.  Then she
10  talked to Ms. DiNunzio about it.  Then on the 19th, when they
11  had the review meeting, she again said she talked to
12  Ms. DiNunzio about the fact that Ms. DiNunzio was telling her
13  to sell DALIRESP off-label.

14    But look to the hotline complaint.  That's
15  Exhibit 82.  Just a week after that regional meeting and the
16  same day that she got that bad review, right after she gets the
17  bad review, she writes up the hotline complaint, and nowhere
18  does it mention this alleged off-label selling of DALIRESP.

19    Surely, if she had that conversation with
20  Ms. DiNunzio a week before, the day she files the complaint,
21  she would have mentioned that Ms. DiNunzio was trying to get
22  her to sell DALIRESP off-label.  But it is not there.  Does
23  that make her testimony in court credible?  If she was so
24  concerned about it, surely she would have mentioned it in the
25  hotline complaint.  But she didn't.

Closing Statement

1        What she did mention in the hotline complaint were

2  things that had happened months earlier, things that she never

3  complained about at the time, even though she was the

4  compliance representative, and even though she knew she was

5  obligated to report it if she thought there was anything

6  improper.

7        So ask yourself why did she wait until she finds out

8  she is going to get a bad review and then file a hotline

9  complaint immediately afterwards, complaining about things that

10  happened months before, not about the things that supposedly

11  happened the week before and the same day.

12        Another thing you should consider in assessing

13  Ms. Ivie's credibility is why no one else heard Ms. DiNunzio

14  say the things that Ms. Ivie says that Ms. DiNunzio said about

15  encouraging off-label promotion.  As the evidence showed, these

16  statements were supposedly made at group meetings, which many

17  people attended, yet no one who attended these same meetings

18  heard any statements encouraging off-label promotion.

19        That's why the compliance investigation report found

20  the allegations unsubstantiated, because no one substantiated

21  what Ms. Ivie was saying what Ms. DiNunzio said.  Consider this

22  when you're assessing Ms. Ivie's credibility:  She came into

23  court and swore under oath that off-label statements were made.

24  How come no other witnesses heard what she heard?  How come

25  no one else agrees with her that these statements were made?

Closing Statement

1    In assessing credibility, consider also Ms. Ivie's
2  claim that this "old pharma" referred to age.  Ms. DiNunzio
3  came to Court to credibly deny that the statement had anything
4  to do with age.  During the investigation conducted by
5  Ms. Belknap, all of the witnesses denied that the statement had
6  anything to do with age.  Look at Exhibit 84.  That's the
7  summary of what every witness who was interviewed and
8  supposedly heard this "old pharma" comment and whether it
9  related to age, every one of those witnesses in Exhibit 84 that
10  was interviewed as part of the investigation into this age
11  discrimination claim that was made in December about the
12  "old pharma" comment, all of them denied that it had anything
13  to do with age.  And all of them instead said it referred to
14  mindset; how pharma needed to change.

15    Some of these same witnesses came into court and
16  agreed that all of the statements reflected mindset, not age.
17  Not one single witness besides Ms. Ivie thought it referred to
18  age.  Consider that as you are assessing credibility.

19    Ms. Ivie also testified that she was unhappy about
20  the "Benatar" nickname and felt it referred to her age, and she
21  didn't like it.  You saw the photo that prompted the nickname,
22  Exhibit 533.  You saw the text messages between Ms. Ivie and
23  Ms. DiNunzio about the nickname, Exhibit 539.  You saw
24  Ms. DiNunzio's explanation of the nickname, Exhibit 73.  Was
25  Ms. Ivie credible when she testified about the "Benatar"

1 nickname?  None of the other witnesses, including Ms. Ivie's

2 own witness, Larry Hinson, felt that "Benatar" had anything to

3 do with age.

4         Does it make sense to you that Ms. Ivie waited 16

5 months after she got the "Benatar" nickname to complain of age

6 discrimination?  Even though she had been given that nickname

7 in January of 2018, even though she complained of age

8 discrimination in December of 2018, she didn't raise the

9 "Benatar" nickname as evidence of discrimination until May of

10 2019.   Does that make sense to you?

11         Was Ms. Ivie credible when she complained that

12 Ms. DiNunzio retaliated against her for taking a leave of

13 absence?  Ms. Belknap, in her investigation concluded that

14 there were legitimate reasons for all the things that happened

15 to Ms. Ivie after she returned from leave, and none of them

16 were retaliatory.

17         Consider also, as you assess Ms. Ivie's credibility,

18 that she admits to lying to prospective employers about not

19 being fired.  Consider, as you assess Ms. Ivie's credibility,

20 the testimony that she completed field coaching reports, even

21 though she wasn't in the field coaching.

22         Remember, as you assess her credibility, the

23 testimony that she used her own PRID number to acknowledge

24 receipt by a sales rep of a field coaching report, a report in

25 which she says she was in the field, when she, in fact, had not

Closing Statement

1   been in the field.  The sales rep is supposed to put their own

2   number in there acknowledging that they received their report.

3   Ms. Ivie put her number in there, acknowledging that the sales

4   rep had received the report.  She knew she wasn't doing her

5   job, she wasn't helping her people, and she tried to hide it.

6        Now, let's look at the credibility of Ms. DiNunzio.

7   All the witnesses, including Mr. Hinson and Ms. Hamilton,

8   testified that she is a tough boss.  She holds employees

9   accountable to meet AstraZeneca's standards and performance.

10  She did this for all the employees.  By doing so, she made

11  things better.  Ms. Ivie did not bring into court a single

12  witness who testified that Ms. DiNunzio treated them better

13  than they treated Ms. Ivie.

14       Remember Ms. DiNunzio's passionate testimony about

15  COPD patients benefit from AstraZeneca's drugs and how

16  important it is to sales reps to sell effectively so that

17  AstraZeneca's FDA-approved drugs can get to patients who might

18  otherwise die without them?  Ms. DiNunzio's focus was on the

19  patients, and she didn't think that the reps in Ms. Ivie's

20  district were getting the help they needed from Ms. Ivie so

21  that they could do their jobs and help patients, as many

22  patients as possible.

23       Look at our HR witnesses.  As you think about

24  credibility, think of these three HR witnesses who testified in

25  this case:  Did Dawn Ceaser appear to be lying when she

Closing Statement

1    explained why Ms. Ivie was let go; when she said why she

2    recommended the termination; when she told you there was no

3    pathway forward for Ms. Ivie?

4         Did Karen Belknap and Amy Welch seem to be lying?

5    Did they seem biased against Ms. Ivie?  Remember how Karen

6    Belknap told you that she delayed written warning in time to

7    give Ms. Ivie the time to decide whether she wanted the

8    severance package.  If she had signed the severance package,

9    she would get the full bonus.  But if she got the written

10   warning, she doesn't get the full bonus.  So she was trying to

11   help her out.  Even if Mr. Hinson said -- Larry Hinson,

12   Ms. Ivie's witness, said Ms. Belknap tried to help him out

13   after he decided to quit.

14        Larry Hinson, one of the last witnesses on Friday,

15   Ms. Ivie's witness, confirmed that Ms. DiNunzio was tough on

16   him too, because he was not meeting performance expectations.

17   And so he decided to quit and take another job.  He hadn't

18   filed a hotline complaint.  He wasn't alleging that

19   Ms. DiNunzio was off-label marketing.  He never took FMLA

20   leave.  How can Ms. Ivie credibly argue that Ms. DiNunzio

21   retaliated against her when she was having these same issues of

22   not meeting the job expectations, because she filed the hotline

23   complaint and because she took her leave, when Ms. DiNunzio did

24   exactly the same things to Larry Hinson, and he didn't file a

25   hotline complaint or take a leave of absence.  Ms. DiNunzio

1   treated them both the same.  If they are not meeting the

2   performance expectations, she is going to meet with them and

3   tell them what they need to do to improve.

4         Continuing on with assessing credibility of

5   witnesses, Larry Hinson was gone by June of 2018.  He knows

6   nothing about what happened after that.  He came across as

7   someone who was very angry at Ms. DiNunzio, because she was a

8   tough boss, who held him accountable, who criticized his

9   performance.  Even though he admits that he did not meet

10  expectations, he received a two on his review and was at the

11  bottom of the pack actually.

12        Let's look at the witnesses who came in Friday --

13  Mr. Thomsen, Ms. Hamilton, Mr. Barnes, and Mr. Stickle.  These

14  were the people who worked for Ms. Ivie and who were peers.

15  Did they look like they were lying when they talked about the

16  importance of in-person coaching?  Did they look like they were

17  lying when they denied hearing comments about Ms. DiNunzio

18  encouraging off-label promotion, as Ms. Ivie claimed she heard?

19        Did Genie Hamilton seem like she was lying when she

20  talked how Ms. DiNunzio was a tough boss, focused on

21  performance, and meeting the company's expectations?

22  Genie Hamilton testified she understood the 80/20 rule.  She

23  did what she was required to do, and her team was better off as

24  a result.

25        Consider Craig Barnes.  He is the Mountain Dew

Closing Statement

addict.  Did he seem like he was lying when he talked about how
little time Ms. Ivie spent with him in the field when she was
his manager, even though they lived 20 miles from each other?

How about Bob Stickle?  He is the 66-year-old who
also lives close to Ms. Ivie.  Did he seem like he was lying
when he talked about how little Ms. Ivie coached him in the
field and how Chris Thomsen, who replaced Ms. Ivie, spends a
lot of time in the field with him and helped him understand the
data and analyze the issues in his territory?  Bob Stickle
testified that he needed help to improve his coaching since he
was not meeting expectations.  His doctors' patients needed
help, but Ms. Ivie let them all down.

Consider the testimony of the last witness,
Chris Thomsen.  Does he seem like he was lying?  He says he
spends three to four days a week in the field with his reps.
He came in and told you that he never heard Ms. DiNunzio
encourage off-label promotion, and he confirmed both in court
and in the compliance investigation that he had never heard any
such comments.

He says that Ms. DiNunzio was always very clear that
they needed to stay on label and do the right thing.  He
testified about what he observed when he covered Ms. Ivie's
territory when she was on leave.  He told you that the
Salt Lake City team was not using the updated sales model and
hadn't been coached.

Closing Statement

1    Then, when Ms. Ivie was let go, he applied for the

2 position.  He went through an interview.  He decided to accept

3 the position in Salt Lake City, because it was the town where

4 he lived, and he wanted to spend more time with the family.

5 When he left the job in March of 2020, he had increased that

6 district to one of the top districts in the country.  No

7 witness who has ever worked for Ms. Ivie came forward and

8 testified in this case that she was a great manager who was

9 doing her job.

10    All Ms. Ivie had to do to succeed at AstraZeneca was

11 to do the job that the company asked her to do and was paying

12 her a lot of money to do.  She knew the requirements, but she

13 didn't follow them, even after receiving a written warning.  No

14 company likes to let a long-term employee go.  They do it with

15 reluctance.  But there comes a time when a company can no

16 longer keep employed an employee who refuses to do her job

17 after being repeatedly told what she has to do.

18    I have said enough.  I don't get to speak to you

19 again.  I leave this case in your good hands.

20    On behalf of AstraZeneca, I thank you for your time.

21    (Court reporter asked for a ten-minute break.)

22    (Recess.)

23    (Open court; proceedings resumed:)

24    THE COURT:  Sir.

25    MR. OSWALD:  Thank you.

Rebuttal Argument

1    AstraZeneca, in its presentation to you, said that
2    Suzanne's complaints were meritless.  What I want you to do is
3    I want you to look at each of Suzanne's complaints.  Make your
4    own determination.  Look at her complaint on the 19th of
5    December.  Look at her complaint on February 5th.  Look at her
6    complaint on May 16th.  And you decide.

7    They say that Suzanne lost her job.  She didn't lose
8    her job.  AstraZeneca fired her.  They fired her after 19
9    years, after never having any kind of discipline, after never
10   having complained at all in that 19 years.

11   And AstraZeneca talks about the 80/20 split.  They
12   say it was a big deal not do the 80/20 split.  What did Amy
13   Welch say from the stand during her deposition?  She said it
14   was "guidance."  Larry Hinson said he was only evaluated on the
15   total number of coaching days, and that's what was in his
16   review.  You will not see any mention of "80/20" in Suzanne's
17   reviews.  Linda Truax said she had never heard of it before.
18   DSMs stopped in-person coaching at year-end, because of the
19   budget, just like Suzanne had said.

20   And I think maybe the most important, in 2018, look
21   at what Stephani DiNunzio says herself in Suzanne's 2018
22   performance review.  She says nothing about the 80/20 split.
23   Of course, Dawn Ceaser says nothing about it in the employee
24   relations case for termination on the 6th of June.  McCullough
25   tells us that it wasn't a policy until April of 2019.

1      Now, AstraZeneca says that Suzanne can be fired for

2  not following the 80/20 guidance; that Suzanne was not doing

3  her job; that the 80/20 rule was very important to AstraZeneca;

4  that she was out of whack with her peers; that the 80/20 rule

5  applied to all of the DSMs.

6      Let's take a look at two exhibits you haven't seen

7  yet, Plaintiff's Exhibit No. 54 and Plaintiff's Exhibit No. 62.

8  I'm not sure that you'll have access to Excel in the jury room,

9  so I reviewed this information with one question in mind, and

10  that is this:  What percentage of days did Suzanne and all the

11  other DSMs spend in person?

12      Now, the data is all national DSMs.  So I narrowed it

13  down to Suzanne's peers in the region for respiratory by

14  quarter, and I divided by the number of days coaching with

15  customer engagement by the total number of coaching days to

16  come up with a percentage to check the reality of the 80/20,

17  and here is what we found.  Now, I have summarized this in a

18  chart for you.  It goes by quarter.  The first quarter of -- it

19  goes from the first quarter of 2018 through the first quarter

20  of 2019.

21      I left all the DSMs in the region.  Red is below

22  80 percent.  Green is above 80 percent.  Let's look at my first

23  observation.  First quarter Q1 of 2018, nobody is over

24  80 percent.  None of DiNunzio's direct reports.

25      In quarter 2 of 2018, three people are over

Rebuttal Argument

1  80 percent.

2         In quarter 3 of 2018, only two people are over
3  80 percent.

4         Now in quarter 4, we don't have the data, or it
5  wasn't given to us.  But look at the first quarter of 2019 --
6  three -- half of the total are over 80 percent, including
7  Suzanne.

8         My second observation.  The average for everyone is
9  less than 80 percent.  If this were really a rule, and if
10 DiNunzio were applying it consistently, why is the entire
11 region under 80 percent for the whole year?

12        Third observation:  Chris Thomsen, the person who
13 replaced Suzanne, has lower numbers across the board.  What
14 happened here was that DiNunzio needed an excuse.  She needed
15 to say that she held everybody to the same standard of 80/20.
16 AstraZeneca points to this and says, "This is the reason that
17 we fired Suzanne."  But look at quarter No. 1 of 2019, when she
18 gets the performance warning.  Suzanne is over 80 percent;
19 3 percent from the highest percentage.

20        It is not hard to conclude what happened here.
21 Suzanne had 19 years of experience; 19 years of good
22 performance.  She was someone at the highest level of ethics.
23 She wanted to win but only the right way.

24        AstraZeneca says, "You have to do what your boss
25 tells you no matter what."  Really?  You have to do what your

1  boss tells you to do unless that activity is illegal.  And what
2  AstraZeneca is counting on is that you will let them get away
3  with it.

4      We would not be here today if Karen Belknap and
5  Dawn Ceaser had simply done their jobs, but they were more
6  interested in protecting DiNunzio, in flattering DiNunzio, in
7  putting a bow on Suzanne's termination than doing what they
8  should have done:  Protecting employees from retaliation when
9  they report the company's drugs for unapproved uses.

10     And if Mike Pomponi had not turned a blind eye when
11 Suzanne came to him on May 16th, 2019, we might not be here.
12 But he simply forwarded her complaint to HR, who shared it with
13 Stephani DiNunzio.  And everything else was a foregone
14 conclusion.

15     Finally, Barbara McCullough.  We would not be here if
16 Barb McCullough had not been seen as a retaliation switch.  She
17 didn't wake up until four days after AstraZeneca had already
18 fired Suzanne only to ask has she accepted the release of
19 claims.

20     AstraZeneca simply had a bad system.  It is bad for
21 employees.  It is bad for patients.  It is bad for all of us.
22 And with your verdict, you can help fix AstraZeneca's own
23 system so that it is accountable again -- accountable to its
24 shareholders, accountable to its employees, accountable to its
25 patients, accountable to all of us.

Rebuttal Argument

1    I want to conclude with a story.  It is a story of a
2  wise man and a smart-aleck young boy whose only goal was to
3  show up the wise man, and the young boy had a plan.  He would
4  go into the forest, and he would find a baby bird.  He would
5  cup it in his hands and bring it back to the old man, and he
6  would say, "Old man, is the bird alive, or is he dead?"  And if
7  the old man said the bird is dead, he would open his hands, and
8  the bird would fly back to the forest.  But if the old man
9  said, "The bird is alive," the boy would squish the bird and
10  kill it until it was dead.
11    So he went into the forest, he found a nest, and he
12  brought back the baby bird, in his hands, cuffed.  "Old man,
13  what do I have within my hands?
14    "Why, young man, you have a baby bird.
15    "But, old man, is he alive or is he dead?"
16    And the old man smiled and said, "He is in your
17  hands."
18    Now Suzanne's case is in yours.
19    THE COURT:  Thank you.
20    Members of the jury, we are going to take our noon
21  recess now.  You are free to go have lunch.  Please be prepared
22  to be back in the box at 1:00 p.m.  At that time I will deliver
23  jury instructions and then the case truly will be yours.  You
24  will begin your deliberations.
25    While you are at lunch, please remember:  Do not

1   discuss the case with each other or with anybody else.  This is

2   very, very important.

3           Thank you very much.

4           Thank you.  See you at one o'clock.

5           Thank you, Counsel.

6           MS. RIECHERT:  I would like to put a couple of things

7   on the record.

8           THE COURT:  Certainly.

9           (Open court; jury not present:)

10          MS. RIECHERT:  Do you want to do it now or at

11  one o'clock?

12          THE COURT:  Let's do it now, if that's okay.

13          MS. RIECHERT:  Sure.  So I wanted to object to the

14  fact that in Mr. Oswald's closing argument he referred to the

15  termination being only one factor.  That's exactly what we had

16  talked about in the jury instructions and the verdict form.

17  That's inconsistent with the law and inconsistent with the

18  instructions, and yet he kept saying with that list of things

19  that you went to the grocery store list with -- one was sugar

20  or something -- that it only had to be one factor.  So I wanted

21  to put on the record my objection to that.

22          THE COURT:  Thank you.

23          MS. RIECHERT:  Secondly, I have no idea where this

24  chart came from.  I have never seen it before.  It is something

25  apparently that Mr. Oswald created.  To put that in front of

1　the jury, when it has never been mentioned in this entire case,

2　I object to that being done.  It wasn't shown to us.  I don't

3　know how he created it.  And now I have no opportunity to

4　respond to it.  It wasn't shown to any witnesses.  So I wanted

5　to object on that basis.

6　　　　　THE COURT:  Thank you.

7　　　　　Anything further?  Objections for the record?

8　　　　　MR. OSWALD:  I don't have any objections for the

9　record, Your Honor.

10　　　　　THE COURT:  Okay.  One o'clock.

11　　　　　Thank you.

12　　　　　(Recess.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Afternoon session; open court; jury not present:

2    THE COURT:  Would the defendant like to make a

3  motion, please?

4    MS. RIECHERT:  I would move to strike the chart that

5  Mr. Oswald showed the jury in his rebuttal and get an

6  instruction from the Court that the jury is not to consider it.

7  This chart was created by Mr. Oswald.  He never showed it to

8  us.  There has been no testimony about it; and therefore, there

9  is no way that should have been shown to the jury when it was.

10  And it was.

11    THE COURT:  Thank you.

12    Mr. Oswald.

13    MR. OSWALD:  Your Honor, it is an accurate depiction

14  of what is in evidence, the two exhibits themselves at

15  reference.  They are spreadsheets in fact, and I simply took

16  the data that is there, and as I indicated, I took just the

17  areas of the country that reported to Stephani DiNunzio.  So

18  the evidence is in the spreadsheet.  We simply reduced it to

19  the relevant portions of what is in evidence.  So it's an

20  accurate depiction of the evidence in the case.

21    MS. RIECHERT:  Your Honor, the evidence is the

22  evidence.  I believe that Mr. Oswald said he did some math as

23  well.  In any event, what's in evidence is in evidence.  That

24  chart is not in evidence.  It was not shared with us or

25  created.  The jury should be instructed not to consider it.

1        THE COURT:  The chart is not going to the jury,

2    right?

3        MR. OSWALD:  No, Your Honor.

4        MS. RIECHERT:  But it was shown to the jury in

5    rebuttal without us having any opportunity to respond to it.

6    This case has been going on for five days.  There has been

7    plenty of witnesses.  Now, in closing, in his rebuttal, in

8    closing he raises some issue that has never been raised before

9    in this case.

10        THE COURT:  Would you like for the Court to show the

11   jury again the exhibit, and then tell the jury to disregard it?

12   They are not going to remember what chart it is.  You both have

13   shown so many charts.

14        MS. RIECHERT:  It's the chart that was shown in

15   rebuttal, Your Honor.  That's the one I would like the jury to

16   be instructed that they may not consider.

17        THE COURT:  Do you want the Court to show them that

18   chart again to remind them which chart you are talking about?

19        MS. RIECHERT:  I think he only had one chart.

20        MR. OSWALD:  Your Honor, it is a fair depiction of

21   what's in the spreadsheet.  It's all right there.  I simply

22   took the individuals that are in Ms. DiNunzio's group, and

23   that's it.  So it is an accurate depiction of what is there.

24   It is an appropriate demonstrative exhibit.  I haven't offered

25   the exhibit in evidence.  The underlying information is in

1 evidence. It is before the jury. It's their own exhibit,

2 Your Honor. They produced it to us. It's an accurate

3 depiction of what the evidence shows.

4          MS. RIECHERT: I don't know if that's true or not,

5 since I have never seen it before. I had no opportunity to

6 look at it or check Mr. Oswald's math. The exhibit can come in

7 as -- Exhibit 54 is in evidence. It is the chart that

8 Mr. Oswald created that he showed in rebuttal that summarized

9 what he thinks the exhibit shows. That's what I have objected

10 to. So I would like an instruction to the jury that the chart

11 that Mr. Oswald showed them in rebuttal, it is not in evidence

12 in the case and should not be considered.

13          THE COURT: Okay. And you had not seen the chart?

14          MS. RIECHERT: I have never seen that before.

15          MR. OSWALD: Your Honor, this is their exhibit. They

16 produced it. It's an exhibit in evidence. It is their

17 spreadsheet. It is what they produced. They produced it to

18 us.

19          THE COURT: What math did you do?

20          MR. OSWALD: I simply took the Excel spreadsheet, and

21 I took a snapshot of precisely DiNunzio's region for the

22 quarters that I had. So I had quarter 1 of 2018; quarter 2 of

23 2018; quarter 3 of 2018. We didn't have the fourth quarter,

24 and I indicated that. We did have the first quarter of 2019,

25 and that's what I showed the jury.

1   MS. RIECHERT:  And you did some math to show the

2   percentage.

3   MR. OSWALD:  Your Honor, all we did was take the

4   numbers that are there in the spreadsheet.  That's precisely

5   what we did.  Those are numbers in the spreadsheet.  At the

6   bottom, yes, I divided one by the number.  But the numbers are

7   the numbers.  They are in the spreadsheet itself.  It is an

8   accurate depiction of what is precisely in the spreadsheet.

9   MS. RIECHERT:  I don't know that, because I have

10  never seen it before.  The exhibit can go in.  The jury can do

11  whatever they want to do with it.  But the demonstration should

12  be struck, and the jury should be instructed that they cannot

13  consider that, because it wasn't shared with us.  I have no

14  idea if it is accurate or not.  I have no objection to the

15  exhibit going in.

16  THE COURT:  The exhibit is in.

17  MS. RIECHERT:  The exhibit is in.  But whatever

18  Mr. Oswald did with the exhibit, that's what I have a problem

19  with.  He keeps saying, "It is accurate."  I don't know.  I

20  haven't seen it, and I haven't had an opportunity to check it

21  out.

22  MR. OSWALD:  They produced it in discovery.  They

23  produced it.  Of course, they had it.  This is their chart.  It

24  is their numbers.

25  MS. RIECHERT:  I have never seen that chart before.

1    I have seen the underlying evidence, but I have never seen that

2    chart.  I understand, under the court rules, we are supposed to

3    be shown the demonstratives before being shown to the jury.

4    That wasn't done here.  And because of that, I would like the

5    Court to instruct the jury that they are not to consider it,

6    although they may consider the underlying exhibit.

7              THE COURT:  I am going to deliver that instruction.

8              MS. RIECHERT:  Thank you.

9              THE COURT:  Gary, would you get the jury.

10             MR. OSWALD:  Your Honor, what is the instruction the

11   Court is going to give?

12             THE COURT:  While he is getting the jury, let's draft

13   an instruction.

14             MR. OSWALD:  Before you do that, I would like to

15   understand what it is.

16             THE COURT:  "You may not consider the chart that

17   Mr. Oswald used in his rebuttal argument.  You may, however,

18   consider the underlying exhibit, Plaintiff's Exhibit 55."

19             You may not consider the chart Mr. Oswald used in his

20   rebuttal argument.  You may, however, consider the underlying

21   exhibit, Plaintiff's Exhibit 55.

22             MR. OSWALD:  Your Honor, I object.  Let me tell you

23   why.  I think that goes too far.  It is argument.  As with any

24   argument -- the proper instruction would be that you may only

25   use the chart.  It is argument.  It is not evidence.  The

1    evidence is the underlying exhibit.  And that is what should

2    control.  I have no problem with that.  That's perfectly

3    appropriate.  But to say that they can't consider the argument,

4    Your Honor, I think, is inappropriate.  It is an appropriate

5    argument based upon the information in the chart.

6         MS. RIECHERT:  I disagree with that, Your Honor, for

7    the same reason.  We have not seen this chart.  We haven't had

8    an opportunity to review or comment on it.  It may or may not

9    be accurate.  I don't know.  They should not consider the

10   chart.  Your instruction is correct.  They may consider the

11   underlying evidence.

12        THE COURT:  I agree.

13        Will you please get the jury, Gary.

14        (Open court; jury present:)

15        THE COURT:  Good afternoon.  Please be seated.

16        As I indicated before we broke for our noon recess, I

17   will now deliver the instructions.

18        MS. RIECHERT:  I don't know if your mic is on,

19   Your Honor.  It is hard to hear.

20        THE COURT:  Thank you for letting me know.

21        Members of the jury, now that you have heard all of

22   the evidence, it is my duty to instruct you on the law that

23   applies to this case.  I don't think you have yet, but you will

24   receive a copy of these instructions that you may take to the

25   jury room with you during deliberations.

## Jury Instructions

1    It is your duty to find the facts from all of the
2    evidence in the case.  To those facts, you will apply the law
3    as I give it to you.  You must follow the law as I give it to
4    you whether you agree with it or not, and you may not be
5    influenced by any personal likes or dislikes, opinions,
6    prejudices, or sympathy.  That means that you must decide the
7    case solely on the evidence before you.  And you will recall
8    that you took an oath to do so.

9    Please do not read into these instructions or
10   anything that I may say or do or have said or done that I have
11   an opinion regarding the evidence or what your verdict should
12   be.

13   When a party has the burden of proving any claim or
14   affirmative defense by a preponderance of the evidence, it
15   means that you must be persuaded by the evidence that the claim
16   or affirmative defense is more probably true than not.  You
17   should base your decision on all of the evidence regardless of
18   which party presented it.

19   What is evidence?  The evidence you are to consider
20   in deciding what the facts are consist of:

21           No. 1.  The sworn testimony of any witness.

22           No. 2.  The exhibits that are admitted into evidence.

23           No. 3.  Any facts to which the lawyers have agreed.

24           And No. 4.  Any facts that I have instructed you to

25   accept as proved.

Jury Instructions

1    What is not evidence?

2    In reaching your verdict, you may consider only the

3    testimony and exhibits received into evidence.  Certain things

4    are not evidence, and you may not consider them in deciding

5    what the facts are.  I will list them for you.

6    First, arguments and statements by lawyers are not

7    evidence.  The lawyers are not witnesses.  What they have said

8    during their opening statements, closing arguments, and at

9    other times is intended to help you interpret the evidence but

10   is not evidence.  If the facts as you remember them differ from

11   the way the lawyers have stated them, your memory of them

12   controls.

13   No. 2.  Questions and objections by lawyers are not

14   evidence.  Attorneys have a duty to their clients to object

15   when they believe a question is improper under the rules of

16   evidence.  You should not be influenced by the objection or by

17   the Court's ruling on it.

18   No. 3.  Any testimony that is excluded or stricken or

19   that you have been instructed to disregard is not evidence and

20   must not be considered.

21   In addition, some evidence was received only for a

22   limited purpose.  When I have instructed you to consider

23   certain evidence only for a limited purpose, you must do so,

24   and you may not consider that evidence for any other purpose.

25   Finally, anything you may have said or heard when

Jury Instructions

1  court was not in session is not evidence.  You are to decide

2  the case solely on the evidence received at trial.

3       Direct and circumstantial evidence.  Evidence may be

4  either direct or circumstantial.  Direct evidence is direct

5  proof of a fact, such as the testimony by a witness about what

6  that witness personally saw or heard or did.  Circumstantial

7  evidence is proof of one or more facts from which you could

8  then find another fact.  You should consider both kinds of

9  evidence.  The law makes no distinction between the weight

10  given to either direct or circumstantial evidence.  It is for

11  you to decide how much weight to give to any evidence.

12       Stipulations of facts.  The parties have agreed to

13  certain facts that I will read to you.  You must therefore

14  treat these facts as having been proved.  The parties stipulate

15  to the following:

16       No. 1.  Beginning in 2012, Suzanne Ivie began

17  suffering from migraines.

18       No. 2.  Starting from at least February of 2019,

19  Ms. Ivie's migraines increased in intensity, and she sought

20  care from a migraine specialist, Dr. Ashleigh Byrne.

21       Expert opinion.  You have heard testimony from

22  experts who testified to opinions and the reasons for their

23  opinions.  This testimony is allowed because of the education

24  or experience of these witnesses.  Such opinion testimony

25  should be judged just like any other testimony.  You may accept

## Jury Instructions

1   it, or reject it, and give it as much weight as you think it

2   deserves, considering the witness's education and experience,

3   the reasons given for the opinion, and all the other evidence

4   in the case.

5          Charts and summaries received and not received in

6   evidence.  Certain charts and summaries not admitted into

7   evidence have been shown to you in order to help explain the

8   contents of books, records, documents, and other evidence in

9   the case.  Charts and summaries are only as good as the

10  underlying evidence that supports them.  You should therefore

11  give them only such weight as you think the underlying evidence

12  deserves.

13         Certain other charts and summaries have been admitted

14  into evidence to illustrate information brought out in the

15  trial.  Again, charts and summaries are only as good as the

16  testimony or other admitted evidence that supports them.

17         You may not consider the chart Mr. Oswald used in his

18  rebuttal argument.  You may, however, consider the underlying

19  exhibit, Plaintiff's Exhibit 55.

20         There is an instruction in your packet titled

21  "Evidence in Electronic Format."  It is on page 10.  Please

22  ignore that.  We thought we were going to give you the evidence

23  electronically, and we were unable to do so.  So you will get

24  hard copies of the exhibits instead, and so I'm not going to

25  read this instruction.  It no longer applies.

Jury Instructions

Corporations and partnerships; fair treatment. All parties are equal before the law. A corporation is entitled to the same fair and conscientious consideration by you as any other party.

Liability of corporations; scope of authority, not an issue. Under the law, a corporation is considered to be a person and can act only through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

False Claims Act retaliation; elements and burden of proof. The plaintiff seeks damages against the defendant under a federal law called the False Claims Act, or the FCA. The FCA protects employees who oppose conduct by their employer that violates the FCA. To prevail on this claim, the plaintiff must prove each of the following elements by a preponderance of the evidence:

No. 1. The plaintiff participated in an activity protected by the False Claims Act. That is, she complained about her manager's alleged encouragement of off-label drug marketing.

No. 2. The defendant subjected the plaintiff to an adverse employment action; that is, termination of the plaintiff's employment.

And No. 3. The plaintiff was subjected to the

Jury Instructions

1    adverse employment action because she engaged in an activity

2    protected by the False Claims Act.

3           A plaintiff is "subjected to an adverse employment

4    action" because she engaged in an activity protected by the

5    False Claims Act if the adverse employment action would not

6    have occurred but for her engagement in that activity.  Here,

7    both parties agree that the plaintiff engaged in an activity

8    protected by the FCA and that her termination on June 6th,

9    2019, constituted an adverse employment action.

10          The parties dispute the third element, that the

11   plaintiff was terminated because she complained about alleged

12   off-label marketing.  If you find that the plaintiff has proved

13   all three of these elements, your verdict should be for the

14   plaintiff on this claim.  If, on the other hand, the plaintiff

15   has failed to prove any of these elements, your verdict should

16   be for the defendant on this claim.

17          Oregon's Whistleblower Protection Act; elements and

18   burden of proof.  The plaintiff claims that the defendant

19   retaliated against her in violation of an Oregon law that

20   protects employees who report information that they believe to

21   be evidence of the employer's violation of a state or federal

22   law, rule, or regulation.

23          To prevail on this claim, plaintiff must prove each

24   of the following elements by a preponderance of the evidence:

25          First, the plaintiff reported information that she

1    believed to be evidence of a violation of a state or federal

2    law, rule, or regulation.

3            Second, the plaintiff acted in good faith in

4    reporting the information.

5            Third, the plaintiff suffered an adverse employment

6    action.

7            And fourth, there was a causal link between the

8    plaintiff's report of information that she believed to be

9    evidence of a violation of a state or federal law, rule, or

10   regulation and the adverse employment action.

11           There is a causal link between the plaintiff's report

12   of information that the plaintiff believes to be evidence of a

13   violation of law and an adverse employment decision if the

14   plaintiff's report was a factor that made a difference in the

15   employment decision.

16           Here, the defendant does not dispute that plaintiff's

17   termination on June 6th, 2019, constituted an adverse

18   employment action.  The defendant disputes the first, second,

19   and fourth elements.  If you find that plaintiff has proved all

20   four of these elements, your verdict should be for the

21   plaintiff on this claim.  If, on the other hand, the plaintiff

22   has failed to prove any of these elements, your verdict should

23   be for the defendants on these claims.

24           ADEA discrimination claim; elements and burden of

25   proof.  The plaintiff has brought a claim of employment

discrimination against the defendant under a federal law known

as the Age Discrimination in Employment Act, the ADEA.  The

plaintiff asserts that the defendant terminated the plaintiff

because of her age.  The defendant denies that the plaintiff

was terminated because of her age and further asserts the

decision to terminate the plaintiff was based on a lawful

reason.  To prevail on this claim, the plaintiff has the burden

of proving each of the elements by a preponderance of the

evidence.

First, the defendant terminated the plaintiff.

Second, the plaintiff was 40 years of age or older at

the time she was terminated.

Third, the defendant terminated the plaintiff because

of her age.  That is, the defendant would not have terminated

the plaintiff but for her age.

The parties agree that the defendant terminated the

plaintiff and the plaintiff was 40 years of age or older at the

time of her termination.

If you find that the plaintiff has proved all three

of these elements, your verdict should be for the plaintiff on

this claim.  If, on the other hand, the plaintiff has failed to

prove any of these elements, your verdict should be for the

defendant on this claims.

ADEA retaliation claim; elements and burden of proof.

The plaintiff claims that the defendant retaliated against her

in violation of the ADEA for complaining to the defendant about
alleged age discrimination.  To prevail on this claim, the
plaintiff must prove each of the following elements by a
preponderance of the evidence.

First, the plaintiff participated in an activity
protected by the ADEA; that is, she complained to the defendant
that she was being discriminated against based on her age.

Second, the defendant subjected the plaintiff to an
adverse employment action; that is, termination of the
plaintiff's employment

And third, the plaintiff was subjected to an adverse
employment action because she engaged in an activity protected
by the ADEA.

A plaintiff is "subjected to an adverse employment
action" because she engaged in an activity protected by the
ADEA if the adverse employment action would not have occurred
but for her engagement in that activity.

The parties agree that the plaintiff engaged in an
activity protected by the ADEA and that her termination on
June 6th, 2019, constituted an adverse employment action.

If you find that the plaintiff has proved all three
of these elements, your verdict should be for the plaintiff on
this claim.  If, on the other hand, the plaintiff has failed to
prove any of these elements, your verdict should be for the
defendant on this claim.

Jury Instructions

1   Age Discrimination in Employment Act; willfulness.
2   If you find in favor of the plaintiff on one of her ADEA claims
3   and find that the plaintiff is entitled to recover backpay on
4   that claim, you must also determine if the defendant's conduct
5   was willful.

6   The plaintiff has the burden of proving willfulness
7   by a preponderance of the evidence. A defendant's conduct is
8   willful if the defendant knew or showed reckless disregard for
9   whether the plaintiff's termination was prohibited by the ADEA.

10   The Family and Medical Leave Act and the Oregon Leave
11   Act. The plaintiff has brought a claim of employment
12   discrimination based on a federal law known as the Family and
13   Medical Leave Act, which will be referred to in these
14   instructions as "FMLA," and a similar state law known as Oregon
15   Family Leave Act, which will be referred to in these
16   instructions as OFLA.

17   Under the FMLA and OFLA, an eligible employee is
18   entitled to a total of 12 weeks of unpaid leave during any
19   12-month period for a serious health condition and to be
20   reinstated to the same or an equivalent position upon return
21   from leave. An employer may not interfere with, restrain, or
22   deny an employee the exercise of rights protected by the FMLA
23   or the OFLA or discriminate against an employee for opposing
24   any practice that is unlawful under the FMLA or the OFLA.

25   In this case, the plaintiff contends that the

Jury Instructions

defendant discriminated and retaliated against her, in
violation of the FMLA and the OFLA, by considering her leave as
a negative factor in the defendant's decision to terminate the
plaintiff's employment.  The defendant contends that it did not
interfere with plaintiff's rights under the FMLA and the OFLA,
because it provided plaintiff for the leave she requested, and
because the decision to terminate her employment was unrelated
to the plaintiff's use of leave.

FMLA and OFLA discrimination/retaliation; elements
and burden of proof.  The plaintiff seeks damages against the
defendant for discrimination and retaliation under the FMLA and
the OFLA.  Plaintiff must prove each of the following elements
by a preponderance of the evidence:

First, plaintiff availed herself of a right protected
under the FMLA and the OFLA; that is, plaintiff took medical
leave that she was entitled to under the FMLA and OFLA.

Second, the plaintiff was subjected to an adverse
employment action.

And third, a causal connection exists between
plaintiff's medical leave and the adverse employment action.

A causal connection exists between the plaintiff's
medical leave and the adverse employment action if the
employee's leave was a negative factor in the defendant's
adverse employment action.  If you find that the plaintiff has
proved all three of these elements, your verdict should be for

the plaintiff on this claim.  If, on the other hand, the

plaintiff has failed to prove any of these elements, your

verdict should be for the defendant on this claim.

State law employment discrimination;

hiring/discharge.  The plaintiff claims that the defendant

discriminated against her in violation of state law by

discharging her because of her age.  The plaintiff must prove

each of the following by a preponderance of the evidence:

First, the defendant terminated the plaintiff.

