IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUZANNE IVIE,                                        Case No. 3:19-cv-01657-JR

       Plaintiff,                                  OPINION AND ORDER

       v.

ASTRAZENECA
PHARMACEUTICALS, LP,

       Defendant.

_____

RUSSO, Magistrate Judge:

Plaintiff Suzanne Ivie commenced this action against defendant AstraZeneca Pharmaceuticals in October 2019 for alleged violations of state and federal employment law. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Defendant now moves for a new trial pursuant to Fed. R. Civ. P. 59. For the reasons stated below, defendant's motion is granted.

Page 1 – OPINION AND ORDER

## BACKGROUND

The history of this matter is well known to the parties, such that it will only be repeated to the extent necessary to provide context for the present motion.

Plaintiff, a Utah resident, initiated this action in Oregon, alleging venue in Oregon was proper because "a substantial portion of the unlawful employment practices occurred within this judicial district." First Am. Compl. ¶ 4 (doc. 35). Namely, defendant "is a Delaware corporation and conducts significant business in Oregon," and plaintiff "oversaw approximately eight Sales Representatives who worked on accounts in Utah, Idaho, and parts of Oregon" in her role as Executive District Sales Manager with defendant. *Id.* at ¶¶ 6, 13.

Following the Court's March 2021 summary judgment ruling (largely denying defendant's motion), the following claims remained for trial: (1) discrimination/retaliation under the Age Discrimination in Employment Act ("ADEA"); (2) discrimination under Or. Rev. Stat. § 659A.030; (3) retaliation under the False Claims Act ("FCA"); (4) retaliation under Or. Rev. Stat. § 659A.199; (5) discrimination/retaliation under the federal Family and Medical Leave Act; and (6) discrimination/retaliation under the Oregon Family Leave Act. *See generally Ivie v. AstraZeneca Pharms., LP*, 2021 WL 1198306 (D. Or. Mar. 28, 2021).

In the parties' joint pretrial order, defendant provided general denials in regard to each of plaintiff's state law claims but did not raise any specific issues concerning venue. Joint Pretrial Order 19-20 (doc. 66).

In June 2021, a six-day jury trial was held. At the close of plaintiff's case-in-chief, defendant moved for judgment as a matter of law ("JMOL") under Fed. R. Civ. P. 50(a) on the state law claims, arguing there was insufficient evidence adduced at trial to allow those claims to go forward. That is, defendant asserted that Oregon's statutes could not be applied extraterritorially

to benefit a non-resident, when no wrongful conduct took place in Oregon. Trial Tr. Vol. 5, 848, 968-72 (doc. 170). Defendant filed a written motion contemporaneously. The case was then submitted to the jury, who ruled in favor of plaintiff solely in regard to her whistleblower retaliation claim under Or. Rev. Stat. § 659A.199, awarding $510,423 in economic damages and $1,872,000 in non-economic damages.

Defendant thereafter renewed its JMOL motion under Fed. R. Civ. P. 50(b) and, alternatively, sought a new trial pursuant to Fed. R. Civ. P. 59. The Court granted defendant's Rule 50(b) motion, vacated the jury verdict, and entered judgment in favor of defendant. *See generally Ivie v. AstraZeneca Pharms., LP*, 2021 WL 5167283 (D. Or. Nov. 5, 2021), *rev'd & remanded*, 2023 WL 3563007 (9th Cir. May 19, 2023), *cert. denied*, 144 S. Ct. 495 (2023). Specifically, the Court rejected plaintiff's arguments surrounding waiver and otherwise found she "failed to present facts required for the jury to find [in her favor] on the whistleblower protection claim," and that "uphold[ing] the jury's verdict would violate Oregon's state law presumption against extraterritoriality [and] choice of law rules [as well as] the Fourteenth Amendment." *Ivie*, 2021 WL 5167283 at *1-5.

On appeal, the Ninth Circuit reversed and remanded as follows:

This case presents a straightforward matter of civil procedure. Ivie asserts that AstraZeneca forfeited or waived its "Oregon-nexus argument" by failing to raise it in the parties' joint pretrial order or at any time prior to its initial JMOL motion brought at the close of Ivie's case . . . We agree with Ivie [and] have repeatedly emphasized that a party may not offer evidence or advance theories at the trial which are not included in the pretrial order or which contradict its terms. This requirement extends to any and all theories, which means that a defendant must enumerate its defenses in a pretrial order even if the plaintiff has the burden of proof.

AstraZeneca's frank admission that it failed to include the negative "Oregon-nexus" defense in the pretrial order resolves whether its Rule 50(b) motion raised a theory outside of the scope of that order . . .

Falling back, AstraZeneca's last-ditch defense of the judgment below is to assert the plain error doctrine, the district court's alternative ground for its decision. Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault. Among other requirements, plain error review applies only when needed to prevent a miscarriage of justice, meaning that the error seriously impaired the fairness, integrity, or public reputation of judicial proceedings.

[But] AstraZeneca does not attempt to show that merely applying the wrong state's law seriously impaired the fairness, integrity, or public reputation of judicial proceedings. Choice-of-law errors are (regrettably) a routine occurrence in civil litigation, and we will be very busy indeed on plain error review if we get into the business of overturning jury verdicts based on such errors.

We reverse the district court's order granting AstraZeneca's renewed motion for judgment as a matter of law, and we remand with instructions for the court to consider in the first instance whether the company's motion for new trial should be granted on the ground that the damages award was excessive.

*Ivie*, 2023 WL 3563007 at *1-3 (citations and internal quotations, brackets, and ellipses omitted).

