**R. Scott Oswald**, *admitted pro hac vice*
**Anita M. Chambers**, *admitted pro hac vice*
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
achambers@employmentlawgroup.com
*Attorneys for Plaintiff*

(Additional Counsel Shown on Signature Page)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **SUZANNE IVIE,** | |
| ***Plaintiff,*** | |
| **v.** | **Case No.: 3:19-cv-01657-JR** |
| **ASTRAZENECA PHARMACEUTICALS LP,** | |
| ***Defendant.*** | |

## TABLE OF CONTENTS


STATEMENT OF FACTS ..... 1

ARGUMENT ..... 8

I. AstraZeneca's four-year-old arguments have already been addressed by the Ninth Circuit and thus summary judgment should be denied. ..... 8

II. AstraZeneca trained Ivie in Oregon law to sell its products, and she had to train employees in Oregon law to ensure proper sales. ..... 9

a. Ivie managed a territory that included Oregon. ..... 11

b. Ivie's performance evaluations were based on her district, which included Oregon. ..... 12

c. An Oregon whistleblower statute has a distinct legal analysis and scheme that is different than an Oregon discrimination statute ..... 13

d. AstraZeneca's legal arguments are based on distinguishable cases. ..... 16

III. There is no violation of the Fourteenth Amendment. ..... 17

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 8

*Bass v. Cty. Of Butte*,
458 F.3d 978 (9th Cir. 2006) ........ 14

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404, (9th Cir. 1991 ........ 7

*Brunozzi v. Cable Commc'ns, Inc.*,
851 F.3d 998 (9th Cir. 2017) ........ 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 8

*Fairbank v. Wunderman Cato Johnson*,
212 F.3d 528 (9th Cir. 2000) ........ 8

*House v. State Indus. Acc. Comm'n*,
117 P.2d 611 (Or. 1941) ........ 16

*Kane v. Matson Navigation Co.*,
No. 23-15534, 2024 WL 1988838 (9th Cir. May 6, 2024) ........ 16, 17

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........ 18

*State v. Gaines*,
206 P.3d 1042 (Or. 2009) ........ 14

*Ward v. United Airlines, Inc.*,
466 P.3d 309 (Cal. 2020) ........ 16, 17

### Statutes

Fed. R. Civ. P. 56 ........ 7

OR. REV. STAT. § 659A.003 ........ 15

OR. REV. STAT. § 659A.006 ........ 15

OR. REV. STAT. § 659A.199 ........ 5, 14, 15, 16

OR. REV. STAT. § 659A.203 ........ 14

OR. REV. STAT. § 689 .......... 10

**Other Authorities**

Katherine Florey, *Resituating Territoriality*, 27 Geo. Mason L. Rev. 141, 192 (2019) .......... 18

Or. H. Comm. on Bus. & Labor Hearing on HB3162 (Apr. 10, 2009) .......... 15

Or. Sen. Comm. on Com. & Workforce Dev., Oregon Bill Summary, 2009 Reg. Sess. H.B. 3162 .......... 15

**PLAINTIFF SUZANNE IVIE'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Suzanne Ivie files this opposition to Defendant AstraZeneca's motion for summary judgment. Def.'s Mot. for Summ. Judg. (Oct. 20, 2025) (ECF 268) ("Def.'s Mot.").

**STATEMENT OF FACTS**

Plaintiff Suzanne Ivie began working at AstraZeneca in or about September 2000 as an Executive District Sales Manager ("E-DSM") within AstraZeneca's respiratory products division. Def.'s Mot. at 4 (ECF 268); First Am. Compl. ("FAC") ¶¶ 9, 12 (ECF 35); Ans. to First Am. Compl. ("Ans.") ¶¶ 11-12 (ECF 36).

In 2010, after a federal investigation prompted by a False Claims Act whistleblower, Astra-Zeneca paid $520 million to resolve allegations that it engaged in a five-year campaign of off-label marketing of the anti-psychotic Seroquel.[1] FAC ¶¶ 9, 11; Ans. ¶¶ 9, 11. As part of the civil settlement of these allegations, which included effective fraud against federal insurance programs such as Medicare and Medicaid, AstraZeneca entered into a five-year Corporate Integrity Agreement. *Id.* Then, in 2018, AstraZeneca paid $110 million to settle claims that it engaged in further off-label marketing in Texas, even while the Corporate Integrity Agreement was in place. [2]

In the wake of these expensive public missteps, AstraZeneca provided its employees several avenues to report internally on the company's problematic practices. These included

[1] Press Release, U.S. Dep't of Justice, Pharmaceutical Giant AstraZeneca to Pay $520 Million for Offlabel Drug Marketing (Apr. 27, 2010), https://tinyurl.com/2p8nbf6b
[2] News Release, Ken Paxton, Att'y Gen. of Texas, AG Paxton Recovers $110 Million for Texas in Medicaid Fraud Settlements (Aug. 7, 2018), https://tinyurl.com/mfd5jkda; Seroquel Settlement Agreement and Release (July 27, 2018), https://tinyurl.com/2rwv8ku3; Crestor Settlement Agreement and Release (July 27, 2018), https://tinyurl.com/yss296kf.

directly reporting concerns to the company's compliance department and making anonymous calls to the compliance hotline. *See* Trial Tr. Vol. 3. 462:12-20 (June 16, 2021) (ECF 168).