And second, the plaintiff's age was a substantial

factor in the defendant's decision to terminate plaintiff.  The

parties agree that the defendant terminated the plaintiff.  The

plaintiff's age was a "substantial factor" in the defendant's

decision to terminate the plaintiff if the defendant would not

have terminated the plaintiff but for her age.  If you find

that the plaintiff has proved both of these elements, your

verdict should be for the plaintiff on this claim.  If, on the

other hand, the plaintiff has failed to prove either of these

elements, your verdict should be for the defendant on this

claim.

Economic damages; all claims.  It is the duty of the

Court to instruct you about the measure of damages.  By

instructing you on damages, the Court does not mean to suggest

for which party your verdict should be rendered.  If you find

for the plaintiff on any of the plaintiff's claims, you must

1   determine the plaintiff's damages.  The plaintiff has the

2   burden of proving damages by a preponderance of the evidence.

3   "Damages" means the amount of money that will reasonably and

4   fairly compensate the plaintiff for any injury you find was

5   caused by the defendant.

6          You heard arguments and saw exhibits involving the

7   amount of defendant's revenue or profits.  You are not to

8   consider evidence of defendant's wealth in determining

9   liability or damages in this case.

10         If you find for the plaintiff on any of her claims,

11  you should consider the reasonable value of lost past earnings

12  and fringe benefits from the date of plaintiff's termination up

13  to the date of trial.  This is known as "backpay."  It is for

14  you to determine what backpay damages, if any, have been

15  proved.  Your award must be based upon evidence and not upon

16  speculation or guesswork.

17         If you find in favor of plaintiff on any of her

18  claims, you must also calculate separately, as future damages,

19  a monetary amount equal to the present value of the wages and

20  benefits that plaintiff would have earned had her employment

21  not been terminated for the period from the date of your

22  verdict until the date when plaintiff would have voluntarily

23  resigned/retired or obtained other employment.  This is known

24  as front pay.

25         You may award plaintiff damages for future lost wages

## Jury Instructions

only if you determine these damages were caused by defendant's

terminating her employment.  If you determine plaintiff is

entitled to future lost wages, you must consider the following

in arriving at an amount:

First, plaintiff's prospect for another similar job.

Second, the length of time that it should take

plaintiff to get such job.

Third, the number of years remaining before plaintiff

would most probably retire.

Any front pay award for future economic damages must

be for the present cash value of those damages.  "Present cash

value" means the sum of money needed now, which, when invested

at a reasonable rate of return, will pay future damages at the

time and in the amount that you find the damages will be

incurred.

The rate of return to be applied in determining

present cash value should be the interest that can reasonably

be expected from safe investments that can be made by a person

of ordinary prudence who has ordinary financial experience and

skill.  You should also consider decreases in the value of

money that may be caused by future inflation.

Noneconomic damages.  If, and only if, you find for

plaintiff on a False Claims Act retaliation claim, Oregon's

Whistleblower Protection law claim, or state law discrimination

claim, then should you also consider for such claim or claims

only the emotional pain and suffering or humiliation that plaintiff experienced and which, with reasonable probability, she will experience in the future.  You should also consider inconvenience and interference with plaintiff's normal and usual activities apart from activities in a gainful occupation that you find have been sustained from the time she was injured until the present that plaintiff probably will sustain in the future as a result of her injuries.

Finally, you should consider any injury to plaintiff's reputation.  The law does not furnish you with any fixed standard by which to measure the exact amount of non-economic damages.  However, the law requires that all damages awarded be reasonable.  You must apply your own considered judgment, therefore, to determine the amount of non-economic damages.

Damages; mitigation.  The plaintiff has a duty to use reasonable effort to mitigate damages.  To "mitigate" means to avoid or reduce damages.  Defendant is not required to compensate plaintiff for avoidable damages.  The defendant has the burden of proving by a preponderance of the evidence:

First, that the plaintiff failed to use reasonable efforts to mitigate damages.

And second, the amount by which damages would have been mitigated.

Duty to deliberate.  Before you begin your

Jury Instructions

deliberations, elect one member of the jury as your presiding

juror.  The presiding juror will preside over the deliberations

and serve as a spokesperson for the jury in court.  You should

diligently strive to reach agreement with all the other jurors

if you can do so.

Your verdict must be unanimous.  Each of you must

decide the case for yourself, but you should do so only after

you have considered all of the evidence, discussed it fully

with the other jurors, and listened to their views.  It is

important that you attempt to reach a unanimous verdict, but of

course, only if you can do so after having made your own

conscientious decision.  Do not be unwilling to change your

opinion if discussions persuade you that you should.  But do

not come to a decision simply because other jurors think it is

right or change an honest belief about the weight and effect of

the evidence simply to reach a verdict.

Communication with the Court.  If it becomes

necessary during your deliberations to communicate with me, you

may send a note through the bailiff, signed by any one or more

of you.  No member of the jury should ever attempt to

communicate with me except by a signed writing.  I will not

communicate with any member of the jury on anything concerning

the case except in writing or here in open court.

If you send out a question, I will consult with the

lawyers before answering it, which may take some time.  You may

1  continue your deliberations while waiting for the answer to any

2  question.  Remember, you are not to tell anyone, including the

3  Court, how the jury stands, whether in terms of a vote count or

4  otherwise, until after you have reached a unanimous verdict or

5  your service has been terminated.

6          Return of the verdict.  A verdict form has been

7  prepared for you.  After you have reached unanimous agreement

8  on the verdict, your presiding juror should complete the

9  verdict form, according to your deliberation, sign and date it,

10  and advice the bailiff you are ready to return to the

11  courtroom.

12          As stated in prior instructions, there will not be a

13  transcript of the trial available to you.  Therefore, please

14  rely on your memory of the evidence and any notes that you took

15  during the trial.

16          I do have the original verdict form, which I will now

17  hand to the clerk.  He will hand it to you.  It consists of 12

18  questions.  You will complete some or all of the questions,

19  depending on your deliberations.

20          There is a signature line for the presiding juror and

21  a date.

22          And as I said, once you have reached a verdict, if

23  you would just let the Court know at that time, we will gather

24  together, and we will return to court.

25          I will hand you the verdict.  Thank you, Gary.  And

1   the instructions.

2          We will hand out copies of the instructions.  As I

3   indicated, you can take those to the jury room and rely on

4   those.

5          MS. RIECHERT:  I want to be sure, Your Honor, that

6   everything you read is in that set of instructions, even the

7   ones we recently added?

8          THE COURT:  No.

9          MS. RIECHERT:  The one we added this morning and at

10  lunchtime?

11         THE COURT:  The one that was added this morning is

12  in; the one we just discussed is not in.  We can add that one

13  instruction and then distribute it to the jury.

14         Jury, the exhibits will be coming to you shortly as

15  well, and you will get an actual hard copy of the exhibit

16  notebooks to be used.  We will get you started and then change

17  the instructions.

18         (Jury retired to deliberate at 1:35 p.m.)

19         (Open court; jury not present:)

20         THE COURT:  Be seated.

21         MR. OSWALD:  Your Honor, for the record, I would like

22  to renew my objection that we had during the jury instruction

23  conference.  Just for record, for maintenance purposes, the

24  plaintiff, in terms of the substantive instructions, renews its

25  objection to Instruction No. 14, No. 16, No. 17, and the basis

1    of the objection is as stated earlier, Your Honor.

2         I believe that the Court's formulation here, of

3    including "but for" language, is incomplete and therefore

4    misleading for the jurors.  The appropriate standard is, as

5    stated in Bostock and Thomas for all three -- again, without

6    going through each one, I would just for the record purposes,

7    could we have for all three -- 14, 16 and 17.  Specifically the

8    objection is that it should state that if you indicate that the

9    standard is "but for," that it is a "but for" cause or one "but

10   for" cause, consistent with Bostock and Thomas rather than its

11   current formulation, which potentially will prejudice the jury.

12        I have just the additional objection to the Court

13   instruction on the demonstrative exhibit, as well for the

14   reasons previously stated, that we objected to.  That's it,

15   Your Honor, just for the record purposes.

16        THE COURT:  Perfect.  Thank you.

17        MS. TALCOTT:  Your Honor, the defense renews its

18   objection to the FMLA and OFLA discrimination retaliation

19   instruction, which I believe is No. 19, for the reasons stated

20   this morning and specifically that the Court is using a

21   negative factor test for causation.  Under Price v. Multnomah

22   County and Nassar, we think it is a "but for" standard that

23   applies to the FMLA claim, and then for OFLA it should be the

24   substantial factor.

25        THE COURT:  Thank you.

1        MR. McCARTHY:  Judge, just one clarification, on the
2   record for one exhibit, and I believe the parties are in
3   agreement about this.  But following a discussion with
4   Mr. Magnuson, we thought we should put it on the record.
5   Exhibit 554 is a group of text messages that we discussed in
6   the pretrial conference.  There is an objection to a portion of
7   the text messages.  Following our agreement that we would
8   redact the irrelevant text messages, I believe the parties are
9   in agreement that 554 should be admitted.  It has been
10  redacted.  I just want to make clear on the record.
11       THE COURT:  Thank you.
12       MR. OSWALD:  Your Honor, I think I didn't fully
13  grasp -- you communicated that they could consider evidence of
14  the underlying exhibit.  Then I think the exhibit you named is
15  55.  It is actually 54, which is the 2018 numbers, and 62,
16  which are the 2019 numbers.
17       THE COURT:  54 and 64?
18       MR. OSWALD:  No, no.  54 and 62.  54 being the 2018
19  numbers; 62 being the 2019 numbers.
20       THE COURT:  Okay.
21       MS. RIECHERT:  Is Your Honor going to type up that
22  page and add it to the instruction?
23       THE COURT:  I think we will have to amend page 9
24  under "Charts and Summaries."  I will add that with the correct
25  exhibit numbers, Plaintiff Exhibit Nos. 54 and 62, substitute

1 the page, and distribute it to the jurors.

2 THE CLERK: Your Honor, to clarify on the record,

3 Defendant's Exhibit 544, as redacted, is received?

4 THE COURT: Yes. Thank you.

5 THE CLERK: Thank you.

6 MR. OSWALD: The jury instructions have not yet gone

7 back there?

8 THE COURT: Correct.

9 MR. OSWALD: I understand.

10 THE COURT: No, they have not.

11 Anything further?

12 MR. McCARTHY: Just that I think we wanted to have an

13 opportunity to review the plaintiff's exhibit book, which I

14 understand we will do when there is the appropriate time to do

15 so.

16 THE CLERK: In a moment here.

17 THE COURT: I am sure Mr. Magnuson will ask for your

18 cell phone numbers. Just be five, ten minutes away in case

19 there is a question or something comes up so you can hustle

20 back quickly.

21 Okay. I will go correct the instructions, and then

22 we will be in touch.

23 Thank you very much, everybody. I appreciate all of

24 you during six long days.

25 MR. OSWALD: Your Honor, I want to thank your staff.

1   We want to thank you for your grateful stewardship over the

2   last six days.  I know it has been a while since you have had

3   human beings in a trial in court.  So we are privileged to be

4   the human beings that showed up for the first one.  Thank you.

5   We are grateful.  And I know I speak for the defendants as

6   well.

7              THE COURT:  Thank you.

8              Okay.  We are in recess.

9              (Recess pending verdict.)

1

2                              --oOo--

3

4        I certify, by signing below, that the foregoing is a

5   correct transcript of the record of proceedings in the

6   above-entitled cause.  A transcript without an original

7   signature, conformed signature, or digitally signed signature

8   is not certified.

9
    /s/ Dennis W. Apodaca                September 27, 2021
10  DENNIS W. APODACA, RDR, RMR, FCRR, CRR            DATE
    Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. McCARTHY: [9] 1007/20 1009/21 1011/4 1012/25 1013/2 1013/21 1014/6 1110/25 1112/11

MR. OSWALD: [73] 985/19 985/21 985/24 986/1 986/17 986/20 987/8 987/17 988/3 988/21 989/11 989/14 989/18 989/21 989/23 991/10 992/14 993/3 993/6 993/8 994/7 995/13 995/24 996/5 996/9 996/12 996/19 997/19 997/21 998/14 998/19 999/9 999/23 1000/16 1001/2 1001/12 1002/14 1002/24 1003/13 1004/1 1010/8 1010/13 1010/17 1010/23 1011/10 1011/14 1011/17 1011/24 1012/10 1013/8 1013/16 1014/22 1014/24 1026/18 1026/20 1078/24 1085/7 1086/12 1087/2 1087/19 1088/14 1088/19 1089/2 1089/21 1090/9 1090/13 1090/21 1109/20 1111/11 1111/17 1112/5 1112/8 1112/24

MS. CHAMBERS: [4] 1005/6 1007/2 1007/10 1009/8

MS. RIECHERT: [23] 1011/22 1037/10 1084/5 1084/9 1084/12 1084/22 1086/3 1086/20 1087/3 1087/13 1087/18 1088/3 1088/13 1088/25 1089/8 1089/16 1089/24 1090/7 1091/5 1091/17 1109/4 1109/8 1111/20

MS. TALCOTT: [27] 987/20 988/14 988/25 989/15 991/2 992/5 993/4 993/9 995/14 995/25 996/4 996/13 997/10 998/25 999/6 999/13 1000/2 1000/11 1001/5 1002/6 1002/20 1004/4 1004/8 1006/13 1007/5 1007/12 1110/16

THE CLERK: [6] 1011/3 1012/2 1012/4 1112/1 1112/4 1112/15

THE COURT: [110] 983/3 985/20 985/22 985/25 986/2 986/19 987/7 987/14 987/19 988/2 989/7 989/12 989/16 989/20 989/22 992/4 992/9 993/1 993/5 993/7 994/6 995/5 995/15 996/3 996/8 996/11 997/7 997/12 997/20 998/8 998/15 999/5 999/8 999/14 1000/1 1000/12 1000/12 1001/1 1001/4 1001/7 1002/12 1002/19 1002/23 1003/11 1003/24 1004/2 1004/7 1005/5 1007/9 1007/15 1009/7 1010/3 1010/12 1010/16 1010/18 1011/2 1011/8 1011/12 1011/15 1011/21 1012/1 1012/3 1012/11 1012/16 1013/1 1013/14 1013/25 1014/11 1014/14 1014/23 1026/15 1026/19 1037/1 1037/9 1078/23 1083/18 1084/7 1084/11 1084/21 1085/5 1085/9 1086/1 1086/10 1086/25 1087/9 1087/16 1088/12 1088/18 1089/15 1090/6 1090/8 1090/11 1090/15 1091/11 1091/14 1091/19 1109/7 1109/10 1109/19 1110/15 1110/24 1111/10 1111/16 1111/19 1111/22 1112/3 1112/7 1112/9 1112/16 1113/6

**$**

**$223,000 [1]** 1049/21
**$3,005,021 [2]** 1031/6 1034/14
**$30 [2]** 1036/8 1036/13
**$575,982 [2]** 1030/21 1034/4

**'**

**'but [4]** 987/7 987/13 987/19 1003/9
**'discriminate' [1]** 994/19
**'I'll [1]** 1021/13
**'subjected [1]** 987/16

**-**

**--oOo [1]** 1114/2

**/**

**/s [1]** 1114/9

**1**

**1 percent [1]** 1029/12
**1.10 [1]** 985/16
**1.12 [1]** 985/17
**1.4 [1]** 985/10
**1.6 [1]** 985/14
**1.9 [1]** 985/15
**10 [7]** 986/9 999/18 1000/1 1000/2 1034/16 1034/25 1095/21
**10.8 [2]** 986/16 992/13
**100 [2]** 1027/7 1061/1
**1000 [1]** 981/22
**1007 [1]** 995/23
**1014 [1]** 982/3
**1037 [1]** 982/4
**1039 [1]** 995/9

**1052 [1]** 995/10
**1079 [1]** 982/5
**1091 [1]** 982/6
**10th [1]** 1070/9
**11 [3]** 999/18 1000/2 1035/1
**11.1 [1]** 989/17
**11.13 [1]** 997/14
**11.14 [1]** 993/3
**11.3 [1]** 992/12
**1109 [1]** 982/7
**1110 [1]** 981/4
**12 [8]** 986/13 998/13 1032/24 1033/5 1036/3 1036/10 1101/18 1108/17
**12-month [1]** 1101/19
**1209 [1]** 991/15
**1211 [1]** 981/12
**123 [1]** 1050/1
**12th [1]** 1070/9
**13 [2]** 986/14 1067/22
**13 percent [1]** 1048/8
**134 [1]** 983/24
**136 [1]** 983/25
**138 [1]** 1012/23
**14 [5]** 986/15 997/24 998/8 1109/25 1110/7
**140 [1]** 1012/18
**1400 [1]** 981/7
**149 [1]** 1030/23
**15 [2]** 989/13 1018/25
**150 [4]** 1018/23 1057/2 1057/4 1057/8
**15th [5]** 1023/13 1027/22 1029/5 1041/16 1041/22
**15th of [1]** 1028/22
**16 [9]** 989/17 989/20 992/11 997/24 998/8 1021/14 1073/4 1109/25 1110/7
**160 [3]** 1057/3 1057/4 1057/8
**16th [6]** 1021/12 1025/24 1027/25 1039/16 1079/6 1082/11
**16th of [1]** 1023/16
**17 [6]** 989/18 992/12 997/24 998/8 1109/25 1110/7
**1701 [1]** 981/10
**1717 [1]** 981/4
**17th [3]** 1020/2 1023/22 1027/25
**17th of [2]** 1023/8 1024/21
**18 [2]** 993/3 1027/22
**182 [5]** 1007/20 1008/1 1009/5 1012/23 1013/4
**18th [4]** 1041/24 1043/19 1043/22 1065/1
**18th of [2]** 1029/18 1044/1
**19 [7]** 993/6 1016/5 1079/8 1079/10 1081/21 1081/21 1110/19
**1900 [1]** 981/12
**19103 [1]** 981/10
**1999 [1]** 1000/5
**19th [4]** 1027/20 1042/12 1042/22 1070/10
**19th of [2]** 1023/12 1079/4
**1:00 [1]** 1083/22
**1:35 p.m [1]** 1109/18
**1st [9]** 1023/20 1025/9 1025/13 1025/23 1027/24 1029/22 1034/23 1045/2 1064/19

**2**

**2 percent [1]** 1029/12
**2,102,400 [2]** 1035/10 1036/8
**2-18 [1]** 1027/22
**2-21 [1]** 1044/14
**2-7 [1]** 1027/22
**2.13 [1]** 986/6
**2.14 [1]** 986/7
**2.15 [1]** 986/7
**2.16 [1]** 986/10
**2.2 [1]** 986/5
**20 [26]** 993/8 1028/11 1029/4 1037/18 1038/2 1038/15 1040/21 1041/14 1042/8 1043/11 1045/11 1046/17 1046/25 1047/6 1047/8 1076/22 1077/3 1079/11 1079/12 1079/16 1079/22 1080/2 1080/3 1080/4 1080/16 1081/15
**20 percent [1]** 1042/4
**20006 [1]** 981/4

## 2

**2010 [1]** 995/22
**2012 [1]** 1094/16
**2013 [1]** 995/9
**2014 [1]** 1049/19
**2016 [1]** 1029/11
**2017 [2]** 1029/15 1037/17
**2018 [28]** 1021/4 1028/16 1029/1 1040/15 1041/22 1041/24
1042/1 1048/9 1049/24 1058/10 1064/10 1065/10 1065/23
1070/9 1073/7 1073/8 1076/5 1079/20 1079/21 1080/19
1080/23 1080/25 1081/2 1088/22 1088/23 1088/23 1111/15
1111/18
**2019 [34]** 1000/6 1020/10 1021/18 1023/13 1023/15 1025/9
1025/13 1025/23 1026/3 1029/22 1029/23 1039/14 1039/21
1043/16 1044/8 1045/2 1048/9 1052/2 1066/3 1066/4 1066/19
1073/10 1079/25 1080/20 1081/5 1081/17 1082/11 1088/24
1094/18 1097/9 1098/17 1100/20 1111/16 1111/19
**2020 [3]** 1062/16 1062/24 1078/5
**2021 [5]** 980/5 983/1 995/7 995/11 1114/9
**2021WL1550336 [1]** 995/8
**21 [5]** 980/5 983/1 995/12 1044/14 1044/24
**21st [6]** 988/5 991/13 1017/12 1026/7 1044/8 1045/6
**22 [2]** 995/17 995/24
**223,000 [1]** 1061/11
**23 [2]** 995/24 1043/17
**24 [1]** 997/13
**25 [1]** 997/14
**25 percent [1]** 1019/15
**25th Suzanne [1]** 1025/11
**26 [1]** 997/15
**27 [2]** 997/16 1114/9
**28 [1]** 997/17
**2d [1]** 995/9

## 3

**3 percent [1]** 1081/19
**3-1 [1]** 1027/24
**3.1 [1]** 997/15
**3.3 [1]** 997/16
**30 [1]** 1063/3
**30 percent [1]** 1048/11
**301 [1]** 981/22
**306 [1]** 995/10
**307 [1]** 995/11
**31st [2]** 1023/5 1024/15
**326-8182 [1]** 981/23
**3:19-cv-01657-JR [1]** 980/4
**3rd [4]** 1020/5 1020/10 1027/25 1039/21

## 4

**4.1 [1]** 986/13
**4.2 [1]** 986/14
**40 [2]** 1099/11 1099/17
**403 [3]** 1008/25 1009/11 1012/25
**48 [1]** 1042/2
**4th [2]** 1040/14 1040/15

## 5

**5-16 [1]** 1021/14
**5.4 [1]** 995/19
**50 [5]** 983/19 984/18 984/24 1061/3 1061/19
**502 [1]** 1043/25
**503 [2]** 981/23 1043/25
**504 [1]** 1041/15
**506 [1]** 1039/13
**507 [1]** 1041/24
**510 [1]** 1042/11
**520 [1]** 1041/8
**522 [1]** 1040/14
**53 [1]** 1036/12
**53 percent [1]** 1042/2
**533 [1]** 1072/22

**539 [1]** 1072/23
**54 [7]** 1080/7 1088/7 1111/15 1111/17 1111/18 1111/18
1111/25
**544 [1]** 1112/3
**546 [1]** 1066/17
**55 [4]** 1090/18 1090/21 1095/19 1111/15
**554 [3]** 1066/17 1111/5 1111/9
**56 [1]** 1039/13
**57 [1]** 1040/4
**58.01 [1]** 989/13
**596 [1]** 995/23
**59A.02 [1]** 995/13
**5th [4]** 1023/14 1025/3 1025/8 1079/5

## 6

**60 percent [1]** 1061/20
**60,000 [1]** 1061/3
**62 [7]** 1036/10 1036/11 1080/7 1111/15 1111/18 1111/19
1111/25
**64 [1]** 1111/17
**65 [2]** 1031/5 1036/3
**66 [1]** 1055/9
**66-year-old [1]** 1077/4
**6th [11]** 1021/18 1023/19 1026/3 1028/2 1029/23 1030/19
1052/2 1079/24 1097/8 1098/17 1100/20

## 7

**70-page [1]** 1050/19
**703 [2]** 1005/11 1012/21
**73 [1]** 1072/24
**7th [2]** 1025/1 1043/16

## 8

**80 percent [14]** 1037/19 1039/3 1046/15 1046/22 1047/1
1080/22 1080/22 1080/24 1081/1 1081/3 1081/6 1081/9
1081/11 1081/18
**80/20 [23]** 1028/11 1029/4 1037/18 1038/2 1038/15 1041/14
1042/8 1043/11 1045/11 1046/17 1046/25 1047/6 1047/8
1076/22 1079/11 1079/12 1079/16 1079/22 1080/2 1080/3
1080/4 1080/16 1081/15
**8182 [1]** 981/23
**82 [1]** 1070/15
**84 [2]** 1072/6 1072/9
**848 [1]** 995/10

## 9

**91 [2]** 1043/14 1043/21
**92 [1]** 1039/20
**94 [4]** 1056/17 1056/24 1057/7 1058/2
**94304 [1]** 981/7
**95 [1]** 1040/2
**96 [1]** 1044/15
**970 [1]** 995/9
**97204 [2]** 981/13 981/22
**983 [1]** 982/2
**9:00 [2]** 1010/7 1012/13
**9th [2]** 1028/22 1029/6

## A

**abdicates [1]** 1020/2
**ability [1]** 1009/2
**able [4]** 1012/9 1015/7 1051/7 1066/9
**about [114]** 985/4 988/19 994/25 1001/19 1002/1 1004/14
1006/5 1006/12 1006/18 1007/7 1007/7 1008/14 1008/19
1015/15 1017/24 1018/2 1019/6 1019/8 1019/23 1021/3
1021/16 1021/25 1022/2 1022/3 1022/9 1022/10 1022/22
1023/6 1023/6 1025/10 1025/16 1025/17 1025/17 1025/20
1027/23 1029/6 1029/15 1029/19 1029/18 1029/19 1029/19
1031/16 1036/11 1037/12 1040/13 1043/8 1044/9 1044/11
1044/13 1044/16 1044/18 1044/20 1044/22 1044/23 1044/5
1045/6 1045/8 1045/17 1045/19 1046/7 1046/9 1046/12
1046/14 1049/25 1050/2 1050/18 1050/24 1052/25 1053/4
1054/18 1055/7 1057/5 1059/3 1064/24 1064/25 1066/2

# A

**about...** **[38]** 1066/14 1069/22 1070/1 1070/6 1070/10 1070/12 1070/24 1071/3 1071/9 1071/10 1071/14 1072/11 1072/19 1072/23 1072/25 1073/18 1074/14 1074/23 1076/6 1076/15 1076/17 1077/1 1077/6 1077/22 1079/11 1079/22 1079/23 1084/16 1086/8 1087/18 1094/5 1096/20 1097/11 1100/1 1103/22 1107/15 1111/3

**above** **[2]** 1080/22 1114/6

**above-entitled** **[1]** 1114/4

**absence** **[2]** 1073/13 1075/25

**accept** **[5]** 1052/18 1060/15 1078/2 1092/25 1094/25

**accepted** **[3]** 1022/11 1067/14 1082/18

**accepting** **[4]** 1020/18 1026/6 1051/22 1052/21

**access** **[1]** 1080/8

**accomplish** **[1]** 983/6

**accordance** **[1]** 1066/15

**according** **[1]** 1108/9

**account** **[1]** 1009/1

**accountability** **[4]** 1016/8 1016/9 1017/7 1030/5

**accountable** **[12]** 1016/12 1016/13 1017/3 1022/17 1030/12 1074/9 1076/8 1082/23 1082/24 1082/24 1082/25

**accuracy** **[1]** 1041/17

**accurate** **[10]** 1003/20 1062/11 1086/13 1086/20 1087/23 1088/2 1089/8 1089/14 1089/19 1091/9

**accused** **[1]** 1018/10

**acknowledge** **[1]** 1073/23

**acknowledging** **[2]** 1074/2 1074/3

**across** **[2]** 1076/6 1081/13

**act** **[54]** 984/7 986/19 987/12 987/17 987/24 988/6 988/16 988/20 989/3 990/24 992/19 994/13 1002/19 1003/16 1016/24 1022/25 1023/24 1023/24 1026/15 1026/23 1027/1 1027/1 1027/10 1027/22 1027/10 1028/4 1028/6 1031/12 1032/6 1032/16 1033/7 1033/8 1054/1 1054/18 1055/22 1056/9 1056/10 1063/23 1064/2 1064/3 1068/19 1096/7 1096/11 1096/13 1096/19 1097/2 1097/5 1097/17 1099/2 1101/1 1101/10 1101/11 1101/13 1101/15 1105/23

**Act/retaliation** **[2]** 1002/19 1032/16

**acted** **[1]** 1098/3

**action** **[22]** 987/10 987/14 992/20 1024/12 1034/9 1096/23 1097/1 1097/4 1097/5 1097/9 1098/6 1098/10 1098/18 1100/9 1100/12 1100/15 1100/16 1100/20 1102/18 1102/20 1102/22 1102/24

**action'** **[1]** 987/16

**actions** **[10]** 987/14 1022/17 1023/18 1023/19 1027/12 1027/21 1030/4 1030/12 1034/1 1035/9

**activities** **[2]** 1106/5 1106/5

**activity** **[17]** 987/11 987/17 987/19 992/19 992/21 998/5 1082/1 1096/18 1097/1 1097/4 1097/6 1097/7 1100/5 1100/12 1100/15 1100/17 1100/19

**acts** **[1]** 1096/9

**actual** **[1]** 1109/15

**actually** **[6]** 994/2 999/11 1016/20 1022/9 1076/11 1111/15

**add** **[9]** 990/19 991/24 992/22 999/9 999/16 1008/9 1109/12 1111/22 1111/24

**added** **[5]** 999/6 1038/9 1109/7 1109/9 1109/11

**addict** **[1]** 1077/1

**adding** **[1]** 999/19

**addition** **[4]** 1031/9 1055/3 1067/13 1093/21

**additional** **[7]** 990/9 991/16 997/18 1003/8 1003/8 1014/7 1110/12

**Additionally** **[2]** 993/25 1052/6

**ADEA** **[27]** 989/17 990/3 990/23 991/7 992/9 992/19 993/15 998/12 1003/2 1032/6 1032/15 1033/1 1033/4 1033/19 1063/25 1067/24 1068/11 1098/24 1099/2 1099/24 1100/1 1100/6 1100/13 1100/16 1100/19 1101/2 1101/9

**ADEA/discrimination** **[1]** 1032/6

**ADEA/willfulness** **[2]** 1033/1 1067/24

**adequate** **[1]** 998/6

**admissions** **[1]** 1043/23

**admits** **[8]** 1039/3 1039/22 1040/16 1041/18 1041/20 1046/21 1073/18 1076/9

**admitted** **[8]** 1038/14 1040/4 1062/5 1092/22 1095/6 1095/13

**advantage** **[1]** 984/8

**adverse** **[25]** 987/10 987/14 987/16 992/18 992/19 1023/18 1023/19 1023/24 1026/23 1097/1 1097/3 1097/5 1097/9 1098/5 1098/10 1098/13 1098/17 1100/9 1100/11 1100/14 1100/16 1100/20 1102/17 1102/20 1102/22 1102/24

**advice** **[1]** 1108/10

**advisory** **[5]** 996/3 996/7 996/11 996/13 996/18

**affects** **[1]** 1035/24

**affirmative** **[2]** 1092/14 1092/16

**after** **[50]** 990/12 990/12 992/25 1002/6 1003/3 1004/24 1007/1 1022/11 1024/15 1024/24 1025/3 1039/15 1039/24 1040/3 1042/24 1043/3 1043/8 1044/1 1044/24 1048/4 1049/18 1051/14 1054/6 1056/6 1056/16 1058/7 1058/22 1062/15 1065/2 1065/4 1066/3 1066/8 1066/10 1066/12 1070/15 1070/16 1073/5 1073/15 1075/13 1076/6 1078/13 1078/17 1079/8 1079/9 1079/9 1082/17 1107/7 1107/11 1108/4 1108/7

**afternoon** **[2]** 1086/1 1091/15

**afterwards** **[2]** 1043/5 1071/9

**again** **[36]** 989/2 989/24 991/4 991/8 992/12 1000/8 1000/10 1004/18 1007/3 1010/2 1014/5 1021/15 1023/7 1023/12 1023/14 1027/3 1027/12 1030/10 1031/2 1032/22 1033/19 1036/5 1041/9 1041/10 1042/3 1053/19 1062/21 1064/19 1066/7 1070/11 1078/19 1082/23 1087/11 1087/18 1095/15 1110/5

**against** **[39]** 984/19 1017/23 1018/9 1019/4 1025/7 1026/2 1028/1 1028/24 1029/22 1029/23 1029/24 1032/19 1044/6 1044/19 1045/4 1051/25 1055/2 1055/16 1055/20 1056/22 1057/9 1057/14 1057/20 1059/1 1060/6 1060/11 1068/1 1073/12 1075/5 1075/21 1096/12 1097/19 1099/1 1099/25 1100/7 1101/23 1102/1 1102/10 1103/6

**age** **[79]** 990/1 1003/1 1003/3 1003/15 1003/16 1027/9 1027/10 1028/4 1028/8 1032/5 1032/9 1032/12 1032/15 1032/20 1032/25 1033/15 1033/18 1036/3 1036/10 1036/11 1036/12 1042/14 1054/12 1054/14 1054/16 1054/20 1054/23 1055/2 1055/4 1055/7 1055/11 1055/13 1055/16 1055/20 1055/23 1055/25 1056/2 1056/4 1059/23 1060/1 1060/6 1064/1 1064/17 1064/23 1068/2 1068/4 1068/11 1068/15 1068/15 1068/16 1068/16 1072/2 1072/4 1072/6 1072/9 1072/10 1072/13 1072/16 1072/18 1072/20 1073/3 1073/5 1073/7 1099/2 1099/4 1099/5 1099/11 1099/14 1099/15 1099/17 1099/22 1100/7 1101/1 1103/7 1103/10 1103/13 1103/15

**agents** **[2]** 1096/7 1096/9

**agree** **[14]** 988/25 997/8 997/9 997/13 998/11 1012/23 1069/2 1069/9 1091/12 1092/4 1097/7 1099/16 1100/18 1103/12

**agreed** **[7]** 993/6 1047/15 1053/11 1063/3 1072/16 1092/23 1094/12

**agreement** **[9]** 1021/7 1021/8 1053/5 1053/5 1107/4 1108/7 1111/3 1111/7 1111/9

**agrees** **[1]** 1071/25

**ahead** **[1]** 997/21

**aleck** **[1]** 1083/2

**alive** **[3]** 1083/6 1083/9 1083/15

**all** **[107]** 983/6 983/15 986/22 994/16 996/16 996/21 999/20 1004/2 1006/12 1008/15 1011/11 1011/21 1012/4 1013/20 1014/16 1015/17 1016/11 1016/14 1017/19 1020/25 1020/25 1021/25 1022/20 1022/24 1027/2 1029/20 1030/8 1034/17 1034/20 1034/21 1036/24 1037/18 1039/9 1039/19 1040/7 1040/8 1040/8 1041/9 1042/7 1042/12 1042/17 1042/20 1042/20 1043/10 1044/5 1044/8 1045/8 1045/15 1045/19 1047/22 1048/2 1049/16 1049/16 1049/18 1050/5 1050/10 1053/10 1054/3 1054/25 1055/15 1056/17 1057/18 1060/4 1060/7 1060/25 1061/8 1062/21 1068/25 1069/12 1069/17 1069/22 1072/5 1072/12 1072/13 1072/16 1073/14 1074/7 1074/10 1077/12 1078/10 1079/10 1080/5 1080/10 1080/12 1080/21 1082/21 1082/25 1087/21 1089/3 1091/21 1092/1 1092/17 1095/3 1096/1 1097/13 1098/19 1099/19 1100/21 1102/25 1103/21 1106/12 1107/4 1107/8 1108/18 1110/5 1110/7 1112/23

**allegation** **[1]** 1020/14

**allegations** **[2]** 1044/2 1071/20

**alleged** **[7]** 1001/20 1031/16 1042/18 1070/18 1096/20 1097/11

**A**

alleged... [1] 1100/2
alleging [2] 1067/7 1075/18
allowed [2] 1007/4 1094/23
almost [4] 1008/15 1028/18 1038/3 1047/22
alone [1] 1059/9
already [16] 1001/24 1005/14 1006/11 1009/20 1011/9 1013/17
1013/20 1022/11 1042/21 1044/20 1045/13 1048/14 1052/18
1053/16 1060/10 1082/17
also [22] 993/19 993/22 1000/19 1009/13 1012/20 1023/20
1040/12 1052/23 1059/15 1061/16 1064/13 1066/23 1069/10
1072/1 1072/19 1073/17 1077/5 1101/4 1104/18 1105/20
1105/25 1106/3
altering [1] 1036/7
although [4] 988/5 996/15 1004/11 1090/6
Alto [1] 981/7
always [2] 1020/21 1077/20
am [14] 985/10 992/10 995/5 995/6 995/8 999/25 1007/16
1012/20 1023/9 1054/24 1068/18 1069/22 1090/7 1112/17
ambassador [2] 1027/6 1058/7
ambiguous [1] 994/19
ambush [3] 1027/23 1029/18 1029/20
amend [2] 996/25 1111/23
Amendments [1] 1015/11
America [1] 1021/21
amongst [2] 1026/10 1026/10
amount [15] 998/22 1030/18 1030/21 1031/4 1031/6 1034/2
1035/1 1104/3 1104/7 1104/19 1105/4 1105/14 1106/11
1106/14 1106/23
amounts [1] 1036/8
Amy [6] 1021/17 1051/11 1061/6 1061/16 1075/4 1079/12
analysis [1] 1009/11
analyze [1] 1077/9
Andrew [3] 1027/15 1027/15 1045/18
angry [3] 1024/18 1054/9 1076/7
Anita [1] 981/2
Anne [1] 981/11
annual [5] 1007/24 1008/1 1018/23 1019/1 1053/12
another [17] 1005/21 1009/17 1013/19 1020/23 1022/15 1058/5
1061/23 1062/25 1063/5 1067/1 1067/2 1067/18 1069/17
1071/12 1075/17 1094/8 1105/5
answer [19] 1031/20 1032/13 1032/23 1033/5 1033/12 1033/21
1034/24 1048/17 1049/8 1050/9 1055/15 1059/4 1059/21
1060/9 1063/12 1063/22 1067/25 1068/5 1108/1
answering [2] 1002/9 1107/25
anti [2] 990/24 993/19
anti-retaliation [2] 990/24 993/19
anxiety [4] 1016/20 1016/21 1016/22 1035/14
any [93] 984/6 984/15 985/2 985/12 986/17 986/21 988/11
989/10 989/14 992/5 992/14 993/8 994/25 995/13 995/24
997/18 998/14 1000/4 1000/21 1001/3 1001/5 1001/12
1004/23 1004/25 1007/19 1010/18 1012/20 1013/23 1014/8
1014/9 1016/9 1027/8 1033/24 1034/7 1035/1 1035/7 1036/15
1042/6 1042/13 1042/18 1042/21 1043/19 1050/4 1050/24
1058/18 1060/9 1062/3 1063/14 1065/5 1065/23 1066/12
1067/8 1067/9 1069/3 1069/19 1071/18 1077/18 1079/9
1079/16 1085/4 1085/8 1086/23 1087/5 1090/23 1092/5
1092/13 1092/21 1092/23 1092/24 1093/18 1093/24 1094/11
1094/25 1096/3 1097/15 1098/22 1099/22 1100/24 1101/18
1101/24 1103/2 1103/25 1104/4 1104/10 1104/14 1104/17
1105/10 1106/19 1106/10 1107/19 1107/22 1108/1 1108/14
anybody [5] 999/4 1062/9 1064/7 1064/15 1084/1
anymore [2] 1023/9 1024/23
anyone [2] 1062/6 1108/2
anything [18] 1003/2 1004/1 1007/10 1010/8 1016/24 1043/19
1052/25 1066/14 1071/5 1072/3 1072/6 1072/12 1073/2 1085/7
1092/10 1093/25 1107/22 1112/11
anyway [1] 1051/5
apart [1] 1106/5
Apodaca [3] 981/21 1114/9 1114/10
apparently [2] 1026/17 1084/25
appear [1] 1074/25