The Ninth Circuit expressly declined to resolve whether "AstraZeneca's failure [to raise its Oregon-nexus argument in the joint pretrial order] was a forfeiture or a waiver." *Id.* at *1 n.1. Likewise, the Ninth Circuit did not reach the merits of defendant's Oregon-nexus defense; the only comment on the substantive aspects of the Court's decision came from the dissent:

Based on AstraZeneca's pleadings, the district court concluded that Ivie had "adequate notice" of the defense—presumably meaning that Ivie would not be prejudiced by AstraZeneca's raising of the defense in the Rule 50(b) motion. That doesn't seem wrong—Ivie hasn't proffered any additional evidence that she would have admitted at trial if she had more express notice of the extraterritorial defense. The district court's ruling then seems to fall within its discretion [and on] the merits, the district court got it right.

*Id.* at *3-4 (J. Bumatay, dissenting).

On remand, the parties requested, and the Court granted, supplemental briefing. Defendant lodged its supplemental brief on January 24, 2024, asserting that a new trial was warranted because: (1) the jury determined "AstraZeneca would have discharged Ivie regardless of her alleged whistleblower activities," such that "the $2.3 million damages award represents an unjust windfall"; (2) "the award of $1,872,000 for non-economic damages is grossly excessive and not

Page 4 – OPINION AND ORDER

supported by evidence"; and (3) plaintiff "fail[ed] to establish the Oregon nexus requirement for her state-law whistleblower claim." Def.'s Suppl. Br. 4, 6, 8 (doc. 202). In response, plaintiff sought clarification surrounding the scope of briefing. Essentially, plaintiff relied on the rule of mandate for the proposition that the Ninth Circuit's remand instructions effectively limited this Court's discretionary authority under Rule 59.

The Court ultimately instructed plaintiff "to address all issues raised in defendant's supplemental brief," highlighting the broad parameters of Rule 59 and the fact that the Ninth Circuit "did not resolve the substance of defendant's Oregon-nexus argument." Order 5-6 (Apr. 17, 2024) (doc. 214). Oral argument was held on September 19, 2024, and supplemental briefing was completed on October 17, 2024.

## STANDARDS

Pursuant to Rule 59(a), "[t]he court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Separately, under Rule 59(d), "the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion" within "28 days after the entry of judgment," or "grant a timely motion for a new trial for a reason not stated in the motion" after "giving the parties notice and an opportunity to be heard." Fed. R. Civ. P. 59(d). A new trial is appropriate where "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). The decision to grant or deny a new trial is "confided almost entirely" to the discretion of the district court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

In ruling on a Rule 59 motion, the district court is "not required to draw all inferences in favor of the verdict and [can] reweigh the evidence and make credibility determinations." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 845 (9th Cir. 2014); *see also Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) ("[t]he existence of substantial evidence does not . . . prevent the court from granting a motion for a new trial pursuant to Fed. R. Civ. P. 59 if the verdict is against the clear weight of the evidence [and the judge] need not view the evidence from the perspective most favorable to the prevailing party").

## DISCUSSION

Plaintiff opposes defendant's motion of the grounds that: (1) "[t]his Court is jurisdictionally limited [by the Ninth Circuit's remand order] to considering . . . solely [whether] the damages awarded by the jury are excessive"; (2) "AstraZeneca expressly waived any right to seek a new trial on its posttrial Oregon-nexus theory" because neither "its [renewed] motion for judgment as a matter of law [or appeal sought] a new trial on [the Oregon-nexus] issue in the alternative"; (3) "AstraZeneca's Oregon-nexus theory is wrong"; and (4) "no new trial is warranted because the jury did not award excessive or unjustified damages" since "the backpay and non-economic damages awards are sufficiently supported by the evidence." Pl.'s Resp. to Suppl. Br. 2, 4, 7, 11, 13 (doc. 219).

Plaintiff's first two contentions are unavailing. The first issue has been previously litigated by the parties and resolved by this Court. *See generally* Order (Apr. 17, 2024) (doc. 214). Briefly, it is undisputed that defendant sought post-trial for relief under both Fed. R. Civ. P. 50(b) and Fed. R. Civ. P. 59. This Court and, in turn, the Ninth Circuit addressed only Rule 50(b), and the Ninth Circuit's ruling was limited to "procedural issues surrounding the joint pretrial order" – in particular, whether a party can viably advance theories at trial that "are not included in the pretrial

order or which contradict its terms." *Id.* at 5; *Ivie, 2023 WL 3563007* at \*1. As defendant emphasized at oral argument, the Ninth Circuit's decretal language must be read in light of the decision as a whole, which, significantly, is silent as to forfeiture/waiver, the merits of defendant's Oregon-nexus argument, and the relief available pursuant to Rule 59. The Ninth Circuit therefore did not address (and, by extension, there is no rule of mandate relating to) the substantive issues that form the basis of the parties' supplemental briefing.

This distinction is important because Rule 50 and Rule 59 impose discrete standards.[1]

*Experience Hendrix L.L.C.*, 762 F.3d at 842; *see also Maron v. Va. Polytechnic Inst. & State Univ.*,