Ivie supervised and directed her Pharmaceutical Sales Specialists ("PSS") as they visited physicians in their territories to market AstraZeneca's products. *See* Trial Tr. Vol. 4. 538:24-539:6, 713:21-714:16 (June 17, 2021) (ECF 169). Ivie's PSSs serviced accounts in Utah, Idaho, and Oregon. ECF 168 at 428:25-429:4; Stephanie DiNunzio Dep., 13:11-14:7 (Oct. 2, 2025) (**Exhibit 1**); Suzanne Ivie Dep. 48:4-8 (Oct. 3, 2025) (**Exhibit 2**).

All district managers at AstraZeneca are trained on state laws that affect sales in their district, and AstraZeneca's compliance department oversees this training. DiNunzio Dep. 19:20-20:4.

In October 2017, Stephanie DiNunzio became Ivie's direct superior. FAC ¶ 15. DiNunzio evaluated Ivie on her performance in her overall geography, including Oregon. *See* DiNunzio Dep. 13:7-10; 14:10-12; 14-15-17.

On December 18, 2018—the day after Ivie exchanged text messages with Dr. Hosford to get more insight regarding AstraZeneca's plan for primary prevention with one of its drugs—she spoke to DiNunzio on the phone for a performance meeting. ECF 169 at 554:18-555. Ivie shared her concerns that marketing Daliresp for primary prevention and for mild-to-moderate COPD patients was unethical and illegal since it was not approved with that language, making this an off-label marketing tactic. ECF 169 at 557:14-559-6. DiNunzio pushed back, emphasizing AstraZeneca's need to make a profit. *Id.* Ivie reiterated her concerns and stated she wouldn't implement DiNunzio's strategy. *Id.*

DiNunzio did not offer a substantive response but immediately turned to Ivie's work performance in 2018, characterizing it as unsatisfactory. *Id.* at 559:4-562:7. DiNunzio criticized

Ivie for spending too little time in the field with her sales reps, even though DiNunzio had previously indicated she had no problems with Ivie's allocation of her time. *Id.* DiNunzio then noted that Ivie had not reached 100 percent of her sales objectives for each quarter of 2018, instead achieving only 97 or 98 percent. *Id.* DiNunzio rated Ivie a 1 or 2 out of 5 on her performance review, leaving Ivie "completely shocked" and "absolutely devastated." *Id*. Ivie's performance in Oregon also affected her year-end review. Ivie Dep. 47:6-48:3. The Oregon district was essential to DiNunzio because it affected her financial outcomes and ranking. Ivie Dep 47:6-48:3.

Ivie lodged an anonymous report about DiNunzio with AstraZeneca's ethics hotline. ECF 169 at 563:6-564:1. On January 15, 2019, compliance manager Mike Pomponi and human resources employee Karen Belknap figured out the anonymous report came from Ivie and interviewed her about it. ECF 169 at 569:3-20. Ivie reported that DiNunzio told her team to promote Daliresp in primary prevention, and that AstraZeneca needed to get more patients. *See* ECF 23 ¶ 31*;* Case: US-37335 – EP Call Centre (Dec. 19, 2018) (**Exhibit 3**) (Ivie's anonymous complaint). Pomponi and Belknap told Ivie they took her complaint very seriously and would get back to her soon. ECF 169 at 569:6-18.

At a district meeting on January 17, 2019, DiNunzio again asserted that Daliresp wasn't selling sufficiently and said that Ivie's sales team, which serviced the Oregon market, should "go after . . . mild to moderate patient[s] with Daliresp." ECF 169 at 571:24-572:17. After DiNunzio left the meeting, Ivie clarified for her team that the proper use of Daliresp is to "reduce the risk of CO[PD] exacerbation in patients with *Severe* COPD with chronic bronchitis & history of exacerbations." 168 at 480:7-11. In mid-February, shortly after Ivie's second internal report regarding DiNunzio's off-label marketing strategy, DiNunzio and Belknap informed Ivie that she

might receive a written warning, ECF 169 at 583:12-17. DiNunzio and Belknap then issued Ivie a written warning on March 5, 2019. Joint Pretrial Order ¶ 3H (April 28, 2021) (ECF 66); ECF 169 at 681:4-8. Ivie's written warning concerned her "overall coaching activity" in her District. DiNunzio Dep. 17:6-18.