**APPEARANCES [1]** 981/1
appears [1] 1008/1
applicable [5] 988/2 992/7 992/9 993/21 1039/18
application [1] 1062/12
applications [1] 1034/21
applied [13] 984/13 989/5 993/13 993/13 994/2 1000/7 1040/7
1061/14 1062/3 1067/4 1078/1 1080/5 1105/16
applies [6] 993/15 993/15 998/18 1091/23 1095/25 1110/23
apply [9] 984/16 987/25 988/18 991/7 993/22 999/3 1069/1
1092/2 1106/13
applying [1] 1081/10
appreciate [3] 1000/16 1001/10 1112/23
approach [1] 986/2
appropriate [8] 989/6 1009/11 1010/21 1087/24 1091/3 1091/4
1110/4 1112/14
appropriately [1] 1053/2
approved [3] 1016/17 1016/24 1074/17
April [13] 988/5 991/13 995/7 1020/2 1023/22 1027/25 1028/16
1039/16 1040/14 1040/15 1045/14 1049/19 1079/25
April 16th [1] 1039/16
April 17th [3] 1020/2 1023/22 1027/25
April 2021 [1] 995/7
April 21st [2] 988/5 991/13
April 4th [2] 1040/14 1040/15
are [132] 983/5 983/11 983/14 983/24 985/2 985/3 985/18 987/8
988/10 989/10 990/25 991/20 991/21 992/23 994/16 994/19
996/7 996/16 996/23 997/18 997/23 998/24 999/20 999/21
1000/4 1001/6 1002/9 1004/3 1004/12 1007/9 1007/12 1007/20
1008/21 1009/1 1009/10 1009/10 1009/13 1009/13 1009/20
1010/1 1010/16 1010/25 1011/21 1011/23 1012/6 1012/12
1013/9 1013/20 1014/3 1015/11 1015/18 1016/3 1017/3 1019/6
1020/17 1020/25 1021/11 1022/8 1022/21 1022/22 1023/2
1026/17 1026/25 1029/19 1029/23 1029/25 1030/13 1038/20
1039/10 1039/11 1039/12 1039/20 1043/9 1043/14 1043/17
1043/21 1043/24 1043/25 1044/15 1045/10 1046/10 1047/25
1048/16 1051/15 1060/24 1061/18 1063/12 1063/25 1063/25
1066/17 1068/23 1069/17 1069/25 1072/18 1076/1 1080/25
1081/2 1081/6 1083/20 1083/21 1083/25 1086/15 1087/12
1087/18 1087/22 1089/4 1089/5 1089/6 1089/7 1090/2 1090/5
1092/19 1092/20 1092/22 1093/4 1093/5 1093/6 1093/7
1093/13 1094/1 1095/9 1095/15 1096/2 1104/7 1108/2 1108/10
1111/2 1111/8 1111/16 1113/3 1113/5 1113/8
areas [1] 1086/17
argue [2] 1036/14 1075/20
argued [3] 1000/9 1049/23 1057/13
argues [4] 1037/11 1040/23 1044/11 1046/4
argument [22] 982/5 983/8 984/2 984/4 984/5 984/6 991/12
1000/7 1004/7 1005/22 1013/14 1014/8 1051/10 1084/14
1090/17 1090/20 1090/23 1090/24 1090/25 1091/3 1091/5
1095/18
arguments [6] 1010/12 1022/24 1058/24 1093/6 1093/8 1104/6
around [2] 1024/23 1057/19
arrived [1] 1015/24
arrives [1] 983/6
arriving [1] 1105/4
arrogance [1] 1017/16
article [1] 984/19
articulated [1] 998/3
as [163] 983/5 983/11 983/14 983/24 994/1 994/10 1002/5 1002/10 1003/7
1003/17 1005/2 1005/24 1006/1 1006/22 1009/20 1013/6
1013/25 1014/10 1018/10 1027/23 1030/20 1031/6 1031/20
1032/4 1032/13 1032/23 1033/5 1033/12 1033/20 1034/4
1034/14 1034/24 1035/3 1035/10 1036/8 1059/5 1059/6 1071/7
1082/18 1112/17
asked [12] 995/3 1017/11 1028/15 1048/17 1057/14 1058/9
1059/21 1063/12 1066/23 1067/15 1078/11 1078/21
asking [4] 1050/6 1057/3 1057/20 1058/1
asks [2] 1003/2 1066/25
assert [1] 984/4
asserts [2] 1099/3 1099/5
assess [3] 1073/17 1073/19 1073/22

**A**

assessing [5]  1071/12 1071/22 1072/1 1072/18 1076/4
assessment [1]  1036/5
assume [2]  985/13 1062/21
assumed [1]  1062/13
assumption [1]  1061/4
asthma [1]  1038/10
ASTRAZENECA [71]  980/6 1007/24 1008/11 1008/14 1008/20 1009/10 1009/18 1016/4 1016/12 1016/16 1017/1 1017/18 1018/16 1019/16 1020/6 1021/6 1021/20 1022/11 1022/14 1022/16 1022/19 1023/18 1025/14 1026/5 1028/10 1028/14 1029/21 1029/22 1030/1 1030/3 1030/11 1030/15 1030/18 1031/3 1035/24 1036/15 1036/19 1037/20 1039/1 1049/4 1051/2 1054/20 1054/22 1055/2 1055/3 1055/10 1055/11 1056/1 1056/14 1058/16 1058/19 1059/20 1060/10 1060/12 1062/14 1062/15 1068/1 1068/13 1069/20 1078/10 1078/20 1079/1 1079/8 1079/11 1080/1 1080/3 1081/16 1081/24 1082/2 1082/17 1082/20
AstraZeneca's [20]  1008/2 1008/4 1008/21 1008/22 1009/1 1009/15 1009/16 1014/9 1017/22 1020/13 1022/1 1036/23 1036/24 1038/4 1039/18 1066/15 1074/9 1074/15 1074/17 1082/22
attach [1]  1014/1
attached [2]  1005/12 1040/18
attaches [1]  1042/3
attachment [1]  1028/15
attachments [1]  1041/13
attempt [3]  1028/10 1107/10 1107/20
attempted [1]  1028/10
attend [2]  1035/16 1046/14
attended [2]  1071/17 1071/17
attending [2]  1035/15 1065/11
Attorneys [1]  1093/14
August [5]  1021/4 1023/5 1024/15 1034/23 1049/23
August 1st [1]  1034/23
August 31st [2]  1023/18 1024/15
authority [3]  988/9 1096/5 1096/10
available [4]  1009/25 1016/6 1016/6 1108/13
availed [1]  1102/14
Avenue [2]  981/12 981/22
average [2]  1067/21 1081/8
avoid [2]  1014/7 1106/18
avoidable [1]  1106/19
avoiding [1]  1012/20
award [6]  1036/8 1067/17 1068/4 1104/15 1104/25 1105/10
awarded [4]  995/20 1067/20 1068/3 1106/13
away [8]  1019/18 1030/15 1030/18 1031/3 1035/25 1058/7 1082/2 1112/18
AZ [1]  1015/25

**B**

baby [3]  1083/4 1083/12 1083/14
back [31]  1000/13 1001/9 1011/1 1012/1 1012/13 1020/6 1020/7 1020/8 1021/3 1021/14 1030/16 1031/9 1033/6 1036/4 1037/5 1048/17 1050/12 1052/5 1054/10 1057/17 1058/9 1059/6 1059/8 1059/17 1065/10 1083/5 1083/8 1083/12 1083/22 1112/7 1112/20
backgrounds [1]  1015/22
backpay [10]  997/5 998/18 998/21 998/22 1030/18 1030/21 1033/23 1101/3 1104/13 1104/14
bad [12]  1022/14 1022/19 1043/4 1054/6 1054/9 1070/16 1070/17 1071/8 1082/20 1082/20 1082/21 1082/21
bailiff [2]  1107/19 1108/10
balancing [2]  1006/25 1007/2
ball [1]  1026/5
Bancorp [1]  991/6
Bank [1]  995/8
Barb [2]  1020/20 1082/16
Barbara [8]  1016/4 1017/19 1018/19 1020/24 1021/2 1021/20 1051/14 1082/15
Barnes [3]  1048/2 1076/13 1076/25
base [1]  1092/17

based [10]  1005/18 1032/20 1055/20 1060/6 1061/1 1091/5 1099/6 1100/7 1101/12 1104/15
basis [6]  983/20 984/4 1028/20 1028/21 1085/5 1109/25
basketball [6]  1035/15 1035/16 1065/8 1065/14 1065/15 1065/18
baton [1]  1020/10
be [152]
because [106]  986/22 986/24 987/1 987/11 987/16 988/6 988/11 990/5 990/19 992/18 993/16 994/13 994/14 994/14 994/14 994/15 994/16 994/21 995/1 997/6 1001/19 1003/3 1003/5 1004/22 1007/9 1008/10 1016/7 1018/24 1020/7 1020/17 1024/1 1024/2 1025/12 1027/20 1028/8 1028/23 1029/9 1031/15 1031/24 1032/8 1032/18 1032/24 1035/2 1035/23 1037/14 1037/20 1038/21 1038/22 1042/7 1044/21 1045/21 1046/22 1049/3 1049/10 1053/21 1054/9 1054/14 1054/20 1055/2 1055/19 1055/25 1056/4 1056/5 1056/15 1058/14 1058/19 1058/21 1058/21 1061/22 1061/25 1062/2 1062/12 1064/9 1064/16 1065/20 1065/21 1065/21 1066/22 1067/6 1068/2 1068/14 1068/20 1069/15 1071/20 1075/16 1075/22 1075/23 1076/7 1078/3 1079/18 1089/9 1089/13 1090/4 1094/23 1097/1 1097/4 1097/11 1099/4 1099/5 1099/13 1100/12 1100/15 1102/6 1102/7 1103/7 1107/14
becomes [2]  1025/2 1107/17
becoming [2]  1038/5 1038/6
been [54]  994/21 994/22 1004/14 1009/16 1009/17 1022/6 1028/23 1029/11 1032/19 1034/9 1037/15 1041/20 1045/9 1049/7 1049/9 1049/14 1051/4 1051/5 1052/12 1052/13 1052/18 1053/16 1055/19 1061/22 1061/5 1061/13 1061/19 1062/7 1062/11 1062/18 1062/23 1067/16 1073/6 1074/1 1077/25 1082/16 1085/1 1086/8 1086/9 1087/6 1087/6 1087/8 1093/19 1094/14 1095/7 1095/13 1104/14 1104/21 1106/6 1106/24 1108/5 1108/6 1111/9 1113/2
before [58]  980/11 983/6 983/16 990/25 990/25 992/23 998/21 1010/5 1010/6 1010/7 1012/13 1015/20 1015/20 1018/20 1023/10 1025/4 1028/22 1029/16 1030/1 1035/19 1035/20 1035/21 1035/22 1039/21 1042/18 1042/21 1043/8 1043/19 1044/5 1045/7 1045/8 1058/14 1064/11 1064/11 1064/12 1065/23 1069/5 1069/18 1070/20 1071/10 1071/11 1079/17 1084/24 1087/8 1088/1 1088/5 1088/14 1089/10 1089/25 1090/3 1090/14 1091/16 1092/7 1096/2 1105/8 1106/25 1107/25
began [1]  1094/16
begin [3]  1014/24 1083/24 1106/25
beginning [2]  1014/2 1094/16
begins [2]  992/17 1003/18
behalf [1]  1078/20
behaviors [1]  1019/9
beholden [1]  1030/1
being [25]  1009/13 1019/23 1022/2 1022/4 1022/7 1030/14 1038/20 1052/7 1052/21 1053/1 1056/6 1058/22 1062/17 1064/6 1066/8 1066/12 1070/4 1073/19 1078/17 1084/15 1085/2 1090/3 1100/7 1111/18 1111/19
being only [1]  1084/15
beings [2]  1113/3 1113/4
belief [2]  1070/6 1107/15
believe [11]  1012/7 1038/15 1038/18 1039/10 1086/22 1093/15 1097/20 1110/2 1110/19 1111/2 1111/8
believed [3]  1031/25 1098/1 1098/8
believes [1]  1098/12
Belknap [26]  1018/18 1018/20 1019/20 1019/21 1019/25 1020/22 1025/6 1028/8 1036/16 1043/10 1044/16 1046/5 1049/13 1056/19 1056/23 1057/5 1059/2 1059/4 1059/7 1059/9 1072/5 1073/13 1075/4 1075/6 1075/12 1082/4
Belknap's [2]  1029/7 1043/15
below [2]  1080/21 1114/4
Benatar [6]  1024/4 1072/20 1072/25 1073/2 1073/5 1073/9
bench [1]  1010/6
benefit [1]  1074/15
benefits [5]  1033/24 1034/2 1034/7 1104/12 1104/20
besides [2]  1038/2 1072/17
best [3]  1037/21 1037/23 1067/2
better [9]  1015/17 1016/1 1017/10 1036/1 1047/13 1047/19 1074/11 1074/12 1076/23

# B

**between [17]** 1001/9 1015/3 1019/13 1030/19 1031/4 1036/9 1040/4 1041/11 1050/8 1050/11 1059/16 1072/22 1094/9 1098/7 1098/11 1102/19 1102/21
**beyond [1]** 988/12
**biased [1]** 1075/5
**bicycles [1]** 1015/4
**Bierhanzl [1]** 1067/21
**big [8]** 986/11 1008/18 1017/17 1017/17 1038/7 1047/8 1047/10 1079/12
**biggest [1]** 1038/8
**Bill [1]** 1015/10
**billion [1]** 1008/22
**billion-dollar [1]** 1008/22
**billions [2]** 1008/5 1014/9
**binder [2]** 1039/6 1039/8
**binders [4]** 1011/1 1011/6 1011/11 1011/14
**Bio [1]** 1021/22
**Bio-Pharma [1]** 1021/22
**bird [8]** 1083/4 1083/6 1083/7 1083/8 1083/9 1083/9 1083/12 1083/14
**bit [2]** 999/25 1069/22
**blind [1]** 1082/10
**blindsided [1]** 999/25
**board [2]** 1008/18 1081/13
**Bob [4]** 1048/2 1055/8 1077/4 1077/9
**Bockius [2]** 981/6 981/9
**bonus [3]** 1019/15 1075/9 1075/10
**book [2]** 1031/7 1112/13
**books [2]** 1011/20 1095/8
**boss [12]** 1027/19 1028/23 1041/1 1041/2 1041/4 1041/7 1044/11 1074/8 1076/8 1076/20 1081/24 1082/1
**Bostock [15]** 987/3 987/23 987/25 990/1 990/12 990/15 990/25 991/5 991/7 992/25 1002/3 1003/7 1003/24 1110/5 1110/10
**both [20]** 983/9 983/9 985/2 986/7 986/15 1000/9 1008/3 1008/7 1009/9 1010/4 1035/14 1046/1 1047/15 1066/5 1076/1 1077/17 1087/12 1094/8 1097/7 1103/16
**bottom [4]** 1048/8 1064/13 1076/11 1089/6
**bow [1]** 1082/7
**box [2]** 1037/5 1083/22
**boy [4]** 1027/4 1083/2 1083/3 1083/9
**branded [1]** 1067/7
**break [6]** 983/16 1010/18 1010/20 1010/21 1010/21 1078/21
**breathtaking [1]** 1017/16
**brief [3]** 983/12 1009/6 1009/22
**briefing [1]** 983/8
**briefly [1]** 985/4
**bring [7]** 983/16 1010/7 1010/11 1014/13 1015/7 1074/11 1083/5
**broke [1]** 1091/16
**brought [5]** 1066/1 1083/12 1095/14 1098/25 1101/11
**buck [1]** 1021/24
**budget [4]** 1046/23 1046/25 1047/3 1079/19
**build [1]** 1053/15
**bullet [2]** 1051/17 1051/18
**burden [14]** 985/14 1049/12 1055/14 1068/7 1092/13 1096/11 1097/18 1098/24 1099/7 1099/24 1101/6 1102/10 1104/2 1106/20
**business [10]** 983/7 983/20 1009/16 1017/2 1022/1 1040/1 1051/11 1051/18 1052/1 1059/3
**Byrne [1]** 1094/20
**BYU [1]** 1067/3

# C

**C-level [4]** 1063/6 1063/8 1063/10 1063/11
**CA [1]** 981/7
**calculate [1]** 1104/18
**calculated [3]** 999/11 999/12 1034/14
**calculation [2]** 1030/17 1034/4
**calculations [1]** 1062/21
**California [1]** 1000/6
**call [2]** 1028/11 1057/15

**called [4]** 1005/23 1047/21 1063/6 1096/13
**calls [1]** 1023/3
**came [17]** 986/9 986/15 997/14 1037/16 1040/9 1045/16 1055/8 1060/23 1071/22 1072/3 1072/15 1076/6 1076/12 1077/16 1078/7 1082/11 1084/24
**can [51]** 985/23 990/18 990/19 1004/11 1004/18 1005/11 1006/15 1006/16 1007/6 1011/7 1012/10 1013/3 1013/7 1016/20 1016/22 1016/22 1018/7 1019/16 1022/16 1022/17 1022/18 1024/11 1026/20 1028/24 1036/2 1036/14 1039/7 1050/13 1051/15 1060/11 1060/15 1063/4 1067/2 1068/7 1069/12 1074/17 1075/20 1078/15 1080/1 1082/22 1088/6 1089/10 1089/10 1096/7 1105/17 1105/18 1107/5 1107/11 1109/3 1109/12 1112/19
**can't [10]** 988/17 992/8 1018/23 1018/24 1036/20 1038/23 1042/17 1069/10 1069/13 1091/3
**cancel [1]** 1052/6
**canceling [1]** 1039/24
**cannot [7]** 1006/22 1051/6 1051/8 1054/3 1055/13 1060/5 1089/12
**Capell [2]** 1065/7 1065/21
**Capell's [1]** 1065/19
**capture [1]** 1041/19
**care [2]** 1012/7 1094/20
**career [2]** 1019/16 1036/7
**career-altering [1]** 1036/7
**cart [1]** 986/10
**case [91]** 984/15 987/3 987/3 987/24 988/6 988/14 988/16 988/16 990/11 990/11 991/2 991/4 991/6 991/10 991/13 991/18 991/19 991/19 992/7 993/13 995/7 995/9 995/11 995/22 996/17 997/2 998/2 998/23 999/23 1000/6 1000/10 1003/6 1004/23 1005/1 1005/9 1005/19 1005/24 1006/25 1007/16 1008/12 1008/13 1008/19 1009/17 1014/5 1015/8 1016/17 1020/16 1021/19 1022/21 1023/23 1025/7 1026/4 1030/6 1037/11 1037/12 1037/13 1039/1 1039/10 1042/23 1045/12 1049/1 1051/1 1058/8 1068/18 1068/25 1069/5 1069/14 1070/2 1074/25 1078/8 1078/19 1079/24 1083/18 1083/23 1084/1 1085/1 1086/20 1087/6 1087/9 1088/12 1091/23 1092/2 1092/7 1094/2 1095/4 1095/9 1101/25 1104/9 1107/7 1107/23 1112/18
**case-in-chief [1]** 1005/24
**caseload [1]** 1018/24
**cases [8]** 984/17 994/25 994/25 995/6 996/23 997/10 999/22 1000/5
**cash [3]** 1105/11 1105/11 1105/17
**causal [5]** 1027/1 1098/7 1098/11 1102/19 1102/21
**causation [10]** 989/2 991/18 992/24 994/4 1023/25 1023/25 1024/8 1024/11 1027/11 1110/21
**cause [26]** 987/7 987/13 990/11 990/11 990/16 991/23 991/24 991/25 992/1 992/1 992/2 992/24 992/24 998/1 998/2 998/5 1002/16 1003/9 1003/22 1003/22 1006/4 1024/3 1024/10 1110/9 1110/10 1114/6
**caused [3]** 1104/5 1105/1 1105/21
**Ceaser [12]** 1018/18 1020/10 1020/15 1020/22 1026/4 1027/25 1028/9 1040/3 1059/12 1074/25 1079/23 1082/5
**Ceaser's [1]** 1036/17
**cell [1]** 1112/18
**certain [5]** 1093/3 1093/23 1094/13 1095/6 1095/13
**certainly [4]** 986/23 996/7 1062/5 1084/8
**certification [1]** 1018/25
**certified [1]** 1114/8
**certify [1]** 1114/4
**chain [3]** 1025/14 1050/5 1050/25
**chairs [1]** 1014/17
**challenges [1]** 1051/24
**Chambers [2]** 981/2 1007/10
**change [8]** 987/6 998/16 1000/1 1036/18 1072/14 1107/12 1107/15 1109/16
**changed [6]** 991/4 992/16 995/1 998/25 1037/17 1038/2
**changes [2]** 991/10 1038/12
**changing [2]** 1038/3 1038/11
**chart [24]** 1080/18 1084/24 1086/4 1086/7 1086/24 1087/1 1087/12 1087/14 1087/18 1087/19 1088/7 1088/10 1088/13 1089/23 1089/25 1090/2 1090/16 1090/19 1090/25 1091/5 1091/7 1091/10 1095/17

**C**

**charts [8]** 986/7 1087/13 1095/5 1095/6 1095/9 1095/13 1095/15 1111/24
**chatty [1]** 1066/18
**check [6]** 1004/4 1031/20 1032/4 1080/16 1088/6 1089/20
**cherrypick [1]** 992/8
**Chevron [1]** 994/21
**chief [5]** 1005/24 1063/8 1063/8 1063/9 1063/10
**choice [4]** 985/8 1019/12 1019/13 1019/19
**chose [1]** 1040/13
**Chris [6]** 1048/2 1048/4 1065/15 1077/7 1077/14 1081/12
**Chris Thomsen [1]** 1077/14
**chunks [1]** 1035/18
**CIA [1]** 1021/10
**Circuit [26]** 985/7 985/8 985/11 987/3 987/22 987/25 988/5 988/7 988/9 988/14 988/19 990/4 990/22 991/2 991/4 991/6 991/9 991/13 994/10 994/12 995/3 995/11 995/22 1000/5 1002/2 1014/5
**circumstantial [5]** 985/17 1094/3 1094/4 1094/6 1094/10
**cite [3]** 995/7 995/10 995/11
**cited [2]** 996/25 1005/13
**city [7]** 1038/8 1046/19 1046/20 1048/10 1061/9 1077/24 1078/3
**Civil [1]** 983/18
**CL [1]** 1050/13
**claim [76]** 984/1 984/1 992/12 996/10 1003/1 1003/15 1008/9 1008/10 1008/12 1009/14 1031/12 1031/21 1032/5 1032/15 1033/7 1033/13 1033/19 1033/19 1045/3 1048/22 1053/19 1054/2 1054/5 1054/22 1055/13 1056/2 1056/8 1056/14 1059/22 1060/2 1060/3 1060/14 1061/5 1062/1 1063/23 1063/23 1063/24 1064/1 1064/1 1064/2 1064/3 1064/8 1065/20 1066/11 1067/8 1068/2 1068/15 1068/17 1072/2 1072/11 1092/13 1092/15 1096/15 1097/14 1097/16 1097/23 1098/21 1098/24 1098/25 1099/7 1099/21 1099/24 1100/2 1100/23 1100/25 1101/4 1101/11 1103/1 1103/3 1103/17 1103/20 1105/23 1105/24 1105/25 1105/25 1110/23
**claimed [2]** 1057/2 1076/18
**claims [59]** 986/15 986/19 987/11 987/17 987/24 987/25 988/20 989/3 990/24 991/7 993/15 993/15 993/22 996/7 1002/19 1019/17 1019/22 1022/10 1022/21 1022/25 1022/25 1023/13 1025/12 1026/15 1026/23 1026/25 1031/12 1048/21 1051/6 1051/9 1054/1 1054/17 1055/22 1056/3 1056/19 1058/5 1063/25 1064/4 1064/5 1067/1 1068/4 1082/19 1096/11 1096/13 1096/19 1097/2 1097/5 1097/18 1098/23 1099/23 1099/25 1101/2 1103/5 1103/21 1103/25 1104/10 1104/18 1105/23 1105/25
**clarification [5]** 998/20 999/1 999/5 1014/7 1111/1
**clarifies [1]** 999/2
**clarify [3]** 996/2 999/19 1112/2
**clarifying [1]** 998/17
**clear [14]** 990/14 997/2 1007/12 1010/10 1029/5 1038/17 1039/14 1040/12 1047/5 1048/23 1063/18 1068/12 1077/20 1111/10
**clerk [1]** 1108/17
**click [1]** 1012/8
**clients [1]** 1093/14
**close [4]** 1010/14 1010/15 1016/23 1077/5
**closer [1]** 1027/5
**closing [14]** 982/3 982/4 1010/12 1013/14 1014/8 1014/8 1014/11 1022/24 1037/6 1051/10 1084/14 1087/7 1087/8 1093/8
**closings [3]** 1010/20 1010/22 1012/6
**coach [5]** 1030/2 1046/22 1047/1 1047/19 1058/4
**coached [3]** 1052/7 1077/6 1077/25
**coaching [53]** 1019/10 1020/1 1027/7 1027/16 1027/24 1028/19 1029/3 1029/8 1037/19 1037/21 1038/1 1039/4 1039/17 1039/23 1040/6 1040/19 1040/19 1040/21 1041/1 1041/19 1041/20 1041/23 1042/2 1042/4 1043/13 1045/23 1046/7 1046/19 1047/1 1047/3 1047/9 1047/13 1047/15 1047/17 1047/21 1047/22 1048/6 1048/12 1049/14 1057/2 1057/7 1057/11 1057/12 1065/16 1073/20 1073/21 1073/24 1076/16 1077/10 1079/15 1079/18 1080/14 1080/15

**code [6]** 1016/15 1028/13 1040/24 1041/2 1041/3 1053/13
**coffee [1]** 1030/3
**collectively [1]** 1016/11
**college [1]** 1066/2
**come [17]** 1012/13 1015/21 1020/6 1020/7 1020/9 1028/13 1030/1 1033/22 1035/21 1036/4 1037/5 1048/25 1071/24 1071/24 1080/16 1088/6 1107/14
**comes [6]** 995/18 1007/1 1016/7 1023/23 1078/15 1112/19
**coming [2]** 1004/19 1109/14
**commence [1]** 1037/6
**comment [5]** 983/12 994/22 1072/8 1072/12 1091/8
**comments [3]** 983/12 1076/17 1077/19
**commercial [1]** 1017/2
**commitment [1]** 1017/25
**common [2]** 996/21 996/22
**communicate [5]** 1040/2 1047/19 1107/18 1107/21 1107/22
**communicated [1]** 1111/13
**Communication [1]** 1107/17
**communications [1]** 997/16
**community [4]** 1015/21 1015/23 1030/11 1036/22
**companies [3]** 1008/1 1017/18 1018/12
**companion [1]** 996/24
**company [22]** 995/7 1009/2 1015/19 1017/7 1017/17 1017/24 1018/2 1018/11 1018/16 1037/18 1037/24 1038/12 1046/18 1053/7 1053/11 1053/13 1057/10 1059/3 1067/15 1078/11 1078/14 1078/15
**company's [4]** 1009/2 1017/25 1076/21 1082/9
**comparator [1]** 1027/14
**compared [1]** 1063/1
**compels [1]** 988/10
**compensate [5]** 1030/14 1030/20 1031/6 1104/4 1106/19
**compensatory [1]** 996/15
**competitors [1]** 1038/6
**complain [3]** 1020/21 1058/25 1073/5
**complained [17]** 1001/19 1021/16 1031/16 1032/19 1049/3 1049/10 1055/19 1055/25 1056/4 1065/2 1071/3 1073/7 1073/11 1079/10 1096/19 1097/11 1100/6
**complaining [8]** 1021/3 1046/13 1046/14 1054/7 1055/16 1059/2 1071/9 1100/1
**complaint [66]** 996/25 1001/24 1002/6 1003/19 1019/4 1021/1 1021/15 1023/13 1023/15 1025/2 1025/3 1026/2 1027/13 1027/18 1028/1 1028/24 1029/6 1031/18 1032/21 1038/22 1042/21 1043/3 1043/5 1043/8 1043/9 1043/20 1044/6 1044/7 1044/13 1044/17 1044/18 1044/20 1044/22 1044/23 1044/25 1045/1 1045/5 1045/6 1045/9 1046/6 1046/15 1049/5 1049/7 1050/2 1050/24 1054/4 1054/4 1054/6 1055/21 1057/5 1059/1 1064/11 1068/16 1070/14 1070/17 1070/20 1070/25 1071/1 1071/9 1075/18 1075/23 1075/25 1079/4 1079/5 1079/6 1082/12
**complaints [42]** 987/7 987/13 1002/16 1003/9 1003/21 1018/6 1018/22 1019/5 1019/6 1020/19 1021/1 1029/19 1038/16 1038/19 1038/21 1042/13 1042/18 1042/19 1049/11 1049/24 1051/2 1051/3 1051/7 1051/23 1052/10 1052/12 1052/18 1052/20 1052/21 1053/16 1054/8 1056/21 1059/8 1059/10 1059/13 1059/15 1064/17 1064/23 1065/21 1065/23 1079/2 1079/3
**complete [4]** 991/22 1003/6 1108/8 1108/18
**completed [1]** 1073/20
**compliance [30]** 1017/10 1017/12 1019/6 1020/2 1020/24 1021/21 1021/22 1021/24 1022/5 1023/6 1023/13 1023/14 1023/16 1023/21 1024/16 1025/5 1025/24 1027/6 1050/3 1050/4 1050/7 1050/9 1050/11 1052/11 1053/11 1053/12 1058/7 1071/4 1071/19 1077/18
**compliant [2]** 1042/8 1050/20
**comply [3]** 1038/15 1040/11 1043/11
**complying [2]** 1045/10 1046/17
**compounding [1]** 1002/3
**concern [1]** 986/24
**concerned [8]** 1019/23 1021/25 1022/2 1022/3 1022/9 1022/9 1025/9 1070/24
**concerning [2]** 1005/4 1107/22
**concerns [12]** 1002/1 1017/24 1018/2 1023/6 1045/7 1046/7

**C**

**concerns... [6]** 1046/9 1046/10 1046/12 1046/23 1051/24 1064/25
**conclude [7]** 990/10 1038/24 1054/8 1068/13 1068/18 1081/20 1083/1
**concluded [1]** 1073/13
**conclusion [3]** 989/11 1022/24 1082/14
**condition [1]** 1101/19
**conduct [22]** 984/14 1016/15 1023/4 1023/5 1023/7 1024/2 1024/12 1031/25 1040/24 1041/2 1041/3 1050/3 1050/4 1050/24 1053/13 1054/7 1054/7 1063/16 1068/9 1096/14 1101/4 1101/7
**conducted [2]** 1056/23 1072/4
**conference [4]** 982/2 989/11 1109/23 1111/6
**confident [3]** 1036/21 1054/25 1068/18
**confirmed [5]** 992/25 1046/24 1048/2 1075/15 1077/17
**conflicted [1]** 1018/21
**conformed [1]** 1114/7
**confused [2]** 1006/5 1013/10
**connection [3]** 1027/2 1102/19 1102/21
**conscience [3]** 1015/23 1030/10 1036/22
**conscientious [3]** 1069/19 1096/3 1107/12
**conscientiously [1]** 1069/21
**consequence [2]** 1016/18 1021/4
**consequences [2]** 1021/10 1021/11
**consider [47]** 1000/21 1006/9 1006/23 1008/24 1009/2 1013/6 1014/3 1048/18 1062/14 1062/17 1071/12 1071/21 1072/1 1072/18 1073/17 1073/19 1076/25 1077/13 1086/6 1086/25 1087/16 1089/13 1090/5 1090/6 1090/16 1090/18 1090/19 1090/20 1091/3 1091/9 1091/10 1092/19 1093/2 1093/4 1093/22 1093/24 1094/8 1095/17 1095/18 1104/8 1104/11 1105/3 1105/20 1105/25 1106/3 1106/9 1111/13
**consideration [4]** 1010/1 1013/24 1069/19 1096/3
**considered [6]** 1061/18 1088/12 1093/20 1096/6 1106/14 1107/8
**considering [3]** 1006/10 1095/2 1102/2
**consist [1]** 1092/20
**consistent [9]** 988/14 994/11 998/23 1000/17 1000/22 1003/6 1003/23 1034/3 1110/10
**consistently [2]** 1022/7 1081/10
**consists [1]** 1108/17
**constituted [3]** 1097/9 1098/17 1100/20
**Constitution [1]** 1015/13
**constraints [1]** 1046/25
**constructive [1]** 1037/23
**consult [1]** 1107/24
**contain [2]** 993/16 1008/3
**contend [1]** 1003/19
**contends [2]** 1101/25 1102/4
**contents [1]** 1095/8
**contest [1]** 1023/4
**context [5]** 990/13 992/2 1008/7 1008/19 1052/15
**continue [3]** 1001/22 1059/20 1108/1
**continued [5]** 1047/1 1047/4 1049/19 1051/24 1052/9
**continues [3]** 1006/14 1020/19 1051/23
**continuing [4]** 1029/24 1052/5 1052/19 1076/4
**contrary [2]** 1059/13 1068/19
**control [2]** 994/23 1091/2
**controlling [4]** 984/6 988/9 991/8 991/10
**controls [1]** 1093/12
**conversation [2]** 995/19 1070/19
**conversations [3]** 1005/18 1041/23 1052/11
**convince [1]** 1048/22
**convinced [1]** 1054/19
**COPD [1]** 1074/15
**copies [4]** 1011/9 1011/13 1095/24 1109/2
**copy [3]** 1007/24 1091/24 1109/15
**copy's [1]** 1013/7
**copying [1]** 1058/1
**corporate [3]** 1021/6 1021/8 1053/4
**corporation [6]** 1015/25 1069/18 1069/20 1096/2 1096/6 1096/8

**corporations [6]** 986/13 986/14 1013/18 1014/2 1096/1 1096/5
**correct [13]** 988/8 996/4 997/11 999/21 999/22 1004/25 1010/13 1010/16 1091/10 1111/24 1112/8 1112/21 1114/5
**correctly [1]** 1000/9
**corrects [1]** 1007/2
**could [19]** 984/15 990/10 991/17 992/24 1005/23 1037/24 1038/10 1045/9 1047/16 1047/18 1047/19 1047/23 1059/17 1059/20 1067/18 1074/21 1094/7 1110/7 1111/13
**couldn't [7]** 1027/4 1042/7 1050/5 1050/21 1050/21 1061/25 1062/2
**counsel [6]** 983/4 997/19 1002/13 1013/8 1037/2 1084/5
**count [1]** 1108/3
**counting [1]** 1082/2
**country [5]** 1015/12 1048/8 1064/14 1078/6 1086/17
**County [3]** 993/12 995/22 1110/22
**couple [5]** 1008/19 1010/6 1056/18 1057/1 1084/6
**course [11]** 1008/10 1023/19 1025/4 1025/22 1026/3 1026/11 1027/14 1028/1 1079/23 1089/23 1107/11
**court [68]** 980/1 980/12 981/21 983/3 984/23 987/1 987/2 988/10 991/8 992/3 993/25 994/3 995/3 995/25 997/5 1001/14 1001/24 1002/2 1002/5 1003/2 1003/7 1003/17 1004/10 1004/20 1006/18 1006/21 1007/1 1007/4 1012/16 1013/12 1014/14 1036/6 1037/9 1040/9 1045/16 1048/25 1055/9 1070/23 1071/23 1072/3 1072/15 1074/11 1077/17 1078/21 1078/23 1084/9 1086/1 1086/6 1087/10 1087/17 1090/2 1090/5 1090/11 1091/14 1094/1 1103/22 1103/23 1107/3 1107/17 1107/23 1108/3 1108/23 1108/24 1109/19 1110/12 1110/20 1113/3 1114/10
**Court's [4]** 990/3 995/20 1093/17 1110/2
**Courthouse [1]** 981/21
**courtroom [4]** 1015/17 1022/16 1026/18 1108/11
**courts [1]** 994/18
**covered [2]** 984/10 1077/22
**COVID [1]** 1016/5
**COVID-19 [1]** 1016/5
**Craig [2]** 1048/2 1076/25
**create [1]** 1018/12
**created [6]** 1043/8 1084/25 1085/3 1086/7 1086/25 1088/8
**credibility [13]** 1069/23 1069/24 1070/3 1071/13 1071/22 1072/1 1072/18 1073/17 1073/19 1073/22 1074/6 1074/24 1076/4
**credible [5]** 1060/21 1069/25 1070/23 1072/25 1073/11
**credibly [2]** 1072/3 1075/20
**criticized [1]** 1076/8
**CRR [2]** 981/21 1114/10
**cuffed [1]** 1083/12
**cup [1]** 1083/5
**curative [1]** 1012/18
**cured [1]** 1007/2
**current [5]** 987/6 991/1 1022/19 1036/23 1110/11
**customer [7]** 1040/19 1040/20 1040/21 1041/12 1042/2 1042/5 1080/15
**cut [5]** 990/18 1019/15 1058/9 1062/19 1065/10
**cv [1]** 980/4

**D**

**DALIRESP [5]** 1016/19 1070/7 1070/13 1070/18 1070/22
**damage [1]** 1060/9
**damages [62]** 995/17 996/15 997/1 997/13 997/14 999/19 999/20 1000/8 1000/10 1000/25 1008/9 1008/10 1008/12 1009/14 1014/4 1033/23 1034/6 1034/17 1034/19 1035/2 1035/3 1035/5 1035/6 1060/7 1060/14 1062/20 1063/13 1063/13 1064/16 1066/24 1066/24 1067/17 1067/20 1068/3 1068/4 1096/12 1102/10 1103/21 1103/22 1103/23 1104/1 1104/2 1104/3 1104/9 1104/14 1104/18 1104/25 1105/1 1105/10 1105/11 1105/13 1105/14 1105/22 1106/12 1106/16 1106/15 1106/16 1106/17 1106/18 1106/19 1106/22 1106/23
**damages/emotional [1]** 1063/13
**damages/mitigation [1]** 997/14
**danger [4]** 991/16 1004/21 1008/24 1013/22
**dangerous [1]** 1016/25
**data [4]** 1077/9 1080/12 1081/4 1086/16
**date [17]** 998/22 999/7 999/8 999/15 1015/24 1025/22 1030/19