---

[1] At the hearing, plaintiff asserted: "the Ninth Circuit held that AstraZeneca could not undo the jury's verdict on liability, because the verdict did not 'result in a manifest miscarriage of justice,'" which is the standard that would apply if defendant had "merely forfeited" (as opposed to waived) its Oregon-nexus argument. Hearing (Sept. 19, 2024) (doc. 226). In so arguing, plaintiff cited to Fed. R. Civ. P. 59(e) and the lack of any "new evidence or new dispositive authorities handed down after trial" in support of the proposition that "[a] party cannot raise new theories or defenses after trial that were not presented to the jury simply because it lost." Hearing (Sept. 19, 2024) (doc. 226); *see also* Pl.'s Resp. to Renewed Mot. JMOL 18-20 (doc. 160) (relying on Rule 59(e) to oppose defendant's motion for a new trial); *but see Remington v. Mathson*, 2018 WL 11014377, \*1, 3 (N.D. Cal. June 26, 2018), *aff'd*, 804 Fed.Appx. 783 (9th Cir. 2020) (Rules 59(a) and (d) "provide . . . the grounds upon which a new trial may be granted," whereas Rule 59(e) "allows a party to file a motion to alter or amend a judgment after one has been entered"). But as addressed at the hearing, as well as in defendant's briefing and the Court's clarification order, Rule 59(d) does emphatically grant the district court authority to order a new trial based on theories or defenses that were not presented to the jury. Furthermore, as discussed at other points throughout this litigation, the Ninth Circuit did not, in fact, reach the issue of liability or defendant's Oregon-nexus argument. Finally, and relatedly, it is well-established that a new trial may be warranted "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, *or* to prevent a miscarriage of justice." *Molski*, 481 F.3d at 729 (emphasis added); *see also Carpenter v. Perry*, 2023 WL 2352360, \*7-8 (S.D. W.Va. Mar. 3, 2023) (articulating the differing standards for a Rule 59 motion based on the "weight of the evidence" vs. a "miscarriage of justice"); *Murphy v. Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) ("[i]t is clear that the district judge had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice . . . The court's control over a trial is illustrated by the court's *sua sponte* power to grant a new trial on grounds not alleged by a party") (citing Fed. R. Civ. P. 59(d)). In other words, even assuming the Ninth Circuit's discussion of the plain error doctrine were relevant here, it would not necessarily foreclose a new trial under these

2013 WL 3879684, *2-3 (W.D. Va. July 26, 2013) (inquiry into appropriateness of a new trial under Rule 59 is "broader [than under Rule 50]—it allows the Court both to weigh evidence and to consider credibility" or "to grant a new trial on its own initiative or on an issue not raised in a party's new trial motion," and "and there is no requirement that evidence be construed in the light most favorable to the nonmoving party"). As a result, courts routinely exercise discretion to grant new trials even if Rule 50(b) relief is not warranted. *See, e.g.*, *Crown Cent. Petroleum Corp. v. Brice*, 427 F.Supp. 638, 642-43 (E.D. Va. 1977); *cf. ESW Holdings v. Roku, Inc.*, 2021 WL 3742201, *3 (W.D. Tex. Aug. 24, 2021) ("a new trial can be appropriate even when a judgment n.o.v. is not") (citation and internal quotations omitted).

Even accepting that defendant's renewed JMOL motion could be read as failing to seek a new trial due to the lack of an Oregon-nexus, that would not foreclosure the Court from ordering a new trial on that basis pursuant to the plain language of Fed. R. Civ. P. 59(d). *See Lloyd v. Greater Cleveland Reg'l Transit Auth.*, 2022 WL 1028121, *6 (N.D. Ohio Apr. 6, 2022) ("Rule 59(d)'s second sentence presupposes that a party already moved for a new trial but allows a court to grant the motion for any reason the court sees fit – so long as the court provides the parties with notice and the opportunity to be heard, if the court intends to grant the motion based on its own rationale"); *see also Experience Hendrix L.L.C.*, 762 F.3d at 845 ("[u]nlike with the district court's Rule 50(b) analysis, the district court . . . was not limited to the grounds [the defendant] raised in support of his new trial motion, but instead could (and did) sua sponte raise its own concerns"); *Murphy*, 914 F.2d at 186 n.5 (affirming three of the five reasons proffered by the district court for

---

circumstances. *See Murphy*, 914 F.2d at 187 n.7 ("it is not at all clear that Rule 51 prevents a court from granting a new trial for, among other reasons, erroneous jury instructions in order to prevent a miscarriage of justice . . . the prime purposes of Rule 51, to bring the mistake to the court's attention and to further appellate review, are not applicable when the court, *sua sponte,* exercises its broad discretion to grant a new trial on these grounds").

ordering a new trial, noting the "first reason was raised by the [plaintiffs] in their Rule 59(a) motion" and that the other two reasons were "raised [by the district judge] sua sponte after giving the officers notice and an opportunity to be heard").[2]

In other words, plaintiff's arguments surrounding Rule 50 and waiver miss the mark.[3] *See Maron*, 2013 WL 3879684 at *3 (rejecting an analogous argument on the basis of Rule 59(d)). Indeed, plaintiff does not directly engage with the plain language of Fed. R. Civ. P. 59(d), despite this Court's invitation to do so, and the fact that this rule and the Court's broad discretion related thereto have been addressed in both defendant's supplemental brief and prior orders. *See, e.g.,*

---

[2] Plaintiff's assertions surrounding the lack of notice are unpersuasive. The Oregon-nexus issue has been well argued and briefed before this Court. And, importantly, the parties' supplemental briefing and oral argument are sufficient to comply with Rule 59(d)'s requirements. *See Maron*, 2013 WL 3879684 at *3 (Rule 59(d) "expressly allows a court to grant a new trial on its own initiative on an issue not raised in a party's new trial motion"; supplemental briefing and oral argument "are sufficient notice to rule on a ground even if that ground was not raised at all in [the defendant's] initial motion").