Shortly after receiving the written warning, Ivie took medical leave until April 16, 2019, because the stress of the situation exacerbated her pre-existing chronic migraine condition. ECF 169 at 585:11-22. She returned to work on April 16, 2019, but remained on approved intermittent leave so that she could take time off as necessary. *Id.* at 587:13-588:2. When Ivie returned, DiNunzio told her that Ivie no longer held her national leadership positions, *id.* at 588:2-10, including her position as Compliance Ambassador, ECF 66 at 3. Ivie was also removed from the text group chat that the team used to communicate, ECF 169 at 592:12-594:20, 89, and locked out of the computer systems used by DSMs to report their sales rep coaching and review performance data. *Id.* at 586:20-587:3.

AstraZeneca terminated Ivie on June 6, 2019. *Id.* at 596:22-597:23. AstraZeneca's only explanation was that Ivie continued to raise complaints that AstraZeneca believed were unsubstantiated, and that Ivie was not accepting the results of the investigations and continued to raise similar complaints. ECF 169 at 597:8-22.

Larry Hinson, another Executive District Manager under DiNunzio, also complained about Stephanie DiNunzio, including a complaint of off-label marketing. Declaration of Larry Hinson ¶ 3 (June 3, 2025) (**Exhibit 4**); Larry Hinson Dep., 30:11-19; 32:9-23; 41:21-42:10; 44:21-45:12 (Oct. 3, 2025) (**Exhibit 5**).

Ivie filed her civil complaint on October 16, 2019, ECF 1, and her First Amended Complaint on June 9, 2020, ECF 35. AstraZeneca moved for summary judgment on all nine

counts of Ivie's First Amended Complaint on October 5, 2020. ECF 38. This Court granted summary judgment regarding Counts VIII and IX (NDAA retaliation) on March 28, 2021. Op. & Order (Mar. 28, 2021) (ECF 52).

A six-day jury trial of the remaining counts commenced in June 2021. Consistent with Rule 16, the parties submitted a proposed joint pretrial order. Proposed Joint Pretrial Order (Apr. 27, 2021) (ECF 64). At the close of Ivie's case, AstraZeneca made an oral Rule 50(a) motion for judgment as a matter of law on the three Oregon state law claims on the grounds that Oregon employment law only applies to out-of-state residents if there has been an act of discrimination or retaliation that occurred in Oregon. Op. & Order at 7 (Nov. 5, 2021) (ECF 174). This Court denied the Rule 50(a) motion and allowed the claims to proceed to the jury. Trial Tr. Vol. 6 984:2-24 (ECF 171).

The jury returned a verdict in Ivie's favor on her OR. REV. STAT. § 659A.199 claim for $2,382,423. Jury Verdict (June 22, 2021) (ECF 146). The jury awarded economic and non-economic damages on the claim, and this Court entered judgment on June 23, 2021. Judgment (June 23, 2021) (ECF 149). AstraZeneca renewed its motion for judgment as a matter of law on July 21, 2021, in which it argued for the first time that Utah law should govern the action. Mot. for Judgment as a Matter of Law, or in the Alternative, for a New Trial at 16-18 (July 21, 2021) (ECF 152).

This Court entered judgment as a matter of law in favor of AstraZeneca on November 5, 2021, ruling that Ivie failed to present facts required for the jury to find in her favor on Ivie's Oregon Whistleblower Protection retaliation claim because she presented no evidence to support the question of an Oregon-nexus for his claim. ECF 175. Ivie noticed her appeal on November

24, 2021, ECF 178, and filed her opening brief in the U.S. Court of Appeals for the Ninth Circuit on May 10, 2022. 9th Cir. Dkt. Entry 24.

The Ninth Circuit issued a Memorandum Opinion with Dissent on May 19, 2023. 9th Cir. Dkt. Entry 51. The Ninth Circuit "reverse[d] the district court's order granting AstraZeneca's renewed motion for judgment as a matter of law, and [] remand[ed] with instructions for the court to consider in the first instance whether the company's motion for new trial should be granted on the ground that the damages award was excessive." *See id*.

AstraZeneca submitted a supplemental brief to this Court regarding a previously filed motion for a new trial on January 24, 2024. Suppl. Br. on Mot. for a New Trial (Jan. 24, 2024) (ECF 202). This Court granted AstraZeneca's motion for a new trial on October 23, 2024. Op. & Order (Oct. 23, 2024) (ECF 229). Ivie filed a motion to take an interlocutory appeal of this Court's order granting AztraZeneca's motion for a new trial[3], but this Court denied Ivie's motion on February 4, 2025[4].