**D**

date... **[10]** 1034/2 1034/10 1034/10 1104/12 1104/13 1104/21 1104/22 1108/9 1108/21 1114/10
**Dawn [11]** 1018/18 1020/10 1020/15 1020/22 1026/4 1027/25 1040/3 1059/12 1074/25 1079/23 1082/5
**Dawn Ceaser [1]** 1082/5
**day [19]** 998/23 999/11 999/16 1020/5 1025/4 1025/7 1025/23 1026/2 1027/5 1029/9 1029/24 1030/20 1031/5 1034/3 1036/6 1044/16 1070/16 1070/20 1071/11
**days [17]** 1021/16 1022/11 1025/3 1044/24 1057/2 1057/4 1057/7 1066/2 1077/15 1079/15 1080/10 1080/14 1080/15 1082/17 1087/6 1112/24 1113/2
**DC [1]** 981/4
**dead [4]** 1083/6 1083/7 1083/10 1083/15
**deal [4]** 1032/25 1047/8 1047/10 1079/12
**dealt [1]** 984/19
**December [16]** 1023/8 1023/12 1024/21 1027/20 1041/24 1042/12 1042/22 1045/14 1058/10 1062/16 1062/24 1064/12 1070/9 1072/11 1073/8 1079/5
**December 10th [1]** 1070/9
**December 18th [1]** 1041/24
**December 19th [3]** 1027/20 1042/12 1042/22
**decide [14]** 1039/1 1049/6 1067/17 1067/18 1069/5 1069/14 1069/23 1069/25 1075/7 1079/6 1092/6 1094/1 1094/11 1107/2
**decided [5]** 1005/15 1037/20 1075/13 1075/17 1078/2
**deciding [2]** 1092/20 1093/4
**decision [29]** 987/7 987/13 987/19 990/3 993/22 993/23 998/6 1002/17 1003/10 1003/22 1032/3 1033/11 1033/16 1051/13 1053/23 1056/12 1059/24 1069/14 1070/3 1092/17 1098/13 1098/15 1099/6 1102/3 1102/7 1103/11 1103/14 1107/12 1107/14
**decisions [1]** 1059/3
**deck [2]** 1050/19 1050/22
**declined [1]** 987/25
**decreases [1]** 1105/20
**deed [1]** 1057/16
**deep [1]** 1029/8
**deeply [1]** 1019/11
**defendant [78]** 980/7 981/6 984/11 987/20 989/25 993/10 996/14 999/21 1000/8 1001/5 1001/19 1001/23 1002/7 1003/18 1004/5 1004/21 1004/25 1005/12 1005/13 1005/23 1010/14 1013/10 1014/18 1023/4 1031/15 1031/17 1031/24 1031/25 1032/8 1032/11 1032/18 1032/19 1032/20 1033/2 1033/17 1034/17 1037/5 1053/21 1054/13 1054/14 1055/18 1055/19 1055/20 1059/25 1068/9 1086/2 1096/12 1096/22 1097/16 1097/18 1098/10 1098/18 1099/1 1099/3 1099/4 1099/10 1099/13 1099/14 1099/16 1099/23 1099/25 1100/1 1100/6 1100/8 1100/25 1101/8 1102/1 1102/4 1102/11 1103/3 1103/5 1103/9 1103/12 1103/14 1103/19 1104/5 1106/18 1106/19
**defendant's [40]** 983/23 984/5 984/24 987/7 987/13 987/14 987/19 991/12 998/6 1002/17 1003/10 1003/22 1005/8 1012/18 1012/22 1013/11 1013/13 1013/14 1013/16 1013/24 1014/4 1032/3 1033/11 1033/16 1033/25 1034/9 1035/9 1056/12 1059/24 1068/9 1101/4 1101/7 1102/3 1102/23 1103/11 1103/13 1104/7 1104/8 1105/1 1112/3
**defendants [3]** 998/11 1098/23 1113/5
**defense [11]** 1018/20 1020/23 1020/24 1022/13 1022/14 1022/15 1022/15 1030/13 1092/14 1092/16 1110/17
**deference [2]** 993/23 994/21
**defiance [1]** 1019/6
**defines [1]** 991/14
**Delaware [1]** 1061/9
**delayed [1]** 1075/6
**deliberate [3]** 997/15 1106/25 1109/18
**deliberating [3]** 1039/6 1039/12 1042/15
**deliberation [1]** 1108/9
**deliberations [7]** 1083/24 1091/25 1107/1 1107/2 1107/18 1108/1 1108/19
**deliver [4]** 1013/25 1083/22 1090/7 1091/17
**delivering [1]** 1051/25
**delve [1]** 986/24
**delves [1]** 1019/11

**demonstration [1]** 1089/11
**demonstrative [2]** 1087/24 1110/13
**demonstratives [1]** 1090/3
**denied [7]** 983/22 984/24 1006/2 1012/19 1072/5 1072/12 1076/17
**denies [1]** 1099/4
**Dennis [4]** 981/21 1010/19 1114/9 1114/10
**deny [2]** 1072/3 1101/22
**department [7]** 994/20 1021/9 1025/25 1050/10 1050/11 1050/14 1061/7
**department's [1]** 1017/10
**depending [1]** 1108/19
**depends [1]** 1010/20
**depiction [6]** 1086/13 1086/20 1087/20 1087/23 1088/3 1089/8
**deposition [1]** 1079/13
**depression [4]** 1016/20 1016/21 1016/22 1035/14
**describe [2]** 1007/23 1066/6
**described [1]** 1040/18
**describes [1]** 1041/11
**deserves [4]** 1016/17 1095/2 1095/12
**details [1]** 1043/10
**determination [3]** 996/2 996/18 1079/4
**determine [7]** 1055/1 1101/4 1104/1 1104/14 1105/1 1105/2 1106/14
**determines [1]** 995/21
**determining [3]** 1014/4 1104/8 1105/16
**Dew [1]** 1076/25
**diagnosed [1]** 1035/13
**did [86]** 984/18 985/7 990/2 1001/17 1004/8 1004/23 1005/21 1005/25 1017/18 1019/2 1025/20 1028/6 1028/8 1028/9 1028/9 1031/14 1031/23 1032/7 1032/17 1033/1 1033/9 1033/15 1033/24 1034/7 1034/17 1035/7 1035/11 1035/15 1035/16 1035/24 1038/14 1038/25 1039/24 1039/5 1039/25 1040/16 1044/7 1045/7 1045/12 1046/5 1046/20 1047/22 1048/12 1049/8 1052/3 1053/20 1054/12 1055/17 1056/10 1056/13 1056/20 1057/4 1059/23 1061/3 1062/9 1062/14 1063/14 1064/7 1066/25 1068/19 1071/1 1071/7 1074/10 1074/11 1074/25 1075/4 1075/5 1075/23 1076/9 1076/16 1076/16 1076/19 1076/23 1077/1 1077/5 1079/12 1080/10 1086/22 1088/19 1088/24 1089/1 1089/3 1089/5 1089/18 1094/6 1102/4
**didn't [40]** 1005/22 1025/11 1025/11 1036/11 1039/3 1039/16 1040/10 1040/11 1041/9 1044/25 1045/1 1045/11 1048/3 1052/14 1052/25 1059/4 1059/12 1062/5 1062/17 1062/22 1065/1 1065/16 1066/13 1066/14 1067/5 1067/10 1067/13 1067/16 1068/4 1070/25 1072/21 1073/8 1074/19 1075/24 1078/13 1079/7 1082/17 1088/23 1111/12
**die [1]** 1074/18
**differ [1]** 1093/10
**difference [5]** 1032/2 1040/19 1041/11 1053/23 1098/14
**different [15]** 983/12 985/5 988/18 989/5 992/7 994/5 995/1 995/2 1000/11 1015/21 1015/22 1027/8 1053/5 1053/6 1053/6
**different's [1]** 1053/23
**differently [4]** 1027/19 1028/8 1036/15 1036/19
**difficult [1]** 1000/15
**digitally [1]** 1114/7
**diligently [1]** 1107/4
**diminished [1]** 1035/17
**DiNunzio [122]** 1017/3 1017/5 1017/7 1017/9 1018/7 1018/8 1019/9 1019/23 1020/8 1020/8 1020/11 1021/3 1021/9 1021/15 1022/5 1023/11 1024/16 1024/18 1024/24 1025/1 1025/6 1025/10 1025/12 1025/16 1026/2 1026/9 1026/11 1027/6 1028/7 1028/9 1028/17 1028/19 1028/21 1028/25 1029/5 1029/15 1030/7 1036/20 1038/13 1038/14 1039/5 1039/25 1040/16 1041/11 1041/21 1041/25 1042/3 1042/11 1042/25 1043/1 1043/7 1043/10 1043/15 1043/18 1043/19 1043/22 1044/5 1044/7 1044/13 1044/16 1044/17 1044/23 1044/25 1045/4 1045/5 1046/6 1049/17 1050/6 1050/15 1050/18 1050/22 1053/8 1053/15 1054/9 1055/6 1055/12 1056/22 1057/3 1057/13 1057/17 1057/20 1057/23 1057/25 1058/9 1058/11 1058/25 1059/8 1059/16 1059/19 1065/1 1070/6 1070/10 1070/12 1070/12 1070/20 1070/21 1071/13 1071/14 1071/21 1072/2 1072/23 1073/12 1074/6 1074/12 1075/15 1075/19 1075/20 1075/23 1075/25 1076/7 1076/17

## D

**DiNunzio... [10]** 1076/20 1077/16 1077/20 1079/21 1081/10 1081/14 1082/6 1082/6 1082/13 1086/17
**DiNunzio's [13]** 1020/14 1022/4 1024/16 1041/16 1044/1 1046/7 1064/25 1072/24 1074/14 1074/18 1080/24 1087/22 1088/21
**DiNunzios [1]** 1018/13
**direct [8]** 985/17 1027/14 1080/24 1094/3 1094/4 1094/4 1094/4 1094/10
**directly [3]** 983/10 995/18 1021/15
**directors [3]** 1017/2 1096/8 1096/9
**disagree [3]** 1007/13 1068/17 1091/6
**disagrees [1]** 1002/7
**discharge [1]** 1103/5
**discharging [1]** 1103/7
**disciplinary [1]** 1019/3
**discipline [4]** 1045/19 1045/21 1046/2 1079/9
**discount [1]** 1062/23
**discovery [1]** 1089/22
**discretion [1]** 995/20
**discriminate [2]** 994/15 1101/23
**discriminated [9]** 1032/19 1055/2 1055/20 1060/6 1060/11 1068/1 1100/7 1102/1 1103/6
**discrimination [46]** 993/17 995/13 1003/1 1003/2 1003/15 1003/16 1027/9 1027/10 1028/4 1032/5 1032/6 1032/15 1032/25 1033/8 1033/14 1042/14 1054/12 1055/11 1055/13 1055/17 1055/23 1055/25 1056/2 1056/5 1059/22 1064/1 1068/2 1068/11 1068/15 1068/16 1068/17 1072/11 1073/6 1073/8 1073/9 1098/24 1099/1 1099/2 1100/2 1101/1 1101/12 1102/9 1102/11 1103/4 1105/24 1110/18
**discrimination/retaliation [1]** 1102/9
**discrimination/willfulness [1]** 1032/25
**discriminatory [2]** 984/7 984/14
**discuss [4]** 1005/23 1046/7 1065/6 1084/1
**discussed [8]** 1009/17 1015/10 1055/23 1055/23 1070/9 1107/8 1109/12 1111/5
**discussion [2]** 1064/24 1111/3
**discussions [1]** 1107/13
**dislikes [3]** 1069/4 1069/11 1092/5
**dispute [9]** 1008/13 1014/8 1041/10 1041/17 1042/6 1042/17 1043/24 1097/10 1098/16
**disputes [1]** 1098/18
**disregard [9]** 1005/3 1009/25 1028/6 1033/3 1068/10 1068/14 1087/11 1093/19 1101/8
**distance [1]** 1041/20
**distinction [1]** 1094/9
**distract [1]** 1028/11
**distraught [1]** 1070/5
**distress [16]** 1000/18 1000/24 1001/1 1035/5 1035/6 1063/13 1063/14 1063/22 1063/25 1064/4 1064/9 1064/10 1065/7 1065/20 1065/22 1066/12
**distribute [2]** 1109/13 1112/1
**distributing [1]** 1026/10
**district [22]** 980/1 980/2 980/12 981/21 984/17 995/9 1000/6 1038/4 1039/19 1046/23 1047/10 1048/7 1048/8 1048/10 1053/8 1053/9 1055/8 1061/12 1062/24 1067/3 1074/20 1078/6
**district's [1]** 1065/24
**districts [1]** 1078/6
**dive [1]** 1029/8
**divided [2]** 1080/14 1089/6
**DMS [1]** 1052/8
**do [110]** 985/1 985/25 988/18 989/19 990/17 991/22 992/15 999/23 1001/25 1007/16 1008/1 1009/19 1011/5 1012/10 1016/22 1019/20 1023/9 1024/23 1029/9 1030/9 1036/4 1036/15 1036/18 1037/12 1038/12 1038/23 1038/25 1039/1 1039/16 1039/16 1040/25 1041/1 1041/6 1041/7 1041/7 1045/22 1047/4 1047/6 1047/25 1048/15 1049/6 1049/16 1049/16 1049/17 1049/17 1049/17 1049/20 1049/21 1049/21 1050/9 1051/8 1051/8 1053/7 1053/8 1055/4 1056/7 1058/13 1058/21 1058/23 1064/22 1064/23 1065/7 1066/21 1068/21 1068/21 1069/6 1069/9 1072/4 1072/6 1072/13 1073/3 1074/21 1076/3 1076/23 1077/21 1078/10 1078/11 1078/11 1078/12 1078/14 1078/16 1078/17 1079/2 1079/12 1081/24 1081/25 1082/1 1083/13 1083/25 1084/10 1084/10 1084/12 1087/17 1088/19 1089/10 1089/11 1090/14 1092/8 1092/9 1092/10 1093/23 1095/23 1107/5 1107/7 1107/11 1107/12 1107/13 1108/16 1112/14 1112/14
**Dobber [3]** 1022/2 1025/15 1025/17
**doctor [3]** 1035/13 1064/18 1065/3
**doctors [5]** 1017/6 1037/23 1038/10 1047/13 1047/20
**doctors' [1]** 1077/11
**document [8]** 1007/25 1009/18 1012/17 1012/23 1015/13 1045/7 1051/13 1051/16
**documents [15]** 983/24 1005/19 1008/3 1009/10 1009/20 1009/23 1009/23 1030/22 1042/7 1042/13 1042/20 1043/7 1044/4 1045/12 1095/8
**does [29]** 984/22 993/16 993/20 994/13 994/15 1001/2 1011/19 1012/1 1015/25 1023/12 1029/7 1038/19 1038/22 1044/17 1044/18 1044/23 1045/3 1049/5 1054/23 1060/5 1065/19 1070/18 1070/22 1073/4 1073/10 1077/14 1098/16 1103/23 1106/10
**doesn't [22]** 991/7 991/25 991/25 994/14 997/5 999/4 1003/5 1015/18 1018/7 1021/14 1023/4 1024/19 1026/4 1026/11 1041/3 1041/6 1046/10 1046/18 1050/9 1051/8 1064/16 1075/10
**dog [1]** 1019/9
**doing [27]** 1012/6 1013/9 1021/3 1023/10 1037/14 1037/15 1039/2 1041/21 1042/9 1043/12 1045/21 1045/24 1047/17 1047/18 1049/10 1049/18 1049/20 1049/22 1051/6 1052/18 1057/10 1066/19 1074/4 1074/10 1078/9 1080/2 1082/7
**DoL [1]** 993/23
**dollar [1]** 1008/22
**dollars [2]** 1008/5 1014/9
**don't [42]** 984/16 986/1 986/21 986/23 988/11 990/18 998/24 999/3 999/14 1001/7 1001/15 1009/11 1012/24 1020/6 1020/9 1035/18 1036/3 1036/5 1040/24 1041/5 1045/5 1046/1 1046/22 1050/12 1050/15 1050/22 1059/5 1059/6 1060/9 1060/21 1064/4 1068/5 1078/18 1081/4 1085/2 1085/8 1088/4 1089/9 1089/19 1091/9 1091/18 1091/23
**done [11]** 994/18 1006/25 1010/15 1011/25 1020/14 1057/8 1082/5 1082/8 1085/2 1090/4 1092/10
**door [2]** 1061/21 1061/21
**double [2]** 1004/4 1004/17
**Double-check [1]** 1004/4
**doubt [2]** 1064/6 1064/15
**down [8]** 989/5 991/20 1023/23 1032/24 1034/16 1066/7 1077/12 1080/13
**Dr [2]** 1060/19 1061/21
**Dr. [8]** 1030/17 1034/4 1034/13 1036/2 1060/19 1060/23 1067/21 1094/20
**Dr. Ashleigh [1]** 1094/20
**Dr. Bierhanzl [1]** 1067/21
**Dr. Edelman [4]** 1034/13 1036/2 1060/19 1060/23
**Dr. Edelman's [2]** 1030/17 1034/4
**draft [3]** 987/8 998/10 1090/12
**drafted [5]** 985/3 992/11 1000/14 1002/10 1002/12
**draw [1]** 1063/20
**drives [1]** 1011/23
**drug [2]** 1001/20 1096/20
**drugs [5]** 1008/20 1018/2 1074/15 1074/17 1082/9
**DSM [3]** 1062/18 1062/19 1062/24
**DSMs [19]** 1037/18 1037/25 1040/7 1040/8 1040/8 1041/9 1047/16 1047/25 1049/14 1049/18 1057/10 1057/14 1058/1 1062/16 1079/18 1080/5 1080/11 1080/12 1080/21
**due [2]** 1048/12 1051/24
**during [14]** 1010/1 1013/13 1014/8 1028/18 1044/3 1072/4 1079/13 1091/25 1093/8 1101/18 1107/18 1108/15 1109/22 1112/24
**duties [4]** 1023/21 1023/21 1051/25 1066/15
**duty [10]** 985/10 997/15 1000/9 1068/24 1091/22 1092/1 1093/14 1103/21 1106/16 1106/25

## E

**e-version [1]** 1011/17
**each [16]** 998/7 1036/13 1039/11 1050/8 1050/11 1077/3

# E

**each... [10]** 1079/3 1084/1 1096/16 1097/23 1099/8 1100/3 1102/12 1103/8 1107/6 1110/6
**earlier [7]** 1044/10 1054/8 1055/23 1055/24 1066/8 1071/2 1110/1
**earned [2]** 1034/8 1104/20
**earnings [1]** 1104/11
**Eastern [1]** 1000/6
**economic [14]** 997/13 999/19 1000/7 1000/10 1000/10 1033/23 1034/6 1035/5 1063/13 1067/20 1103/21 1105/10 1106/12 1106/15
**Edelman [5]** 1034/13 1036/2 1060/19 1060/19 1060/23
**Edelman's [3]** 1030/17 1034/4 1061/21
**edge [1]** 1016/23
**education [2]** 1094/23 1095/2
**effect [1]** 1107/15
**effective [1]** 1025/22
**effectively [1]** 1074/16
**effort [1]** 1106/17
**efforts [5]** 1004/15 1005/5 1034/19 1067/19 1106/22
**eight [1]** 983/5
**eight o'clock [1]** 983/5
**either [8]** 990/18 1003/7 1010/22 1018/23 1028/5 1094/4 1094/10 1103/18
**elect [1]** 1107/1
**electronic [5]** 986/9 1011/1 1011/2 1011/4 1095/21
**electronically [1]** 1095/23
**element [2]** 1053/25 1097/10
**elements [25]** 988/24 1023/2 1096/11 1096/16 1097/13 1097/15 1097/17 1097/24 1098/19 1098/20 1098/22 1098/24 1099/8 1099/20 1099/22 1099/24 1100/3 1100/22 1100/24 1102/9 1102/12 1102/25 1103/2 1103/16 1103/19
**eligible [1]** 1101/17
**else [7]** 1006/19 1011/16 1049/20 1071/13 1071/25 1082/13 1084/1
**email [16]** 998/11 1024/16 1028/16 1040/14 1040/15 1041/8 1041/25 1042/7 1050/2 1050/5 1050/7 1050/10 1050/25 1052/23 1057/6 1058/1
**emails [6]** 1020/25 1043/9 1044/1 1045/14 1049/24 1049/25
**embarrassing [1]** 1004/4
**embrace [1]** 991/23
**emergent [1]** 997/10
**emotional [18]** 1000/18 1000/23 1000/25 1035/5 1035/6 1063/13 1063/14 1063/22 1063/25 1064/4 1064/8 1064/10 1065/6 1065/20 1065/22 1066/12 1066/22 1106/1
**employed [1]** 1055/10 1062/22 1078/16
**employee [24]** 984/9 984/12 1019/3 1019/11 1019/18 1020/16 1020/21 1021/19 1024/13 1026/4 1038/22 1038/23 1038/23 1040/23 1046/12 1046/13 1065/12 1067/22 1078/14 1078/16 1079/23 1101/17 1101/22 1101/23
**employee's [3]** 1024/12 1046/9 1102/23
**employees [25]** 1016/15 1017/19 1017/23 1018/1 1018/13 1018/14 1018/17 1019/5 1020/3 1022/19 1022/20 1036/23 1036/24 1038/20 1040/24 1058/18 1074/8 1074/10 1082/8 1082/21 1082/24 1096/7 1096/14 1097/20
**employer [8]** 984/11 1024/12 1024/13 1028/5 1062/8 1067/9 1096/14 1101/21
**employer's [1]** 1097/21
**employers [3]** 1006/8 1016/10 1073/18
**employment [61]** 981/3 984/9 984/13 987/10 987/16 992/14 992/19 995/12 996/16 1003/1 1003/16 1027/9 1027/10 1028/4 1029/14 1032/6 1032/16 1033/11 1033/13 1034/8 1034/12 1034/21 1049/4 1053/21 1056/12 1056/14 1057/16 1058/17 1059/22 1066/22 1096/23 1096/24 1097/1 1097/3 1097/5 1097/9 1098/5 1098/10 1098/13 1098/15 1098/18 1098/25 1099/2 1100/9 1100/10 1100/12 1100/14 1100/16 1100/20 1101/1 1101/11 1102/4 1102/7 1102/18 1102/22 1102/24 1103/4 1104/20 1104/23 1105/2
**enacted [2]** 990/3 990/23
**encourage [2]** 991/8 1077/17
**encouragement [2]** 1031/16 1096/20
**encouraging [4]** 1001/20 1071/15 1071/18 1076/18

**end [13]** 999/7 1015/23 1021/18 1029/1 1031/5 1036/9 1036/13 1041/12 1048/9 1048/9 1057/25 1065/9 1079/18
**energy [1]** 1047/22
**enforced [1]** 1022/7
**engage [2]** 1051/2 1051/18
**engaged [14]** 987/11 987/16 992/18 1023/3 1023/5 1023/7 1023/18 1052/11 1097/1 1097/4 1097/7 1100/12 1100/15 1100/18
**engagement [10]** 992/20 1040/19 1040/20 1040/22 1041/12 1042/2 1042/5 1080/15 1097/6 1100/17
**engaging [1]** 1052/5
**enjoy [1]** 1015/1
**enough [6]** 990/6 992/2 1045/24 1065/13 1066/25 1078/18
**enshrined [1]** 1015/12
**ensure [1]** 1041/13
**enter [1]** 1021/8
**entering [1]** 1038/6
**entire [12]** 986/10 1021/23 1025/7 1029/9 1029/14 1052/15 1053/13 1056/19 1056/24 1057/6 1081/10 1085/1
**entirely [4]** 1018/13 1018/15 1060/12 1060/20
**entirety [3]** 988/23 1003/11 1003/23
**entitled [10]** 989/10 1008/11 1069/18 1069/20 1096/2 1101/3 1101/18 1102/16 1105/3 1114/6
**environment [1]** 1018/8
**equal [6]** 1013/21 1014/2 1015/18 1069/18 1096/2 1104/19
**equivalent [2]** 1056/9 1101/20
**escaped [1]** 1021/6
**especially [1]** 1001/25
**ethics [3]** 1028/13 1043/4 1081/22
**evaluated [1]** 1079/14
**evaluation [2]** 1019/14 1024/25
**evaluations [1]** 1029/14
**even [52]** 983/15 984/13 990/11 992/1 1001/15 1004/12 1004/16 1006/19 1024/7 1025/15 1026/7 1026/12 1026/12 1039/15 1040/3 1041/3 1041/6 1041/20 1044/5 1044/25 1047/2 1047/14 1049/7 1049/9 1049/18 1051/4 1051/6 1051/12 1057/11 1058/22 1061/13 1061/13 1062/3 1062/7 1063/2 1063/3 1064/3 1065/1 1065/17 1067/3 1067/3 1068/17 1071/3 1071/4 1073/6 1073/7 1073/20 1075/11 1076/9 1077/3 1078/13 1109/6
**event [2]** 1035/24 1086/23
**events [1]** 1043/6
**ever [5]** 1026/12 1044/12 1046/21 1078/7 1107/20
**every [7]** 985/6 1021/1 1028/18 1029/13 1048/9 1072/7 1072/9
**everybody [2]** 1081/15 1112/23
**everyone [5]** 1015/1 1015/19 1049/20 1057/8 1081/8
**everything [9]** 1005/21 1011/16 1012/7 1041/1 1045/7 1053/1 1058/3 1082/13 1109/6
**evidence [140]**
**eviscerates [1]** 991/12
**Evraz [1]** 995/10
**exact [1]** 1106/11
**exactly [4]** 1025/23 1026/5 1075/24 1084/15
**examinations [1]** 1008/15
**example [3]** 990/10 1016/15 1024/8
**Excel [2]** 1080/8 1088/20
**except [4]** 1041/23 1054/4 1107/21 1107/23
**excluded [1]** 1093/18
**excluding [1]** 1013/4
**excuse [1]** 1081/14
**excuses [1]** 1045/10
**executes [1]** 1019/10
**executive [5]** 1063/6 1063/8 1063/8 1063/10 1063/11
**exemplary [1]** 1029/11
**exercise [2]** 1015/14 1101/22
**exhibit [66]** 1007/20 1007/24 1008/1 1010/25 1011/11 1011/14 1039/13 1039/13 1039/20 1040/2 1040/4 1040/14 1041/8 1041/15 1041/24 1042/11 1043/14 1043/17 1043/21 1044/15 1050/1 1056/17 1056/24 1056/24 1057/7 1058/2 1070/15 1072/6 1072/9 1072/22 1072/23 1072/24 1080/7 1080/7 1087/11 1087/24 1087/25 1088/1 1088/6 1088/7 1088/9 1088/15 1088/16 1089/10 1089/15 1089/16 1089/17 1089/18 1090/6 1090/18 1090/18 1090/21 1090/21 1091/1 1095/19

# E

**exhibit... [11]** 1095/19 1109/15 1110/13 1111/2 1111/5 1111/14 1111/14 1111/25 1111/25 1112/3 1112/13
**Exhibit 510 [1]** 1042/11
**Exhibit 55 [1]** 1090/18
**Exhibit 56 [1]** 1039/13
**Exhibit 82 [1]** 1070/15
**Exhibit 94 [1]** 1056/17
**exhibits [30]** 1007/23 1008/7 1009/10 1009/13 1010/2 1011/10 1012/23 1012/24 1013/4 1013/23 1014/18 1030/16 1030/17 1031/9 1039/7 1039/9 1039/10 1040/14 1042/20 1043/9 1043/17 1043/25 1066/17 1080/6 1086/14 1092/22 1093/3 1095/24 1104/6 1109/14
**exist [1]** 984/22
**existed [1]** 1067/12
**exists [2]** 1102/19 1102/21
**expect [3]** 1008/6 1010/7 1036/2
**expectations [10]** 1038/20 1043/1 1048/24 1066/16 1075/16 1075/22 1076/2 1076/10 1076/21 1077/11
**expected [2]** 1052/7 1105/18
**expense [1]** 1028/20
**experience [8]** 1063/2 1063/3 1063/4 1081/21 1094/24 1095/2 1105/19 1106/3
**experienced [2]** 1055/11 1106/2
**expert [13]** 986/6 1004/11 1004/13 1004/24 1005/11 1005/16 1006/12 1006/15 1007/4 1008/2 1060/18 1060/19 1094/21
**expert's [1]** 1004/11
**experts [3]** 1060/14 1060/16 1094/22
**explain [7]** 990/7 1046/18 1048/21 1060/15 1063/7 1063/21 1095/7
**explained [2]** 1057/5 1075/1
**explains [4]** 1052/17 1060/9 1063/22 1066/24
**explanation [1]** 1072/24
**extraterritoriality [1]** 984/20
**extremely [1]** 1006/4
**eye [1]** 1082/10

# F

**F.2d [1]** 995/23
**F.3d [1]** 995/10
**F.Supp [1]** 995/9
**face [1]** 1015/20
**fact [41]** 985/18 986/25 991/5 994/23 996/8 996/23 1002/1 1004/24 1005/10 1005/13 1006/24 1009/24 1018/8 1018/9 1025/10 1025/20 1028/12 1037/14 1038/17 1042/24 1043/11 1044/14 1047/21 1051/11 1055/7 1055/12 1057/22 1058/6 1061/10 1062/6 1062/11 1062/15 1062/23 1066/5 1066/8 1070/12 1073/23 1084/14 1086/15 1094/5 1094/8
**factor [22]** 990/16 993/11 993/17 993/20 994/3 994/3 994/6 994/24 1027/3 1033/10 1033/16 1056/11 1059/24 1084/15 1084/20 1098/14 1102/3 1102/23 1103/11 1103/13 1110/21 1110/24
**facts [14]** 1004/23 1068/25 1069/1 1092/1 1092/2 1092/20 1092/23 1092/24 1093/5 1093/10 1094/7 1094/12 1094/13 1094/14
**failed [12]** 1034/18 1035/2 1047/6 1056/3 1056/5 1097/15 1098/22 1099/21 1100/23 1103/2 1103/18 1106/21
**fair [7]** 1013/18 1059/7 1059/18 1069/19 1087/20 1096/1 1096/3
**fairly [2]** 1069/21 1104/4
**faith [7]** 1018/2 1031/25 1053/22 1053/25 1054/5 1054/11 1098/3
**false [24]** 986/18 987/11 987/17 987/24 988/20 989/3 990/24 1001/15 1002/19 1022/25 1023/23 1026/15 1026/23 1031/12 1054/1 1054/17 1055/22 1063/23 1096/11 1096/13 1096/19 1097/2 1097/5 1105/23
**falsifying [1]** 1043/13
**families [1]** 1015/4
**family [15]** 994/13 1016/6 1026/25 1027/1 1033/7 1033/8 1056/8 1056/9 1064/2 1064/2 1066/20 1078/4 1101/10 1101/12 1101/15
**FAQ [1]** 1040/18

**FAQs [1]** 1042/3
**far [2]** 1021/3 1090/23
**Fargo [1]** 995/8
**favor [7]** 1039/1 1054/21 1063/23 1064/3 1068/3 1101/2 1104/17
**FCA [4]** 1096/13 1096/13 1096/15 1097/8
**FCRR [2]** 981/21 1114/10
**FDA [1]** 1074/17
**FDA-approved [1]** 1074/17
**February [14]** 1023/14 1025/1 1025/3 1029/18 1043/16 1043/22 1044/2 1044/8 1044/24 1044/24 1045/6 1065/1 1079/5 1094/18
**February 18th [1]** 1065/1
**February 18th meeting [1]** 1044/24
**February 21 [1]** 1044/24
**February 21st [2]** 1044/8 1045/6
**February 5th [3]** 1023/14 1025/3 1079/5
**February 7th [1]** 1043/16
**February of [1]** 1094/18
**federal [22]** 983/18 990/24 996/17 1005/10 1007/12 1007/14 1026/15 1032/1 1033/19 1054/17 1055/24 1060/3 1064/1 1068/2 1068/11 1068/15 1096/13 1097/21 1098/1 1098/9 1099/1 1101/12
**feedback [2]** 1037/23 1047/23
**feel [3]** 1018/7 1069/12 1069/16
**feeling [1]** 1066/7
**felt [4]** 1025/17 1056/22 1072/20 1073/2
**few [3]** 1005/7 1030/24 1061/6
**field [36]** 1020/1 1022/6 1027/7 1027/23 1028/11 1029/3 1030/24 1037/19 1037/21 1037/25 1039/4 1039/17 1039/23 1041/19 1041/22 1043/12 1043/13 1045/23 1046/25 1047/4 1047/9 1047/12 1047/17 1047/23 1048/6 1057/7 1065/16 1073/20 1073/21 1073/24 1073/25 1074/1 1077/2 1077/7 1077/8 1077/15
**fifth [2]** 981/12 983/25
**figure [2]** 1012/3 1034/13
**figures [2]** 1008/3 1008/22
**file [5]** 1019/5 1019/16 1029/14 1071/8 1075/24
**filed [11]** 1004/5 1004/9 1005/8 1009/6 1028/24 1043/8 1058/25 1067/6 1067/9 1075/18 1075/22
**files [8]** 1023/13 1023/15 1025/1 1025/3 1026/2 1027/25 1043/3 1070/20
**final [2]** 995/17 999/18
**finally [8]** 995/10 997/17 1000/1 1023/15 1063/6 1082/15 1093/25 1106/9
**financial [2]** 1063/9 1105/19
**find [43]** 983/19 983/20 984/3 984/4 984/6 984/15 984/16 984/18 1000/6 1005/21 1012/19 1012/24 1054/21 1060/12 1060/21 1061/18 1063/7 1063/23 1064/3 1067/1 1067/22 1067/25 1068/3 1068/12 1068/25 1083/4 1092/1 1094/8 1097/12 1098/19 1099/19 1100/21 1101/2 1101/3 1102/24 1103/15 1103/24 1104/4 1104/10 1104/17 1105/14 1105/22 1106/6
**finding [3]** 991/17 1000/8 1034/22
**findings [3]** 1056/25 1056/25 1057/1
**finds [5]** 1018/6 1018/8 1021/15 1029/6 1071/7
**fine [3]** 1000/19 1017/15 1039/9
**finished [2]** 983/15 1048/10
**fire [4]** 987/19 998/6 1002/17 1003/22
**fired [33]** 1022/8 1022/12 1024/2 1027/17 1038/16 1038/19 1038/21 1038/23 1038/25 1039/2 1047/7 1048/24 1049/2 1049/7 1049/14 1051/5 1052/19 1052/21 1054/20 1054/20 1055/25 1056/4 1062/7 1062/11 1064/6 1064/9 1064/11 1073/19 1079/8 1079/8 1080/1 1081/17 1082/18
**firing [12]** 998/22 1020/17 1023/19 1024/2 1026/5 1026/6 1028/1 1030/19 1030/23 1034/3 1036/19 1068/14
**first [52]** 983/17 984/2 994/8 998/23 999/11 999/16 1000/20 1005/8 1018/20 1021/7 1021/7 1021/25 1022/24 1023/3 1024/15 1027/4 1027/19 1030/20 1030/24 1031/4 1034/3 1035/14 1039/2 1042/1 1043/6 1044/7 1045/11 1048/16 1048/20 1051/17 1060/18 1060/25 1064/9 1065/7 1070/1 1080/19 1080/19 1080/19 1080/22 1080/23 1081/5 1088/24 1093/6 1097/25 1098/18 1099/10 1100/5 1102/14 1103/9 1105/5 1106/21 1113/4

| F | G |
|---|---|

**F**

**five [6]** 983/16 1036/4 1063/2 1067/23 1087/6 1112/18
**five-minute [1]** 983/16
**fix [3]** 1022/18 1022/19 1082/22
**fixed [2]** 1018/10 1106/11
**flattering [1]** 1082/6
**flew [1]** 1065/6
**fly [1]** 1083/8
**FMLA [20]** 993/8 993/12 993/19 994/4 994/14 1002/22 1033/7 1075/19 1101/14 1101/17 1101/22 1101/24 1102/2 1102/5 1102/9 1102/11 1102/15 1102/16 1110/18 1110/23
**focus [3]** 1006/15 1058/11 1074/18
**focused [3]** 1051/16 1051/21 1076/20
**folks [2]** 1007/18 1026/17
**follow [8]** 996/16 1017/19 1038/17 1040/13 1069/2 1069/8 1078/13 1092/3
**followed [1]** 1040/8
**following [11]** 987/12 1080/2 1094/15 1096/16 1097/24 1100/3 1102/12 1103/8 1105/3 1111/3 1111/7
**for' [4]** 987/7 987/13 987/19 1003/9
**force [1]** 1062/16
**forced [1]** 1022/16
**foregoing [1]** 1114/4
**foregone [1]** 1082/13
**foreseeable [2]** 1018/14 1018/15
**forest [3]** 1083/4 1083/8 1083/11
**forget [1]** 986/1
**forgive [2]** 996/6 999/24
**form [23]** 983/14 998/10 1000/13 1000/13 1001/7 1001/10 1001/16 1002/11 1002/19 1003/13 1031/8 1032/14 1048/15 1048/17 1053/18 1060/8 1063/18 1063/18 1063/21 1084/16 1108/6 1108/9 1108/16
**format [2]** 986/9 1095/21
**formulary [1]** 1038/9
**formulation [20]** 986/25 987/6 987/12 988/6 988/8 988/22 989/24 990/6 990/9 992/16 992/23 994/23 997/25 998/3 1002/15 1002/18 1003/20 1003/21 1110/2 1110/11
**forth [1]** 1001/9
**forward [8]** 990/19 997/10 999/2 1025/21 1041/14 1059/20 1075/3 1078/7
**forwarded [1]** 1082/12
**forwards [2]** 1021/14 1024/15
**found [11]** 984/20 993/17 999/21 1000/5 1051/3 1060/10 1062/9 1062/11 1071/19 1080/17 1083/11
**fountain [1]** 1015/5
**four [8]** 1022/11 1063/2 1065/9 1065/14 1067/23 1077/15 1082/17 1098/20
**fourth [3]** 1088/23 1098/7 1098/19
**frame [2]** 998/17 999/3
**FRE [1]** 1012/21
**free [2]** 1065/13 1083/21
**frequency [1]** 1035/13
**frequently [2]** 1028/15 1028/18
**Friday [9]** 1037/16 1046/24 1047/2 1048/1 1051/12 1055/9 1061/6 1075/14 1076/12
**friends [7]** 1016/6 1065/6 1065/7 1066/1 1066/13 1066/18 1066/20
**friendships [1]** 1035/17
**fringe [1]** 1104/12
**front [12]** 995/18 995/20 996/2 996/18 997/5 1002/9 1031/4 1034/6 1034/13 1084/25 1104/24 1105/10
**full [4]** 1034/22 1065/12 1075/9 1075/10
**full-time [2]** 1034/22 1065/12
**fully [3]** 1059/9 1107/8 1111/12
**furnish [1]** 1106/10
**further [10]** 984/22 1003/12 1004/1 1005/16 1005/22 1007/10 1010/8 1085/7 1099/5 1112/11
**future [10]** 1022/20 1036/24 1104/18 1104/25 1105/3 1105/10 1105/13 1105/21 1106/3 1106/8
**FYI [1]** 985/9