[3] Even so, it is difficult to construe the record in a manner that supports plaintiff's contention that defendant "made the strategic decision not to also seek a new trial on [the Oregon-nexus] issue." Pl.'s Resp. to Suppl. Br. 6-7 (doc. 219); *see also United States v. Chichester*, 312 F.2d 275, 281-82 (9th Cir. 1963) (waiver is "generally defined as an intentional relinquishment of a known right") (citation and internal quotations omitted); United States v. Olano, 507 U.S. 725, 733 (1993) (because intent is a necessary element of waiver, "[w]aiver is different from forfeiture" – i.e., "the failure to make the timely assertion of a right"). Defendant's renewed JMOL specified, in relevant part: "Under Federal Rule of Civil Procedure ('Rule') 50(b) and 59, AstraZeneca moves the Court for an order directing judgment as a matter of law in favor of AstraZeneca and against Plaintiff on Plaintiff's Sixth Claim for Relief. As a result of such an order, AstraZeneca would also be entitled to judgment in this case. Additionally, AstraZeneca seeks a new trial, conditionally if judgment as a matter of law is granted, or independently if judgment as a matter of law is not granted." Def.'s Renewed JMOL 1 (doc. 152). In the memorandum that followed, defendant discussed both Oregon-nexus and excessive damages issues. *See generally id.* As such, while it is true that defendant's specific arguments related to the Oregon-nexus requirement are largely confined to its discussion of Rule 50(b), it is clear from both its initial and renewed JMOL that defendant disputed liability because it was uncontested at trial that "all the individuals surrounding plaintiff's allegation of whistleblower retaliation worked elsewhere, plaintiff worked in Utah, and all the relevant complaints and decisions relevant to the whistleblower claim occurred outside of Oregon." Opinion & Order 6-8 (Nov. 5, 2021) (doc. 174).

Def.'s Suppl. Br. 9 (doc. 202); Order 4-6 (Apr. 17, 2024) (doc. 214); *see also Justice  v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015), *aff'd*, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). Finally,  it is undisputed that the lack of a sufficient factual nexus between damages and an element of the plaintiff's claim is a recognized basis for ordering a new trial. With those issues clarified, the Court turns to the parties' remaining disputes.

## I.    Damages Award

The purpose of compensatory damages is not punishment, but to compensate the plaintiff for "the concrete loss [they] suffered by reason of the defendant's wrongful conduct." *Cooper Indus. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). A district court may thus order a new trial where the jury's finding of compensatory damages "is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

"[T]he factors properly considered in determining the potential excessiveness of an award for emotional distress . . . include the factual context in which the emotional distress arose; evidence corroborating the testimony of the plaintiff; the nexus between the conduct of the defendant and the emotional distress; the degree of such mental distress; mitigating circumstances, if any; physical injuries suffered due to the emotional distress; medical attention resulting from the emotional duress; psychiatric or psychological treatment; and the loss of income, if any." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007); *accord  Bell v. Williams*, 108 F.4th 809, 832 (9th Cir. 2024) ("[c]ourts consider several factors in determining when an [emotional distress] award is grossly excessive").

Plaintiff brought two whistleblower retaliation claims to trial: a federal claim under the FCA and a state law claim under Or. Rev. Stat. § 659A.199. The claims were predicated on the same factual nexus. *See* Trial Tr. Vol. 6, 1086 (doc. 171) (plaintiff identifying the same underlying conduct as a protected activity and characterizing the claims as identical: "The Oregon whistleblower protection law mimics the False Claims Act. A violation of one is a violation of the other"). The jury ruled in favor of defendant on the former but in favor of plaintiff on the latter. It then awarded backpay and emotional distress damages, but no front pay.[4]

Based on these undisputed facts, defendant argues that "the difference is attributable to differences in the standards for liability under the two different statutes, as articulated in the Court's jury instructions." Def.'s Renewed JMOL 14 (doc. 152). For the FCA claim, the jury was instructed that, to prevail, plaintiff must prove each of the following elements by a preponderance of the evidence: (1) "she complained about her manager's alleged encouragement of off-label drug marketing"; (2) "defendant [terminated her] employment"; and (3) "plaintiff was subjected to the adverse employment action because she engaged in an activity protected by the False Claims Act." Final Jury Instrs. 14 (doc. 143). The jury was further informed that the only dispute concerned the third element, explaining: "A plaintiff is 'subjected to an adverse employment action' because she

---

[4] Generally, back pay includes wages and employee benefits the plaintiff would have received from the date of the wrongful discharge – i.e., the time the discriminatory conduct causes economic injury – to the date of judgment. *See, e.g.*, Final Jury Instrs. 22 (doc. 143). And front pay describes the "monetary amount equal to the present value of the wages and benefits that plaintiff would have earned had her employment not been terminated for the period from the date of your verdict until the date when Plaintiff would have voluntarily resigned/retired or obtained other employment." *Id.* Compensatory damages encompasses "impairment of reputation, personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citation and internal quotations and ellipses omitted). Plaintiff sought $575,982 in back pay, $3,005,021 in front pay, and $2,102,400 in "non-economic damages, emotional distress, suffering, and reputational harm." Trial Tr. Vol. 6, 1030-31, 1035 (doc. 171); Pl.'s List of Damages 2 (doc. 74).

engaged in activity protected by the False Claims Act if the adverse employment action would not have occurred *but for* her engagement in that activity." *Id.* (emphasis added).

For the state law whistleblower retaliation claim, the jury was directed that, to prevail, plaintiff must prove each of the following elements by a preponderance of the evidence: (1) she "reported information that she believed to be evidence of a violation of a state or federal law, rule, or regulation"; (2) she "acted in good faith in reporting the information"; (3) she "suffered an adverse employment action"; and (4) there "was a causal link between the plaintiff's report of information that she believed to be evidence of a violation of a state or federal law, rule or regulation and the adverse employment action." *Id.* at 15. The jury was then instructed that "defendant disputes the first, second, and fourth elements," and a "causal link" exists "if the plaintiff's report was *a factor that made a difference* in the employment decision." *Id.* (emphasis added).