The Court ordered discovery reopened for 60 days on April 21, 2025. Minutes of Proceedings (Apr. 21, 2025) (ECF 244). Ivie served her second requests for admission, second set of interrogatories, and second set of requests for production of documents on May 2, 2025. Declaration of Anita Mazumdar Chambers ¶ 4 (Dec. 1, 2025). AstraZeneca objected to Ivie's discovery requests mainly because it stated that the requests were overly broad and unduly burdensome to search or had already been answered previously. Ivie filed her first motion to compel on July 18, 2025[5], because AstraZeneca would not provide full and complete responses. This Court ordered that the reopened discovery be limited to the Oregon-nexus issue and

[3] Mot. for Interlocutory Appeal Under 28 U.S.C. § 1292(b) (Nov. 4, 2024) (ECF 230).
[4] Op. & Order (Feb. 4, 2025) (ECF 239).
[5] Motion to Compel (July 18, 2025) (ECF 255).

conditionally denied Ivie's motion to compel discovery on August 5, 2025. Order (Aug. 5, 2025) (ECF 261).

The Parties requested,[6] and this Court granted[7], an extension of the reopened discovery until October 6, 2025. Ivie amended her written discovery requests on August 19, 2025, in which she revised and removed some requests under the Court's August 5, 2025, Order limiting discovery to the Oregon nexus. Chambers Declaration ¶ 6. AstraZeneca responded to Ivie's second amended discovery requests on September 18, 2025, objecting to the exact requests it had objected before to. Motion to Compel Discovery at Exhibit 1-3 (ECF 265). Ivie and AstraZeneca were still working on dates set for depositions until this time and depositions were not complete as of Friday, October 3, 2025. Chambers Declaration ¶ 8, 9. Ivie's counsel requested to meet and confer with AstraZeneca's counsel on Monday, October 6, 2025, to address the issues raised in Ivie's first motion to compel. Chambers Declaration ¶ 10. The Parties met and conferred on October 9, 2025. *Id.* AstraZeneca's counsel asked for time to review and get back to Ivie's counsel early the following week regarding whether they would provide supplemental discovery. Chambers Declaration ¶ 11. AstraZeneca stated it was again standing on its objections, would not supplement any discovery, and thereafter, Ivie moved to compel and motion for leave to take a deposition on October 17, 2025. ECF 265 & 266. AstraZeneca filed the instant motion for summary judgment on October 20, 2025. ECF 268.

## STANDARD OF REVIEW

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bhan v. NME Hosps., Inc.*, 929

---

[6] Joint Motion for Extension of Time of Discovery. (Aug. 26, 2025) (ECF 262).

[7] Order (Aug 26, 2025) (ECF 263).

F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).

## ARGUMENT

### I. AstraZeneca's four-year-old arguments have already been addressed by the Ninth Circuit and thus summary judgment should be denied.

In its motion for summary judgment, AstraZeneca attempts to reargue the same arguments it raised to the Ninth Circuit, all of which were examined and rejected. Ivie previously argued – and incorporates fully in this response that AstraZeneca forfeited or waived its "Oregon-nexus argument" by failing to raise it in the parties' joint pretrial order or at any time prior to its initial JMOL motion brought at the close of Ivie's case. The Ninth Circuit agreed with Ivie, also stating that neither party directly addressed the geographic nexus issue at trial. Mem. Disposition with Dissent ¶ 3 (May 19, 2023). The Ninth Circuit also opined that, "AstraZeneca does not attempt to show that merely applying the wrong state's law "seriously impaired the fairness, integrity, or public reputation of judicial proceedings. *Id.*at ¶ 3. The Ninth Circuit explained that choice of law errors are regrettable and routine in civil litigation and the Circuit Court would be very busy on plain error review if it became involved in overturning jury verdicts based on such errors.

And finally, the Ninth Circuit's mandate provided a clear and specific instruction for the district court to "remand with instructions for the court to consider in the first instance whether the company's motion for new trial should be granted on the ground that the damages award was excessive."

AstraZeneca has fought its multi-million-dollar loss for four years, relitigated the same issues before this Court, made Ivie incur additional costs and expenses on an issue AstraZeneca was required to raise in its pretrial order but didn't, delayed discovery and then withheld fulsome discovery on its artificially created "Oregon nexus" element. The Oregon Whistleblower Statute *has no element* requiring the proof of an "Oregon nexus"; it is not in case law or the statute. Even if there were such a nexus, there is no case law interpreting any such nexus, providing no clear standard or benchmark to prove the "Oregon nexus," an element wholly made-up by AstraZeneca after it lost at jury trial four years ago. AstraZeneca's actions over the last two and half years since losing before the Ninth Circuit, are the precise shenanigans that Ivie was concerned about following a jury awarding her a verdict.

## II. AstraZeneca trained Ivie in Oregon law to sell its products, and she had to train employees in Oregon law to ensure proper sales.