**G**

**gainful [1]** 1106/5
**game [1]** 1035/20
**games [6]** 1035/15 1035/16 1065/8 1065/10 1065/14 1065/18
**gander [1]** 994/9
**Gary [4]** 1013/2 1090/9 1091/13 1108/25
**gather [1]** 1108/23
**gave [2]** 1006/23 1029/2
**generics [1]** 1038/5
**Genie [2]** 1076/19 1076/22
**Genie Hamilton [1]** 1076/22
**gentlemen [1]** 1037/4
**get [50]** 983/5 997/7 1011/20 1012/5 1013/2 1015/5 1021/14 1029/20 1031/3 1035/11 1035/16 1035/24 1036/1 1036/3 1036/5 1045/25 1046/1 1046/1 1047/13 1048/3 1050/13 1050/18 1054/10 1055/15 1057/17 1059/17 1061/15 1061/25 1062/2 1064/4 1064/16 1064/20 1064/22 1067/2 1067/5 1067/10 1070/21 1071/8 1074/17 1075/9 1075/10 1078/18 1082/2 1086/5 1090/9 1091/13 1095/1 1105/7 1109/15 1109/16
**gets [5]** 1004/4 1030/7 1043/4 1070/16 1081/18
**getting [4]** 1013/18 1061/11 1074/20 1090/12
**girls' [3]** 1066/2 1066/5 1066/9
**give [29]** 983/9 983/11 983/15 985/10 990/13 992/2 992/10 993/25 994/3 994/20 995/5 1001/8 1003/5 1010/19 1013/7 1031/10 1043/2 1047/23 1060/16 1069/1 1069/2 1075/7 1090/11 1092/3 1092/3 1094/11 1095/1 1095/11 1095/22
**given [8]** 993/19 1036/7 1036/17 1054/6 1073/6 1081/5 1094/10 1095/3
**gives [3]** 1023/11 1046/16 1069/8
**giving [4]** 991/16 1013/6 1020/11 1035/14
**global [4]** 1008/4 1008/21 1008/23 1008/23
**go [63]** 983/10 985/1 985/5 986/12 988/10 988/24 989/8 990/19 991/20 997/3 997/21 1001/9 1005/1 1010/12 1011/1 1011/17 1011/20 1012/1 1012/7 1012/8 1015/4 1019/13 1020/8 1020/8 1024/6 1025/13 1025/21 1030/15 1031/9 1039/9 1039/21 1041/4 1041/5 1041/5 1046/11 1048/8 1048/17 1051/14 1054/3 1054/25 1056/17 1057/4 1059/6 1061/20 1061/21 1062/23 1063/4 1063/19 1063/19 1065/8 1065/14 1066/4 1066/10 1066/12 1068/22 1068/24 1075/1 1078/1 1078/14 1083/4 1083/21 1089/10 1112/21
**gone [5]** 990/4 1045/13 1048/14 1076/5 1112/6
**good [21]** 983/4 1014/15 1014/21 1014/23 1015/1 1016/1 1018/1 1030/2 1031/25 1053/22 1053/25 1054/5 1054/11 1057/16 1065/7 1078/19 1081/21 1091/15 1095/9 1095/15 1098/3
**good-faith [2]** 1031/25 1053/25
**Googled [1]** 1062/2
**goose [1]** 994/9
**got [17]** 990/2 1015/1 1026/13 1040/16 1045/18 1046/2 1046/3 1048/5 1048/5 1050/16 1061/8 1061/19 1064/12 1069/8 1070/16 1073/5 1075/9
**gotten [2]** 1030/24 1067/18
**grandkids [1]** 1035/21
**granting [1]** 984/18
**grasp [1]** 1111/13
**grateful [2]** 1113/1 1113/5

**G**

**Gray [1]** 1020/8
**great [3]** 1004/21 1066/19 1078/8
**Green [1]** 1080/22
**grocery [8]** 1024/4 1024/5 1027/2 1031/19 1032/10 1032/22 1033/20 1084/19
**Gross [2]** 991/7 994/16
**group [7]** 981/3 1024/19 1053/6 1053/6 1071/16 1087/22 1111/5
**guarantee [1]** 1061/14
**guardian [3]** 1019/24 1020/3 1021/20
**guardians [1]** 1018/17
**guess [3]** 1011/13 1012/9 1028/24
**guesswork [1]** 1104/16
**guidance [2]** 1079/14 1080/2
**guides [1]** 991/1
**guy [1]** 1060/20
**guys [2]** 1012/6 1012/8

**H**

**had [93]** 984/7 985/6 995/19 1006/6 1014/16 1022/5 1022/6 1025/17 1025/21 1028/23 1032/19 1034/8 1036/10 1038/12 1040/5 1040/20 1041/20 1042/25 1044/2 1044/19 1046/12 1046/12 1047/5 1049/7 1049/14 1049/16 1049/16 1050/19 1050/20 1051/4 1052/12 1052/13 1053/7 1053/7 1053/16 1054/4 1055/4 1055/19 1056/7 1058/9 1058/13 1058/14 1060/10 1061/13 1062/8 1062/10 1062/11 1063/3 1064/22 1065/2 1065/13 1066/3 1067/6 1067/9 1067/9 1067/14 1067/19 1070/11 1070/19 1071/2 1072/3 1072/5 1072/12 1073/2 1073/6 1073/25 1074/4 1075/8 1077/18 1078/5 1078/10 1079/17 1079/19 1081/21 1082/5 1082/10 1082/16 1082/17 1082/20 1083/3 1084/15 1084/20 1087/19 1088/5 1088/13 1088/22 1088/22 1089/20 1089/23 1091/7 1104/20 1109/22 1113/2
**hadn't [5]** 1037/15 1049/10 1062/7 1075/17 1077/25
**half [2]** 995/18 1081/6
**Hamilton [4]** 1074/7 1076/13 1076/19 1076/22
**hand [14]** 985/23 1011/7 1013/7 1058/19 1097/14 1098/21 1099/21 1100/23 1103/1 1103/18 1108/17 1108/17 1108/22 1109/2
**handbook [3]** 1028/13 1040/24 1041/6
**handed [1]** 1011/6
**handled [1]** 1053/7
**hands [7]** 1024/24 1078/19 1083/5 1083/7 1083/12 1083/13 1083/17
**happen [7]** 1017/21 1027/3 1027/21 1036/11 1036/15 1036/20 1036/21
**happened [15]** 1020/20 1022/18 1027/12 1030/6 1036/10 1036/12 1037/17 1056/16 1071/2 1071/10 1071/11 1073/14 1076/6 1081/14 1081/20
**happens [1]** 1027/6
**hard [6]** 1011/13 1049/17 1081/20 1091/19 1095/24 1109/15
**harder [1]** 1038/5
**harm [5]** 1000/19 1000/24 1001/1 1035/6 1035/7
**Hartman [5]** 1044/12 1044/12 1044/18 1044/19 1044/22
**has [96]** 986/11 988/19 990/4 994/22 1001/24 1005/9 1005/12 1005/14 1007/1 1008/11 1008/17 1009/16 1009/17 1011/9 1013/10 1015/12 1015/24 1017/1 1017/1 1018/8 1018/16 1019/4 1020/14 1020/21 1021/1 1021/10 1021/16 1022/11 1022/11 1028/10 1028/14 1028/23 1029/10 1030/6 1030/23 1030/24 1031/3 1035/13 1036/2 1037/12 1038/14 1038/23 1038/24 1041/1 1043/10 1048/14 1048/25 1049/1 1049/2 1049/8 1049/12 1051/7 1053/14 1055/19 1055/24 1056/3 1058/3 1059/3 1063/1 1066/18 1067/4 1068/7 1078/7 1078/17 1081/13 1082/18 1085/1 1086/8 1087/6 1087/8 1087/8 1092/13 1097/12 1097/15 1098/19 1098/22 1098/25 1099/7 1099/19 1099/21 1100/21 1100/23 1101/6 1101/11 1102/24 1103/2 1103/16 1103/18 1104/1 1105/19 1106/16 1106/19 1108/5 1108/6 1111/9 1113/2
**hasn't [2]** 991/4 1068/16
**have [188]**
**haven't [5]** 1080/6 1087/24 1089/20 1089/20 1091/7
**having [12]** 990/5 1018/10 1018/13 1018/14 1026/17 1066/19

**he [114]** 1005/19 1005/20 1006/12 1006/12 1006/24 1007/4 1017/4 1018/6 1018/8 1021/14 1021/14 1045/23 1045/24 1046/3 1047/2 1047/22 1047/22 1047/24 1048/5 1048/5 1048/6 1048/11 1048/12 1051/16 1051/16 1051/21 1052/14 1055/9 1055/9 1055/10 1055/10 1060/18 1060/20 1060/25 1061/3 1061/22 1061/24 1062/1 1062/14 1062/17 1062/22 1063/1 1063/3 1063/6 1067/8 1075/13 1075/16 1075/17 1075/17 1075/18 1075/19 1075/24 1076/5 1076/6 1076/9 1076/9 1076/10 1076/25 1077/1 1077/1 1077/1 1077/4 1077/5 1077/5 1077/6 1077/10 1077/10 1077/14 1077/14 1077/14 1077/16 1077/16 1077/17 1077/18 1077/20 1077/21 1077/22 1077/22 1077/23 1078/1 1078/2 1078/2 1078/4 1078/4 1078/5 1078/5 1079/14 1082/12 1083/3 1083/4 1083/5 1083/6 1083/7 1083/11 1083/11 1083/11 1083/15 1083/15 1083/16 1084/14 1084/18 1085/3 1086/7 1086/22 1087/8 1087/19 1088/8 1088/9 1089/19 1090/12 1108/17
**he's [2]** 1006/11 1060/20
**header [1]** 989/22
**health [2]** 1021/9 1101/19
**healthcare [2]** 1038/7 1038/8
**hear [6]** 985/4 985/12 1004/7 1006/16 1015/15 1091/19
**heard [21]** 1016/4 1017/4 1038/5 1051/2 1068/17 1069/15 1070/2 1071/13 1071/18 1071/24 1071/24 1072/8 1076/18 1077/16 1077/18 1079/17 1091/21 1093/25 1094/6 1094/21 1104/6
**hearing [2]** 1026/17 1076/17
**hearsay [9]** 1004/10 1004/12 1004/13 1004/17 1004/21 1005/12 1007/1 1007/7 1012/20
**held [5]** 984/15 991/6 1022/17 1076/8 1081/15
**help [25]** 1021/13 1022/18 1023/17 1025/25 1037/21 1047/11 1047/24 1048/3 1057/15 1057/17 1057/21 1057/23 1058/1 1059/12 1059/18 1068/20 1074/20 1074/21 1075/11 1075/12 1077/10 1077/12 1082/22 1093/9 1095/7
**helped [1]** 1077/8
**helpful [2]** 1001/9 1002/8
**helping [1]** 1074/5
**helps [1]** 1021/18
**her [283]**
**here [57]** 986/25 987/5 988/18 988/25 989/6 990/8 991/5 991/12 991/16 992/7 992/16 994/11 995/4 998/6 1001/14 1001/25 1002/15 1006/24 1009/5 1009/12 1015/14 1015/19 1015/22 1016/3 1016/7 1016/17 1020/5 1020/24 1021/12 1022/18 1023/8 1023/10 1023/12 1023/16 1024/14 1025/5 1027/2 1027/10 1027/20 1027/24 1028/21 1036/8 1059/22 1063/19 1065/16 1080/17 1081/14 1081/20 1082/4 1082/11 1082/15 1090/4 1097/6 1098/16 1107/23 1110/2 1112/16
**herself [3]** 1004/24 1079/21 1102/14
**Hey [6]** 1013/12 1026/13 1046/21 1050/10 1050/12 1057/3
**hide [2]** 1026/5 1074/5
**high [2]** 1012/25 1061/17
**higher [2]** 994/2 1019/14
**highest [3]** 1025/14 1081/19 1081/22
**highlighted [1]** 1048/18
**him [21]** 1004/14 1004/16 1004/19 1004/20 1006/17 1006/18 1006/19 1007/7 1021/13 1025/18 1025/19 1065/16 1065/17 1075/12 1075/16 1076/8 1077/2 1077/6 1077/8 1077/8 1082/11
**Hinson [12]** 1019/8 1047/2 1047/15 1047/21 1073/2 1074/7 1075/11 1075/11 1075/14 1075/24 1076/5 1079/14
**hired [1]** 1062/10
**hiring [1]** 1103/5
**hiring/discharge [1]** 1103/5
**his [35]** 1004/15 1004/19 1005/17 1005/18 1005/19 1005/19 1005/20 1008/18 1027/16 1045/24 1047/22 1047/23 1051/10 1060/25 1061/24 1062/1 1062/21 1065/15 1065/17 1076/8 1076/10 1077/3 1077/9 1077/10 1077/11 1077/15 1079/15 1083/5 1083/7 1083/12 1086/5 1087/7 1090/17 1090/19 1095/17
**holds [1]** 1074/8
**home [2]** 1035/21 1035/22
**honest [1]** 1107/15
**honestly [1]** 997/4
**Honor [81]** 985/20 986/2 986/18 986/21 987/21 988/4 988/15

# H

**Honor... [74]** 988/22 989/1 989/12 989/16 989/20 990/8 991/3 991/11 992/15 992/22 993/7 993/9 993/10 994/8 995/15 995/25 996/1 996/6 996/14 996/20 997/20 997/22 998/15 998/21 999/1 999/10 999/24 1000/3 1001/13 1002/7 1002/21 1002/25 1003/14 1004/2 1004/5 1006/14 1007/6 1007/13 1008/13 1008/19 1009/7 1009/22 1009/24 1010/3 1010/9 1011/7 1012/11 1013/9 1013/17 1013/25 1014/23 1085/9 1086/13 1086/21 1087/3 1087/15 1087/20 1088/2 1088/15 1089/3 1090/10 1090/22 1091/4 1091/6 1091/19 1109/5 1109/21 1110/1 1110/15 1110/17 1111/12 1111/21 1112/2 1112/25
**HONORABLE [1]** 980/11
**hook [1]** 1020/11
**hope [1]** 1014/16
**hopelessly [1]** 1018/21
**host [1]** 1009/25
**hotline [8]** 1070/14 1070/17 1070/25 1071/1 1071/8 1075/18 1075/22 1075/25
**hour [6]** 983/5 1035/19 1035/19 1036/8 1036/13 1036/13
**hours [4]** 1035/20 1035/20 1035/22 1036/9
**house [2]** 1066/3 1066/10
**how [45]** 986/12 999/11 1004/15 1010/20 1011/19 1012/1 1015/6 1015/7 1019/23 1025/10 1025/16 1025/17 1025/18 1025/20 1035/11 1035/19 1035/20 1035/20 1035/22 1037/24 1039/1 1045/25 1047/13 1047/19 1048/11 1049/6 1050/20 1057/4 1067/18 1070/5 1070/5 1071/24 1071/24 1072/14 1074/15 1075/5 1075/20 1076/20 1077/1 1077/4 1077/6 1077/7 1085/3 1094/11 1108/3
**however [5]** 1012/24 1090/17 1090/20 1095/18 1106/12
**HR [17]** 1018/24 1020/7 1020/7 1021/15 1025/19 1026/1 1026/2 1028/13 1028/23 1046/10 1051/11 1052/10 1057/5 1059/18 1074/23 1074/24 1082/12
**human [3]** 1021/9 1113/3 1113/4
**humiliation [1]** 1106/1
**hundreds [2]** 1015/4 1039/10
**hustle [1]** 1112/19

# I

**I'd [2]** 994/10 1002/5
**I'll [2]** 985/4 1026/19
**I'm [26]** 985/12 989/8 989/19 997/4 998/20 999/24 1004/8 1012/6 1015/7 1020/7 1023/8 1024/22 1024/23 1026/16 1032/24 1036/21 1039/7 1039/9 1043/2 1048/15 1054/2 1054/25 1056/16 1060/4 1080/8 1095/24
**I've [3]** 1024/9 1045/13 1048/18
**idea [3]** 1067/4 1084/23 1089/14
**identical [1]** 1060/3
**identified [1]** 986/25
**identify [1]** 990/5
**ignore [1]** 1038/16 1095/22
**illegal [4]** 1023/10 1024/24 1050/2 1082/1
**illustrate [1]** 1095/14
**imagine [1]** 1036/14
**immediately [5]** 1024/17 1042/24 1043/3 1043/5 1071/9
**impact [2]** 1036/7 1070/3
**importance [2]** 1057/10 1076/16
**important [23]** 990/7 990/9 1001/15 1027/11 1028/21 1028/25 1035/23 1037/20 1039/11 1042/12 1042/23 1047/16 1048/19 1053/1 1068/23 1069/7 1069/12 1069/17 1074/16 1079/20 1080/3 1084/2 1107/10
**impression [1]** 1007/9
**impressive [1]** 1066/9
**improper [6]** 1004/12 1004/19 1008/25 1053/3 1071/6 1093/15
**improve [5]** 1023/14 1047/24 1059/19 1076/3 1077/10
**improved [2]** 1048/7 1048/11
**improvement [2]** 1027/16 1045/25
**improving [1]** 1058/11
**in-field [1]** 1027/7
**in-person [5]** 1047/15 1048/12 1057/11 1076/16 1079/18
**inadequacies [1]** 1027/16
**inapplicable [1]** 994/17
**inappropriate [5]** 991/5 995/21 1006/16 1006/17 1091/4

**inclined [3]** 993/25 994/3 1006/21
**include [4]** 992/3 993/20 997/1 1003/7
**included [2]** 1001/24 1023/19
**includes [1]** 1019/17
**including [10]** 991/21 997/25 1040/16 1041/9 1053/10 1073/1 1074/7 1081/6 1108/2 1110/3
**incomplete [3]** 987/1 997/25 1110/3
**inconsistent [2]** 1084/17 1084/17
**inconvenience [1]** 1106/4
**increase [1]** 1057/8
**increased [6]** 1035/12 1057/2 1057/7 1061/2 1078/5 1094/19
**incurred [1]** 1105/15
**indeed [2]** 1029/14 1034/22
**INDEX [1]** 982/1
**indicate [1]** 1110/8
**indicated [5]** 1036/2 1086/16 1088/24 1091/16 1109/3
**indicates [1]** 998/3
**indicating [2]** 996/17 999/22
**individual [1]** 1015/19
**individuals [2]** 1018/16 1087/22
**industry [1]** 1063/4
**inflation [1]** 1105/21
**influence [1]** 1069/13
**influenced [4]** 1069/3 1069/10 1092/5 1093/16
**information [11]** 1014/19 1063/9 1080/9 1087/25 1091/5 1095/14 1097/20 1097/25 1098/4 1098/8 1098/12
**initially [2]** 996/25 1008/8
**injured [1]** 1106/6
**injuries [1]** 1106/8
**injury [3]** 1000/21 1104/4 1106/9
**insert [4]** 1034/4 1034/14 1035/3 1035/10
**insight [1]** 1050/20
**insights [5]** 1022/4 1023/6 1050/5 1050/8 1050/11
**instance [1]** 1022/3
**instead [11]** 1011/24 1022/2 1045/18 1053/15 1057/3 1057/9 1062/18 1062/19 1062/24 1072/13 1095/24
**instituted [2]** 1037/18 1053/12
**institutes [1]** 1027/7
**instruct [9]** 1006/8 1009/24 1010/16 1013/20 1060/8 1063/17 1090/5 1091/22 1103/22
**instructed [10]** 989/2 998/4 1001/6 1005/3 1086/25 1087/16 1089/12 1092/24 1093/19 1093/22
**instructing [1]** 1103/23
**instruction [58]** 982/2 983/13 985/7 987/8 987/21 988/2 988/21 989/3 989/6 989/9 991/16 992/11 993/11 994/1 994/1 994/5 994/10 994/12 995/4 995/6 1000/18 1000/20 1000/22 1001/16 1001/25 1003/18 1006/3 1006/13 1006/22 1012/18 1013/5 1013/6 1013/16 1013/18 1013/25 1014/2 1014/6 1028/3 1068/6 1068/12 1069/7 1069/17 1086/6 1088/10 1090/7 1090/10 1090/13 1090/24 1091/10 1095/20 1095/25 1109/13 1109/22 1109/25 1110/13 1110/19 1111/22
**instructions [40]** 982/6 983/10 983/11 984/25 987/22 988/20 990/22 990/23 991/9 997/19 997/23 998/7 998/12 1001/10 1001/14 1004/6 1015/16 1022/23 1054/2 1060/4 1060/15 1066/25 1068/23 1069/15 1083/23 1084/16 1084/18 1091/17 1091/24 1092/9 1101/14 1101/16 1108/12 1109/1 1109/2 1109/6 1109/17 1109/24 1112/6 1112/21
**insubordination [1]** 1019/22
**integrity [3]** 1021/6 1021/8 1053/4
**intended [2]** 996/16 1093/9
**intends [1]** 1016/5
**intensity [1]** 1094/19
**interacted [2]** 1037/22 1047/12
**interest [1]** 1105/17
**interested [1]** 1082/6
**interesting [1]** 984/6
**interfere [2]** 1101/21 1102/5
**interference [1]** 1106/4
**internal [1]** 1009/18
**interpret [1]** 1093/9
**interpretation [1]** 988/17
**interpreting [1]** 994/25
**interrupt [1]** 1026/16

## I

**interview [4]**  1025/21 1030/24 1030/25 1078/2
**interviewed [8]**  1017/5 1023/14 1025/13 1030/23 1045/2
1048/4 1072/7 1072/10
**interviewers [1]**  1004/16
**interviewing [1]**  1025/5
**interviews [7]**  1004/15 1005/5 1006/6 1006/8 1025/6 1034/20
1046/5
**introduced [1]**  1025/19
**invested [1]**  1105/12
**investigate [2]**  1018/5 1059/15
**investigated [7]**  1051/3 1052/13 1052/19 1052/22 1053/17
1059/9 1059/13
**investigating [2]**  1018/21 1018/22
**investigation [10]**  1046/14 1056/20 1056/23 1056/24 1059/11
1071/19 1072/4 1072/10 1073/13 1077/18
**investigations [3]**  1020/18 1026/7 1051/22
**investments [1]**  1105/18
**involved [2]**  1051/13 1052/24
**involves [1]**  1056/8
**involving [1]**  1104/6
**irrelevant [2]**  1009/24 1111/8
**is [535]**
**isn't [4]**  988/1 989/5 992/7 1013/10
**issue [11]**  986/21 986/23 997/6 1007/17 1007/23 1009/17
1010/25 1037/13 1051/1 1087/8 1096/6
**issued [1]**  988/5
**issues [4]**  1016/14 1042/17 1075/21 1077/9
**it [380]**
**it's [21]**  992/6 994/12 994/14 994/24 996/21 1019/7 1019/9
1025/12 1035/25 1036/1 1045/4 1046/8 1054/17 1059/7
1065/13 1086/19 1087/14 1087/21 1088/1 1088/2 1088/16
**its [28]**  988/23 1003/11 1003/23 1005/9 1006/23 1016/13
1016/14 1016/15 1016/16 1017/23 1017/24 1022/14 1022/17
1022/19 1022/19 1022/20 1022/20 1030/4 1064/14 1079/1
1082/23 1082/24 1082/24 1096/7 1096/9 1109/24 1110/10
1110/17
**itself [6]**  1000/25 1001/16 1016/13 1028/2 1028/14 1089/7
**IVIE [188]**
**Ivie's [28]**  1015/8 1038/4 1042/10 1045/3 1045/10 1047/2
1047/10 1047/14 1048/3 1051/1 1053/8 1055/4 1061/5 1062/17
1065/19 1066/3 1066/11 1071/13 1071/22 1072/1 1073/1
1073/17 1073/19 1074/19 1075/12 1075/15 1077/22 1094/19

## J

**January [5]**  1023/13 1027/22 1028/22 1043/9 1073/7
**January 15th [2]**  1023/13 1027/22
**January 15th emails [1]**  1043/9
**Jenny [1]**  1065/7
**JERS [1]**  986/10
**job [60]**  1004/15 1005/4 1005/17 1005/20 1005/21 1006/6
1006/8 1034/20 1034/22 1034/22 1037/14 1038/18 1038/24
1038/25 1039/2 1039/15 1048/5 1048/24 1049/10
1049/16 1049/20 1049/22 1051/6 1051/8 1051/8 1051/25
1055/5 1056/6 1058/21 1061/8 1061/12 1061/25 1062/2 1063/7
1064/25 1065/12 1067/1 1067/2 1067/2 1067/2 1067/3 1067/11
1067/19 1067/22 1068/20 1068/21 1069/13 1074/5 1075/17
1075/22 1078/5 1078/9 1078/11 1078/16 1079/7 1079/8 1080/3
1105/5 1105/7
**jobs [8]**  1030/23 1061/10 1062/3 1067/4 1067/5 1069/23
1074/21 1082/5
**Joe [1]**  995/7
**joins [1]**  1020/15
**joint [1]**  985/22
**JOLIE [1]**  980/11
**joy [1]**  1035/17
**JR [1]**  980/4
**judge [21]**  1005/7 1007/3 1007/11 1007/21 1007/23 1009/9
1013/1 1013/3 1013/22 1015/16 1022/23 1031/10 1048/21
1060/8 1060/14 1063/17 1063/21 1066/24 1069/8 1069/15
1111/1
**judge's [1]**  1068/6

## K

**judged [1]**  1094/25
**judgment [3]**  983/17 983/23 1106/14
**July [1]**  1066/3
**June [20]**  980/5 983/1 1021/18 1023/19 1026/3 1028/2 1029/23
1030/19 1039/21 1041/16 1041/22 1045/14 1052/2 1066/4
1066/18 1076/5 1079/24 1097/8 1098/17 1100/20
**June 15th [2]**  1041/16 1041/22
**June 3rd [1]**  1039/21
**June 6th [9]**  1021/18 1023/19 1026/3 1028/2 1029/23 1052/2
1097/8 1098/17 1100/20
**jurisdiction [1]**  984/4
**juror [4]**  1107/2 1107/2 1108/8 1108/20
**jurors [10]**  1002/8 1006/10 1011/7 1015/20 1069/24 1107/4
1107/9 1107/14 1110/4 1112/1
**jurors' [1]**  1013/11
**jury [135]**  980/10 982/2 983/3 983/6 983/10 983/16 983/19
984/25 985/10 985/19 986/10 986/12 988/2 988/20 988/21
989/1 989/3 989/6 990/7 990/10 990/14 990/17 990/22 990/22
991/9 991/17 992/3 992/23 995/3 996/23 997/3 997/6 997/23
998/1 998/4 998/7 998/21 999/5 1000/12 1000/15 1000/18
1000/19 1000/23 1001/9 1001/14 1004/4 1004/6 1004/13
1004/22 1005/2 1006/3 1006/5 1006/13 1006/13 1006/15
1008/11 1008/17 1008/22 1008/24 1009/24 1010/7 1010/11
1011/9 1011/15 1011/16 1011/17 1012/16 1012/18 1013/2
1013/6 1013/10 1013/11 1013/18 1013/22 1014/13 1014/14
1015/8 1015/9 1015/11 1022/23 1029/13 1030/16 1031/7
1031/9 1037/4 1037/9 1048/18 1054/2 1060/3 1060/15 1068/23
1069/17 1069/23 1080/8 1083/20 1083/23 1084/9 1084/16
1085/1 1086/1 1086/5 1086/6 1086/9 1086/25 1087/1 1087/4
1087/11 1087/11 1087/15 1088/1 1088/10 1088/25 1089/10
1089/12 1090/3 1090/5 1090/9 1090/12 1091/13 1091/14
1091/21 1091/25 1107/1 1107/3 1107/20 1107/22 1108/3
1109/3 1109/13 1109/14 1109/18 1109/19 1109/22 1110/11
1112/6
**jury's [3]**  996/2 996/18 1007/9
**just [54]**  985/1 985/8 986/1 988/1 988/13 992/15 996/2 996/3
996/20 997/11 999/1 999/3 999/4 1000/22 1002/21 1002/22
1006/24 1009/22 1010/9 1010/20 1011/1 1011/4 1012/13
1012/17 1013/12 1015/6 1021/15 1025/4 1036/9 1038/21
1038/22 1039/19 1040/25 1045/24 1050/16 1052/25 1056/18
1059/7 1060/20 1066/10 1070/15 1079/19 1086/16 1094/25
1108/23 1109/12 1109/23 1110/6 1110/12 1110/15 1111/1
1111/10 1112/12 1112/18
**justice [3]**  1015/20 1015/20 1015/20
**justify [1]**  984/17

## K

**Karen [8]**  1018/18 1018/20 1029/7 1049/13 1059/2 1075/4
1075/5 1082/4
**Karen Belknap [1]**  1059/2
**keep [5]**  1003/25 1010/23 1019/1 1042/14 1078/16
**keeps [1]**  1089/19
**kept [1]**  1084/18
**kids [2]**  1035/21 1035/22
**kill [1]**  1083/10
**kind [1]**  1079/9
**kinds [1]**  1094/8
**knew [21]**  1028/5 1033/2 1040/12 1042/8 1043/8 1043/19
1044/9 1044/11 1044/22 1045/8 1045/15 1045/17 1047/5
1062/4 1064/20 1068/9 1068/13 1071/4 1074/4 1078/12 1101/8
**know [40]**  1001/7 1001/9 1007/18 1008/11 1010/7 1011/22
1013/15 1021/2 1026/12 1027/14 1028/6 1039/2 1040/1
1044/18 1044/18 1044/21 1044/25 1045/1 1045/5 1045/6
1045/13 1046/10 1048/14 1050/9 1051/19 1052/25 1059/4
1065/2 1066/13 1066/14 1085/3 1088/4 1089/9 1089/19 1091/9
1091/18 1091/20 1108/23 1113/2 1113/5
**knowing [1]**  1000/16
**knowledge [1]**  1067/9
**known [5]**  1099/1 1101/12 1101/14 1104/13 1104/23
**knows [4]**  1021/12 1028/22 1029/10 1076/5

## L

**label [30]**  1001/20 1017/9 1017/11 1017/13 1017/14

# L

**label... [24]** 1021/7 1022/4 1026/11 1029/19 1031/17 1042/14 1042/22 1049/5 1049/7 1049/25 1050/24 1070/7 1070/13 1070/18 1070/22 1071/15 1071/18 1071/23 1075/14 1076/18 1077/17 1077/21 1096/20 1097/12
**Labor [1]** 994/20
**ladies [1]** 1037/4
**laid [3]** 1038/7 1046/19 1048/10 1061/9 1077/24 1078/3
**Lake [6]** 1038/7 1046/19 1048/10 1061/9 1077/24 1078/3
**land [1]** 1019/23
**language [17]** 988/1 992/8 993/17 993/20 995/18 996/15 999/6 999/9 999/17 999/19 1001/11 1002/8 1002/22 1003/8 1003/8 1048/19 1110/3
**lapse [1]** 1018/25
**large [2]** 1062/15 1070/4
**Larry [10]** 1019/8 1047/2 1047/15 1047/21 1073/2 1075/11 1075/14 1075/24 1076/5 1079/14
**Larry Hinson [1]** 1047/15
**last [13]** 1000/20 1006/3 1009/6 1020/5 1021/20 1022/13 1022/14 1023/16 1030/13 1030/14 1075/14 1077/13 1113/2
**later [1]** 1021/16
**lateral [1]** 1061/9
**launch [1]** 1016/5
**law [74]** 981/3 983/18 983/24 984/1 984/6 984/11 984/15 984/15 984/18 984/20 988/14 991/2 991/4 991/10 991/19 995/12 996/17 996/21 996/22 997/2 998/23 999/23 1000/10 1003/7 1005/9 1007/17 1013/19 1013/21 1015/15 1015/18 1023/1 1023/3 1026/14 1026/22 1031/21 1032/1 1033/13 1038/19 1048/20 1051/5 1054/5 1055/24 1057/16 1059/22 1060/2 1060/3 1063/24 1068/11 1069/1 1069/2 1069/8 1069/18 1084/17 1091/22 1092/2 1092/3 1094/9 1096/2 1096/6 1096/13 1097/19 1097/22 1098/2 1098/9 1098/13 1099/1 1101/12 1101/14 1103/4 1103/6 1105/24 1105/24 1106/10 1106/12
**lawful [1]** 1099/6
**lawn [1]** 1015/3
**laws [2]** 984/13 1016/12
**lawsuit [4]** 1062/10 1067/7 1067/10 1067/16
**lawyer [1]** 1070/4
**lawyers [6]** 1092/23 1093/6 1093/7 1093/11 1093/13 1107/25
**lead [1]** 1058/3
**leads [1]** 1025/2
**learn [2]** 1036/16 1044/23
**learns [2]** 1044/5 1044/7
**least [7]** 984/12 994/5 996/10 1022/13 1026/9 1036/3 1094/18
**leave [53]** 994/13 1018/11 1027/1 1027/1 1027/5 1033/7 1033/8 1033/10 1035/22 1039/15 1039/24 1056/8 1056/9 1056/11 1056/15 1056/16 1056/21 1057/3 1057/9 1057/14 1057/15 1057/19 1057/21 1058/6 1058/8 1058/14 1058/15 1058/17 1058/19 1058/21 1059/3 1064/2 1064/3 1073/12 1073/15 1075/20 1075/23 1075/25 1077/23 1078/19 1101/10 1101/10 1101/13 1101/15 1101/16 1101/21 1102/2 1102/6 1102/8 1102/16 1102/20 1102/22 1102/23
**lecturn [1]** 1026/20
**left [3]** 1035/19 1078/5 1080/21
**legal [7]** 984/4 996/8 996/22 996/25 997/2 1007/11 1007/14
**legally [1]** 983/19
**legitimate [2]** 983/20 1073/14
**length [2]** 1005/23 1105/6
**less [3]** 1036/11 1061/11 1081/9
**let [22]** 1007/17 1013/15 1018/24 1036/20 1036/21 1039/21 1048/4 1051/14 1056/18 1062/23 1066/4 1066/10 1066/12 1068/22 1069/13 1075/1 1077/12 1078/1 1078/14 1082/2 1090/22 1108/23
**let's [18]** 1024/16 1035/4 1041/15 1043/7 1050/16 1050/17 1050/18 1050/23 1053/18 1057/1 1070/1 1070/1 1074/6 1076/12 1080/6 1080/22 1084/12 1090/12
**letter [1]** 1019/15
**letting [1]** 1091/20
**level [6]** 1017/16 1063/6 1063/8 1063/10 1063/1 1081/22
**levels [1]** 1025/14
**Lewis [2]** 981/6 981/9
**liability [4]** 986/14 1014/4 1096/5 1104/9

**liable [1]** 1060/12
**lieu [2]** 987/9 1013/4
**life [6]** 1031/5 1035/25 1036/3 1036/10 1036/14 1066/20
**lifted [1]** 985/8
**light [5]** 988/9 990/1 990/15 991/19 1001/25
**like [31]** 985/1 985/19 997/19 999/6 1000/23 1004/7 1013/11 1015/13 1017/3 1017/18 1018/16 1018/18 1024/4 1027/2 1072/21 1076/15 1076/19 1077/1 1077/5 1077/14 1079/19 1084/6 1086/2 1087/10 1087/15 1088/10 1090/4 1090/14 1094/25 1109/21
**likely [3]** 997/25 1030/9 1031/2
**likes [4]** 1069/3 1069/11 1078/14 1092/5
**likewise [2]** 1059/12 1061/21
**limine [1]** 1014/10
**limited [2]** 1093/22 1093/23
**limiting [3]** 1006/22 1013/5 1013/16
**limits [1]** 1047/3
**Linda [3]** 1047/14 1053/11 1079/17
**line [17]** 1017/13 1018/20 1020/11 1020/23 1020/23 1022/4 1022/13 1022/14 1022/15 1022/15 1026/11 1030/13 1030/14 1030/21 1031/4 1043/4 1108/20
**link [2]** 1098/7 1098/11
**list [14]** 985/7 1024/4 1024/5 1024/6 1027/2 1031/19 1032/10 1032/22 1033/20 1033/20 1061/17 1084/18 1084/19 1093/5
**listen [1]** 1069/24
**listened [1]** 1107/9
**listing [1]** 1051/14
**literally [2]** 985/1 1015/4
**little [6]** 999/25 1020/14 1063/20 1069/22 1077/2 1077/6
**live [3]** 1035/18 1035/18 1035/19
**lived [3]** 1046/20 1077/3 1078/4
**lives [2]** 1035/18 1077/5
**LLP [2]** 981/6 981/9
**local [1]** 1050/7
**long [11]** 984/9 984/11 1007/25 1024/7 1024/9 1035/17 1058/14 1063/7 1067/1 1078/14 1112/24
**long-term [1]** 1078/14
**long-time [1]** 1035/17
**longer [3]** 993/24 1078/16 1095/25
**look [57]** 988/11 988/19 990/21 994/20 1011/20 1014/5 1023/8 1027/4 1027/11 1029/2 1029/9 1031/8 1031/18 1039/12 1039/12 1039/13 1039/20 1040/13 1041/8 1041/15 1041/24 1042/10 1042/24 1043/7 1043/14 1043/17 1043/21 1043/23 1043/25 1044/14 1050/1 1052/4 1052/14 1053/18 1054/2 1057/1 1057/25 1060/3 1066/23 1066/25 1070/1 1070/14 1072/6 1074/6 1074/23 1076/12 1076/15 1076/16 1079/3 1079/4 1079/5 1079/5 1079/20 1080/6 1080/22 1081/5 1081/17 1088/6
**looking [1]** 1011/23
**looks [1]** 1021/17
**lose [1]** 1079/7
**loss [1]** 1034/2
**lost [9]** 1008/16 1033/23 1034/6 1040/5 1069/13 1079/7 1104/11 1104/25 1105/3
**lot [3]** 1049/21 1077/8 1078/12
**lots [1]** 1060/24
**low [1]** 1065/25
**lower [1]** 1081/13
**LP [1]** 980/6
**lucky [2]** 1015/7 1015/7
**lunch [3]** 1035/20 1083/21 1083/25
**lunchtime [1]** 1109/10
**lying [9]** 1073/18 1074/25 1075/4 1076/15 1076/17 1076/19 1077/1 1077/5 1077/14

# M

**machine [1]** 1012/5
**made [29]** 1005/13 1014/11 1031/24 1032/2 1038/21 1042/13 1044/2 1044/25 1045/1 1049/7 1052/19 1052/22 1053/22 1053/23 1054/10 1056/21 1057/4 1059/3 1059/8 1064/11 1065/23 1071/16 1071/23 1071/25 1072/11 1074/10 1098/14 1105/18 1107/11
**Magee [1]** 995/6
**MAGISTRATE [1]** 980/12

**M**

**magnitude [1]** 1036/7
**Magnuson [5]** 1007/21 1011/3 1012/2 1111/4 1112/17
**maintain [1]** 995/3
**maintenance [1]** 1109/23
**Makar [2]** 1022/1 1025/15
**make [27]** 988/13 990/14 997/11 997/19 998/16 999/3 999/3 999/12 1000/15 1002/21 1005/17 1007/5 1011/21 1013/3 1016/1 1016/2 1016/20 1019/8 1024/20 1052/20 1058/3 1070/23 1073/4 1073/10 1079/3 1086/2 1111/10
**makes [12]** 997/1 1008/14 1015/17 1016/1 1016/13 1027/18 1038/22 1042/21 1043/23 1063/18 1068/12 1094/9
**making [5]** 1002/13 1038/16 1039/14 1049/24 1059/14
**man [10]** 1083/2 1083/3 1083/5 1083/6 1083/7 1083/8 1083/12 1083/14 1083/15 1083/16
**management [2]** 1063/2 1063/4
**manager [11]** 1019/3 1019/4 1019/5 1040/3 1040/5 1046/8 1046/11 1046/12 1061/12 1077/3 1078/8
**manager's [4]** 1001/20 1031/16 1067/3 1096/20
**managers [5]** 1017/23 1029/16 1039/19 1046/23 1055/8
**many [9]** 1024/7 1030/23 1035/20 1035/20 1035/22 1040/15 1071/16 1074/21 1087/13
**map [1]** 1063/20
**Maratas [5]** 1027/15 1027/15 1045/18 1045/22 1046/2
**March [14]** 1023/20 1025/9 1025/13 1025/23 1027/24 1029/22 1039/14 1045/2 1049/19 1050/16 1050/19 1064/12 1064/19 1078/5
**March 1st [8]** 1023/20 1025/9 1025/13 1025/23 1027/24 1029/22 1045/2 1064/19
**marginal [1]** 1012/24
**market [4]** 981/10 1016/16 1016/24 1038/6
**marketed [1]** 1016/21
**marketing [14]** 1001/20 1002/6 1017/24 1018/2 1021/7 1029/22 1031/17 1042/14 1042/22 1049/5 1049/25 1075/19 1096/21 1097/12
**massive [1]** 1021/11
**materials [2]** 1006/12 1009/25
**math [4]** 1086/22 1088/6 1088/19 1089/1
**matter [6]** 983/18 983/24 1005/14 1015/18 1019/20 1081/25
**may [49]** 983/13 986/2 1004/6 1014/1 1017/12 1020/5 1020/10 1021/12 1023/16 1025/23 1025/24 1026/8 1027/25 1027/25 1041/8 1045/14 1049/19 1054/8 1067/20 1073/9 1079/6 1082/11 1087/16 1090/6 1090/16 1090/17 1090/19 1090/20 1090/24 1091/8 1091/8 1091/10 1091/24 1092/4 1092/10 1093/2 1093/4 1093/24 1093/25 1094/3 1094/25 1095/17 1095/18 1101/21 1104/25 1105/21 1107/19 1107/25 1107/25
**May 16th [5]** 1021/12 1025/24 1027/25 1079/6 1082/11
**May 2014 [1]** 1049/19
**May 21st [1]** 1017/12
**May 29th email [1]** 1041/8
**May 3rd [3]** 1020/5 1020/10 1027/25
**maybe [2]** 997/9 1079/20
**Mazumdar [1]** 981/2
**McCarthy [2]** 981/9 1009/13
**McCullough [15]** 1016/4 1017/19 1018/4 1018/19 1020/20 1020/25 1021/2 1021/21 1051/14 1052/23 1052/24 1053/2 1079/24 1082/15 1082/16
**me [19]** 983/11 985/19 985/24 985/25 996/6 999/24 1007/20 1013/15 1024/8 1024/9 1030/2 1039/9 1039/10 1044/19 1056/18 1090/22 1091/20 1107/18 1107/25
**mean [5]** 1001/6 1009/14 1038/23 1049/5 1103/23
**meaning [2]** 1044/18 1050/17
**means [21]** 987/2 987/4 990/7 990/20 991/14 992/3 996/22 996/23 1003/6 1024/20 1048/21 1049/3 1049/11 1056/1 1063/11 1069/4 1092/6 1092/15 1104/3 1105/12 1106/17
**meant [3]** 1011/11 1038/10 1065/17
**measure [2]** 1103/22 1106/11
**median [1]** 1067/22
**mediation [1]** 1040/3
**medical [14]** 994/13 1027/1 1033/7 1033/8 1033/10 1056/8 1056/11 1064/2 1064/2 1101/10 1101/13 1102/15 1102/20 1102/22