Plaintiff now maintains that "the FCA is a completely different statute and the jury could've determined that [she] did not succeed on the FCA [claim] for various reasons." Pl.'s Resp. to Suppl. Br. 14 n.2 (doc. 219). But the elements of the federal and state whistleblower retaliation claims overlap in relevant part except as to causation, and both plaintiff's arguments at trial and the jury instructions themselves support this plain language reading. Accordingly, the jury necessarily determined that, although plaintiff's whistleblower activities were a factor in her termination, her termination would have occurred despite those activities. While, as plaintiff correctly denotes, this fact does not generally preclude recovery under Or. Rev. Stat. § 659A.199, it can limit her entitlement to back pay and other compensatory damages under Supreme Court precedent.

That is, "[i]t is bedrock law that 'requested relief' must 'redress the alleged injury.'" *Babb v. Wilkie*, 589 U.S. 399, 413 (2020) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103

(1998)). Consistent with "traditional principles of tort and remedies law[,] [r]emedies should not put a plaintiff in a more favorable position than he or she would have enjoyed absent discrimination." *Id.* at 413-14. Therefore, while a plaintiff may be able to establish a statutory violation by proving their protected status or activity was a factor in the challenged decision, the plaintiff nonetheless must prove that retaliation or "discrimination was a but-for cause of the employment outcome" in order to obtain backpay and other compensatory damages like emotional distress. *Id.* at 404-07, 413.

Plaintiff attempts to distinguish *Babb* on the grounds that "the ADEA explicitly applies a different causation standard from the Oregon Whistleblower Protection Law." Pl.'s Resp. to Suppl. Br. 14 (doc. 219). However, as *Babb* makes clear, the ADEA, like Or. Rev. Stat. § 659A.199, does not require "but-for" causation to demonstrate liability. This limitation is instead based on sound and longstanding remedial principles of general applicability. *See Hudson v. Am. Fed'n of Gov't Emps.*, 2024 WL 1716646, *6 (D. D.C. Apr. 22, 2024) (extending *Babb*'s "but-for" damages limitation to claims under the Labor-Management Reporting and Disclosure Act, noting the limitation was "necessary to avoid handing plaintiffs a windfall in situations where the employer would have made the same decision absent consideration of [protected status]," and was "not based on the statutory text [of the ADEA], but rather on precedents and traditional principles of tort and remedies law") (citations and internal quotations omitted); *Lewis v. Kendall*, 2022 WL 19408074, *6-7 (N.D. Fla. Dec. 12, 2022) (*Babb*'s remedial discussion precluded the plaintiff "from recovering backpay or other compensatory damages [in relation to her Title VII retaliation claim] even if she shows that any of the adverse employment actions were 'tainted' by retaliatory animus because she cannot establish that such animus was the but-for cause of those actions," such that "the only monetary damages [potentially available] are nominal damages").

Stated differently, irrespective of the nature of the employment claim, "the court cannot place the plaintiff in a better position than she would have been in had the employer not discriminated against her," which means that "remedies for a retaliation violation that tainted the decision-making process but were not a but-for cause of personnel action are limited" – i.e., when the employer retaliates or "discriminates in the decision-making process but the employee would have been fired, anyway, for a nondiscriminatory reason, the employee is not entitled to remedies like reinstatement and backpay." *Buckley v. Sec'y of Army*, 97 F.4th 784, 794-98 (11th Cir. 2024) (citations and internal quotations omitted); *see also Huff v. Buttigieg*, 42 F.4th 638, 652 (7th Cir.), *reh'g denied*, 2022 WL 16640618 (7th Cir. Nov. 2, 2022) ("[t]o be clear, a finding of liability [as to the retaliation claim] would not necessarily entitle [the plaintiff] to reinstatement, lost wages, and compensatory damages" under *Babb*); *Kelly v. Walsh*, 2021 WL 12191267, *15 n.16 (N.D. Ga. Dec. 6, 2021), *adopted by* 2022 WL 22352500 (N.D. Ga. Mar. 1, 2022) ("but-for causation is still important in determining the appropriate remedy. Establishing via sufficient evidence that [the plaintiff's protected status] tainted or played any part in the alleged differential treatment . . . allows a plaintiff to make a claim for injunctive or prospective relief [but to obtain] compensatory damages, reinstatement, backpay, or other relief related to the end result of an employment decision, a plaintiff must still establish that [the protected status] was a but-for cause of the ultimate employment outcome") (collecting cases).

In fact, this remedial limitation has been applied prior to *Babb* and in a variety of contexts, including in relation to state law statutory claims. *See Aguinaga v. United Food & Com. Workers Int'l Union*, 993 F.2d 1463, 1473 (10th Cir. 1993) (in regard to a Labor Management Relations Act claim, "[i]t is improper . . . to award back pay if it can be shown that the employees would have lost their jobs at a later date even if they had been treated fairly"); *Ackerman v. Western Elec. Co.,*

643 F.Supp. 836, 854 (N.D. Cal. 1986), *aff'd*, 860 F.2d 1514 (9th Cir. 1988) (in regard to a California Fair Employment and Housing Act claim, "[a] wrongfully terminated employee is not entitled to back pay for a period when he or she would not have been on the job in any event for a reason unrelated to the unlawful conduct of the employer").[5]

As the Supreme Court explained thirty years ago in *McKennon* (albeit in relation to evidence acquired after the employment relationship ended):

> The employee's wrongdoing must be taken into account, we conclude, lest the employer's legitimate concerns be ignored. The ADEA, like Title VII, is not a general regulation of the workplace but a law which prohibits discrimination . . . In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern for the relative moral worth of the parties, but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing . . . Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information.

*McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361-62 (1995) (internal citations and quotations omitted); *see also Weil v. Citizens Telecom Servs. Co., LLC*, 2019 WL 5862965, *3 (W.D. Wash. Nov. 8, 2019) ("[c]ourts limit claims for back pay and front pay made by an employee who succeeds on the merits of their discrimination claims where the employee would have been subsequently terminated for lawful or non-discriminatory reasons") (collecting cases).

---

[5] Plaintiff's financial economics expert, Richard Edelman, Ph.D., "include[d] an anticipated promotion for Ms. Ivie in 2020" in his backpay calculation, such that her damages encompassed an additional $55,000 in annual income from that point forward. Trial Tr. Vol. 5, 788-89, 794 (doc. 170). But the record contains no indication that plaintiff would have been promoted; rather, her testimony merely reflected that she was hoping and anticipating being able to advance within the organization prior to being terminated. Trial Tr. Vol. 4, 708-10 (doc. 169); *see also* Trial Tr. Vol. 5, 912-20 (doc. 170) (defendant's labor economics expert, Edward Bierhanzl, Ph.D., testifying that plaintiff's backpay "would not exceed $410,000," denoting "the correct number to use is what her actual earnings were, which would be $55,000 less than what Dr. Edelman had"); *id.* at 895-99 (defendant's Human Resources Business Partner, Amy Welch, testifying that plaintiff had not been flagged for promotion and the job plaintiff had mentioned as a potential promotion opportunity was actually "a lateral role" that did not entail a pay increase).

As such, the backpay awarded in this case was clearly not supported by the evidence.[6] The Court likewise cannot conclude that a rational connection exists between the jury's emotional distress damages award and the record. Here, as noted above, the jury awarded plaintiff $510,423 in economic damages and $1,872,000 in non-economic damages on her Or. Rev. Stat. § 659A.199 claim. Plaintiff testified that she first started experiencing symptoms of anxiety and depression in September or October 2018, which was a stressful time because she was having "a bad second half of the year," among "other things." Trial Tr. Vol. 4, 705-06 (doc. 169).

Leading up to her ethics complaint in December 2018, plaintiff remained stressed: "I wasn't able to sleep [and had] a knot in [my] stomach." *Id.* at 565, 706-07. Plaintiff also testified about the anxiety she felt from calling the ethics hotline so close to Christmas and waiting for a response until January. *Id.* at 566-67. Plaintiff stated she "wasn't necessarily able to function during that time," but still "made sure the kids were happy and all of that." *Id.* at 566; *see also id.* at 674 (plaintiff clarifying that she was able to put light and pinecone decorations on the Christmas tree with her 10 and 13 year old children).

---

[6] As noted at oral argument, damages awarded under Or. Rev. Stat. § 659A.885(1) – including for back pay associated with violations of Or. Rev. Stat. § 659A.199 – are typically for the court to determine. Hearing (Sept. 19, 2024) (doc. 226) (citing *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, 2023 WL 371649, *10-11 (D. Or. Jan. 24, 2023)). Because no party had addressed this issue previously, the Court requested supplemental briefing on what impact, if any, the failure to submit the back pay portion of plaintiff's state law claims (at least as they relate to Or. Rev. Stat. § 659A.885(1)) had on the overall supportability of the damages awarded in this case and the procedures relating to a new trial. Plaintiff focused on Fed. R. Civ. P. 39 and defendant's purported consent to the issue of back pay being tried by the jury. Defendant, in turn, argued that the jury's back pay verdict was advisory such that the Court should deny backpay. Yet the issue here is not whether the jury's verdict was merely advisory – indeed, it was not, given that no party objected to the submission of plaintiff's backpay claims to the jury. While alone not sufficient to warrant a new trial, the fact that backpay under Or. Rev. Stat. § 659A.199 is not traditionally a jury question accentuates the inherent problems with the damages award in this case.

The family then went on a trip to the Dominican Republic where plaintiff was "nervous" about her ethics hotline call: "I took my iPad to the Dominican Republic just in case I wanted to get an email or see what was going on." *Id.* at 567. On the second night of their vacation, her husband "could see" that she was anxious so they went for a walk on the beach during which she started crying and told him she "was really scared." *Id.* Plaintiff said they discussed that they were "in a beautiful place and we got our kids there and we have fun things planned. So we were just going to try to focus on that. So we did." *Id.*

In further support of her emotional distress damages, plaintiff testified that, after receiving performance coaching in March 2019, she took medical leave for her pre-existing migraine condition, which was exacerbated by the stress and anxiety she was experiencing at work. *Id.* at 585; *see also id.* at 715 (plaintiff indicating she went to the emergency room for migraines in early 2018); 717 (plaintiff specifying she suffered from migraines and used migraine medication since 2012). And, in May 2019, plaintiff was "devasted" and "shocked" to learn that her off-label marketing and age-discrimination complaints were deemed "unsubstantiated." *Id.* at 590-91, 594, 596. After plaintiff was terminated in June 2019, her anxiety and "depression just notched up some more" because she was "the primary caregiver to [her] children and family." *Id.* at 600. Plaintiff ultimately found other employment, but not in the pharmaceutical field or with comparable pay. *Id.* at 601.