All AstraZeneca district sales managers are trained on the laws of each state over which they supervise sales for their district. AstraZeneca's compliance department ensures that supervisors are aware of the laws, rules, and regulations governing the districts they supervise. *See* **Exhibit 1**, DiNunzio Dep. at 18:19-19:4. Regardless of the size of the district, AstraZeneca continuously trains supervisors to keep them up to date on the specific rules, laws, and regulations for all states in that district. *See* **Exhibit 5**, Hinson Dep. at 52:13-17; 54:5-55:9; 55:15-56:14.

Former AstraZeneca executive district manager, Larry Hinson, explained this in more detail:

> "5. Suzanne Ivie conducted work in Oregon. She was responsible for the Boise, Idaho region which extended into eastern Oregon. As an Executive District Manager, Suzanne was tasked with supervising her team, which included individuals who marketed AstraZeneca products within those areas.
>
> 6. AstraZeneca sales territories (i.e., the Boise territory) are not strictly defined by state boundaries, but are instead determined by individual zip code assignments. This structure posed challenges for Executive District Managers. I recall that on at least one occasion, my team was primarily assigned to cover southern Oregon but also included a single zip code in California. This meant that my team were required to comply fully with California's regulations and be knowledgeable about that state's policies.
>
> 7. AstraZeneca conducted compliance training once or twice per year for all employees, and the training was tailored to reflect the specific laws of each state the team covered. If my team had just one zip code in California, I was responsible for understanding and complying with all relevant California regulations. While the sales team had a responsibility to understand and comply with those rules as well, I had a higher level of responsibility. This meant that I was required to be trained in each of my assigned States's Medicaid and Federal Medicare programs. Suzanne Ivie would have been required to do the same.
>
> Declaration of Larry Hinson (June 3, 2025) (**Exhibit 4**).

Specifically, AstraZeneca's state and government affairs office is responsible for knowing the relevant Oregon laws, rules, and regulations that govern the company's sales and then training supervisors and sales teams in that district to ensure compliance. **Exhibit 5**, Hinson Dep. at 61:18-62:13; 64:3-20. When a state has its own rules and regulations, AstraZeneca is responsible to ensure that its leaders and professionals are aware of those rules and regulations through regular compliance training. *Id.* at 19:20-20:4.

Here, Oregon has specific laws, rules, and regulations regarding sales. *See* generally OR. REV. STAT. § 689; *see also* **Exhibit 1**, DiNunzio Dep. at 21:22-22-9 (DiNunzio stating that it is "certainly possible" that she received Medicare and Medicaid regulations and law in Oregon and that it was as "certainly possible" that she disseminated the information to sales professionals). If

Ivie had not completed the appropriate training courses, she would have been terminated. *See* **Exhibit 5**, Hinson Dep. at 52:25-53:23. AstraZeneca even held engaging with insights discussions regarding the states in which it was selling. *See* **Exhibit 5**, Hinson Dep. at 47:17-48:4. Off-label marketing was not allowed at AstraZeneca, which includes their sales in Oregon. *Id.* at 56:16-21; ECF 169 at 620:14-16; 636:25-637:16. Knowing these were a violation of Oregon law and AstraZeneca policies, Ivie reported her concerns,[8] and Larry Hinson reported his concerns to Karen Belknap and Mark Hartman, DiNunzio's supervisor. *See* **Exhibit 5**, Hinson Dep. at 30:11-19; 32:9-23; 41:21-42:10; 44:21-45:12. Instead of AstraZeneca resolving the problem, AstraZeneca terminated Ivie, and Ivie filed suit. Ivie even reported concerns to Oregon itself through the Oregon Labor Civil Rights Division. Letter from Oregon Labor and Industries (July 20, 2020) (**Exhibit 6**).

Because AstraZeneca trained employees on specific laws regarding pharmaceutical sales as it relates to Oregon, it is clear that Ivie was trained, and had to ensure her subordinates were trained, on the laws, rules, and regulations of Oregon to ensure compliance and proper sales tactics, further evidence establishing Ivie's work in Oregon.

**a. Ivie managed a territory that included Oregon.**

Ivie's managerial district included "the Boise-Idaho Territory," which included Oregon. *See* **Exhibit 1,** DiNunzio Dep. at 13:22-4:7; **Exhibit 2,** Ivie Dep. at 48:4-8. Not only was Oregon included in her managerial responsibilities, but Ivie also directly supervised AstraZeneca employees who sold and traveled within Oregon's borders. *See* Compilation of Suzanne Ivie's Direct Reports' Expenses, and Sales Reports (**Exhibit 7**). Ivie continuously had to monitor and evaluate her subordinates' sales performance in Oregon as well as other states. *Id.* Ivie's

[8] ECF 169 at 565:24-566:10; 569:6-18; 636:25-637:16

supervision of her subordinates always made her presence have impact in Oregon. *See* **Exhibit 2**, Ivie Dep. at 42:2-43:6. AstraZeneca's assertion that Ivie needed a physical presence in Oregon to be subject to Oregon law is misguided. Just as AstraZeneca – or the majority of its sales representatives, HR, and business associates – does not have a physical location in Oregon, it sells products in Oregon and is subject to Oregon's laws, rules, and regulations. AstraZeneca assigning Ivie to a supervisory position that included Oregon in her supervisory district establishes that Ivie's job had impact and connection to Oregon.