**medication [1]** 1035/14
**medicines [2]** 1016/1 1016/2
**meet [8]** 1027/23 1047/6 1053/16 1055/14 1056/5 1074/9 1076/2 1076/9
**meeting [38]** 1015/5 1019/3 1025/17 1038/20 1039/21 1041/4 1041/5 1041/5 1041/16 1041/18 1042/25 1043/1 1043/15 1043/18 1043/22 1044/1 1044/3 1044/24 1046/6 1046/8 1046/11 1046/14 1047/8 1048/24 1049/14 1055/5 1058/10 1059/16 1064/14 1064/25 1070/8 1070/11 1070/15 1075/16 1075/22 1076/1 1076/21 1077/11
**meetings [4]** 1039/25 1052/6 1071/16 1071/17
**Melinda [1]** 981/6
**member [3]** 1107/1 1107/20 1107/22
**members [4]** 1022/1 1047/11 1083/20 1091/21
**memo [4]** 1052/4 1052/9 1052/15 1052/17
**memory [2]** 1093/11 1108/14
**mention [7]** 1014/11 1029/3 1029/4 1039/7 1070/18 1071/1 1079/16
**mentioned [6]** 1011/5 1051/10 1052/23 1070/21 1070/24 1085/1
**meritless [2]** 1038/18 1079/2
**message [1]** 1044/21
**messages [7]** 1044/14 1044/15 1044/17 1072/22 1111/5 1111/7 1111/8
**met [7]** 1024/10 1028/17 1030/2 1042/11 1049/12 1059/9 1059/14
**mic [1]** 1091/18
**middle [1]** 1010/22
**midnight [1]** 1005/9
**might [7]** 989/4 999/22 1008/5 1061/8 1062/23 1074/17 1082/11
**migraine [1]** 1094/20
**migraines [3]** 1035/12 1094/17 1094/19
**Mike [14]** 1017/4 1017/8 1018/5 1018/19 1020/24 1021/2 1021/5 1026/1 1044/12 1044/12 1044/18 1044/18 1044/22 1082/10
**Mike Hartman [1]** 1044/12
**Mike Pomponi [1]** 1018/19
**miles [1]** 1077/3
**Mill [1]** 981/7
**mimics [2]** 1026/14 1026/22
**Mina [2]** 1022/1 1025/15
**mind [3]** 984/22 1042/14 1080/9
**mindset [3]** 1018/11 1072/14 1072/16
**mine [3]** 988/6 992/6 1017/8
**Mining [1]** 988/16
**minute [7]** 983/16 997/9 1012/13 1035/18 1035/19 1037/3 1078/21
**minutes [3]** 1010/6 1037/5 1112/18
**mirror [1]** 999/2
**mischaracterizes [1]** 984/3
**misconception [1]** 1004/25
**mislead [2]** 998/1 1006/13
**misleading [11]** 988/13 990/1 990/17 990/18 991/22 992/23 1002/2 1003/5 1003/20 1006/4 1110/4
**misled [1]** 991/17
**misplaced [1]** 987/23
**missed [2]** 1057/18 1057/21
**missing [1]** 1065/17
**misspellings [2]** 1000/14 1004/3
**mistake [1]** 990/3
**mitigate [6]** 1000/9 1034/19 1035/2 1106/17 1106/17 1106/22
**mitigated [1]** 1106/24
**mitigation [8]** 997/14 999/20 1000/7 1005/23 1034/17 1066/23 1066/24 1106/16
**model [11]** 985/7 985/8 985/11 987/22 988/2 988/21 989/3 989/6 991/9 1014/5 1077/24
**modified [1]** 1001/8
**modifier [1]** 991/24
**moment [1]** 1112/16
**monetary [1]** 1104/19
**money [6]** 1046/18 1049/21 1078/12 1104/3 1105/12 1105/21
**monitored [2]** 1022/6 1026/13

**M**

**monitoring [1]** 1030/8
**month [3]** 1066/8 1066/10 1101/19
**monthly [1]** 1028/20
**months [4]** 1054/8 1071/2 1071/10 1073/5
**more [22]** 1000/15 1001/15 1003/20 1006/19 1019/22 1025/23 1036/3 1038/6 1040/20 1042/4 1048/15 1048/22 1050/18 1050/23 1050/23 1057/12 1069/25 1078/4 1082/5 1092/16 1094/7 1107/19
**Morgan [2]** 981/6 981/9
**morning [13]** 983/4 998/11 1010/19 1010/23 1014/15 1014/21 1014/23 1015/1 1025/6 1047/2 1109/9 1109/11 1110/20
**most [6]** 1006/11 1037/25 1039/11 1048/18 1079/20 1105/9
**motion [13]** 983/17 983/22 983/23 984/18 984/24 996/25 1004/9 1005/8 1006/1 1007/19 1007/22 1012/18 1086/3
**motions [6]** 982/2 982/7 983/9 983/10 1004/5 1012/17
**motions/jury [1]** 982/2
**motivating [2]** 993/17 993/20
**motivation [2]** 990/14 990/15
**mountain [2]** 1015/6 1076/25
**move [5]** 983/10 983/14 1026/20 1053/14 1086/4
**Moving [4]** 986/15 995/12 995/17 1007/19
**Mr [5]** 982/3 982/5 1006/9 1011/6 1012/2
**Mr. [66]** 1004/10 1004/14 1004/18 1005/3 1005/16 1006/5 1006/11 1006/16 1006/18 1006/23 1007/3 1007/21 1008/17 1009/13 1011/3 1014/22 1026/16 1037/11 1040/23 1044/11 1044/19 1044/19 1045/22 1046/2 1046/4 1046/5 1048/9 1048/14 1049/23 1051/10 1052/3 1052/23 1053/4 1058/24 1060/18 1060/21 1060/21 1060/25 1061/20 1061/22 1061/23 1062/13 1063/1 1067/6 1067/14 1067/24 1074/7 1075/11 1076/13 1076/13 1076/13 1084/14 1084/25 1086/5 1086/7 1086/12 1086/22 1088/6 1088/8 1088/11 1089/18 1090/17 1090/19 1095/17 1111/4 1112/17
**Mr. Barnes [1]** 1076/13
**Mr. Hartman [1]** 1044/19
**Mr. Hinson [2]** 1074/7 1075/11
**Mr. Magnuson [4]** 1007/21 1011/3 1111/4 1112/17
**Mr. Maratas [2]** 1045/22 1046/2
**Mr. McCarthy [1]** 1009/13
**Mr. Oswald [26]** 1008/17 1014/22 1026/16 1037/11 1040/23 1044/11 1044/19 1046/4 1048/14 1049/23 1051/10 1052/3 1052/23 1053/4 1067/24 1084/25 1086/5 1086/7 1086/12 1086/22 1088/8 1088/11 1089/18 1090/17 1090/19 1095/17
**Mr. Oswald's [3]** 1058/24 1084/14 1088/6
**Mr. Pomponi [1]** 1046/5
**Mr. Sevart [15]** 1004/14 1004/18 1005/3 1005/16 1006/5 1006/16 1006/18 1006/23 1060/18 1060/21 1060/21 1062/13 1063/1 1067/6 1067/14
**Mr. Sevart's [7]** 1004/10 1006/11 1007/3 1060/25 1061/20 1061/22 1061/23
**Mr. Stickle [1]** 1076/13
**Mr. Thomsen [2]** 1048/9 1076/13
**Ms [12]** 982/4 1036/16 1046/21 1049/12 1052/24 1053/2 1057/3 1058/1 1061/5 1063/11 1065/19 1065/19
**Ms. [308]**
**Ms. Amy [1]** 1051/11
**Ms. Belknap [12]** 1043/10 1044/16 1046/5 1056/19 1056/23 1057/5 1059/4 1059/7 1059/9 1072/5 1073/13 1075/12
**Ms. Belknap's [1]** 1043/15
**Ms. Capell [1]** 1065/21
**Ms. Ceaser's [1]** 1036/17
**Ms. Chambers [1]** 1007/10
**Ms. DiNunzio [72]** 1038/13 1038/14 1039/5 1039/25 1040/16 1041/11 1041/21 1041/25 1042/3 1042/11 1042/25 1043/1 1043/7 1043/10 1043/15 1043/18 1043/19 1043/22 1044/5 1044/7 1044/13 1044/16 1044/17 1044/25 1045/4 1045/5 1046/6 1049/17 1050/6 1050/15 1050/18 1050/22 1053/8 1054/9 1055/6 1055/12 1056/22 1057/17 1057/20 1057/23 1058/9 1058/11 1058/25 1059/8 1059/15 1059/16 1059/19 1065/1 1070/6 1070/10 1070/12 1070/19 1070/20 1070/21 1071/13 1071/14 1071/21 1072/2 1072/23 1073/12 1074/6 1074/12 1075/15 1075/19 1075/20 1075/23 1075/25 1076/7
1076/17 1076/20 1077/16 1077/20
**Ms. DiNunzio's [8]** 1041/16 1044/1 1046/7 1064/25 1072/24 1074/14 1074/18 1087/22
**Ms. Hamilton [2]** 1074/7 1076/13
**Ms. Ivie [177]**
**Ms. Ivie's [25]** 1038/4 1042/10 1045/3 1045/10 1047/2 1047/10 1047/14 1048/3 1051/1 1053/8 1055/4 1062/17 1066/3 1066/11 1071/13 1071/22 1072/1 1073/1 1073/17 1073/19 1074/19 1075/12 1075/15 1077/22 1094/19
**Ms. Ms. DiNunzio [1]** 1057/13
**Ms. Riechert [2]** 1011/5 1011/19
**Ms. Talcott [1]** 997/9
**Ms. Talcott's [1]** 1005/22
**Ms. Welch [1]** 1052/4
**much [12]** 998/9 1012/12 1015/25 1035/19 1038/5 1055/6 1055/7 1060/16 1083/4 1094/11 1095/1 1112/23
**Multnomah [3]** 993/12 995/22 1110/21
**must [29]** 1015/19 1016/16 1017/19 1048/22 1049/3 1056/1 1069/1 1069/3 1069/5 1092/3 1092/6 1092/15 1093/20 1093/23 1094/13 1096/15 1097/23 1100/3 1101/4 1102/12 1103/7 1103/25 1104/15 1104/18 1105/3 1105/10 1106/13 1107/6 1107/6
**MW [1]** 991/6
**my [13]** 983/9 983/15 984/22 997/22 997/24 1007/16 1024/6 1080/22 1081/8 1083/13 1084/21 1091/22 1109/22

**N**

**name [1]** 1063/10
**named [1]** 1111/14
**narrowed [1]** 1080/12
**Nassar [6]** 990/2 993/14 993/14 993/22 994/16 1110/22
**nation [3]** 1029/11 1029/12 1048/11
**national [1]** 1080/12
**nature [3]** 996/8 996/22 997/2
**necessarily [1]** 997/6
**necessary [2]** 1001/7 1107/18
**need [12]** 988/18 991/1 1016/2 1023/2 1030/11 1030/12 1046/11 1050/13 1050/15 1050/23 1060/9 1076/3
**needed [16]** 997/11 1040/6 1047/11 1047/12 1047/17 1048/3 1053/14 1058/23 1072/14 1074/20 1077/10 1077/11 1077/21 1081/14 1081/14 1105/12
**needs [7]** 989/1 998/24 1006/25 1016/12 1027/3 1029/9 1058/3
**negative [8]** 993/11 994/3 994/24 1033/10 1056/11 1102/3 1102/23 1110/21
**Neither [1]** 1066/11
**nest [1]** 1083/11
**never [23]** 1020/20 1026/12 1030/25 1031/2 1044/20 1053/2 1055/10 1071/2 1075/19 1077/16 1077/18 1079/9 1079/9 1079/17 1084/24 1085/1 1086/7 1087/8 1088/5 1088/14 1089/10 1089/25 1090/1
**new [8]** 1012/4 1030/9 1052/20 1053/13 1053/25 1059/13 1063/7 1067/22
**next [12]** 983/23 984/5 986/15 999/2 1025/9 1026/25 1027/9 1055/15 1056/8 1059/21 1060/7 1063/12
**nice [2]** 986/11 1014/16
**nickname [8]** 1072/20 1072/21 1072/23 1072/24 1073/1 1073/5 1073/6 1073/9
**night [1]** 1009/6
**nine [3]** 1010/5 1010/11 1056/20
**nine o'clock [2]** 1010/5 1010/11
**Ninth [24]** 985/7 985/8 985/11 987/3 987/22 988/5 988/7 988/9 988/14 988/19 990/4 990/22 991/2 991/4 991/9 991/13 994/10 994/12 995/3 995/11 995/22 1000/5 1002/2 1014/5
**Ninth Circuit [23]** 985/7 985/8 985/11 987/3 987/22 988/5 988/7 988/9 988/14 988/19 990/4 990/22 991/2 991/4 991/9 991/13 994/10 994/12 995/3 995/22 1000/5 1002/2 1014/5
**no [125]** 984/4 985/3 985/13 989/15 989/16 991/10 993/4 993/5 993/7 993/9 993/23 995/14 995/15 996/1 998/15 998/18 1000/12 1000/17 1001/17 1001/22 1002/18 1003/1 1003/15 1004/3 1004/25 1005/9 1007/11 1007/11 1008/13 1011/13 1014/10 1016/8 1016/9 1016/9 1016/9 1016/10 1016/10 1016/10 1017/5 1019/14 1019/25 1020/11 1020/13 1026/12 1028/12 1028/13 1030/3 1030/4 1030/8 1030/8 1031/12

## N

**no... [73]** 1031/20 1031/21 1032/4 1032/5 1032/13 1032/15 1032/23 1033/5 1033/6 1033/12 1033/13 1033/21 1033/22 1034/5 1034/15 1034/16 1034/24 1034/25 1035/4 1040/20 1044/12 1046/21 1046/25 1047/3 1050/2 1050/3 1050/4 1050/24 1053/18 1055/12 1057/16 1058/16 1058/18 1061/3 1061/4 1061/14 1062/1 1062/9 1063/19 1064/6 1064/15 1065/3 1067/4 1067/8 1067/16 1071/13 1071/17 1071/20 1071/24 1071/25 1075/2 1078/6 1078/13 1078/15 1081/25 1084/23 1085/3 1086/8 1086/9 1087/3 1088/5 1089/13 1089/14 1091/2 1092/24 1094/9 1095/25 1107/20 1109/8 1109/25 1111/18 1111/18 1112/10

**no one [6]** 1026/12 1046/21 1071/13 1071/17 1071/20 1071/25

**No. [22]** 989/22 1016/16 1029/11 1029/12 1054/12 1054/19 1080/7 1080/7 1081/17 1092/21 1092/22 1092/23 1093/13 1093/18 1094/16 1094/18 1096/18 1096/22 1096/25 1109/25 1109/25 1110/19

**No. 1 [4]** 1081/17 1092/21 1094/16 1096/18

**No. 16 [1]** 1109/25

**No. 17 [1]** 1109/25

**No. 19 [1]** 1110/19

**No. 2 [5]** 1029/12 1092/22 1093/13 1094/18 1096/22

**No. 3 [6]** 989/22 1029/11 1054/12 1092/23 1093/18 1096/25

**No. 54 [1]** 1080/7

**No. 62 [1]** 1080/7

**nobody [1]** 1080/23

**non [5]** 997/13 1000/10 1035/5 1106/12 1106/15

**non-economic [5]** 997/13 1000/10 1035/5 1106/12 1106/15

**none [7]** 995/25 1035/3 1055/1 1066/13 1073/1 1073/15 1080/24

**Noneconomic [1]** 1105/22

**nonessential [2]** 1058/10 1058/12

**noon [2]** 1083/20 1091/16

**normal [1]** 1106/4

**North [1]** 1021/21

**Nos. [2]** 997/24 1111/25

**Nos. 14 [1]** 997/24

**Nos. 54 [1]** 1111/25

**not [282]**

**note [3]** 1029/2 1054/4 1107/19

**notebook [5]** 1013/12 1013/13 1014/17 1014/18 1014/19

**notebooks [4]** 1011/15 1011/16 1013/11 1109/16

**noted [1]** 1005/19

**notes [11]** 1039/8 1039/20 1039/22 1041/16 1041/17 1041/18 1041/21 1043/15 1043/21 1043/23 1108/14

**nothing [18]** 985/12 994/25 1028/9 1029/4 1036/16 1036/18 1036/19 1037/12 1038/12 1053/7 1053/8 1055/4 1058/13 1064/22 1064/23 1067/3 1076/6 1079/22 1079/23

**notice [2]** 994/22 1030/8

**notified [2]** 1023/6 1028/23

**notion [1]** 991/23

**November [3]** 1064/10 1065/23 1066/18

**now [57]** 984/25 985/25 986/1 990/1 995/17 998/10 1008/3 1008/7 1008/12 1015/24 1018/22 1022/21 1023/2 1026/14 1026/25 1027/18 1028/3 1028/10 1031/8 1033/6 1035/4 1036/9 1037/19 1038/14 1040/7 1040/12 1040/23 1041/15 1043/7 1049/23 1050/20 1051/10 1057/11 1057/19 1058/5 1058/24 1060/13 1060/24 1065/5 1065/12 1066/1 1068/23 1074/6 1080/1 1080/12 1080/17 1081/4 1083/18 1083/21 1084/10 1084/12 1085/3 1087/7 1091/17 1091/21 1105/12 1108/16

**nowhere [1]** 1070/17

**number [19]** 985/11 1004/15 1008/16 1056/15 1057/2 1057/4 1057/7 1061/22 1065/10 1067/4 1067/20 1073/23 1074/2 1074/3 1079/15 1080/14 1080/15 1089/6 1105/8

**numbers [24]** 1008/5 1039/7 1042/6 1060/20 1060/22 1060/25 1061/1 1061/20 1061/21 1061/23 1062/25 1065/25 1081/13 1089/4 1089/5 1089/6 1089/7 1089/24 1111/15 1111/16 1111/19 1111/19 1111/25 1112/18

**NW [1]** 981/4

## O

**o'clock [6]** 983/5 1010/5 1010/11 1084/4 1084/11 1085/10

**oath [4]** 1069/6 1069/9 1071/23 1092/8

**object [10]** 987/21 992/16 994/4 999/14 1014/8 1084/13 1085/2 1085/5 1090/22 1093/14

**objected [2]** 1088/9 1110/14

**objection [34]** 985/4 985/12 985/13 989/14 989/19 992/14 993/1 993/4 993/5 993/7 993/8 993/9 995/13 995/14 995/24 997/24 998/14 1001/5 1002/22 1005/13 1007/19 1007/22 1013/16 1013/17 1084/21 1089/14 1093/16 1109/22 1109/25 1110/1 1110/8 1110/12 1110/18 1111/6

**objectionable [1]** 1007/8

**objections [17]** 983/13 985/2 985/3 986/17 989/10 997/18 997/22 1000/14 1001/12 1002/13 1005/14 1009/4 1010/2 1022/22 1085/7 1085/8 1093/13

**objects [2]** 993/10 996/14

**obligated [1]** 1071/5

**obligations [2]** 1028/5 1028/7

**observation [3]** 1080/23 1081/8 1081/12

**observed [1]** 1077/22

**observing [2]** 1037/22 1047/12

**obtained [2]** 1034/12 1104/23

**obviously [3]** 1007/13 1010/22 1046/11

**occupation [1]** 1106/5

**occurred [12]** 984/7 984/14 992/20 1020/19 1038/3 1042/13 1045/8 1051/23 1054/7 1058/14 1097/6 1100/16

**October [2]** 1064/10 1065/22

**off [33]** 990/18 994/8 1001/20 1017/9 1017/11 1017/13 1017/14 1021/7 1029/19 1031/17 1042/14 1042/22 1049/5 1049/7 1049/25 1050/24 1062/17 1062/18 1062/19 1066/8 1070/7 1070/13 1070/18 1070/22 1071/18 1071/23 1075/19 1076/18 1076/23 1077/17 1096/20 1097/12

**off-label [26]** 1001/20 1017/9 1017/11 1017/13 1017/14 1021/7 1029/19 1031/17 1042/14 1042/22 1049/5 1049/7 1049/25 1050/24 1070/7 1070/13 1070/18 1070/22 1071/15 1071/18 1071/23 1075/19 1076/18 1077/17 1096/20 1097/12

**offered [5]** 994/22 1009/14 1012/19 1067/15 1087/24

**officer [3]** 1063/8 1063/9 1063/9

**officers [2]** 1096/8 1096/10

**Official [1]** 1114/10

**OFLA [16]** 994/2 994/2 994/5 1002/23 1101/16 1101/17 1101/23 1101/24 1102/2 1102/5 1102/9 1102/12 1102/15 1102/16 1111/8 1110/23

**Oh [1]** 1030/2

**okay [26]** 985/21 985/23 988/3 989/8 989/21 989/23 992/10 999/9 999/16 1001/2 1001/5 1002/11 1002/15 1002/20 1002/24 1004/3 1011/18 1013/15 1050/7 1050/10 1084/12 1085/10 1088/13 1111/20 1112/21 1113/8

**old [14]** 1031/5 1054/24 1055/9 1072/2 1072/8 1072/12 1077/4 1083/5 1083/6 1083/7 1083/8 1083/12 1083/15 1083/16

**old pharma [1]** 1072/12

**older [4]** 1055/6 1055/7 1099/11 1099/17

**oldest [1]** 1027/17

**once [6]** 992/22 1010/15 1011/25 1012/7 1035/15 1108/22

**one [87]** 985/1 985/20 987/7 987/13 987/19 990/16 991/23 993/6 996/21 998/5 1000/5 1002/16 1003/9 1003/21 1006/3 1010/22 1014/7 1015/23 1017/12 1018/9 1018/9 1018/25 1024/7 1024/25 1026/12 1026/23 1027/3 1029/3 1029/4 1029/13 1030/10 1030/17 1035/24 1036/6 1036/22 1039/25 1039/25 1040/9 1043/2 1044/9 1045/1 1046/1 1046/21 1048/15 1051/19 1051/21 1051/21 1053/25 1054/1 1055/22 1058/24 1062/16 1063/4 1066/10 1068/24 1069/23 1071/13 1071/17 1071/20 1071/25 1072/9 1072/9 1072/17 1075/14 1078/6 1080/9 1084/4 1084/11 1084/15 1084/19 1084/20 1085/10 1087/15 1087/19 1089/6 1094/7 1101/2 1107/1 1107/19 1109/9 1109/11 1109/12 1109/16 1110/9 1111/1 1111/2 1113/4

**one o'clock [1]** 1084/11

**one-on-one [1]** 1039/25

**one-time [1]** 1035/24

**ones [5]** 1039/11 1044/15 1045/13 1063/9 1109/7

**only [42]** 995/20 999/19 1000/7 1005/10 1012/10 1015/9 1015/12 1016/16 1021/6 1028/13 1028/15 1030/6 1030/7 1042/1 1051/16 1058/25 1063/22 1064/4 1067/25 1068/12 1068/20 1079/14 1081/2 1081/23 1082/18 1083/2 1084/15 1084/20 1087/19 1090/24 1093/2 1093/21 1093/23 1095/9

**O**

**only... [8]** 1095/11 1095/15 1096/7 1105/1 1105/22 1106/1 1107/7 1107/11
**oOo [1]** 1114/2
**open [11]** 983/3 1012/16 1014/14 1037/9 1078/23 1083/7 1084/9 1086/1 1091/14 1107/23 1109/19
**opening [2]** 1061/13 1093/8
**openings [1]** 1061/7
**operate [1]** 986/12
**operations [2]** 1008/21 1008/23
**opinion [9]** 984/23 986/6 1007/4 1007/5 1092/11 1094/21 1094/24 1095/3 1107/13
**opinions [8]** 1004/19 1005/17 1007/7 1069/4 1069/11 1092/5 1094/22 1094/23
**opportunity [11]** 985/6 1020/12 1020/13 1030/14 1036/18 1085/3 1087/5 1088/5 1089/20 1091/8 1112/13
**oppose [1]** 1096/14
**opposed [2]** 999/20 1006/15
**opposing [1]** 1101/23
**opposite [2]** 1016/22 1057/23
**oral [2]** 983/8 983/17
**orally [2]** 1056/6 1058/22
**order [3]** 984/8 1054/5 1095/7
**ordinary [2]** 1105/19 1105/19
**OREGON [35]** 980/2 980/6 984/1 984/8 984/10 984/11 984/13 984/13 984/14 984/15 984/17 984/21 984/23 995/9 996/7 996/16 996/18 996/22 1022/25 1023/24 1026/14 1026/22 1027/1 1027/10 1031/21 1033/7 1053/19 1054/5 1056/9 1056/9 1060/2 1063/24 1097/19 1101/10 1101/14
**Oregon's [4]** 984/8 1064/2 1097/17 1105/23
**organization [1]** 1052/2
**original [2]** 1108/16 1114/6
**Oswald [30]** 981/3 982/3 982/5 1008/17 1011/6 1014/22 1026/16 1037/11 1040/23 1044/11 1044/19 1046/4 1048/14 1049/23 1051/10 1052/3 1052/23 1053/4 1067/24 1084/25 1086/5 1086/7 1086/12 1086/22 1088/8 1088/11 1089/18 1090/17 1090/19 1095/17
**Oswald's [3]** 1058/24 1084/14 1088/6
**other [59]** 984/10 985/6 988/22 996/7 996/22 1001/12 1011/13 1021/17 1026/24 1027/8 1034/12 1038/9 1038/11 1040/8 1040/8 1040/9 1046/1 1046/23 1049/14 1049/18 1050/8 1050/11 1055/8 1056/3 1057/14 1057/20 1058/1 1058/16 1058/18 1058/19 1062/18 1062/19 1062/24 1064/5 1066/1 1068/23 1071/24 1073/1 1077/3 1080/11 1084/1 1093/9 1093/24 1094/25 1095/3 1095/8 1095/13 1095/16 1096/4 1097/14 1098/21 1099/21 1100/23 1103/1 1103/18 1104/23 1107/4 1107/9 1107/14
**others [4]** 996/13 1018/9 1035/12 1069/25
**otherwise [3]** 990/17 1074/18 1108/4
**our [21]** 983/7 996/25 1002/21 1002/22 1008/15 1009/4 1009/5 1010/2 1015/13 1016/6 1016/6 1016/17 1017/4 1027/20 1027/24 1035/18 1036/5 1074/23 1083/20 1091/16 1111/7
**out [40]** 988/23 992/8 994/1 998/12 1004/20 1010/21 1011/7 1012/3 1015/2 1021/13 1021/15 1022/23 1029/6 1029/7 1029/20 1034/21 1039/11 1039/22 1039/22 1041/25 1045/23 1048/6 1050/5 1056/18 1057/3 1057/18 1057/21 1058/2 1061/20 1061/21 1062/11 1065/6 1071/7 1075/11 1075/12 1080/4 1089/21 1095/14 1107/24 1109/2
**out-of-court [1]** 1004/20
**outside [4]** 984/14 987/22 988/1 1024/19
**over [10]** 1008/18 1018/15 1036/10 1080/23 1080/25 1081/2 1081/6 1081/18 1107/2 1113/1
**overflow [1]** 1026/17
**overruled [1]** 1005/14
**own [13]** 1007/16 1020/13 1022/19 1053/10 1070/4 1073/2 1073/23 1074/1 1079/4 1082/22 1088/1 1106/13 1107/11

**P**

**p.m [2]** 1083/22 1109/18
**PA [1]** 981/10
**pack [1]** 1076/11
**package [7]** 1019/17 1019/17 1025/11 1025/21 1067/15 1075/8

1075/8
**packet [1]** 1095/20
**page [46]** 981/7 985/1 985/14 985/15 985/16 985/17 985/18 986/6 986/7 986/9 986/13 986/14 986/15 989/13 989/17 989/18 989/20 991/15 992/11 992/12 993/3 993/6 993/8 995/9 995/10 995/12 995/17 995/18 997/13 997/14 997/15 997/17 1012/1 1043/14 1043/21 1050/19 1052/3 1052/4 1052/14 1052/16 1052/17 1052/20 1095/21 1111/22 1111/2 1112/1
**pages [1]** 995/24
**paid [4]** 1047/25 1049/21 1049/21 1061/10
**pain [1]** 1106/1
**Palo [1]** 981/7
**paragraph [2]** 988/23 1000/21
**part [9]** 1003/17 1008/20 1030/14 1052/7 1057/6 1058/2 1067/2 1070/4 1072/10
**part-time [1]** 1067/2
**participated [2]** 1096/18 1100/5
**particular [2]** 990/5 996/24
**parties [13]** 988/25 1013/20 1069/17 1094/12 1094/14 1096/2 1097/7 1097/17 1099/16 1100/18 1103/12 1111/2 1111/8
**partner [1]** 1051/11
**partnerships [1]** 1096/1
**parts [1]** 1069/7
**party [6]** 1046/13 1069/19 1092/13 1092/18 1096/4 1103/24
**party's [1]** 1046/14
**pass [3]** 985/25 986/1 1022/23
**passionate [1]** 1074/14
**past [1]** 1104/11
**Pat [1]** 986/11
**pathway [1]** 1075/3
**patients [14]** 1016/10 1017/7 1018/15 1019/20 1022/20 1038/9 1074/15 1074/17 1074/19 1074/21 1074/22 1077/11 1082/21 1082/25
**pattern [2]** 994/10 994/12
**pause [4]** 1024/16 1050/17 1050/17 1050/23
**pay [17]** 995/18 995/20 996/3 996/18 997/5 1009/3 1030/18 1031/4 1031/4 1034/2 1034/6 1034/13 1061/2 1061/20 1104/24 1105/10 1105/13
**paying [1]** 1078/11
**peer [1]** 1027/15
**peers [4]** 1027/8 1076/14 1080/4 1080/13
**Pelcha [1]** 991/6
**pending [1]** 1113/9
**people [16]** 1016/1 1016/20 1018/18 1045/24 1046/19 1046/22 1053/6 1057/20 1059/18 1062/7 1067/10 1071/17 1074/5 1076/14 1080/25 1081/2
**per [1]** 1004/20
**per se [1]** 1004/20
**percent [26]** 1019/15 1027/7 1029/12 1029/12 1037/19 1039/3 1040/21 1042/2 1042/4 1046/19 1046/22 1047/1 1048/8 1048/11 1061/1 1061/20 1080/22 1080/22 1080/24 1081/1 1081/3 1081/6 1081/9 1081/11 1081/18 1081/19
**percentage [4]** 1080/1 1080/16 1081/19 1089/2
**Perfect [1]** 1110/16
**perfectly [2]** 1017/14 1091/2
**performance [23]** 1019/14 1024/24 1027/16 1029/10 1045/20 1045/23 1045/25 1045/25 1046/3 1046/9 1048/12 1051/24 1058/12 1064/14 1065/24 1074/9 1075/16 1076/2 1076/9 1076/21 1079/22 1081/18 1081/22
**performed [2]** 984/10 1096/10
**performers [1]** 1061/17
**performing [3]** 1047/10 1047/11 1066/15
**perhaps [2]** 983/15 1062/10
**period [8]** 994/22 1001/21 1002/6 1003/3 1010/15 1034/10 1101/19 1104/21
**permit [2]** 1019/13 1038/20
**person [13]** 986/11 1046/10 1047/15 1048/12 1050/7 1057/11 1058/25 1076/16 1079/18 1080/11 1081/12 1096/7 1105/18
**personal [4]** 984/3 1069/3 1069/10 1092/5
**personally [1]** 1094/6
**perspective [1]** 998/7
**persuade [1]** 1107/13
**persuaded [1]** 1092/15

# P

persuasive [1]  984/17
pharma [10]  1021/22 1030/24 1031/2 1034/20 1034/21 1054/24 1072/2 1072/8 1072/12 1072/14
PHARMACEUTICALS [1]  980/6
Philadelphia [1]  981/10
phone [1]  1112/18
photo [1]  1072/21
phrase [1]  1003/10
pick [1]  1056/18
picked [1]  1039/11
picks [2]  1020/10 1024/18
picture [1]  1003/6
PIP [2]  1045/18 1046/3
pitching [1]  1058/2
place [1]  1015/17
placed [2]  1013/10 1057/10
plaintiff [166]
plaintiff's [59]  983/17 983/21 983/24 983/25 984/2 984/16 987/6 987/12 987/18 987/23 991/4 998/4 998/7 999/15 1000/22 1002/16 1003/9 1003/21 1007/20 1008/15 1009/15 1012/22 1013/7 1032/2 1033/3 1033/10 1033/15 1035/2 1053/10 1053/21 1056/11 1059/23 1068/10 1080/7 1080/7 1090/18 1090/21 1095/19 1096/24 1098/8 1098/11 1098/14 1098/16 1100/10 1101/9 1102/4 1102/5 1102/8 1102/20 1102/21 1103/10 1103/13 1103/25 1104/1 1104/12 1105/5 1106/4 1106/10 1112/13
plaintiffs [2]  995/25 1000/9
plan [3]  1027/16 1046/1 1083/3
planning [1]  1061/17
playbook [4]  1019/7 1019/10 1029/7 1029/7
played [1]  1065/15
please [15]  986/3 997/10 1000/11 1013/2 1014/20 1014/24 1041/13 1083/21 1083/25 1086/3 1091/13 1091/15 1092/9 1095/21 1108/13
plenty [1]  1087/7
point [10]  984/23 989/7 990/21 995/22 997/1 1010/16 1010/18 1012/6 1029/10 1029/16
points [4]  1015/22 1041/25 1056/15 1081/16
policies [2]  1016/14 1018/16
policy [1]  1079/25
Pomponi [15]  1017/4 1017/8 1018/5 1018/19 1020/24 1021/2 1021/5 1021/12 1021/13 1021/16 1021/18 1025/5 1026/1 1046/5 1082/10
poor [2]  1023/11 1029/25
popping [1]  1035/16
popular [1]  1038/7
portion [4]  995/17 1004/10 1006/9 1111/6
portions [1]  1086/19
Portland [3]  980/6 981/13 981/22
Portland's [1]  1015/1
position [8]  1005/9 1009/15 1009/16 1030/9 1061/14 1078/2 1078/3 1101/20
possible [3]  1045/4 1061/7 1074/22
potential [3]  1016/18 1062/8 1067/9
potentially [4]  991/17 1002/2 1025/14 1110/11
power [1]  1016/7
powerful [2]  1015/16 1015/25
practice [1]  1101/24
practices [3]  1065/9 1065/10 1065/14
precedent [1]  1002/3
precisely [4]  997/1 1088/21 1089/4 1089/8
predates [1]  993/22
prefer [1]  999/12
prefers [1]  1011/8
prejudice [3]  999/4 1012/25 1110/11
prejudices [3]  1069/4 1069/11 1092/6
prepare [1]  1025/8
prepared [6]  1013/5 1014/18 1025/18 1043/18 1083/21 1108/7
preparing [1]  1021/18
preponderance [28]  1001/4 1001/18 1031/14 1031/23 1032/7 1032/17 1033/2 1033/9 1033/24 1034/7 1034/18 1035/8

1053/20 1054/13 1055/18 1056/10 1063/15 1068/8 1092/14 1096/16 1097/24 1099/8 1100/4 1101/7 1102/13 1103/8 1104/2 1106/20
prescribed [2]  1016/19 1017/6
prescriptions [1]  1038/10
present [17]  983/3 997/5 998/24 1012/16 1014/14 1037/9 1056/13 1059/15 1084/9 1086/1 1091/14 1104/19 1105/11 1105/11 1105/17 1106/7 1109/19
presentation [1]  1079/1
presented [12]  1019/19 1055/3 1055/12 1058/16 1058/18 1058/20 1062/1 1064/18 1065/5 1067/8 1067/13 1092/18
preside [1]  1107/2
president [1]  1021/21
presiding [4]  1107/1 1107/2 1108/8 1108/20
pressure [2]  1019/25 1023/22
presumption [1]  984/21
presumptions [1]  984/19
pretrial [1]  1111/6
pretty [1]  1066/8
prevail [7]  1051/6 1051/9 1054/3 1096/15 1097/23 1099/7 1100/2
prevent [1]  1017/23
previous [1]  1029/16
previously [6]  997/23 1009/4 1052/10 1052/12 1052/22 1110/14
Price [2]  993/12 1110/21
PRID [1]  1073/23
primarily [1]  991/18
primary [6]  990/11 990/15 991/25 992/1 992/24 998/2
primary-cause [2]  990/11 998/2
prior [1]  1108/12
privilege [2]  1015/9 1015/13
privileged [1]  1113/3
probability [2]  1061/1 1106/2
probably [5]  986/11 1048/22 1092/16 1105/9 1106/7
problem [7]  988/11 1002/4 1012/20 1018/23 1049/15 1089/18 1091/2
problematic [1]  1006/19
Procedure [1]  983/18
proceeding [1]  1052/1
proceedings [2]  1079/23 1114/5
produced [6]  1088/2 1088/16 1088/17 1088/17 1089/22 1089/23
product [1]  1053/6
products [5]  1016/16 1017/24 1038/4 1038/5 1038/9
profit [2]  1008/14 1024/20
profits [4]  1008/5 1008/17 1018/15 1104/7
prohibited [3]  1033/4 1068/11 1101/9
projector [1]  986/11
promoted [4]  1030/9 1061/2 1061/5 1061/19
promoting [1]  1036/20
promotion [7]  1030/7 1061/10 1061/18 1071/15 1071/18 1076/18 1077/17
prompted [1]  1072/21
proof [10]  985/14 1049/12 1055/14 1094/5 1094/7 1096/12 1097/18 1098/25 1099/24 1102/10
proper [3]  988/19 1019/24 1090/24
properly [2]  1008/25 1010/1
proposal [1]  987/15
propose [2]  987/5 1002/18
proposed [5]  983/12 987/5 1000/1 1008/8 1013/5
prospect [1]  1105/5
prospective [2]  1006/7 1073/18
protect [10]  1017/21 1018/1 1018/3 1018/12 1018/17 1020/3 1036/23 1036/23 1036/24 1036/24
protected [20]  987/11 987/17 987/18 992/19 998/4 1023/4 1023/5 1023/7 1024/2 1024/12 1096/19 1097/2 1097/4 1097/8 1100/6 1100/12 1100/15 1100/19 1101/22 1102/14
protecting [2]  1082/6 1082/8
protection [8]  1024/23 1023/1 1023/24 1026/14 1026/22 1031/22 1097/17 1105/24
Protection/retaliation [1]  1031/22
protects [3]  1015/16 1096/14 1097/20