Plaintiff's primary care physician, Cheryl Johnson, M.D., testified as a lay witness that plaintiff visited her in March 2019 (a few months after the ethics hotline complaint) for "migraines, to discuss insomnia, cholesterol." *Id.* at 691, 693. Dr. Johnson's notes from this visit recounted plaintiff's report that she suffered "multiple migraines daily," which made it "hard to drive safely" and "hard to look at a computer screen," and that "[t]his caused increased [stress, anxiety,] and

depression." *Id.* Dr. Johnson said that plaintiff "mention[ed] work and stress and work, not anything really more specific than that." *Id.* at 694. The doctor admitted her notes did not reflect a diagnosis of anxiety or depression, but indicated that she "should have put anxiety on there" because plaintiff was "start[ed] on medication for it." *Id.* at 697-98.

Plaintiff's remaining witnesses were three friends – two from college, Judy Gibb and Dawn Benson, and a parent from her child's basketball league, Suzanne Capell. Benson testified that they met up for a "girls' weekend" at plaintiff's house in Utah in July 2019, during which they found plaintiff to be "very different" – "really not present," "very distracted," and "somewhat withdrawn." *Id.* at 725-26. Benson and Gibbs testified that plaintiff "would go to bed early"; when they watched a movie, plaintiff "fell asleep." *Id.* at 720, 726. After the girls' weekend, plaintiff was more "surfacey" in a "group chat" with her friends. *Id.* at 721, 726. And since that time, plaintiff "has been very withdrawn and very shut down and really closed off." *Id.* at 729.

Capell, who "always [sat with plaintiff]" but "never hung out" with her "outside of basketball," testified that toward the end of 2018 plaintiff "quit coming to as many games" – maybe only "[a] game or two a week," down from "two to three" – and did not sit by Capell or chat as much." *Id.* at 699-701. Capell did not discuss the changes in plaintiff's behavior with her; she merely observed that plaintiff "[j]ust seemed off and stressed." *Id.* at 701-02.[7]

The jury clearly found this testimony suggestive of sincere emotional distress as a result of defendant's actions, and the Court understands that the parties each possess different viewpoints

---

[7] At both oral argument and in her initial response, plaintiff also relied on the testimony of vocational expert Scott Sevart. Hearing (Sept. 19, 2024) (doc. 226); Pl.'s Resp. to Renewed Mot. JMOL 28 (doc. 160). While Mr. Sevart proffered testimony that was relevant and credible as to certain facets of plaintiff's reputational harm, the Court does not find, in reweighing the evidence, that it overarchingly supports the damages award in this case. *See, e.g.*, Trial Tr. Vol. 4, 735-53 (doc. 169); Trial Tr. Vol. 5, 789-94, 896-901, 908-31 (doc. 170).

regarding this evidence (and rely on different comparator precedent). The Court does not find the cases cited by the parties particularly instructive, insofar as they concerned distinct factual circumstances or provide insufficient context (and, in some circumstances, revolved around divergent statutory schemes). *See Bell*, 108 F.4th at 832 ("the evidence presented at trial" and "awards in comparable cases" are especially relevant to determining whether an emotional distress award is excessive; however, "in an area as subjective and difficult to quantify as emotional damages, courts must exercise caution when comparing damages awards between cases. Even if two cases appear factually similar, the strength of evidence presented at trial may vary in ways impossible to fully appreciate on appellate review").

But both *Fresquez v. BNSF Railway Co.*, 52 F.4th 1280 (10th Cir. 2022) (cited by plaintiff) and *Longfellow v. Jackson Cnty.*, 2007 WL 682455, *2 (D. Or. Feb. 28, 2007) (cited by defendant) suggest that a plaintiff "may not recover damages for distress incurred pre-termination [where her] claim is for retaliatory termination." *Longfellow*, 2007 WL 682455 at *2; *Fresquez*, 52 F.4th at 1315-16; *but see* Pl.'s Resp. to Renewed Mot. JMOL 21 (doc. 160) ("[t]he witness testimony supported that her termination was not the leading cause of Ivie's emotional distress, as explained below, majority of Ivie's emotional distress developed while she was still employed").

And *Paul v. Asbury Auto. Grp., LLC*, 2009 WL 188592 (D. Or. Jan. 23, 2009), which presents the most relevant comparator from this District, cuts against the jury's verdict in this case (even adjusting for inflation). In *Paul*, the jury awarded $2.1 million in emotional distress damages to a plaintiff testifying to stress, depression, a loss of motivation, the deterioration of personal and professional relations, isolation, and an inability to engage in normal activities, concentrate, or eat as the result of racial discrimination and a hostile work environment. *Id.* at *8. The plaintiff's daughter reported that he "seemed different, that he had become a quiet and reserved person, that

he lost his appetite, and that he was angry, sad and depressed." *Id.* The court nonetheless remitted the award to $150,000 based on the fact that the defendant did not terminate the plaintiff or subject him to physical abuse, and he otherwise had no "need for short-term or ongoing psychological counseling of any kind as a result of [his employment] experiences." *Id.* at *9. He also did not "testif[y] to economic difficulties after leaving the dealership [or] any long-term emotional distress," and was only "affected by the hostile work environment for eleven months . . . the bulk of [which occurred over] six months or so." *Id.*

Although the underlying claims (and, to an extent, the degree of emotional distress) differ here, *Paul* is nonetheless consistent with more recent case law emanating from this District. For instance, in *Joseph v. West Linn Paper Co.*, 2020 WL 2462439 (D. Or. Apr. 24), *adopted by* 2020 WL 2415678 (D. Or. May 12, 2020) – which arose in the context of a motion for default judgment – the plaintiff testified that "he experienced loss of sleep for two years, depression, and anxiety"; "he has experienced and continues to experience worry and distress at the loss of his income and the effect his termination has had on his career"; and, as "his family's primary wage earner at the time[,] he could not provide for his [wife and son who lived with him, and was forced to sell] his home and mov[e] in with his daughter," which "made him feel like less of a father." *Joseph*, 2020 WL 2462439 at *5. After requesting additional "evidence of emotional distress awards in similar Oregon employment cases," the court found that $100,000 was appropriate and "more in line with recent emotional distress awards . . . in this district." *Joseph*, 2020 WL 2462439 at *6 (collecting cases).