**b. Ivie's performance evaluations were based on her district, which included Oregon.**

Ivie's performance was "evaluated based on [her] performance of [her] overall geography that included Oregon." *See* **Exhibit 1**, DiNunzio Dep. at 12:19-13:10; 14:8-17. AstraZeneca issued Ivie its first written warning about her "overall coaching activity" for her District, which included Oregon. *Id.* at 17:13-22. Since her District included the Boise-Idaho territory, this warning was based on her overall activity in Oregon as well as other states. Not only did it include this, but it also specifically named her Boise-Idaho territory. *See* First Written Warning (Mar. 1, 2019) (**Exhibit 8**). Ivie's performance in Oregon affected her year-end review. *See* **Exhibit 2**, Ivie Dep. at 47:6-48:3. Not only was the Oregon district important to Ivie's evaluations, it was also crucial to DiNunzio's region as Ivie's supervisor. *See* **Exhibit 1,** DiNunzio Dep. at 29:12-17. DiNunzio's financial outcomes and ranking lab were dependent on AstraZeneca's Oregon district sales. *See* **Exhibit 2**, Ivie Dep. at 47:6-48:3. So not only did Ivie have to perform well in Oregon, but so did her supervisor, Stephanie DiNunzio.

Further, AstraZeneca's assertion that Ivie changed her signature block after retaining an attorney is meritless and lacks correlation. *See* Def's Mot. at 2. AstraZeneca's March 19, 2019, written warning to Ivie specifically mentioned the Boise-Idaho territory. *See* **Exhibit 8**. Ivie's

change to her signature block was only to ensure that DiNunzio looked on her favorably and that Ivie complied because the warning specifically referenced the Oregon-Boise area and none of the other areas Ivie supervised. *See* **Exhibit 2**, Ivie Dep. at 46:13-47:5. Therefore, AstraZeneca's argument that the change to Ivie's signature block came only after she had a call with counsel not only lacks foundation, it is also misleading to the Court.

AstraZeneca quotes the Court's decision stating that "that plaintiff either lives in Oregon or performs relevant work underlying her claim in Oregon" is precisely what has been proven here, though this is not based on preexisting case law or language of the statute *See* Mot. at 16. Ivie has shown that she performed "relevant work" underlying her "claim in Oregon" because her reviews, performance, and compensation were based on her sales in AstraZeneca's Oregon district. As a direct result, AstraZeneca issued Ivie a written warning and ultimately terminated her for whistleblowing that her supervisor, DiNunzio—who also benefited from sales in the Oregon district—was directing Ivie to coach her team to use off-label marketing to increase sales along Oregon's borders, in violation of Oregon law. Because Ivie's job duties, compensation, reprimand, and evaluation were based in part on the sales performance in Oregon, Ivie establishes that her job had impact and direct connection to Oregon.

**c. An Oregon whistleblower statute has a distinct legal analysis and scheme that is different than an Oregon discrimination statute.**

Because the "Oregon nexus" is a construct AstraZeneca created and is not defined in statute or in case law, any cases that AstraZeneca cites in its motion for summary judgment are either tort or discrimination claims, not whistleblower claims. For a discrimination or tort claims, it may be true that a nexus may be formed by the adverse action occurring in the State or the discriminatory activity taking place there, but for whistleblower retaliation the analysis is different. Assuming that there even is a requirement to show some Oregon nexus – which there

is not – that the activity that the whistleblowing is based on is occurring in or harming Oregon, the nexus is met for the purposes of a state whistleblower claim. If the objective of the Oregon Whistleblower law is to protect the public, then this interpretation of the nexus is the only way to further the terms of the statute. The same could be said for any other state whistleblower law. If the activity touches and harms the state, and there is standing to sue in that state, then the nexus requirement should be met.[9]

There is no Oregon appellate caselaw directly addressing whether OR. REV. STAT. § 659A.199 protects non-resident whistleblowers who work in the Oregon market and blow the whistle on illegal acts occurring in Oregon but suffer retaliation elsewhere. When interpreting Oregon law in the absence of controlling Oregon precedent, courts in the Ninth Circuit must "determine what meaning the state's highest court would give to the law" and "must follow the state's rules of statutory interpretation." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (citing *Bass v. Cty. Of Butte*, 458 F.3d 978, 981 (9th Cir. 2006)). The Oregon Supreme Court's follows a three step process when interpreting statutes: (1) "an examination of text and context"; (2) "consideration of pertinent legislative history that a party may proffer"; and (3) "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *State v. Gaines*, 206 P.3d 1042, 1050-51 (Or. 2009) (*en banc*).

Oregon law has long protected public employees from retaliation for whistleblowing. Oregon a public employees may not be disciplined for disclosing, among other things, "any information that the employee reasonably believes is evidence of [] [a] violation of any federal or state law, rule or regulation by," or of "substantial and specific danger to public health and safety

[9] Ivie maintains her argument she raised to the Ninth Circuit that if the Oregon Whistleblower claim reaches its merits, this issue is more appropriate for the Oregon Supreme Court to opine on its state whistleblower statute.

resulting from action of," her state employer. OR. REV. STAT. § 659A.203(1)(b) (formerly OR. REV. STAT. § 659.510 (1990)).

The Oregon Legislature, via HB 3162, undertook to extend whistleblower protections to private employees as well in 2009. Representative Judy Stiegler, the primary sponsor of HB 3162, stated that the "main motivation here was to provide to the private employee who was trying to do the right thing *the same rights and remedies* that are available to our public employees." Or. H. Comm. on Bus. & Labor Hearing on HB3162 (Apr. 10, 2009), at 3:48-59 (emphasis added), https://tinyurl.com/3tavxzej; *accord* Or. Sen. Comm. on Com. & Workforce Dev., Oregon Bill Summary, 2009 Reg. Sess. H.B. 3162 (May 18, 2009) ("Current law protects public employees from discrimination based on whistleblowing disclosures, but does not extend similar protection to private sector employees."). The resultant statute provides, in pertinent part:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

OR. REV. STAT. § 659A.199(1).

The explicit purposes of chapter 659A further underscore the legislative intent that § 659A.199 applies to protect whistleblowers situated similarly to Ivie. The legislature sought "to ensure the human dignity of all people within this state and protect their health, safety and morals," OR. REV. STAT. § 659A.003, and declared that unlawful employment practices "not only threaten[] the rights and privileges of [Oregon's] inhabitants but menace[] the institutions and foundation" of the State, OR. REV. STAT. § 659A.006(1). Application of § 659A.199 to this case protects Oregonians' health and safety and serves the State's interests in protecting itself and its institutions against fraud.

Oregon has a strong interest in protecting whistleblowers who speak out about illegal conduct occurring within Oregon's borders—an interest that's heightened in this case because that conduct places the health of the State's citizens at risk and threatens financial harm to the State itself. Antiretaliation provisions like § 659A.199 are integral to the mechanisms States use to protect themselves and their inhabitants against fraud.

**d. AstraZeneca's legal arguments are based on distinguishable cases.**

In support of its motion for summary judgment, AstraZeneca cited cases that present questions about jurisdiction argued before trial and do not address or analogize to the key facts at issue. AstraZeneca's caselaw is unpersuasive because these jurisdictional issues were all raised before trial, and the facts are not analogous to the caselaw AstraZeneca now proffers.

For instance, AstraZeneca cites *House v. State Indus. Acc. Comm'n*, 117 P.2d 611, 616 (Or. 1941), *Ward v. United Airlines, Inc.*, 466 P.3d 309, 321 (Cal. 2020) and *Kane v. Matson Navigation Co.*, No. 23-15534, 2024 WL 1988838, at *1 (9th Cir. May 6, 2024) to support its assertion that Ivie has no connection to Oregon, but none of these cases touch on facts that are key here. In *House*, when her husband died in a car accident in Oregon, a widow sued for Oregon workers' compensation benefits. AstraZeneca omits the key fact that the court found the decedent was a manager in California and, because he did no other work in Oregon besides passing through at the time of the accident, he was not entitled to those benefits. *House*, 117 P.2d at 616. Moreover, a worker's compensation claim is specific to the individual.

In *Ward*, the courts were battling over jurisdiction for several California resident pilots regarding their wages. *Ward*, 466 P. 3d at 740. The wages at issue in *Ward* were specific to each jurisdiction and affected only certain employees. *Ward* does not analogize to the current case facts because Ivie's supervision of other employees, evaluations that include performance within

that state, or training regarding specific state laws required to perform job duties are key. In *Kane*, the court grappled with jurisdiction over a sailor's breach of contract claims. *Kane*, 2024 WL 1988838, at *1. Contract claims affect each employee individually and, similar to *Ward*, *Kane* does not address Ivie's supervision of other employees, evaluations that include performance within the state, or training on specific state laws required to perform job duties.

In all of AstraZeneca's cited cases, the claims regarding a substantial tie between an employee and a state were litigated *before* the commencement of the trial or the issuances of the pretrial because they were issues about jurisdiction. The key difference in this case is that Ivie, a supervisor who managed employees in Oregon, reported wrongdoing that affected her subordinates in Oregon and violations of Oregon laws, which affect *Oregon citizens*, not just AstraZeneca employees.

**III. There is no violation of the Fourteenth Amendment.**

The parties have already briefed this issue before the Ninth Circuit and AstraZeneca simply tries to recycle its four-year old, red herring argument. AstraZeneca takes the position that because neither Ivie's whistleblowing nor retaliatory firing took place within Oregon's borders, Oregan law may not apply. But Ivie outlined in her Ninth Circuit briefing that DiNunzio oversaw Oregon sales of AstraZeneca drugs, directed her subordinates to sell those drugs off label and that was properly Oregon's concern. Appellant's Reply Br. at 21 (Aug. 11, 2022) [9th Cir. Dkt. Entry 39].

Moreover, *supra*, Ivie was continuously evaluated for her work in Oregon, and this work in turn affected her evaluations, compensation, and reviews. *See supra* p. 3, 10-11. The fact that AstraZeneca used Oregon-related information to evaluate her job performance alone shows significant contact with Oregon. If Ivie did not have significant contact with Oregon,

AstraZeneca would not have included that information in her performance evaluations, nor would it have been the subject of Ivie's first written warning. *See* **Exhibit 8**.

AstraZeneca sales representatives are responsible for more than one state. *See* **Exhibit 7** (showing that representatives are responsible for sales in two or more states). Ivie and DiNunzio were both responsible for two or more states. *See* **Exhibit 1**, DiNunzio Dep. at 13:5-14:7; **Exhibit 8**. Ivie's subordinates traveled to Oregon and made sales there during her tenure. **Exhibit 7**. Any sales or travel to Oregon required Ivie and her subordinates to be trained on Oregon laws, rules, and regulations. But AstraZeneca required more than just training on Oregon laws, rules, and regulations because AstraZeneca had its own Specific Restrictions on Interactions with Healthcare Professionals. *See* Specific Restrictions on Interactions with Healthcare Professionals (Feb. 7, 2017) (**Exhibit 9**). This is just another instance in which Ivie and her subordinates were regularly informed of specific regulations regarding Oregon and AstraZeneca sales. The fact that Ivie's subordinates traveled to, and made frequent sales in Oregon, coupled with Ivie's requirement to evaluate them regarding their sales and knowledge of Oregon laws, rules, and regulations, further raises Ivie's significant contact to support her claim of whistleblowing for off-label marketing of AstraZeneca products in Oregon.

The bar for due process is low. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)(citation omitted); *cf., e.g.*, Katherine Florey, *Resituating Territoriality*, 27 Geo. Mason L. Rev. 141, 192 (2019) (noting that this is an "exceedingly low standard" which the Supreme Court has "applied … loosely"). For all the reasons and facts outlined above, due process is satisfied. And if AstraZeneca takes the position that the application of Oregon law is not extraterritorial, then AstraZeneca's evaluation of Ivie regarding Oregon sales and supervision of

employees regarding Oregon sales, as well as Ivie's required training on all current Oregon laws are within the Oregon legislature's purview.

## CONCLUSION

For the foregoing reasons, this Court should deny AstraZeneca's Motion for Summary Judgment because Ivie established an Oregon-nexus regarding her whistleblowing retaliation claim and because AstraZeneca waived the defense when it failed to include it in the pre-trial statement, as required in the Ninth Circuit.

Date: December 1, 2025

Respectfully submitted,

*/s/ Anita M. Chambers*

R. Scott Oswald, *admitted pro hac vice*
Anita M. Chambers, *admitted pro hac vice*
The Employment Law Group, P.C.
1717 K St. NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2812
(202) 261-2835 (facsimile)
achambers@employmentlawgroup.com
soswald@employmentlawgroup.com

Daniel Woofter, *admitted pro hac vice*
Russell & Woofter LLC
1701 Pennsylvania Ave NW, Ste. 200
Washington, D.C. 20006
Phone: (202) 240-8433
dhwoofter@goldsteinrussell.com

Ashley A. Marton, OSB No. 171584
Cambreleng & Marton LLC
3518 S. Corbett Ave.
Portland, Oregon 97239
Phone: (503) 477-4899
Email: ashley@workplacelawpdx.com

*Counsel for Plaintiff Suzanne Ivie*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 1, 2025, a true and correct copy of the foregoing was served via ECF:

John C. Dodds Admitted Pro Hac Vice
Ryan McCarthy, Admitted Pro Hac Vice
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-4942
(215) 963-5001 (facsimile)
john.dodds@morganlewis.com
ryan.mccarthy@morganlewis.com

Thomas M. Peterson, Admitted Pro Hac Vice
Morgan Lewis & Bockius LLP
One Market Street, Spear Tower
San Francisco, CA 94105
(415) 442-1344
Thomas.peterson@morganlewis.com

*Counsel for Defendant AstraZeneca Pharmaceuticals, LP*

*/s/ Anita M. Chambers*
Anita M. Chambers