## P

**prove [36]** 1001/18 1031/14 1031/23 1032/7 1032/17 1033/1 1033/9 1033/15 1033/24 1034/7 1034/17 1035/7 1048/20 1049/2 1049/3 1053/20 1054/13 1055/17 1055/24 1056/1 1056/4 1056/10 1059/23 1060/5 1063/15 1096/16 1097/15 1097/23 1098/22 1099/22 1100/3 1100/24 1102/12 1103/2 1103/7 1103/18

**proved [13]** 1001/3 1026/8 1049/1 1068/16 1092/25 1094/14 1097/12 1098/19 1099/1 1100/21 1102/25 1103/16 1104/15

**provide [2]** 987/22 1037/23

**provided [3]** 991/9 1006/4 1102/6

**provider [2]** 1038/7 1038/8

**provides [1]** 989/3

**proving [6]** 1068/7 1092/13 1099/8 1101/6 1104/2 1106/20

**provision [4]** 990/24 996/24 996/25 1003/23

**prudence [1]** 1105/19

**PSSs [1]** 1026/10

**public [3]** 1008/1 1009/10 1009/23

**publicly [1]** 1009/25

**punish [1]** 1009/2

**punitive [5]** 997/1 1008/9 1008/10 1008/12 1009/14

**purpose [4]** 1008/25 1093/22 1093/23 1093/24

**purposes [4]** 997/4 1109/23 1110/6 1110/15

**pursuant [1]** 983/18

**push [1]** 1052/5

**put [19]** 998/21 1002/6 1003/3 1018/14 1024/5 1027/15 1028/25 1038/11 1044/20 1050/17 1050/17 1050/23 1066/9 1074/1 1074/3 1084/6 1084/21 1084/25 1111/4

**putting [1]** 1082/7

## Q

**Q1 [1]** 1080/23

**qualified [3]** 1005/16 1006/11 1007/4

**quarter [16]** 1080/14 1080/18 1080/18 1080/19 1080/19 1080/23 1080/25 1081/2 1081/4 1081/5 1081/17 1088/22 1088/22 1088/23 1088/23 1088/24

**quarters [2]** 1042/1 1088/22

**question [48]** 998/18 999/2 1000/1 1000/17 1000/25 1001/17 1002/10 1002/18 1003/1 1003/15 1031/12 1031/20 1031/21 1032/4 1032/5 1032/13 1032/15 1032/23 1033/5 1033/6 1033/12 1033/21 1032/22 1034/5 1034/15 1034/16 1034/24 1034/25 1035/1 1035/4 1048/16 1049/6 1049/9 1053/18 1054/19 1055/15 1059/21 1059/23 1063/12 1063/22 1067/25 1068/5 1080/9 1093/15 1107/24 1108/2 1112/19

**Question No [26]** 998/18 1000/17 1001/17 1002/18 1003/1 1003/15 1031/12 1031/20 1031/21 1032/4 1032/5 1032/13 1032/15 1032/23 1033/5 1033/6 1033/12 1033/21 1033/22 1034/5 1034/15 1034/16 1034/25 1035/4 1053/18

**Question No. 1 [1]** 1054/19

**questioned [1]** 1070/4

**questions [14]** 999/18 1000/2 1005/24 1018/10 1028/15 1059/4 1059/5 1059/7 1060/7 1060/10 1060/12 1093/13 1108/18 1108/18

**quick [4]** 1013/3 1024/11 1024/13 1037/3

**quickly [4]** 1007/17 1012/17 1067/18 1112/20

**quit [2]** 1075/13 1075/17

**quite [1]** 1057/22

**quoted [1]** 1051/16

## R

**raise [6]** 993/1 1020/19 1051/23 1052/10 1061/20 1073/8

**raised [5]** 1001/14 1002/1 1052/10 1053/17 1087/8

**raises [2]** 1043/5 1087/8

**ratcheting [1]** 1023/21

**ratchets [1]** 1019/25

**rate [2]** 1105/13 1105/16

**rather [4]** 1025/25 1056/5 1058/12 1110/10

**rationale [1]** 990/9

**RDR [2]** 981/21 1114/10

**reach [3]** 1107/4 1107/10 1107/16

**reached [3]** 1108/4 1108/7 1108/22

**reaches [1]** 1021/13

**reaching [2]** 1006/9 1093/2

**reaction [2]** 1024/11 1024/13

**read [10]** 985/19 986/4 1003/9 1017/11 1040/17 1041/10 1092/9 1094/13 1095/25 1109/6

**ready [1]** 1108/10

**real [1]** 1008/23

**reality [1]** 1080/16

**realize [1]** 1045/11

**really [10]** 991/12 1000/16 1004/3 1019/20 1021/24 1027/3 1042/12 1069/12 1081/9 1081/25

**reason [23]** 983/20 983/21 990/8 992/22 994/11 995/3 1001/22 1002/25 1003/17 1005/2 1038/19 1042/15 1042/19 1045/9 1046/16 1047/7 1049/11 1061/23 1062/2 1062/25 1081/16 1091/7 1099/7

**reasonable [10]** 983/19 1034/19 1060/22 1067/19 1104/11 1105/13 1106/2 1106/13 1106/17 1106/21

**reasonably [2]** 1104/3 1105/17

**reasons [17]** 1001/13 1006/1 1009/5 1009/20 1022/8 1048/25 1051/15 1051/15 1051/19 1052/25 1060/4 1060/24 1073/14 1094/22 1095/3 1110/14 1110/19

**rebuttal [11]** 982/5 1010/15 1086/5 1087/5 1087/7 1087/15 1088/8 1088/11 1090/17 1090/20 1095/18

**recall [7]** 1060/13 1067/21 1069/6 1092/7

**receipt [1]** 1073/24

**receive [1]** 1091/24

**received [13]** 998/11 1014/20 1039/14 1041/10 1074/2 1074/4 1076/10 1093/3 1093/21 1094/2 1095/5 1095/5 1112/3

**receiving [3]** 1040/5 1049/21 1078/13

**recent [2]** 984/18 1000/5

**recently [1]** 1109/7

**recess [11]** 1010/23 1012/12 1012/15 1037/3 1037/8 1078/22 1083/21 1085/12 1091/16 1113/8 1113/9

**reckless [7]** 1016/24 1016/25 1028/6 1033/3 1068/10 1068/14 1101/8

**recommended [2]** 1022/5 1075/2

**record [22]** 983/14 989/24 992/15 993/1 997/12 997/19 1000/4 1002/14 1002/21 1084/7 1084/21 1085/7 1085/9 1109/21 1109/23 1110/6 1110/15 1111/2 1111/4 1111/10 1112/2 1114/5

**recorded [1]** 1022/6

**records [2]** 1005/20 1095/8

**recover [1]** 1101/3

**recoverable [1]** 1063/25

**Red [1]** 1080/21

**redact [1]** 1111/8

**redacted [2]** 1111/10 1112/3

**reduce [1]** 1106/18

**reduced [2]** 1035/2 1086/18

**reduction [1]** 1062/15

**refer [2]** 1008/22 1039/8

**reference [5]** 990/2 1013/13 1013/23 1014/9 1086/15

**references [2]** 1005/10 1008/4

**referred [7]** 1072/2 1072/13 1072/17 1072/20 1084/14 1101/13 1101/15

**reflect [1]** 991/1

**reflected [1]** 1072/16

**reflects [1]** 1041/14

**refuse [1]** 1059/12

**refused [2]** 1038/17 1068/21

**refuses [1]** 1078/16

**refusing [3]** 1040/5 1052/18 1053/15

**refuting [1]** 1044/2

**regarding [5]** 983/25 1005/3 1039/23 1042/15 1092/11

**regardless [1]** 1092/17

**region [7]** 1008/20 1038/8 1062/17 1080/13 1080/21 1081/11 1088/21

**regional [1]** 1070/15

**regularly [1]** 1052/6

**regulate [1]** 1050/12

**regulation [6]** 993/23 994/23 1032/1 1097/22 1098/2 1098/10

**regulations [2]** 994/20 994/21

**rehab [2]** 1004/11 1005/17

**reinstated [1]** 1101/20

**reject [2]** 1060/16 1095/1

# R

**related [1]** 1072/9
**relates [3]** 996/10 1060/7 1063/13
**relating [1]** 1013/18
**relations [4]** 1020/16 1021/19 1026/4 1079/24
**relationship [3]** 1053/15 1059/17 1059/19
**relayed [1]** 1005/4
**relaying [1]** 1004/16
**release [6]** 1019/17 1019/21 1019/22 1022/10 1025/11 1082/18
**relevance [1]** 1012/23
**relevant [2]** 1013/24 1086/19
**reliance [2]** 987/23 991/5
**relied [4]** 1006/12 1006/24 1060/20 1061/22
**relief [1]** 984/18
**rely [13]** 991/8 1004/12 1004/18 1004/22 1005/11 1006/15 1006/16 1060/22 1060/24 1061/24 1062/25 1108/14 1109/3
**relying [5]** 989/4 993/14 995/6 995/8 1012/21
**remain [2]** 1002/10 1002/11
**remaining [1]** 1105/8
**remains [1]** 1055/9
**remarkably [1]** 1020/15
**remedies [1]** 996/21
**remember [35]** 1017/11 1019/8 1021/5 1021/23 1024/17 1024/22 1025/16 1028/17 1030/22 1031/1 1031/19 1032/10 1034/20 1035/11 1036/16 1040/7 1045/19 1048/4 1049/13 1050/21 1050/21 1052/24 1053/5 1055/6 1055/8 1064/24 1065/15 1066/17 1073/22 1074/14 1075/5 1083/25 1087/12 1093/10 1108/2
**remembered [1]** 1050/22
**remind [2]** 1052/12 1087/18
**rendered [1]** 1103/24
**renew [5]** 997/22 1002/22 1009/4 1010/2 1109/22
**renewed [2]** 1007/22 1012/22
**renews [2]** 1109/24 1110/17
**rep [6]** 1047/18 1047/18 1047/19 1073/24 1074/1 1074/4
**repeat [3]** 1004/13 1004/20 1060/4
**repeated [1]** 1056/6
**repeatedly [2]** 1058/22 1078/17
**repeating [2]** 1007/7 1053/16
**replaced [2]** 1077/7 1081/13
**reply [1]** 991/11
**report [27]** 1005/20 1007/24 1017/12 1017/24 1018/1 1025/1 1025/13 1026/12 1031/25 1032/2 1041/2 1041/3 1053/22 1053/22 1054/1 1059/11 1071/5 1071/19 1073/24 1073/24 1074/2 1074/4 1082/9 1097/20 1098/8 1098/11 1098/14
**reported [2]** 1086/17 1097/25
**reporter [3]** 981/21 1078/21 1114/10
**reporting [1]** 1098/4
**reports [12]** 1008/1 1019/10 1021/25 1022/6 1028/20 1028/20 1029/8 1041/19 1041/23 1043/13 1073/20 1080/24
**representative [1]** 1071/4
**representatives [1]** 1037/15
**reps [12]** 1007/6 1037/21 1037/22 1038/1 1047/23 1050/7 1050/10 1057/11 1065/17 1074/16 1074/19 1077/15
**reputation [3]** 1000/22 1035/7 1106/10
**reputational [4]** 1000/19 1000/24 1001/1 1035/6
**request [4]** 1000/12 1013/3 1013/4 1025/25
**requested [1]** 1102/6
**require [1]** 1039/18
**required [6]** 991/14 1057/11 1065/12 1068/21 1076/23 1106/18
**requirement [6]** 1028/12 1045/12 1045/13 1045/15 1045/17 1049/15
**requirements [8]** 1038/17 1039/15 1046/8 1055/5 1056/6 1064/14 1065/1 1078/12
**requires [3]** 1018/25 1048/20 1106/12
**requiring [1]** 1037/19
**research [1]** 1061/3
**resigned [2]** 1034/11 1104/23
**resigned/retired [1]** 1104/23
**resolved [1]** 1053/17
**resources [1]** 1008/11

**respiratory [1]** 1080/13
**respond [5]** 1007/6 1020/12 1020/13 1085/4 1087/5
**responding [1]** 1026/1
**response [8]** 983/25 992/5 1005/7 1009/9 1009/23 1034/5 1034/14 1054/18
**responses [1]** 1006/7
**responsibility [9]** 1016/7 1016/8 1017/5 1017/22 1020/3 1022/17 1030/3 1030/4 1030/12
**responsible [3]** 1017/3 1021/22 1096/9
**rest [3]** 1019/16 1035/15 1039/23
**Restatement [1]** 995/21
**restrain [1]** 1101/21
**result [11]** 1004/6 1006/10 1027/13 1033/25 1034/9 1035/8 1048/7 1058/17 1063/16 1076/24 1106/8
**resulted [1]** 1062/16
**results [6]** 1020/18 1026/6 1045/22 1051/22 1052/21 1059/11
**resumed [1]** 1078/23
**retake [1]** 1010/6
**retaliate [3]** 1029/24 1045/5 1057/9
**retaliated [13]** 1018/9 1029/22 1029/23 1045/4 1055/12 1057/13 1060/11 1068/1 1073/12 1075/21 1097/19 1099/25 1102/1
**retaliating [3]** 1017/23 1056/22 1057/20
**retaliation [30]** 990/24 992/12 993/15 993/16 993/19 993/21 1002/19 1002/23 1003/16 1018/1 1019/4 1020/4 1020/16 1024/13 1031/13 1031/22 1032/16 1033/8 1053/19 1057/22 1058/6 1063/24 1082/8 1082/16 1096/11 1099/24 1102/9 1102/11 1105/23 1110/18
**retaliation/discrimination [1]** 1033/8
**retaliatory [4]** 1022/8 1027/21 1045/9 1073/16
**retire [1]** 1105/9
**retired [3]** 1034/11 1104/23 1109/18
**retirement [2]** 1062/14 1062/22
**retrained [2]** 1022/5 1026/13
**retraining [1]** 1030/8
**return [7]** 997/17 1101/20 1105/13 1105/16 1108/6 1108/10 1108/24
**returned [7]** 1039/15 1039/24 1056/16 1056/21 1057/15 1058/7 1059/2 1073/15
**returning [1]** 1014/16
**returns [1]** 1027/5
**revenue [1]** 1104/7
**revenues [1]** 1008/4
**review [21]** 984/19 1005/19 1023/11 1029/1 1041/13 1042/10 1042/25 1043/2 1043/5 1054/7 1054/9 1058/10 1070/11 1070/16 1070/17 1071/8 1076/10 1079/16 1079/22 1091/8 1112/13
**reviewed [4]** 1005/20 1028/19 1028/20 1080/9
**reviews [1]** 1079/17
**rewarded [2]** 1030/7 1036/19
**rides [1]** 1043/12
**Riechert [4]** 981/6 982/4 1011/5 1011/19
**Rieman [1]** 995/10
**right [33]** 988/25 989/6 996/9 996/12 996/20 1002/9 1010/12 1010/12 1011/21 1015/11 1015/12 1015/14 1016/2 1020/21 1023/10 1023/10 1024/15 1024/24 1026/8 1039/21 1054/6 1055/15 1060/7 1064/19 1067/14 1069/22 1070/16 1077/21 1081/23 1087/2 1087/21 1102/14 1107/15
**rights [3]** 1015/10 1101/22 1102/5
**river [1]** 1015/3
**RMR [1]** 1114/10
**road [4]** 981/7 989/5 991/20 1015/3
**Robert [1]** 981/3
**role [4]** 1020/2 1027/7 1052/8 1058/7
**roles [1]** 1058/10
**roll [2]** 986/10 1010/20
**room [10]** 981/22 986/10 986/12 1029/13 1030/16 1031/9 1048/18 1080/8 1091/25 1109/3
**routine [1]** 1019/2
**rule [33]** 983/18 984/18 984/24 997/6 1005/13 1007/1 1008/25 1014/10 1016/16 1016/19 1032/1 1037/18 1037/20 1038/3 1038/15 1040/7 1040/10 1040/13 1040/25 1042/9 1043/11 1045/11 1046/17 1046/25 1047/6 1047/9 1076/22 1080/3

## R

**rule... [5]** 1080/4 1081/9 1097/22 1098/2 1098/9
**Rule 403 [1]** 1008/25
**Rule 50 [1]** 984/18
**Rule No. 1 [1]** 1016/16
**ruled [1]** 1014/12
**rules [11]** 1005/11 1007/12 1007/14 1017/18 1017/19 1018/17 1020/13 1039/18 1039/18 1090/2 1093/15
**ruling [1]** 982/2 1093/17
**rulings [2]** 983/9 1010/4
**RUSSO [3]** 980/11 1022/23 1031/10
**Russo's [1]** 1015/16
**Ruud [3]** 1022/2 1025/15 1025/17
**Ruud Dobber [1]** 1022/2
**Ryan [1]** 981/9

## S

**safe [2]** 1018/8 1105/18
**safety [9]** 988/6 992/6 1016/9 1016/9 1016/10 1016/10 1016/11 1037/12 1037/12
**said [53]** 987/4 988/19 994/18 1005/3 1008/17 1009/13 1017/12 1017/14 1017/20 1019/2 1021/5 1028/19 1029/15 1029/16 1031/1 1036/17 1040/20 1042/19 1044/8 1044/9 1045/11 1048/9 1050/22 1051/12 1060/21 1060/25 1061/24 1065/8 1065/22 1066/4 1067/21 1070/8 1070/11 1071/14 1071/21 1072/13 1075/11 1075/12 1078/18 1079/1 1079/13 1079/14 1079/17 1079/19 1083/7 1083/9 1083/16 1086/22 1092/10 1093/7 1093/25 1108/22
**sales [18]** 1008/2 1009/16 1009/18 1009/19 1037/15 1039/19 1046/23 1050/7 1055/8 1057/6 1061/12 1063/2 1063/4 1073/24 1074/1 1074/3 1074/16 1077/24
**salespeople [1]** 1040/25
**Salt [6]** 1038/7 1046/19 1048/10 1061/9 1077/24 1078/3
**Salt Lake [2]** 1038/7 1077/24
**same [39]** 983/14 988/6 992/6 993/1 993/14 997/24 999/13 1002/25 1003/17 1013/20 1018/22 1025/4 1025/23 1025/24 1027/11 1038/3 1039/24 1040/7 1042/3 1046/20 1052/4 1052/10 1054/17 1055/7 1055/17 1055/22 1066/6 1069/18 1070/16 1071/11 1071/17 1072/15 1075/21 1075/24 1076/1 1081/15 1091/7 1096/3 1101/20
**sat [3]** 1015/2 1015/5 1015/6
**satisfy [1]** 1012/24
**Saturday [1]** 1015/2
**sauce [2]** 994/9 994/9
**save [1]** 1046/17
**saw [8]** 1026/12 1027/2 1047/24 1072/21 1072/22 1072/23 1094/6 1104/6
**say [26]** 985/6 991/11 999/7 1000/4 1000/18 1000/23 1001/17 1013/12 1016/4 1017/4 1017/13 1017/20 1018/3 1019/2 1030/2 1041/4 1059/7 1059/18 1071/14 1079/7 1079/12 1079/13 1081/15 1083/6 1091/3 1092/10
**saying [6]** 990/6 1021/5 1022/7 1071/21 1084/18 1089/19
**says [44]** 986/22 987/1 987/2 990/19 996/15 996/21 1000/11 1000/20 1017/9 1018/4 1019/5 1020/20 1021/13 1023/8 1024/1 1024/16 1024/17 1024/22 1028/18 1029/1 1031/4 1041/12 1044/17 1050/10 1050/12 1050/16 1052/20 1057/19 1057/25 1063/18 1066/19 1067/3 1068/24 1071/14 1073/25 1077/14 1077/20 1079/21 1079/22 1079/23 1080/1 1081/16 1081/24
**scale [1]** 1016/23
**scarlet [1]** 1019/15
**scheduled [1]** 1025/12
**scheme [2]** 992/8 996/17
**school [1]** 1035/21
**Schultz [1]** 995/8
**Schwabe [1]** 981/12
**scope [2]** 1096/5 1096/10
**Scott [2]** 981/3 1031/1
**screens [1]** 1017/4
**se [1]** 1004/20
**search [4]** 1004/15 1005/4 1005/20 1007/17
**seat [1]** 1014/20

**seated [2]** 1091/15 1109/20
**seats [1]** 1013/11
**second [22]** 998/17 1007/19 1023/15 1026/2 1028/1 1030/25 1038/2 1046/16 1049/2 1051/17 1051/21 1060/19 1064/18 1081/8 1098/3 1098/18 1099/11 1100/8 1102/17 1103/10 1105/6 1106/23
**Secondly [1]** 1084/23
**section [4]** 992/17 993/16 993/18 1035/10
**see [20]** 999/23 1000/14 1004/8 1014/17 1017/20 1018/3 1018/23 1018/24 1021/1 1022/22 1024/1 1028/3 1029/15 1030/16 1047/16 1047/18 1050/1 1051/15 1079/16 1084/4
**seeks [2]** 1096/12 1102/10
**seem [6]** 1075/4 1075/5 1076/19 1077/1 1077/5 1077/14
**seen [13]** 1019/6 1080/6 1082/16 1084/24 1088/5 1088/12 1088/14 1089/10 1089/20 1089/25 1090/1 1090/1 1091/7
**sees [1]** 1019/21
**selected [1]** 1014/19
**SelectHealth [1]** 1038/8
**self [1]** 1066/5
**sell [4]** 1070/7 1070/13 1070/22 1074/16
**selling [3]** 1038/4 1047/24 1070/18
**send [3]** 1020/7 1107/19 1107/24
**sends [2]** 1024/21 1026/1
**sense [2]** 1073/4 1073/10
**sent [3]** 1050/5 1051/13 1059/7
**sentence [1]** 1000/20
**separate [2]** 988/16 994/1
**separately [1]** 1104/18
**September [2]** 1049/24 1114/9
**September 2018 [1]** 1049/24
**sequence [1]** 1043/6
**serious [1]** 1101/19
**seriously [1]** 1053/12
**serve [1]** 1107/3
**service [1]** 1108/5
**Services [1]** 1021/9
**session [2]** 1086/1 1094/1
**set [7]** 1011/6 1012/5 1022/25 1026/25 1040/3 1059/16 1109/6
**sets [1]** 1022/21
**settle [1]** 1029/17
**Sevart [16]** 1004/1 1004/18 1005/3 1005/16 1006/5 1006/16 1006/18 1006/23 1031/1 1060/18 1060/21 1060/21 1062/13 1063/1 1067/6 1067/14
**Sevart's [8]** 1004/10 1006/9 1006/11 1007/3 1060/25 1061/20 1061/22 1061/23
**seventh [1]** 983/25 1015/11
**severance [3]** 1067/14 1075/8 1075/8
**severity [1]** 1035/13
**shared [3]** 1082/12 1086/24 1089/13
**shareholders [1]** 1082/24
**she [391]**
**she'd [1]** 1057/18
**she's [2]** 1066/19 1066/19
**sheet [1]** 1031/10
**shop [1]** 1030/3
**short [1]** 1013/5
**shortly [2]** 1066/3 1109/14
**shot [1]** 1024/22
**should [70]** 985/4 988/2 992/16 993/11 993/22 994/5 994/23 997/3 998/4 1000/7 1000/18 1000/21 1001/17 1012/8 1014/11 1020/20 1022/3 1022/9 1035/1 1039/1 1042/10 1042/24 1054/2 1054/21 1067/18 1070/2 1071/12 1082/8 1086/9 1086/25 1088/12 1089/11 1089/12 1091/1 1091/9 1092/11 1092/17 1093/16 1094/8 1096/23 1097/13 1097/15 1098/20 1098/22 1099/20 1099/22 1100/22 1100/24 1102/25 1103/3 1103/17 1103/19 1103/24 1104/11 1105/6 1105/17 1105/20 1105/25 1106/3 1106/9 1107/3 1107/7 1107/13 1107/20 1108/8 1108/12 1110/23 1111/4 1111/9
**shouldn't [3]** 1060/22 1060/24 1061/24
**show [18]** 986/12 1008/21 1023/2 1039/25 1041/18 1041/21 1042/7 1044/10 1045/12 1045/15 1052/3 1052/14 1060/5 1063/20 1083/3 1087/10 1087/17 1089/1
**showed [17]** 1033/2 1040/15 1042/11 1047/9 1050/6 1055/1

# S

**showed... [11]** 1058/8 1068/9 1068/13 1071/15 1086/5 1086/7 1088/8 1088/11 1088/25 1101/8 1113/4
**showing [2]** 1008/2 1065/4
**shown [13]** 1024/11 1028/14 1038/24 1049/8 1085/2 1085/4 1086/9 1087/4 1087/13 1087/14 1090/3 1090/3 1095/7
**shows [4]** 1057/10 1057/22 1088/3 1088/9
**sides [1]** 985/2
**sign [6]** 1011/25 1019/16 1019/22 1025/11 1025/21 1108/9
**signature [4]** 1108/20 1114/7 1114/7 1114/7
**signed [4]** 1075/8 1107/19 1107/21 1114/7
**significant [2]** 1066/12 1066/21
**significantly [1]** 1048/7
**signing [2]** 1019/21 1114/4
**signs [1]** 1022/10
**similar [7]** 1011/6 1014/19 1020/19 1051/23 1060/2 1101/14 1105/5
**simple [2]** 999/1 999/4
**simply [27]** 988/23 988/24 990/6 990/18 991/24 994/17 995/1 1001/17 1002/5 1003/3 1003/8 1013/19 1019/18 1020/7 1021/17 1028/5 1038/11 1055/13 1082/5 1082/12 1082/20 1086/15 1086/18 1087/21 1088/20 1107/14 1107/16
**since [6]** 1030/23 1047/24 1057/11 1077/10 1088/5 1113/2
**single [4]** 1040/9 1044/9 1072/17 1074/11
**sinker [1]** 1020/11
**sir [3]** 986/3 997/21 1078/24
**sit [1]** 1015/22
**situation [1]** 984/16
**six [2]** 1112/24 1113/2
**sixth [4]** 983/25 987/25 991/6 1015/10
**skill [1]** 1105/20
**skills [2]** 1019/1 1047/24
**skip [2]** 1032/24 1060/11
**slew [1]** 1027/21
**slide [3]** 1050/19 1050/21 1054/12
**small [2]** 1008/20 1008/20
**smart [1]** 1083/2
**smart-aleck [1]** 1083/2
**smiled [1]** 1083/16
**snapshot [1]** 1088/21
**sneaking [1]** 1024/22
**so [143]**
**sole [5]** 990/11 990/14 992/1 992/24 998/1
**sole-cause [2]** 990/11 998/1
**solely [4]** 991/18 1069/5 1092/7 1094/2
**some [21]** 984/12 990/13 991/24 999/21 1006/6 1012/6 1014/1 1014/18 1038/9 1050/13 1062/6 1064/3 1068/23 1070/2 1072/15 1086/22 1087/8 1089/11 1093/21 1107/25 1108/18
**somehow [2]** 1009/2 1038/18
**someone [6]** 1006/19 1017/16 1028/8 1063/1 1076/7 1081/22
**something [12]** 985/23 1000/11 1000/15 1017/20 1017/20 1018/3 1018/3 1024/6 1028/11 1084/20 1084/24 1112/19
**somewhere [1]** 1029/1
**son [1]** 1065/15
**son's [1]** 1065/17
**sorry [4]** 989/19 999/24 1004/8 1026/16
**sort [2]** 1007/25 1010/20
**sought [1]** 1094/19
**speak [8]** 1015/23 1017/20 1018/7 1026/19 1030/10 1036/22 1078/18 1113/5
**specialist [1]** 1094/20
**specific [2]** 1006/6 1011/10
**specifically [11]** 988/7 990/2 990/5 990/20 991/14 991/15 992/16 1014/3 1041/21 1110/7 1110/20
**speculating [1]** 989/4
**speculation [1]** 1104/16
**speed [1]** 1057/18
**spelling [1]** 998/12
**spend [6]** 1037/18 1039/3 1040/20 1042/4 1078/4 1080/11
**spending [2]** 1037/25 1066/20
**spends [2]** 1077/7 1077/15
**spent [2]** 1070/4 1077/2

**split [6]** 1028/12 1029/4 1041/14 1079/11 1079/12 1079/22
**Spokane [1]** 1041/23
**spoke [1]** 1018/9
**spokesperson [1]** 1107/3
**spreadsheet [8]** 1086/18 1087/21 1088/17 1088/20 1089/4 1089/5 1089/7 1089/8
**spreadsheets [1]** 1086/15
**squish [1]** 1083/9
**staff [2]** 1026/10 1112/25
**stake [2]** 1016/7 1016/17
**stand [4]** 1015/17 1015/19 1031/1 1079/13
**standard [21]** 988/20 989/2 989/4 992/25 993/13 993/14 993/19 993/21 994/2 994/4 1002/9 1012/25 1054/17 1054/18 1055/17 1055/22 1081/15 1106/11 1110/4 1110/9 1110/22
**standards [1]** 1074/9
**stands [1]** 1108/3
**started [4]** 1038/11 1064/10 1065/22 1109/16
**Starting [1]** 1094/18
**starts [1]** 1035/20
**state [18]** 984/1 984/20 984/23 990/20 995/12 1032/1 1033/13 1054/5 1059/22 1063/24 1097/21 1098/1 1098/9 1101/14 1103/4 1103/6 1105/24 1110/8
**stated [12]** 988/7 988/15 995/4 997/23 1009/5 1009/5 1093/11 1108/12 1110/1 1110/5 1110/14 1110/19
**statement [9]** 982/3 982/4 1014/11 1017/11 1050/3 1050/4 1052/15 1072/3 1072/5
**statements [17]** 1004/13 1004/20 1005/4 1005/18 1006/7 1006/7 1007/5 1007/8 1012/19 1026/9 1071/16 1071/18 1071/23 1071/25 1072/16 1093/6 1093/8
**states [8]** 980/1 980/12 981/21 991/15 991/24 1006/5 1016/5 1021/23
**status [4]** 984/21 991/1 991/3 1009/23
**statute [14]** 984/9 986/22 987/1 988/12 988/12 988/17 988/18 989/5 990/19 991/21 995/2 996/8 996/21 1005/10
**statutes [1]** 996/16
**statutory [1]** 992/7
**stay [2]** 1009/21 1077/21
**stayed [2]** 1062/14 1062/22
**Stephani [16]** 1017/3 1017/5 1017/7 1018/7 1020/8 1025/10 1025/16 1025/20 1029/15 1052/5 1052/6 1059/6 1059/6 1079/21 1082/13 1086/17
**stewardship [1]** 1113/1
**stick [1]** 988/2
**Stickle [5]** 1048/2 1055/8 1076/13 1077/4 1077/9
**still [10]** 991/8 1004/12 1038/23 1039/16 1039/17 1041/5 1051/7 1052/7 1052/9 1055/9
**stipulate [1]** 1094/14
**stipulation [2]** 985/22 986/4
**stipulations [2]** 985/18 1094/12
**stop [2]** 1028/9 1065/16
**stopped [1]** 1079/18
**stops [1]** 1021/24
**store [5]** 1024/6 1024/8 1024/9 1024/10 1084/19
**story [2]** 1083/1 1083/1
**strategy [1]** 1040/1
**stray [2]** 988/12 1001/15
**Street [2]** 981/4 981/10
**stress [1]** 1066/22
**stricken [1]** 1093/18
**strike [9]** 1002/5 1003/2 1003/3 1003/10 1003/17 1003/23 1004/10 1006/21 1086/4
**stripping [2]** 1020/1 1023/20
**strips [1]** 1027/6
**strive [1]** 1107/4
**struck [1]** 1089/12
**sub [1]** 989/22
**sub-header [1]** 989/22
**subject [1]** 999/20
**subjected [9]** 987/10 992/17 1096/22 1096/25 1097/3 1100/8 1100/11 1100/14 1102/17
**submit [1]** 1064/8
**submitted [2]** 1060/13 1065/3
**subordinates [1]** 1029/25

**S**

**substantial [8]** 994/2 994/6 1033/16 1058/20 1059/24 1103/10 1103/13 1110/24
**substantiated [3]** 1051/4 1051/7 1071/20
**substantive [1]** 1109/24
**substitute [1]** 1111/25
**subtract [1]** 1067/19
**succeed [4]** 1037/22 1057/24 1068/20 1078/10
**succession [1]** 1024/14 1061/17
**such [9]** 1014/10 1015/12 1067/12 1077/19 1094/5 1094/24 1095/11 1105/7 1105/25
**suffer [1]** 1016/20
**suffered [4]** 1064/8 1065/20 1066/12 1098/5
**suffering [10]** 1000/19 1000/24 1001/1 1035/5 1035/7 1063/14 1065/24 1066/21 1094/17 1106/1
**sufficient [1]** 983/20
**sufficiently [1]** 984/17
**sugar [5]** 1024/9 1032/10 1032/22 1033/20 1084/19
**suggest [2]** 1066/21 1103/23
**suggested [2]** 1053/2 1067/6
**suggestion [3]** 998/12 998/17 999/18
**Suggestions [1]** 1001/12
**suicidal [1]** 1016/21
**Suite [2]** 981/4 981/12
**sully [1]** 1030/1
**sum [1]** 1105/12
**summaries [7]** 986/8 1095/5 1095/6 1095/9 1095/13 1095/15 1111/24
**summarized [2]** 1080/17 1088/8
**summarizes [1]** 1056/19
**summary [1]** 1072/7
**support [13]** 1007/11 1007/14 1009/14 1018/12 1045/3 1056/14 1060/14 1061/3 1061/5 1062/1 1064/8 1065/19 1067/8
**supported [3]** 1055/13 1056/25 1066/11
**supporting [2]** 999/23 1005/9
**supports [3]** 1005/11 1095/10 1095/16
**supposed [6]** 1009/1 1039/16 1042/8 1050/8 1074/1 1090/2
**supposedly [3]** 1071/10 1071/16 1072/8
**Supreme [4]** 987/1 987/2 990/2 1002/2
**sure [15]** 985/19 988/13 991/1 998/20 999/3 999/12 999/21 1011/21 1037/24 1053/1 1058/3 1080/8 1084/13 1109/5 1112/17
**surely [2]** 1070/19 1070/24
**surfacey [1]** 1066/6
**surplusage [1]** 988/24
**surprises [2]** 1019/11 1019/20
**surprising [4]** 1008/9 1064/21 1065/13 1066/7
**sustain [1]** 1106/7
**sustained [4]** 1033/25 1035/8 1063/16 1106/6
**SUZANNE [86]** 980/3 1015/7 1015/14 1016/18 1018/21 1019/19 1019/20 1019/21 1020/1 1020/1 1020/6 1020/12 1020/14 1020/17 1020/17 1020/18 1021/2 1021/5 1021/13 1021/16 1022/7 1022/10 1022/12 1023/3 1023/5 1024/15 1024/17 1024/18 1024/22 1025/3 1025/5 1025/6 1025/7 1025/11 1025/20 1025/24 1026/1 1026/3 1026/6 1026/6 1026/8 1027/5 1027/17 1027/18 1027/23 1028/1 1028/17 1028/18 1029/2 1029/11 1029/12 1029/18 1029/21 1029/22 1030/2 1030/15 1030/20 1035/12 1035/25 1036/2 1036/6 1036/20 1036/23 1051/17 1051/18 1051/21 1051/25 1052/1 1052/4 1052/9 1052/11 1052/17 1058/3 1079/7 1079/19 1080/1 1080/2 1080/10 1081/7 1081/13 1081/17 1081/18 1081/21 1082/11 1082/18 1094/16
**Suzanne's [18]** 1018/5 1018/22 1020/2 1021/14 1029/1 1029/6 1029/8 1029/10 1029/13 1030/17 1030/23 1079/2 1079/3 1079/16 1079/21 1080/13 1082/7 1083/18
**SW [2]** 981/12 981/22
**switch [1]** 1082/16
**swore [1]** 1071/23
**sworn [1]** 1092/21
**SYMBICORT [3]** 1008/3 1038/11 1053/7
**sympathetic [1]** 1069/16
**sympathy [5]** 1069/4 1069/11 1069/12 1069/13 1092/6

**sync [1]** 1039/22
**system [8]** 1017/1 1017/1 1019/24 1020/3 1022/14 1022/19 1082/20 1082/23
**systems [1]** 1018/12

**T**

**table [2]** 1042/18 1042/21
**take [27]** 983/13 984/8 988/17 988/23 989/10 1008/25 1010/22 1016/23 1022/16 1025/10 1025/11 1025/20 1029/2 1029/14 1030/11 1037/2 1039/8 1057/1 1075/17 1075/25 1080/6 1083/20 1089/3 1091/24 1105/6 1107/25 1109/3
**taken [3]** 1012/7 1031/3 1058/7
**takes [7]** 1020/11 1024/7 1024/9 1029/6 1029/8 1030/3 1067/22
**taking [8]** 1019/21 1025/7 1057/9 1057/14 1058/6 1058/13 1058/14 1073/12
**Talcott [2]** 981/11 997/9
**Talcott's [1]** 1005/22
**talk [3]** 1029/19 1069/22 1070/1
**talked [15]** 1015/15 1025/16 1028/19 1045/19 1050/18 1053/4 1054/18 1066/2 1070/10 1070/11 1076/15 1076/20 1077/1 1077/6 1084/16
**talking [3]** 1036/11 1046/9 1087/18
**talks [2]** 1045/17 1079/11
**team [19]** 1009/19 1039/4 1039/17 1039/23 1040/5 1043/12 1047/9 1047/11 1048/6 1048/13 1052/7 1057/6 1058/4 1058/12 1064/13 1070/8 1070/8 1076/23 1077/24
**telephone [1]** 1024/18
**tell [11]** 1007/20 1022/22 1030/11 1040/10 1041/6 1048/25 1062/5 1076/3 1087/11 1090/22 1108/2
**telling [6]** 1017/6 1042/3 1043/6 1070/5 1070/6 1070/12
**tells [16]** 1004/19 1019/9 1019/12 1020/6 1021/10 1026/5 1041/1 1041/2 1041/4 1041/7 1044/16 1069/10 1069/20 1079/25 1081/25 1082/1
**ten [5]** 1036/4 1037/3 1037/4 1078/21 1112/18
**ten-minute [2]** 1037/3 1078/21
**tenable [1]** 993/24
**tenure [1]** 1028/18
**term [4]** 994/13 994/15 995/1 1078/14
**terminate [13]** 983/21 1003/10 1032/3 1033/11 1033/16 1053/23 1056/12 1059/24 1099/6 1102/3 1102/7 1103/11 1103/14
**terminated [44]** 989/25 1001/19 1001/23 1003/4 1003/19 1031/15 1031/18 1031/24 1032/8 1032/11 1032/18 1032/21 1033/17 1034/9 1037/13 1037/14 1042/16 1049/4 1049/9 1053/21 1054/14 1054/15 1055/5 1055/18 1055/21 1056/2 1056/14 1058/17 1058/18 1058/20 1060/1 1097/11 1099/3 1099/5 1099/10 1099/12 1099/13 1099/14 1099/16 1103/9 1103/12 1103/15 1104/21 1108/5
**terminating [3]** 1020/17 1052/1 1105/2
**termination [29]** 999/8 999/15 1021/19 1024/3 1026/4 1033/3 1042/20 1049/11 1051/13 1051/15 1052/24 1053/3 1055/4 1065/4 1065/21 1066/22 1068/10 1075/2 1079/24 1082/7 1084/15 1096/23 1097/8 1098/17 1099/18 1100/9 1100/19 1101/9 1104/12
**terms [5]** 1009/18 1012/25 1024/4 1108/3 1109/24
**territory [3]** 1048/10 1077/9 1077/23
**test [6]** 993/11 994/6 994/24 1006/25 1007/2 1110/21
**testified [23]** 1004/14 1004/24 1004/24 1006/5 1006/12 1046/24 1048/5 1049/13 1051/12 1053/14 1055/10 1061/6 1061/16 1072/19 1072/25 1074/8 1074/12 1074/24 1076/22 1077/10 1077/22 1078/8 1094/22
**testify [3]** 1004/23 1006/18 1069/24
**testimony [34]** 1004/11 1005/1 1005/20 1006/9 1006/11 1006/21 1006/23 1008/14 1035/11 1036/17 1051/20 1059/1 1060/16 1061/24 1064/18 1065/3 1065/5 1065/19 1070/5 1070/23 1073/20 1073/23 1074/14 1077/13 1086/8 1092/21 1093/3 1093/18 1094/5 1094/21 1094/23 1094/24 1094/25 1095/16
**text [9]** 986/22 1044/14 1044/15 1044/17 1044/21 1072/22 1111/5 1111/7 1111/8
**texts [1]** 1066/18
**than [22]** 996/7 1011/13 1017/10 1019/14 1019/23 1025/25 1038/11 1040/9 1040/21 1042/4 1048/23 1055/6 1055/7 1056/5

# T

**than... [8]** 1058/12 1061/11 1069/25 1074/13 1081/9 1082/7 1092/16 1110/10

**thank [57]** 983/8 986/3 993/2 994/7 995/5 995/16 996/5 997/20 998/9 998/16 1002/13 1002/20 1002/24 1003/12 1003/25 1005/6 1007/15 1007/16 1007/21 1009/7 1009/8 1010/4 1012/11 1012/12 1012/14 1014/1 1014/15 1014/25 1037/1 1037/2 1037/4 1037/7 1037/10 1058/2 1078/20 1078/25 1083/19 1084/3 1084/4 1084/5 1084/22 1085/6 1085/11 1086/11 1090/8 1091/20 1108/25 1110/16 1110/25 1111/11 1112/4 1112/5 1112/23 1112/25 1113/1 1113/4 1113/7

**that [857]**

**that's [75]** 984/21 985/23 988/16 988/21 989/17 990/13 995/11 996/20 998/24 999/11 999/21 1000/15 1004/4 1004/17 1007/8 1008/9 1010/15 1012/10 1012/18 1013/13 1014/18 1015/10 1016/3 1016/6 1016/17 1017/7 1017/18 1017/18 1025/19 1026/7 1027/22 1028/16 1029/8 1029/9 1038/25 1039/8 1039/13 1040/2 1040/4 1040/14 1040/15 1041/8 1041/15 1041/24 1042/10 1044/15 1045/24 1045/25 1047/4 1047/6 1047/24 1048/11 1050/16 1051/19 1052/20 1063/10 1064/1 1065/7 1067/10 1070/14 1071/19 1072/6 1079/15 1084/12 1084/15 1084/17 1087/15 1087/23 1088/4 1088/9 1088/25 1089/4 1089/18 1091/2 1110/14

**their [32]** 1005/24 1010/1 1016/17 1017/7 1026/2 1028/5 1028/6 1028/8 1030/12 1037/6 1037/19 1037/25 1038/9 1040/21 1047/24 1057/11 1059/17 1063/10 1074/1 1074/2 1074/21 1082/5 1088/1 1088/15 1088/16 1089/23 1089/24 1093/8 1093/14 1094/22 1096/14 1107/9

**them [50]** 985/1 986/12 1002/9 1004/13 1010/19 1011/12 1011/21 1013/24 1019/11 1019/12 1021/1 1022/22 1037/21 1038/1 1039/8 1040/4 1047/12 1047/13 1047/23 1047/24 1051/3 1056/17 1056/18 1058/1 1059/9 1061/8 1066/5 1067/5 1072/12 1072/13 1073/15 1074/12 1074/18 1076/1 1076/2 1076/3 1077/12 1078/13 1082/2 1087/17 1087/18 1088/11 1093/4 1093/5 1093/10 1093/11 1093/11 1095/10 1095/11 1095/16

**themselves [2]** 994/21 1086/14

**then [60]** 983/10 983/13 983/14 985/23 987/12 988/24 992/2 994/23 1000/25 1010/15 1010/16 1010/23 1010/25 1011/25 1017/6 1019/10 1019/12 1019/18 1019/25 1020/5 1020/15 1022/2 1023/15 1024/5 1024/9 1025/22 1026/3 1027/21 1033/22 1037/5 1038/7 1038/25 1043/14 1044/25 1051/8 1054/21 1056/9 1059/10 1060/22 1061/20 1063/19 1065/2 1066/17 1067/19 1068/4 1069/25 1070/9 1070/10 1071/8 1078/11 1083/23 1087/11 1094/8 1105/25 1109/13 1109/16 1110/23 1111/14 1112/21

**then executes [1]** 1019/10

**theorizes [1]** 1044/19

**there [105]** 983/20 984/22 985/2 985/3 985/3 985/5 985/8 985/18 985/20 986/23 988/8 991/10 994/5 994/11 994/22 995/21 996/15 996/17 996/23 997/18 1000/4 1001/22 1003/25 1004/3 1004/21 1004/25 1006/25 1007/11 1007/14 1008/10 1008/12 1008/13 1008/14 1008/18 1008/23 1010/18 1012/7 1012/9 1013/12 1013/12 1013/15 1013/22 1014/17 1015/15 1015/6 1016/8 1016/9 1020/23 1022/14 1022/21 1023/2 1026/9 1027/14 1028/23 1029/3 1029/19 1030/4 1035/11 1039/10 1044/5 1044/8 1044/12 1046/25 1047/3 1050/2 1050/3 1050/3 1050/4 1050/24 1056/20 1057/5 1060/24 1061/4 1061/6 1061/13 1061/14 1062/9 1064/6 1067/16 1068/23 1070/8 1070/22 1071/5 1073/14 1074/2 1074/3 1075/2 1078/15 1086/8 1086/8 1086/16 1087/6 1087/21 1087/23 1089/4 1095/20 1098/7 1098/11 1108/12 1108/20 1111/6 1112/7 1112/14 1112/19

**There's [1]** 994/25

**thereafter [2]** 1024/17 1027/21

**therefore [13]** 984/24 993/1 993/23 994/19 1049/12 1054/10 1086/8 1094/13 1095/10 1096/8 1106/4 1108/13 1110/3

**these [62]** 996/24 1008/3 1008/7 1009/10 1009/13 1009/20 1009/23 1010/2 1013/23 1022/8 1029/25 1041/17 1041/21 1042/7 1042/12 1042/17 1042/20 1042/20 1043/23 1044/4 1045/14 1049/23 1049/25 1050/12 1051/15 1055/1 1058/9 1058/12 1059/5 1059/18 1060/9 1060/12 1060/16 1066/13

---

1067/10 1071/15 1071/17 1071/25 1072/15 1074/24 1075/21 1076/13 1091/24 1092/9 1094/14 1094/24 1097/13 1097/15 1098/20 1098/22 1098/23 1099/20 1099/22 1100/22 1100/24 1101/13 1101/15 1102/25 1103/2 1103/16 1103/18 1105/1

**they [132]** 990/25 991/1 993/13 994/1 997/23 999/3 1001/6 1001/9 1002/9 1004/12 1006/22 1008/21 1009/1 1009/10 1009/21 1011/21 1012/1 1016/2 1018/1 1018/7 1018/10 1018/11 1019/8 1020/17 1020/25 1021/2 1021/4 1025/9 1027/22 1028/9 1028/11 1028/14 1029/17 1029/17 1029/19 1029/20 1029/23 1029/23 1029/25 1030/11 1030/12 1036/17 1036/17 1036/18 1036/18 1037/22 1037/24 1038/6 1038/21 1040/6 1040/10 1040/10 1040/20 1042/11 1045/17 1046/20 1046/24 1046/24 1047/1 1047/11 1047/12 1047/12 1047/15 1047/16 1047/17 1047/18 1047/19 1048/2 1048/3 1048/3 1050/19 1051/4 1058/19 1059/17 1062/9 1062/10 1062/10 1066/2 1066/2 1066/4 1066/13 1066/14 1066/21 1068/19 1068/19 1069/25 1070/10 1074/2 1074/13 1074/20 1074/21 1075/5 1076/1 1076/3 1076/15 1076/15 1076/16 1076/16 1076/17 1077/3 1077/21 1078/14 1079/7 1079/8 1079/11 1082/5 1082/7 1082/9 1086/15 1087/12 1087/16 1088/2 1088/15 1088/17 1088/17 1089/7 1089/11 1089/12 1089/22 1089/22 1089/23 1090/5 1090/6 1091/3 1091/9 1091/10 1093/7 1093/15 1097/20 1111/13 1112/10

**They're [1]** 1056/17

**they've [1]** 994/18

**thing [13]** 983/15 985/6 1006/3 1015/9 1024/7 1028/13 1028/15 1030/6 1030/7 1038/2 1058/5 1071/12 1077/21

**things [27]** 994/8 1005/8 1022/3 1022/8 1024/5 1037/17 1038/3 1038/11 1047/16 1050/12 1054/24 1055/1 1056/16 1057/18 1057/21 1058/12 1071/2 1071/2 1071/3 1071/10 1071/14 1073/14 1074/11 1075/24 1084/6 1084/18 1093/3

**think [51]** 985/4 988/1 988/8 991/20 991/22 992/8 993/6 993/11 993/20 994/4 998/24 999/10 999/12 1001/8 1001/14 1002/3 1002/8 1005/8 1006/4 1006/24 1008/23 1009/1 1009/11 1009/15 1011/6 1011/9 1024/4 1033/20 1035/23 1043/4 1054/23 1056/20 1059/1 1060/17 1074/19 1074/23 1074/24 1079/20 1087/19 1090/23 1091/4 1091/23 1095/1 1095/11 1107/14 1110/22 1111/12 1111/14 1111/23 1112/12

**thinking [1]** 998/1

**thinks [2]** 1029/18 1088/9

**third [9]** 981/22 1062/13 1081/12 1097/10 1098/5 1099/13 1100/11 1102/19 1105/8

**this [189]**

**Thomas [18]** 987/3 988/4 988/7 988/9 988/16 990/4 990/12 990/16 990/25 991/12 991/13 992/5 993/1 1002/3 1003/7 1003/24 1110/5 1110/10

**Thomsen [8]** 1048/2 1048/4 1048/9 1065/15 1076/13 1077/7 1077/14 1081/12

**thorough [1]** 1056/23

**those [53]** 983/9 983/24 990/22 994/16 997/10 998/7 1004/7 1004/8 1004/20 1004/22 1004/23 1005/24 1006/1 1006/8 1007/9 1007/20 1009/19 1011/7 1012/24 1016/1 1016/19 1016/23 1016/23 1017/2 1017/19 1018/17 1021/10 1023/18 1030/17 1038/12 1039/18 1039/20 1039/22 1042/3 1043/14 1043/17 1043/21 1043/25 1044/15 1044/17 1046/10 1059/4 1059/8 1064/4 1066/17 1067/5 1068/25 1072/9 1089/5 1092/2 1105/11 1109/3 1109/4

**though [12]** 1026/7 1041/3 1041/20 1063/2 1063/3 1071/3 1071/4 1073/6 1073/7 1073/21 1076/9 1077/3

**thought [6]** 1015/6 1061/8 1071/5 1072/17 1095/22 1111/4

**three [23]** 988/24 995/6 1019/14 1022/21 1023/2 1025/4 1042/1 1044/24 1054/23 1055/1 1065/5 1065/9 1065/14 1074/24 1077/15 1080/25 1081/6 1097/13 1099/19 1100/21 1102/25 1110/5 1110/7

**three-quarters [1]** 1042/1

**through [39]** 983/11 985/1 998/23 999/8 999/10 999/16 1002/5 1011/20 1012/8 1012/9 1016/14 1016/15 1016/15 1018/23 1024/11 1030/19 1031/11 1034/3 1035/16 1036/13 1039/9 1045/13 1046/11 1048/14 1049/25 1054/3 1054/25 1056/17 1056/24 1062/14 1062/15 1062/22 1067/24 1068/24 1078/22 1089/19 1096/7 1107/19 1110/6

**throughout [1]** 1039/4

**thumb [1]** 1011/23

**T**

**thus [3]** 994/24 1012/20 1031/3
**time [63]** 984/12 985/2 998/17 999/2 1008/8 1015/24 1018/22
1021/7 1021/8 1023/17 1027/19 1034/22 1035/17 1035/18
1035/19 1035/24 1036/1 1037/19 1037/25 1038/3 1039/3
1039/4 1039/24 1040/21 1041/13 1042/2 1042/4 1043/6
1043/10 1044/21 1046/19 1046/22 1047/1 1047/22 1048/15
1058/13 1062/20 1064/13 1064/20 1065/12 1065/13 1065/24
1066/19 1066/20 1067/1 1067/2 1071/3 1075/6 1075/7 1077/2
1077/8 1078/4 1078/15 1078/20 1083/22 1099/12 1099/18
1105/6 1105/14 1106/6 1107/25 1108/23 1112/14
**timeline [4]** 1027/20 1027/24 1042/23 1045/3
**times [4]** 1008/16 1040/15 1065/9 1093/9
**timing [7]** 1025/4 1027/3 1027/4 1027/12 1027/18 1043/4
1054/6
**tip [1]** 1016/22
**title [5]** 988/1 993/15 993/16 993/21 1000/23
**titled [1]** 1095/20
**today [3]** 997/6 1048/25 1082/4
**today's [1]** 997/4
**together [2]** 1011/20 1108/24
**told [41]** 1004/14 1004/17 1006/17 1006/18 1006/19 1006/20
1016/13 1016/18 1017/8 1017/22 1019/8 1021/17 1021/23
1026/12 1037/16 1041/19 1041/22 1043/1 1043/11 1044/13
1044/20 1045/16 1045/21 1046/21 1047/3 1049/17 1056/6
1058/11 1058/22 1058/25 1059/5 1060/20 1062/6 1064/9
1064/21 1065/15 1075/2 1075/6 1077/16 1077/23 1078/17
**too [6]** 1043/19 1049/13 1059/13 1065/16 1075/16 1090/23
**took [23]** 985/11 1017/5 1030/15 1030/18 1053/11 1056/15
1058/15 1058/19 1058/21 1063/7 1067/1 1069/6 1069/9
1075/19 1075/23 1086/15 1086/16 1087/22 1088/20 1088/21
1092/8 1102/15 1108/14
**top [5]** 1022/1 1029/12 1029/12 1048/10 1078/6
**topic [1]** 984/23
**total [4]** 1079/15 1080/15 1081/6 1101/18
**touch [1]** 1112/22
**tough [4]** 1074/8 1075/15 1076/8 1076/20
**towards [1]** 1065/9
**town [1]** 1078/3
**track [10]** 1001/2 1008/16 1045/20 1045/20 1045/21 1045/23
1045/25 1046/2 1046/3 1059/17
**tracks [1]** 1001/11
**Trader [1]** 995/7
**tradition [1]** 1007/25
**trained [1]** 1050/16
**training [12]** 1019/1 1050/13 1050/13 1050/15 1050/18 1050/19
1050/21 1050/23 1050/23 1053/12 1061/7 1061/10
**traipse [1]** 1029/25
**transcript [4]** 1005/12 1108/13 1114/5 1114/6
**transfer [1]** 1061/10
**travel [1]** 1065/13
**traveling [2]** 1065/17 1066/20
**Traxler [1]** 995/22
**treat [2]** 1028/7 1094/14
**treated [6]** 1064/19 1065/4 1069/21 1074/12 1074/13 1076/1
**treating [1]** 1027/19
**treatment [3]** 1013/19 1014/3 1096/1
**trial [18]** 980/10 998/23 999/11 999/16 1010/1 1015/9 1015/11
1029/21 1029/21 1030/20 1031/5 1034/3 1094/2 1095/15
1104/13 1108/13 1108/15 1113/3
**tried [5]** 1040/3 1059/16 1068/19 1074/5 1075/12
**trouble [1]** 1026/17
**Truax [3]** 1047/14 1053/11 1079/17
**true [8]** 1007/9 1048/22 1048/23 1051/2 1051/20 1061/4 1088/4
1092/16
**truly [1]** 1083/23
**trust [1]** 1040/5
**truth [3]** 1004/22 1006/23 1012/20
**try [1]** 983/6
**trying [9]** 1008/8 1009/19 1015/5 1046/17 1057/17 1057/23
1059/18 1070/21 1075/10
**Tums [1]** 1035/16

**turn [3]** 1034/16 1034/22 1035/4
**turned [1]** 1082/10
**Turning [6]** 983/17 983/23 984/2 984/5 984/25 998/10
**turns [1]** 1057/19
**twice [2]** 999/4 1015/10
**two [21]** 994/8 1000/4 1004/5 1007/23 1010/2 1012/13 1012/17
1024/25 1025/2 1026/9 1036/4 1037/17 1043/2 1047/14
1060/13 1066/1 1069/7 1076/10 1080/6 1081/2 1086/14
**type [3]** 991/18 992/24 1111/21
**typical [2]** 1046/8 1046/13

**U**

**U.S [5]** 1008/4 1017/14 1022/4 1026/11 1057/6
**ultimate [1]** 1002/17
**unable [2]** 984/6 1095/23
**unanimous [4]** 1076/4 1107/10 1108/4 1108/7
**unapproved [3]** 1017/25 1018/2 1082/9
**unclear [1]** 984/21
**under [37]** 984/11 988/20 989/22 993/12 994/1 1002/2 1003/16
1008/25 1013/19 1013/21 1015/18 1022/24 1026/25 1028/4
1028/5 1030/21 1035/1 1048/7 1051/5 1054/5 1060/2 1063/25
1071/23 1081/11 1090/2 1093/15 1096/6 1096/12 1099/1
1101/17 1101/24 1102/5 1102/11 1102/15 1102/16 1110/21
1111/24
**underlying [11]** 1087/25 1090/1 1090/6 1090/18 1090/20
1091/1 1091/11 1095/10 1095/11 1095/18 1111/14
**underneath [1]** 1018/6
**Underperforming [1]** 1019/5
**understand [13]** 990/21 995/19 1013/23 1021/4 1024/19
1040/10 1052/15 1059/10 1077/8 1090/2 1090/15 1112/9
1112/14
**understood [8]** 989/12 1010/24 1011/18 1012/11 1028/7
1040/8 1046/24 1076/22
**undisputed [1]** 1044/4
**undue [1]** 1012/25
**unethical [2]** 1050/2 1050/4
**unforeseeable [1]** 1017/17
**unhappy [1]** 1072/19
**unicycle [1]** 1015/4
**unique [1]** 1049/15
**unit [2]** 1021/22 1022/1
**UNITED [5]** 980/1 980/12 981/21 1016/5 1021/23
**United States [2]** 1016/5 1021/23
**unlawful [6]** 1028/7 1033/25 1034/7 1035/9 1063/16 1101/24
**unless [4]** 1054/19 1060/10 1060/12 1082/1
**unpaid [1]** 1101/18
**unpersuasive [1]** 1000/8
**unprepared [1]** 1040/1
**unpunished [1]** 1057/16
**unrelated [3]** 1064/17 1064/17 1102/7
**unsubstantiated [3]** 1051/4 1052/13 1071/20
**unsurprisingly [1]** 984/20
**until [15]** 1034/10 1036/3 1042/24 1044/23 1045/2 1045/6
1065/2 1071/7 1073/9 1079/25 1082/17 1083/10 1104/22
1106/7 1108/4
**unwilling [1]** 1107/12
**up [40]** 985/25 986/1 997/18 998/22 1012/5 1013/7 1015/5
1017/20 1018/7 1018/9 1019/1 1019/12 1019/13 1019/25
1020/10 1023/21 1024/18 1025/7 1025/14 1026/19 1027/17
1029/10 1030/19 1034/3 1039/25 1040/3 1050/17 1057/17
1058/13 1059/10 1059/16 1060/23 1070/17 1080/16 1082/17
1083/3 1104/12 1111/21 1112/19 1113/4
**update [1]** 1036/5
**updated [1]** 1077/24
**upon [6]** 1006/24 1029/17 1091/5 1101/20 1104/15 1104/15
**upset [2]** 1064/21 1070/6
**upsetting [3]** 1064/6 1064/15 1064/15
**us [28]** 983/16 1007/22 1012/4 1015/16 1016/6 1016/10
1016/11 1017/22 1020/9 1021/10 1021/17 1021/23 1022/20
1026/5 1028/19 1034/14 1036/25 1079/25 1081/5 1082/21
1082/25 1085/2 1086/8 1086/24 1087/5 1088/2 1088/18
1089/13
**use [15]** 986/24 994/11 994/13 994/14 994/15 1016/24 1017/15

**U**

**use... [8]** 1024/5 1034/18 1041/19 1041/22 1090/25 1102/8 1106/16 1106/21
**used [11]** 986/7 995/2 1016/2 1065/8 1066/4 1067/19 1073/23 1090/17 1090/19 1095/17 1109/16
**uses [7]** 988/6 994/15 1016/17 1017/25 1018/3 1019/10 1082/9
**using [6]** 986/22 988/12 994/10 1036/9 1077/24 1110/20
**usual [3]** 1051/19 1066/5 1106/5
**Usually [1]** 1011/19
**Utah [1]** 1065/6

**V**

**vaccine [1]** 1016/5
**value [6]** 1104/11 1104/19 1105/11 1105/12 1105/17 1105/20
**verdict [54]** 983/14 997/17 998/10 999/8 1000/13 1001/7 1001/10 1001/16 1002/11 1002/19 1003/13 1006/10 1022/18 1031/8 1031/10 1032/14 1034/10 1048/15 1048/17 1053/18 1060/8 1063/17 1063/18 1063/21 1082/22 1084/16 1092/11 1093/2 1097/13 1097/15 1098/20 1098/22 1099/20 1099/22 1100/22 1100/24 1102/25 1103/3 1103/17 1103/19 1103/24 1104/22 1107/6 1107/10 1107/16 1108/4 1108/6 1108/6 1108/8 1108/9 1108/16 1108/22 1108/25 1113/9
**verify [1]** 1012/9
**version [3]** 1011/17 1013/19 1014/1
**versus [1]** 1029/3
**very [32]** 983/12 988/17 998/9 1007/17 1007/25 1012/12 1012/25 1013/5 1015/7 1015/25 1016/23 1020/5 1021/18 1026/2 1027/5 1029/24 1030/2 1037/20 1042/23 1043/6 1047/15 1048/23 1057/25 1061/6 1069/7 1076/7 1077/20 1080/3 1084/2 1084/3 1112/23
**vice [1]** 1021/21
**view [5]** 990/21 1015/6 1015/22 1017/9 1017/10
**views [1]** 1107/9
**VII [4]** 988/1 993/15 993/16 993/21
**violates [1]** 1096/15
**violating [2]** 1016/19 1021/10
**violation [12]** 1020/12 1026/23 1026/23 1032/1 1097/19 1097/21 1098/1 1098/9 1098/13 1100/1 1102/2 1103/6
**virtual [5]** 1019/25 1028/11 1029/3 1047/17 1047/21
**visit [1]** 1035/22
**vocational [3]** 1004/11 1005/17 1060/19
**voice [3]** 1015/24 1030/10 1036/22
**Volume [1]** 980/10
**voluntarily [2]** 1034/11 1104/22
**vote [1]** 1108/3

**W**

**wages [5]** 1033/23 1034/6 1104/19 1104/25 1105/3
**wait [1]** 1071/7
**waited [1]** 1073/4
**waiting [1]** 1108/1
**waiver [2]** 984/2 984/4
**wake [2]** 987/3 1082/17
**waking [1]** 1036/9
**walk [1]** 1031/11
**want [21]** 983/6 985/25 988/13 1014/5 1022/22 1023/9 1031/8 1031/11 1034/16 1039/8 1068/24 1079/4 1079/3 1083/1 1084/10 1087/17 1089/11 1109/5 1111/10 1112/25 1113/1
**wanted [12]** 1010/9 1025/19 1037/24 1052/25 1054/10 1075/7 1078/4 1081/23 1084/13 1084/20 1085/4 1112/12
**wants [3]** 1038/15 1038/16 1038/18
**warning [16]** 1023/20 1024/21 1025/2 1025/23 1039/13 1045/18 1045/22 1046/2 1049/19 1064/12 1064/20 1064/22 1075/6 1075/10 1078/13 1081/18
**was [283]**
**Washington [1]** 981/4
**wasn't [24]** 985/19 1030/2 1043/12 1043/12 1045/21 1045/24 1046/18 1047/8 1049/10 1049/17 1049/22 1054/1 1057/8 1062/11 1073/21 1074/4 1074/5 1075/18 1079/25 1081/5 1085/2 1085/4 1089/13 1090/4
**waste [1]** 1047/21
**watching [1]** 1015/3

**way [20]** 994/12 997/4 999/12 1004/25 1009/22 1012/8 1012/10 1016/2 1021/6 1021/17 1023/10 1025/18 1035/23 1037/21 1037/23 1051/12 1056/19 1081/23 1086/9 1093/11
**we [167]**
**we'd [2]** 1002/10 1005/2
**we've [2]** 995/19 1015/15
**wealth [6]** 1008/23 1009/1 1013/24 1014/4 1014/10 1104/8
**weather [1]** 1015/2
**website [2]** 1008/2 1009/11
**week [7]** 1028/18 1065/9 1065/14 1070/15 1070/20 1071/11 1077/15
**weekend [5]** 1014/16 1015/2 1066/2 1066/5 1066/9
**weekly [1]** 1028/21
**weeks [4]** 1025/4 1067/22 1067/23 1101/18
**weight [6]** 1060/16 1094/9 1094/11 1095/1 1095/11 1107/15
**Welch [7]** 1021/17 1051/11 1052/4 1061/6 1061/16 1075/4 1079/13
**welcome [2]** 983/11 1014/15
**well [14]** 996/19 998/10 1011/1 1012/4 1021/25 1035/11 1045/24 1053/13 1054/8 1064/9 1086/23 1109/15 1110/13 1113/6
**Wells [1]** 995/8
**went [7]** 1004/15 1049/25 1062/15 1067/24 1078/2 1083/11 1084/19
**were [78]** 987/7 987/13 987/19 990/23 990/23 990/25 996/25 998/5 1002/16 1003/9 1003/21 1008/7 1008/10 1009/4 1012/19 1017/6 1018/10 1025/9 1026/9 1026/10 1028/6 1028/12 1028/21 1028/25 1036/15 1036/17 1037/25 1038/3 1038/6 1038/6 1038/19 1039/15 1039/18 1042/17 1042/19 1042/21 1044/5 1046/25 1047/3 1047/11 1047/16 1049/11 1049/18 1049/24 1051/2 1051/7 1052/10 1052/22 1054/8 1054/10 1056/20 1058/13 1058/18 1059/8 1059/18 1061/1 1061/6 1061/8 1065/25 1067/5 1071/1 1071/16 1071/23 1071/25 1073/14 1073/16 1074/20 1076/14 1076/14 1076/15 1076/16 1079/2 1081/9 1081/10 1082/5 1095/22 1095/23 1105/1
**whack [2]** 1039/22 1080/4
**what [161]**
**what's [7]** 994/9 998/21 1012/9 1016/7 1027/11 1086/23 1087/21
**whatever [2]** 1089/11 1089/17
**when [84]** 986/23 989/6 990/17 997/9 1002/9 1004/4 1008/8 1010/21 1016/21 1017/2 1017/4 1018/1 1018/5 1019/19 1021/13 1023/5 1023/8 1023/12 1023/13 1023/15 1023/16 1024/6 1024/21 1025/5 1027/22 1027/25 1028/22 1029/5 1029/18 1030/15 1031/3 1031/8 1034/10 1035/15 1039/6 1039/25 1042/11 1042/15 1046/9 1048/5 1048/17 1050/1 1050/16 1056/21 1057/14 1057/15 1059/2 1059/8 1061/7 1064/21 1070/3 1070/10 1071/22 1072/25 1073/11 1073/25 1074/25 1075/1 1075/2 1075/21 1075/23 1076/15 1076/17 1076/19 1077/6 1077/22 1077/23 1078/1 1078/5 1078/15 1081/17 1082/8 1082/10 1085/1 1086/9 1092/13 1093/15 1093/22 1093/25 1104/22 1105/12 1112/14
**whenever [1]** 1011/7
**where [11]** 987/8 987/18 1017/2 1019/4 1022/16 1030/9 1032/24 1061/17 1063/20 1078/3 1084/23
**whether [19]** 984/7 1022/10 1022/10 1033/3 1051/1 1055/16 1061/4 1062/17 1066/14 1066/25 1068/10 1068/14 1069/2 1069/9 1072/8 1075/7 1092/4 1101/9 1108/3
**which [48]** 984/20 989/25 990/1 990/2 990/21 991/18 991/24 992/25 993/12 994/4 994/20 996/8 997/1 999/2 1005/11 1006/11 1015/3 1019/13 1041/25 1042/11 1042/25 1043/10 1043/24 1057/6 1061/17 1062/19 1067/15 1069/25 1071/16 1073/25 1087/18 1092/18 1092/23 1094/7 1101/13 1101/15 1103/24 1105/12 1106/11 1106/23 1107/25 1108/16 1110/11 1110/19 1111/15 1111/16 1112/13
**while [11]** 1012/6 1013/9 1037/15 1039/12 1057/3 1057/18 1057/21 1083/25 1090/12 1108/1 1113/2
**whistle [1]** 1019/9
**whistleblower [16]** 989/13 996/8 1023/1 1023/24 1026/14 1026/22 1031/21 1053/19 1061/25 1062/3 1062/4 1062/6 1063/24 1067/7 1097/17 1105/24
**who [48]** 984/9 984/12 1016/19 1016/20 1017/6 1017/23 1018/14 1018/17 1027/17 1028/24 1029/25 1036/14 1037/16

## W

**who... [35]** 1038/20 1044/9 1044/25 1045/1 1045/18 1046/23 1048/1 1051/11 1051/12 1055/12 1063/1 1064/19 1065/6 1071/17 1072/7 1074/12 1074/17 1074/24 1076/7 1076/8 1076/8 1076/12 1076/14 1076/14 1077/4 1077/7 1078/7 1078/8 1078/16 1081/12 1082/12 1094/22 1096/14 1097/20 1105/19
**whole [2]** 1009/25 1081/11
**wholly [1]** 988/16
**whose [1]** 1083/2
**why [36]** 985/4 990/8 990/13 994/11 1016/3 1017/18 1017/18 1025/9 1025/19 1026/5 1028/12 1028/13 1028/25 1029/8 1037/13 1038/25 1046/18 1047/4 1052/20 1054/3 1054/23 1059/5 1059/6 1060/5 1060/24 1063/7 1067/5 1067/10 1071/7 1071/13 1071/19 1075/1 1075/1 1081/10 1083/14 1090/23
**will [114]** 983/9 983/10 985/2 985/5 985/6 986/4 986/10 986/11 997/7 997/22 998/16 999/9 999/16 1000/3 1000/4 1001/8 1002/11 1007/17 1007/22 1010/4 1010/6 1010/11 1010/12 1010/14 1010/14 1010/15 1010/18 1010/21 1010/22 1011/17 1011/19 1012/3 1012/5 1012/13 1013/2 1013/7 1014/17 1017/21 1017/21 1018/3 1018/14 1019/13 1019/23 1026/21 1028/10 1029/2 1030/13 1030/16 1030/22 1030/22 1031/2 1031/7 1031/10 1031/10 1034/22 1036/21 1037/2 1037/5 1037/5 1048/21 1050/1 1052/1 1052/15 1055/1 1060/8 1060/13 1060/14 1063/17 1063/21 1066/23 1067/21 1068/18 1069/6 1079/16 1082/2 1083/22 1083/23 1083/24 1091/13 1091/17 1091/23 1092/2 1092/7 1093/5 1094/13 1095/23 1101/13 1101/15 1104/3 1105/13 1105/14 1106/3 1106/7 1107/2 1107/21 1107/24 1108/12 1108/16 1108/17 1108/18 1108/23 1108/24 1108/25 1109/2 1109/14 1109/15 1109/16 1110/11 1111/23 1111/24 1112/14 1112/17 1112/21 1112/22
**willful [3]** 1068/9 1101/5 1101/8
**willfully [1]** 1068/19
**willfulness [11]** 993/3 1028/3 1028/4 1032/25 1033/1 1067/24 1068/7 1068/8 1068/13 1101/1 1101/6
**Williamson [1]** 981/12
**willing [3]** 1023/9 1051/17 1051/18
**win [3]** 1023/9 1023/9 1081/23
**wise [2]** 1083/2 1083/3
**withdraw [2]** 1000/3 1000/12
**within [4]** 1010/1 1053/6 1083/13 1096/10
**without [12]** 990/9 1016/8 1030/4 1040/20 1040/21 1041/12 1042/5 1059/14 1074/18 1087/5 1110/5 1114/6
**witness [16]** 1040/9 1044/9 1047/2 1053/11 1066/11 1072/7 1072/17 1073/2 1074/12 1075/12 1075/15 1077/13 1078/7 1092/21 1094/5 1094/6
**witness's [1]** 1095/2
**witnesses [28]** 1008/16 1016/13 1044/8 1045/16 1045/19 1047/14 1048/1 1053/10 1053/14 1055/12 1068/18 1069/24 1069/25 1071/24 1072/5 1072/9 1072/15 1073/1 1074/7 1074/23 1074/24 1075/14 1076/5 1076/12 1085/4 1087/7 1093/7 1094/24
**won't [1]** 1036/21
**wonderful [1]** 1015/2
**word [3]** 995/2 1008/17 1066/6
**words [2]** 984/10 991/21
**work [13]** 984/10 1011/19 1012/1 1020/14 1029/16 1031/2 1031/5 1036/3 1036/9 1036/14 1051/19 1059/20 1066/14
**worked [7]** 984/12 1029/20 1039/4 1048/1 1066/13 1076/14 1078/7
**workforce [4]** 1018/6 1018/13 1018/14 1018/15
**working [2]** 1017/2 1036/13
**workplace [1]** 1018/18
**works [1]** 1020/6
**world [2]** 1015/12 1015/17
**worried [1]** 1025/19
**Worse [1]** 1021/17
**would [115]** 983/19 984/16 984/25 985/19 987/9 989/25 991/11 992/2 992/20 996/6 996/11 996/13 997/19 998/6 999/6 1000/16 1000/23 1001/23 1002/15 1002/17 1002/18 1002/22 1003/4 1003/7 1003/8 1003/18 1003/21 1004/7 1006/4 1006/10 1006/13 1006/22 1008/11 1009/4 1011/20 1013/4 1013/6 1013/11 1014/8 1018/10 1018/11 1025/10 1025/20 1031/17

---

1032/11 1032/20 1033/17 1034/8 1034/11 1036/11 1036/15 1036/16 1036/18 1036/18 1036/19 1044/20 1044/21 1049/4 1049/6 1049/9 1051/5 1052/6 1054/15 1054/20 1055/21 1056/1 1059/25 1061/2 1061/2 1061/5 1061/9 1061/15 1061/19 1061/19 1062/13 1062/18 1062/19 1062/22 1064/14 1067/12 1067/16 1070/21 1070/24 1075/9 1082/4 1082/15 1083/3 1083/4 1083/4 1083/6 1083/7 1083/8 1083/9 1084/6 1086/2 1086/4 1087/10 1087/15 1088/10 1090/4 1090/9 1090/14 1090/24 1097/5 1099/14 1100/16 1103/14 1104/20 1104/22 1105/9 1106/23 1108/23 1109/21 1110/6 1111/7
**wouldn't [3]** 1028/25 1058/21 1062/10
**wrinkles [1]** 1054/24
**write [5]** 1019/12 1019/13 1038/10 1041/2 1041/3
**write-up [2]** 1019/12 1019/13
**writes [4]** 1020/16 1050/11 1052/4 1070/17
**writing [5]** 1025/7 1056/7 1058/22 1107/21 1107/23
**written [17]** 989/9 990/25 1023/20 1025/2 1025/22 1027/17 1039/13 1044/5 1045/18 1045/22 1049/19 1064/12 1064/20 1064/22 1075/6 1075/9 1078/13
**wrote [1]** 1059/10
**Wyatt [1]** 981/12

## Y

**year [7]** 1029/1 1049/21 1061/2 1061/11 1077/4 1079/18 1081/11
**year's [1]** 1019/14
**year-end [2]** 1029/1 1079/18
**years [17]** 1018/25 1031/5 1036/3 1036/4 1036/4 1036/4 1036/10 1055/9 1063/2 1063/3 1079/9 1079/10 1081/21 1081/21 1099/11 1099/17 1105/8
**yes [25]** 985/20 985/25 986/3 986/18 986/20 989/19 996/4 997/20 1001/13 1003/14 1004/8 1010/9 1010/17 1011/16 1031/20 1032/13 1032/23 1033/5 1033/12 1033/21 1049/9 1063/19 1089/6 1112/4
**yesterday [3]** 1004/6 1004/9 1005/9
**yet [8]** 1021/24 1028/9 1046/6 1071/17 1080/7 1084/18 1091/23 1112/6
**you [466]**
**you'll [8]** 1015/15 1021/1 1024/1 1028/3 1029/13 1033/22 1069/1 1080/8
**you're [10]** 994/9 1013/20 1015/19 1023/10 1039/6 1042/15 1043/1 1046/9 1059/21 1071/22
**you've [2]** 1026/13 1060/10
**you.' [1]** 1021/14
**young [3]** 1083/2 1083/3 1083/14
**younger [1]** 1054/21
**your [155]**
**Your Honor [74]** 985/20 986/2 986/18 986/21 987/21 988/4 988/15 989/1 989/12 989/20 990/8 991/3 991/11 992/15 992/22 993/7 993/9 993/10 994/8 995/15 995/25 996/4 996/14 996/20 997/20 997/22 998/15 998/21 999/1 999/10 999/24 1000/3 1001/13 1002/7 1002/21 1002/25 1003/14 1004/2 1004/5 1006/14 1007/13 1008/13 1008/19 1009/7 1009/22 1009/24 1010/3 1010/9 1011/7 1013/9 1013/17 1013/25 1085/9 1086/13 1086/21 1087/3 1087/15 1087/20 1088/2 1088/15 1089/3 1090/10 1090/22 1091/4 1091/6 1091/19 1109/21 1110/1 1110/15 1110/17 1111/12 1111/21 1112/2 1112/25
**yours [2]** 1083/18 1083/23
**yourself [2]** 1071/7 1107/7