Even the case advanced by the plaintiff in *Joseph* – i.e., *Arnold v. Pfizer, Inc.*, 2015 WL 268967 (D. Or. Jan. 21, 2015) – counsels that the non-economic damages awarded in this case go beyond the upper limit (again, even adjusting for inflation). *Id.* at *5; *see also Arnold*, 2015 WL

268967 at *6 (upholding the jury's emotional distress award of $500,000 where the plaintiff's long-term career in the pharmaceutical industry "was ruined" and "she was unable to find work in [her] field"; she "testified that her termination shook her confidence, caused anger, and disappointment, and that she felt embarrassed and humiliated [and] sick and panicked"; and her husband testified that the plaintiff "felt jumped, stunned and devastated, was stressed-out, and could not sleep").

Notably, there is no indication that plaintiff has been diagnosed with a permanent mental or emotional disorder, nor is there any medical or other evidence in the record showing that the distress caused by defendant's wrongful actions would affect plaintiff's pre-existing migraine disorder in the long-term. While plaintiff had a nearly 20 year career with defendant and there is evidence reflecting that her role as a pharmaceutical sales manager may no longer be viable, the fact remains that the jury explicitly determined her whistleblowing activity was not the "but for" cause of her termination, and that defendant otherwise did not discriminate against her due to her age or medical leave. Finally, based on the evidence presented in this case, the jury could only speculate as to what emotional distress plaintiff might suffer in the future as a result of defendant's actions. If, as plaintiff maintains in portions of her briefing, the majority of her emotional distress arose prior to her termination, then damages correspond with a relatively discrete period.

In sum, in light of the timing and magnitude of the underlying events as they relate to plaintiff's Or. Rev. Stat. § 659A.199 claim, coupled with the incongruity in the jury's verdict given the disparate outcomes of the state and federal whistleblower retaliation claims, the Court finds the damages award to be grossly excessive and/or based on conjecture and guesswork.[8]

---

[8] Plaintiff argued at length at the hearing that, "if there is any way to read a jury's verdict as consistent, the Court must do so." Hearing (Sept. 19, 2024) (doc. 226). The Court agrees with plaintiff's recitation of the law but does not find the verdict in this case to be

## II.    Oregon-Nexus Requirement

As noted above, plaintiff argues that this Court incorrectly determined that a nexus to

Oregon is a required element of a claim under Or. Rev. Stat. § 659A.199, relying on the same

arguments she raised in opposition to defendant's renewed JMOL. Pl.'s Resp. to Suppl. Br. 12

(doc. 219). This Court, however, has previously considered and rejected the substance of these

arguments. *See generally Ivie*, 2021 WL 5167283. Importantly, plaintiff does not explain how, if

the Court is correct in its perception of the Oregon-nexus requirement, the jury's multi-million-

dollar verdict can be sustained. *Cf. Carpenter*, 2023 WL 2352360 at *11-12 (miscarriage of justice

necessitating a new trial existed where, although the parties participated in the creation of and

consented to the jury instructions regarding a particular claim, "as given at trial [it] did not properly

instruct the jury on the law governing the foregoing facts"). And, as addressed herein, the Ninth

Circuit's decision does nothing to foreclose a new trial under Rule 59 on this basis.

Accordingly, the facts adduced at trial, which establish the lack of an Oregon-nexus,

underscore the need for a new trial (as opposed to remittitur). *See Bush v. Texaco, Inc.*, 504 F.Supp.

670, 672-73 (D.C. Tex. 1981) (where the jury's finding as to liability "is contrary to the great

---

accentuates the manner in which the jury's award was against the clear weight of the evidence. That is, in regard to the FCA, the jury found that plaintiff's whistleblowing was not the "but for" cause of her termination; and the jury otherwise ruled in favor of defendant in regard to plaintiff's five other claims. *See* Trial Tr. Vol. 4, 614-17, 653-54, 656 (doc. 169) (plaintiff conceding that she did not spend 80% of her coaching time with customer engagement in accordance with company written and verbal guidance, and that her "team rated 106th out of 128 through the whole country through the third quarter of 2018"). The jury did not award front pay, but nonetheless honored nearly the full extent of plaintiff's back pay and non-economic damages requests, despite the fact that plaintiff would have been terminated regardless, and there was a dearth of evidence at trial suggesting that plaintiff was likely to suffer increased migraines and emotional distress in the future as the result of defendant's wrongful actions. *Cf. Bell*, 108 F.4th at 834 (although "testimony alone can support compensatory damages for emotional distress and pain and suffering . . . exceptional damages awards require substantial evidence [in order to be upheld pursuant to a Rule 59 motion], whether it comes in the form of detailed testimony or other supporting documentation").

weight of the evidence," there "is no need to calculate the maximum possible award that the evidence would sustain and require [remittitur]" even if the damages award is also excessive); *see also Bell,* 108 F.4th at 831, 835 ("[t]his court has no precedent expressly ordering a remittitur of a compensatory damages award based on emotional distress" because they "lack such an objective measure").

## CONCLUSION

For the reasons stated above, defendant's Motion for a New Trial (doc. 152) is GRANTED. As a result, defendant's Bill of Costs (doc. 176) is DENIED as moot. The parties may file renewed motions for costs and/or attorney fees following the final resolution of plaintiff's claims.

IT IS SO ORDERED.

DATED this 23rd day of October, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge