IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUZANNE IVIE,                                           Case No. 3:19-cv-01657-JR

         Plaintiff,                                  OPINION AND ORDER

     v.

ASTRAZENECA
PHARMACEUTICALS, LP,

         Defendant.
_____

RUSSO, Magistrate Judge:

     Defendant AstraZeneca Pharmaceuticals moves for summary judgment pursuant to Fed. R.

Civ. P. 56. For the reasons stated below, defendant's motion is granted, and this case is dismissed.

Page 1 – OPINION AND ORDER

## BACKGROUND[1]

The history of this matter is well known to the parties, such that it will only be repeated to the extent necessary to provide context for the present motion.

Plaintiff Suzanne Ivie, a Utah resident, initiated this action in October 2019 for alleged violations of Oregon state and federal employment law. Plaintiff initially asserted venue in Oregon was proper because defendant "conducts significant business in Oregon" and plaintiff "oversaw approximately eight Sales Representatives who worked on accounts in Utah, Idaho, and parts of Oregon" in her role as Executive District Sales Manager. First Am. Compl. ¶¶ 6, 4, 13 (doc. 35).

Following the Court's March 2021 summary judgment ruling (largely denying defendant's motion), plaintiff's discrimination and/or retaliation claims under the Age Discrimination in Employment Act, False Claims Act, Family Medical Leave Act, and state law claims remained.

In the parties' joint pretrial order, defendant provided general denials in regard to each of plaintiff's state law claims but did not raise any specific issues concerning venue. Joint Pretrial Order 19-20 (doc. 66).

In June 2021, following a six-day jury trial, the jury ruled in favor of plaintiff solely in regard to her whistleblower retaliation claim under Or. Rev. Stat. § 659A.199, awarding $510,423 in economic damages and $1,872,000 in non-economic damages. Prior to the case being submitted to the jury, defendant moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) on all state law claims, arguing Oregon's statutes could not be applied extraterritorially to benefit a non-

---

[1] To the extent defendant raises "evidentiary objections" in regard to plaintiff's opposition, this Court is not bound by either party's characterization of the evidence and instead independently reviews the record to determine whether summary judgment is appropriate. Def.'s Reply to Mot. Summ. J. 22-26 (doc. 286); Pl.'s Surreply 4-12 (doc. 289); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

resident because the evidence adduced at trial established that no wrongful conduct took place in Oregon.

Defendant thereafter renewed its request for judgement as a matter of law under Fed. R. Civ. P. 50(b) and, alternatively, sought a new trial pursuant to Fed. R. Civ. P. 59. The Court granted relief under Rule 50(b), vacated the jury verdict, and entered judgment in favor of defendant. Specifically, the Court rejected plaintiff's arguments surrounding waiver and otherwise found she "failed to present facts required for the jury to find [in her favor] on the whistleblower protection claim," and that "uphold[ing] the jury's verdict would violate Oregon's state law presumption against extraterritoriality [and] choice of law rules [as well as] the Fourteenth Amendment." *Ivie v. AstraZeneca Pharms., LP ("Ivie I")*, 2021 WL 5167283, *1-5 (D. Or. Nov. 5, 2021), *rev'd & remanded*, 2023 WL 3563007 (9th Cir. May 19, 2023), *cert. denied*, 144 S. Ct. 495 (2023).

On appeal, the Ninth Circuit reversed and remanded as follows:

> This case presents a straightforward matter of civil procedure. Ivie asserts that AstraZeneca forfeited or waived its "Oregon-nexus argument" by failing to raise it in the parties' joint pretrial order or at any time prior to its initial JMOL motion brought at the close of Ivie's case . . . We agree with Ivie [and] have repeatedly emphasized that a party may not offer evidence or advance theories at the trial which are not included in the pretrial order or which contradict its terms[.]

> AstraZeneca's frank admission that it failed to include the negative "Oregon-nexus" defense in the pretrial order resolves whether its Rule 50(b) motion raised a theory outside of the scope of that order . . . We reverse the district court's order granting AstraZeneca's renewed motion for judgment as a matter of law, and we remand with instructions for the court to consider in the first instance whether the company's motion for new trial should be granted on the ground that the damages award was excessive.

*Ivie I*, 2023 WL 3563007 at *1-3 (citations and internal quotations, brackets, and ellipses omitted).

The Ninth Circuit expressly declined to resolve whether "AstraZeneca's failure [to raise its Oregon-nexus argument in the joint pretrial order] was a forfeiture or a waiver." *Id.* at *1 n.1.

Likewise, the Ninth Circuit did not reach the merits of defendant's Oregon nexus defense; the only comment on the substantive aspects of the Court's decision came from the dissent:

> Based on AstraZeneca's pleadings, the district court concluded that Ivie had "adequate notice" of the defense—presumably meaning that Ivie would not be prejudiced by AstraZeneca's raising of the defense in the Rule 50(b) motion. That doesn't seem wrong—Ivie hasn't proffered any additional evidence that she would have admitted at trial if she had more express notice of the extraterritorial defense. The district court's ruling then seems to fall within its discretion [and on] the merits, the district court got it right.

*Id.* at *3-4 (J. Bumatay, dissenting).

On remand, the parties requested, and the Court granted, supplemental briefing surrounding defendant's motion for a new trial. Defendant lodged its supplemental brief on January 24, 2024, asserting that a new trial was warranted because: (1) the jury determined "AstraZeneca would have discharged Ivie regardless of her alleged whistleblower activities," such that "the $2.3 million damages award represents an unjust windfall"; (2) "the award of $1,872,000 for non-economic damages is grossly excessive and not supported by evidence"; and (3) plaintiff "fail[ed] to establish the Oregon nexus requirement for her state-law whistleblower claim." Def.'s Suppl. Br. 4, 6, 8 (doc. 202).

In response, plaintiff sought clarification surrounding the scope of briefing. Essentially, plaintiff relied on the rule of mandate for the proposition that the Ninth Circuit's remand instructions effectively limited this Court's discretionary authority under Rule 59. The Court ultimately instructed plaintiff "to address all issues raised in defendant's supplemental brief," highlighting the broad parameters of Rule 59 and the fact that the Ninth Circuit "did not resolve the substance of defendant's Oregon nexus argument." Order 5-6 (Apr. 17, 2024) (doc. 214).

In October 2024, following oral argument and additional briefing, the Court granted defendant's Rule 59 motion on the grounds that damages were excessive and not supported by the record. The Court also briefly addressed defendant's Oregon nexus defense, noting the seeming

lack of an Oregon nexus "underscore[s] the need for a new trial (as opposed to remittitur)." *Ivie v. AstraZeneca Pharms., LP ("Ivie II")*, 2024 WL 4553862, *13 (D. Or. Oct. 23, 2024) (internal citations and parentheticals omitted).

Plaintiff subsequently moved for an interlocutory appeal. In February 2025, the Court denied plaintiff's 28 U.S.C. § 1292(b) motion and ordered the parties to submit a Joint Status Report outlining next steps (and a corresponding proposed case schedule) within 30 days.

On April 7, 2025, the parties submitted their Joint Status Report, stating their respective positions as follows:

> AstraZeneca's position: AstraZeneca proposes to structure proceedings to allow, initially, a defense summary judgment motion on the basis that plaintiff cannot satisfy the Oregon nexus requirement . . . AstraZeneca does not see any need for further discovery given the narrowness of the issue to be addressed . . . [plus] it would be burdensome and duplicative to allow full discovery for a singular issue for which there are already available documents and testimony[.]
>
> Ivie's position: In light of this Court's previous rulings, Ivie requests a 120-day discovery period related to the Oregon nexus[.]

Joint Status Report ¶¶ 3-4 (doc. 242) (internal citations omitted; emphasis in original).

The Court held a telephonic hearing on April 21, 2025, and issued the resulting order: "Discovery is to be completed by 6/23/2025 for the limited purpose of completing all discovery as allowed by FRCP 26. Dispositive Motions are due by 6/30/2025." Order (doc. 244). On June 23, 2025, the parties filed a joint motion to extend the case deadlines, which the Court granted.

On July 17, 2025, defendant moved for a protective order "precluding Ivie from taking another Rule 30(b)(6) deposition" and limiting the scope of her pending "discovery to the Oregon nexus issue." Def.'s Mot. Prot. Order 1-2 (doc. 242). The next day, plaintiff moved to compel "full and complete responses to her Second Set of Interrogatories ('IROGs'), Second Set of Requests

for Production of Documents ('RFPDs'), Second Set of Request for Answers ('RFAs'), and to provide information on witness deposition availability." Pl.'s Mot. Compel 2 (doc. 255).

On August 5, 2025, the Court granted defendant's motion and granted in part and denied in part plaintiff's motion, explaining in relevant part that the parties' April 7, 2025, Joint Status Report "explicitly contemplated reopening discovery solely in relation to the Oregon nexus issue. The corresponding hearing and Order authorizing additional discovery/dispositive motions likewise pertained exclusively to the Oregon nexus issue, consistent with prior proceedings in this case." Order 5-6 (Aug. 5, 2025) (doc. 261) (internal citations omitted).

Plaintiff sent amended discovery requests to defendant on August 19, 2025. On August 26, 2025, the parties filed another joint motion to extend the case deadlines, which the Court granted.

Defendant responded to plaintiff's amended second discovery requests on September 19, 2025. Plaintiff contacted defendant about deficiencies with those responses on October 6, 2025 (i.e., the deadline for the close of discovery); she also stated, for the first time, that she planned to seek leave to depose two additional individuals. The parties met and conferred three days later.

On October 17, 2025, plaintiff moved to compel the two additional depositions, along with complete responses to certain RFAs, IROGs, and RFPDs.

On October 20, 2025 (i.e., the deadline for filing dispositive motions), defendant moved for summary judgment as to the Oregon nexus issue.

On November 5, 2025, the Court denied plaintiff's second round of recent discovery motions because they "were filed eleven days after the expiration of the discovery period," she "did not seek to confer surrounding the present motions prior to the discovery cut-off or extend the scheduling order," and "the record before the Court reflects that plaintiff knew of the witnesses she seeks to depose prior to the close of discovery." Order 6 (doc. 277). The Court also noted that

plaintiff neglected to "offer any explanation as to the likely benefit of [deposing the late-identified individuals] or why [they] would aid in resolving the Oregon nexus issue," and that "many of plaintiff's discovery requests, even as reworded, still relate to the merits of her claims (as opposed the Oregon nexus issue)." *Id.* at 10-11.

The same day, plaintiff requested an extension of time to respond to defendant's summary judgment motion, which the Court granted over defendant's objection. Oral argument was held in regard to defendant's summary judgment motion on February 4, 2026.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

**DISCUSSION**

Defendant argues that summary judgment is warranted because "four years ago . . . none of the facts relevant to Ivie's Oregon whistleblower claim occurred in Oregon" and "[s]upplemental discovery conducted after remand likewise revealed no material factual dispute regarding the location of any activity Ivie relates to her claims." Def.'s Mot. Summ. J. 1-2 (doc. 268).

Plaintiff opposes defendant's motion arguing: (1) "AstraZeneca forfeited or waived its 'Oregon-nexus argument' by failing to raise it in the parties' joint pretrial order or at any time prior to its initial JMOL motion brought at the close of Ivie's case," (2) defendant's summary judgment theory has "already been addressed [and rejected] by the Ninth Circuit," (3) defendant's summary judgment theory is not viable since "the Oregon Whistleblower Statute has no element requiring the proof of an 'Oregon nexus'" and it serves a "different [purpose] than an Oregon discrimination statute," and (4) an Oregon nexus exists because "AstraZeneca trained Ivie in Oregon law to sell its products, and she had to train employees in Oregon law to ensure proper sales"; she "managed a territory that included Oregon" – namely, the "Boise-Idaho territory"[2]; and her "performance evaluations were based on her district [which was] crucial to DiNunzio's region as Ivie's supervisor." Pl.'s Resp. to Mot. Summ. J. 8-9, 11-13 (doc. 282).

Plaintiff's first two contentions are unavailing, as they were previously litigated by the parties (on more than one occasion), and plaintiff has provided no argument or evidence suggesting any reason why the Court should diverge from its prior rulings. Notably, in resolving defendant's Rule 50(b) motion, the Court repudiated plaintiff's contention that "AstraZeneca waived the

---

[2] Plaintiff oversaw "three territories" – two in Salt Lake City, as well as the "Boise Territory," which encompassed southern Idaho and "a small sliver of Oregon." Pl.'s Resp. to Mot. Summ. J. Ex. 1, at 13-14 (doc. 284-1).

argument that Oregon's whistleblower protection statute cannot apply because it failed to plead it among its affirmative defenses." *Ivie I*, 2021 WL 5167283 at *2.

Concerning plaintiff's request for clarification surrounding the scope of the parties' supplemental briefing on remand, the Court noted that the Ninth Circuit "expressly declined to resolve whether defendant's failure to raise the Oregon-nexus argument before the close of plaintiff's case-in-chief was a forfeiture or a waiver," and "plainly did not resolve the substance of defendant's Oregon nexus argument." Order 4-5 (doc. 214).

And, as the Court explained in regard to defendant's motion for a new trial and plaintiff's corresponding argument that "AstraZeneca expressly waived any right to seek a new trial on its posttrial Oregon-nexus theory because neither its renewed motion for judgment as a matter of law or appeal sought a new trial on the Oregon-nexus issue":

> it is undisputed that defendant sought post-trial for relief under both Fed. R. Civ. P. 50(b) and Fed. R. Civ. P. 59. This Court and, in turn, the Ninth Circuit addressed only Rule 50(b), and the Ninth Circuit's ruling was limited to "procedural issues surrounding the joint pretrial order" – in particular, whether a party can viably advance theories at trial that "are not included in the pretrial order or which contradict its terms." As defendant emphasized at oral argument, the Ninth Circuit's decretal language must be read in light of the decision as a whole, which, significantly, is silent as to forfeiture/waiver, the merits of defendant's Oregon-nexus argument, and the relief available pursuant to Rule 59. The Ninth Circuit therefore did not address (and, by extension, there is no rule of mandate relating to) the substantive issues that form the basis of the parties' supplemental briefing.

*Ivie II*, 2024 WL 4553862 at *4-5 (internal citations and brackets omitted). The Court went on to detail the "discrete standards" imposed by Rules 50 and 59. *Id.* Accordingly, "as discussed at other points throughout this litigation, the Ninth Circuit did not, in fact, reach the issue of liability or defendant's Oregon-nexus argument" and, in any event, "Rule 59(d) . . . emphatically grant[s] the district court authority to order a new trial based on theories or defenses that were not presented to the jury." *Id.* at *4 n.1.

Turning to plaintiff's third argument, it is axiomatic that Oregon's statutes – irrespective of the particular conduct that they regulate – do not protect non-residents unless otherwise specified and in the absence of any connection to the forum. This has been the law of the state for 75 years:

> Oregon courts have consistently held that statutes must be construed to prohibit their extraterritorial application unless the language of the statute shows Oregon's Legislature intends them to have a broader scope . . . The Court will not depart from Oregon's default rule that its statutes ought not apply to conduct or people beyond its borders absent language about extraterritorial effect . . . Here, nothing in Oregon's Whistleblower Protection Law discloses any intent for the law to operate outside of Oregon: "It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions, or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation." ORS § 659A.199(1). The statute has no language to suggest it should (or could) apply outside Oregon. Without language about geographic scope or any other structural indication that ORS § 659A.199(1) should apply outside Oregon's borders, the Court therefore presumes it has no effect on conduct or to individuals outside of the state.

*Ivie I*, 2021 WL 5167283 at *3 (citing *Swift & Co. v. Peterson*, 192 Or. 97, 121, 233 P.2d 216 (1951); *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918); *State ex rel Juvenile Dep't v. Casteel*, 18 Or.App. 70, 75, 523 P.2d 1039 (1974); and *State v. Meyer*, 183 Or.App. 536, 545, 53 P.3d 940 (2002)).

Indeed, it is well-established both in Oregon and elsewhere that "the laws of a state have no extraterritorial effect . . . until a [party] comes within the state to 'do business[.]'" *Deardorf v. Idaho Nat'l Harvester Co.*, 90 Or. 425, 433, 177 P. 33 (1918); *see also Sawyer v. Market Am., Inc.*, 190 N.C.App. 791, 792-97, 661 S.E.2d 750, *rev. denied,* 362 N.C. 682, 670 S.E.2d 235 (2008) (affirming summary judgment in favor of the employer, explaining that an employee who resided in Oregon and worked primarily outside of North Carolina could not pursue claims under North Carolina's Wage and Hour Act, which had no language suggesting extraterritorial application) (citing *Sandberg*, 248 U.S. at 195).

In other words, contrary to plaintiff's assertion, the Oregon nexus requirement is not "a construct AstraZeneca created." Pl.'s Resp. to Mot. Summ. J. 9, 13 (doc. 282). And, despite the unusually extensive period of time and briefing that this case has engendered, plaintiff still has failed to identify any authority belying *Swift* or the precedent on which it relies – in fact, her opposition is entirely silent in regard to this issue, even though defendant discusses it at length. *See generally id.*; *see also Justice v. Rockwell Collins. Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015), *aff'd*, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes[,] the court may treat that argument as conceded") (citation and internal quotations and brackets omitted); *Ivie I*, 2021 WL 5167283 at *3 n.5 ("[p]laintiff has not identified any case or statute that calls *Swift & Co.*'s rule into question, and this Court has not found any such precedent on its own initiative"). Thus, the Court continues to "assume . . . that the presumption against extraterritoriality announced in *Swift & Co.* remains binding precedent in the State of Oregon." *Ivie I*, 2021 WL 5167283 at *3 n.5.[3]

Separately, this District has made clear that Or. Rev. Stat. Chapter 659A "only applies to individuals residing and/or working in the state of Oregon" or to "discriminatory acts [that] took place in Oregon." *Person v. Bank of Am.*, 2013 WL 3353773, *4 (D. Or. June 28, 2013) (citing Or. Rev. Stat. §§ 659A.001(4), 659A.006(1); *Ogden v. Bureau of Labor*, 68 Or.App. 235, 247, 682 P.2d 802 (1984), *rev'd in part on other grounds*, 299 Or. 98, 699 P.2d 189 (1985)); *see also Grove City Veterinary Serv. LLC v. Charter Pracs. Int'l LLC*, 2014 WL 3371918, *7 (D. Or. July 9, 2014) (individual who worked outside of Oregon for an Oregon employer could only state a claim under Or. Rev. Stat. Chapter 659A if she alleged discriminatory acts that physically took place in

---

[3] Yet even if this presumption was inapplicable, for the reasons discussed below, summary judgment remains appropriate.

Oregon).[4] While plaintiff is correct that these cases do not cite to Or. Rev. Stat. 659A.199 directly, their reasoning is both sound and generally pertinent.

Moreover, plaintiff has not cited to, and the Court is not aware of, any authority suggesting that whistleblower retaliation claims and those asserted in relation to all other unlawful employment practices protected by Or. Rev. Stat. Chapter 659A are treated distinctly or otherwise subject to discrete extraterritoriality or choice of law analyses. *Cf. Hernandez v. FedEx Freight, Inc.*, 2017 WL 3120283, *2 (D. Or. June 12), *adopted by* 2017 WL 3120271 (D. Or. July 21, 2017) (characterizing discrimination and whistleblower retaliation as two of the "various kinds" of "unlawful employment practices" that "Or. Rev. Stat. chapter 659A protects employees against") (citations omitted). And, importantly, plaintiff has not identified anything undermining the Court's prior plain language interpretation of Or. Rev. Stat. § 659A.199. *See State v. Gaines*, 346 Or. 160, 171-73, 206 P.3d 1042 (2009) ("text and context remain primary . . . [and when] the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different").[5] The Court now turns to the substance of defendant's motion.

---

[4] As this Court previously emphasized, the dispositive inquiry surrounds the connection between Oregon, and plaintiff and her injury. *See, e.g.*, *Ivie I*, 2021 WL 5167283 at *4.

[5] Even so, the Court has considered the legislative history of Or. Rev. Stat. § 659A.199 and finds that it does not implicate a different outcome. That is, plaintiff argues that the legislature's intent to extend whistleblower protection laws to public employees, coupled with Or. Rev. Stat. § 659A.003 and Or. Rev. Stat. § 659A.006(1) (which articulate the purpose of Or. Rev. Ch. 659A and Oregon's "public policy" against "discrimination against any of its inhabitants [which] not only threatens the rights and privileges of its inhabitants but menaces the institutions and foundation of a free democratic state," respectively), means that the "[a]pplication of § 659A.199 to this case protects Oregonians' health and safety and serves the State's interests in protecting itself and its institutions against fraud." Pl.'s Resp. Mot. Summ. J. 15 (doc. 282). While plaintiff is correct that these sources evince "a strong interest in protecting whistleblowers who speak out about illegal conduct occurring within Oregon's borders" – plaintiff has not, in fact, put forth any evidence of illegal conduct and, in any event, nothing in this statutory scheme even suggests an

I.      **Extraterritorial Application of Or. Rev. Stat. § 659A.199**

Plaintiff chose to file this case in Oregon, alleging, among other things, that defendant violated Or. Rev. Stat. § 659A.199. As discussed above, this statute has no effect on conduct or individuals outside of the state. The question thus becomes whether plaintiff has adduced any evidence demonstrating a relevant connection to the forum.[6] As the Court previously explained:

> After a six-day trial, plaintiff failed to introduce any evidence that the facts or individuals underlying its whistleblower protection claim connect to Oregon. Plaintiff's complaint alleges that she is a Utah resident, and she did not dispute at trial that she lived in Utah throughout the time she was employed by AstraZeneca. When plaintiff met with supervisors and coworkers, those meetings normally occurred in Utah; none occurred in Oregon. To the extent plaintiff proved her work had any central point, that point was Utah. As plaintiff testified, she took most work-related calls from her home office in Utah, including those involving Human Resources about her complaints of off-label marketing, performance, and termination.

> Crucially, none of the facts relevant to plaintiff's whistleblower claim even allegedly occurred while she was working in Oregon, or even occurred in Oregon. The district meetings where plaintiff alleged a discussion of unethical sales tactics occurred in Utah. AstraZeneca's Human Resources and Compliance departments interviewed plaintiff about her ethics complaints from places other than Oregon. All decisions concerning plaintiff's termination were made in Delaware, Texas, or Idaho, and communicated to plaintiff in Utah. Similarly, no one at AstraZeneca relevant to plaintiff's ethics hotline complaint, or her termination, worked from Oregon. Ivie's supervisor Stephanie DiNunzio, whom plaintiff alleged in her ethics complaints had encouraged off-label sales tactics, worked from Boise, Idaho. Matthew Gray, DiNunzio's manager, who made the termination decision, worked in Delaware. Amy Welch, the Human Resources Business Partner, worked in Delaware. Former Senior Employment Practices Partner Karen Belknap, who led

---

extraterritorial reach. *Id.* at 15-16. Further, at least one other case from within this District has found that Or. Rev. Stat. § 659A.006(1) counsels against the application of Or. Rev. Ch. 659A to non-residents where, as here, no relevant work or wrongful conduct occurred in Oregon. *See, e.g.*, *Person*, 2013 WL 3353773 at *4; *see also Ogden*, 68 Or.App. at 247 ("Oregon protections against unlawful employment practices" apply to out-of-state residents provided the alleged "discrimination took place in Oregon").

[6] At oral argument, both parties focused on the quantum of evidence necessary to evince an Oregon nexus. *See* Hearing (Feb. 4, 2026) (doc. 291) (defendant characterizing the dispositive inquiry as whether there is some "new evidence" to warrant a different ruling; plaintiff stating that the case surrounds "what is the right amount of connection to Oregon").

the investigation into the HR aspects of plaintiff's ethics hotline complaint, worked out of her home in Dallas, Texas. Senior Assurance Partner Mike Pomponi, who led the investigation into the Compliance aspects of plaintiff's complaint, worked in Delaware. Senior Employee Relations Partner Dawn Ceaser worked in Delaware. The harder the Court looked at the evidence presented to the jury the more difficult it was to find any connection to Oregon at all; all the individuals surrounding plaintiff's allegation of whistleblower retaliation worked elsewhere, plaintiff worked in Utah, and all the relevant complaints and decisions relevant to the whistleblower claim occurred outside of Oregon.

Plaintiff does not contest this, but instead argues that because her territory included part of Oregon, she was an "employee" as defined by Oregon's employment statutes and should be covered by Oregon's Whistleblower Protection Law. This is weak tea, and not enough to make the required connection between Oregon and the facts of this case for ORS § 659A.199(1) to apply. Simply performing an unspecified amount of work in Oregon does not support the extraterritorial application of Oregon law to the entirety of her employment with AstraZeneca, or to the claim plaintiff alleges here. In each case the parties cite where a plaintiff-"employee" is protected by one of Oregon's employment statutes, that plaintiff either lives in Oregon or performs relevant work underlying her claim in Oregon. At most, plaintiff presented evidence at trial that she oversaw others' conduct in Oregon, and even then, it was only a fractional part of her work that had nothing whatsoever to do with her whistleblower protection claim.

*Ivie I*, 2021 WL 5167283 at *3-4. Accordingly, the Court concluded that the evidence presented prior to supplemental discovery did not support an Oregon nexus.

The evidence adduced after discovery was re-opened post-trial fares no better.[7] In fact, this discovery confirmed plaintiff never resided, or was even physically present, in Oregon during the dispositive timeframe, nor did she report any concerns regarding off-label marketing or medical leave to any Oregon government agency/official or individual working in or for Oregon. McCarthy

---

[7] One of plaintiff's declarations in support of her opposition spans more than 200 pages. *See generally* Chambers Decl. (docs. 283, 285). Plaintiff, however, does not highlight or pin cite any specific document or page, leaving the Court to guess as to their import and relevance. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[i]t is not [the district court's task] to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment") (citation and internal quotations omitted). The Court has nonetheless thoroughly reviewed these filings in evaluating defendant's motion.

Decl. Ex. 6, at 6-8 (doc. 270); McCarthy Decl. Ex. 9, at 2 (doc. 269-3); McCarthy Decl. Ex. 10, at 6, 8 (doc. 269-4). Similarly, this discovery reinforced that all decisions regarding plaintiff's complaints and termination were made outside Oregon– i.e., the allegedly wrongful conduct transpired outside of Oregon. *See, e.g.*, McCarthy Decl. Exs. 1-3 (doc. 270); McCarthy Decl. Ex. 5, at 4-5 (doc. 270); McCarthy Decl. Ex. 8, at 4-7, 9-10 (doc. 269-2); McCarthy Decl. Ex. 9, at 2 (doc. 269-3); McCarthy Decl. Ex. 10, at 3-8 (doc. 269-4).

Given these undisputed facts, plaintiff's assertions surrounding the impact of her metaphysical presence in Oregon are not convincing. Likewise, that plaintiff "reported concerns to Oregon itself through the Oregon Labor Civil Rights Division" after her termination is simply not relevant. Pl.'s Resp. to Mot. Summ. J. 11 (doc. 282); Pl.'s Resp. to Mot. Summ. J. Ex. 6, at 1 (doc. 284-6). Her remaining contentions merely repackage arguments the Court already considered and dismissed.

For instance, as denoted above, the Court explicitly found that overseeing a territory that includes a small fraction of Oregon does not establish an Oregon nexus. By extension, the fact that plaintiff's performance evaluations and discipline related to her territories, one of which includes a portion of Eastern Oregon, is insufficient to demonstrate an Oregon nexus. Pl.'s Resp. to Mot. Summ. J. Ex. 1, at 14, 17-18 (doc. 284-1). This is especially appropriate given that the Written Warning on which plaintiff relies does not, in fact, mention Oregon and chastises her for failing to perform her job responsibilities in-person.[8] Pl.'s Resp. to Mot. Summ. J. Ex. 8, at 1 (doc. 284-8).

---

[8] Plaintiff also seemingly suggests the fact that DiNunzio travelled to Oregon in the course of her managerial responsibilities in regard to other employees and a different district supports an Oregon nexus in regard to plaintiff. *See, e.g.*, Pl.'s Resp. to Mot. Summ. J. Ex. 1, at 9-10, 22, 29 (doc. 284-1); Pl.'s Resp. to Mot. Summ. J. Ex. 4, at 2 (doc. 284-4). The Court does not find this line of reasoning persuasive; insofar is it demonstrates nothing beyond defendant's organizational structure and does not inhere specifically to plaintiff's Oregon-related contacts or experiences.

Finally, the fact that plaintiff underwent and provided training on state laws, rules, and regulations regarding sales related in her territories does not create an Oregon nexus.[9] Aside from the fact that the record is somewhat equivocal as to these facts insofar as plaintiff never directly testifies to having received such training and instead relies on the statements of DiNunzio (which indicated that people in plaintiff's role received training with Oregon-related content and allowed for the possibility that DiNunzio – not plaintiff – may have disseminated Oregon-specific information to her subordinates) and Hinson (who speculated that plaintiff "would have had to have trained on AstraZeneca's, you know, compliance," but conceded he did not know what training she actually received), she articulates no connection between this training (or for that matter, the Oregon law, rules, and regulations she was purportedly trained in) and her own conduct or any retaliation she claims. Pl.'s Resp. to Mot. Summ. J. Ex. 1, at 18-22 (doc. 284-1); Pl.'s Resp. to Mot. Summ. J. Ex. 4, at 1 (doc. 284-4); Pl.'s Resp. to Mot. Summ. J. Ex. 5, at 52-56 (doc. 284-5); Pl.'s Resp. to Mot. Summ. J. Ex. 9, at 11 (doc. 284-9).

Stated differently, simply being trained on the state laws related to a sales territory (like every other parallel employee), or training/overseeing salespeople who are occasionally in the forum, is not an adequate Oregon nexus, given that none of the activities underlying plaintiff's claim were centered in Oregon. *Cf. House v. State Indus. Accident Comm'n*, 167 Or. 257, 268-69, 117 P.2d 611 (1941) (in regard to a worker's compensation claim, in order for "any workman to recover compensation for injuries suffered outside the state providing the fund, he must have been

---

[9] At oral argument, plaintiff argued that her training related to her territories, including Oregon law, was "alone . . . enough to establish an Oregon nexus." Hearing (Feb. 4, 2026) (doc. 291). She likewise asserted that the presence of sales representatives in Oregon were "alone sufficient to deny summary judgment." *Id.* As discussed herein, these facts, either taken in isolation or collectively, do not demonstrate any association between plaintiff/her individual injury and the forum.

engaged, when injured, in discharging some duty incident to his employment in such state . . . The location of the work is the controlling factor. Mr. House, after becoming manager of the Tulelake branch, was not thereafter in the state of Oregon, so far as the record shows, except to pass through the state on his way to Portland in connection with his business at Tulelake. The fact that some of his salesmen sold automobiles in Oregon would affect their status only, not his"). Nothing in the record reflects that the alleged potential misconduct (off-label marketing) implicated some Oregon law or regulation that would differ from that which applies across the nation, or that plaintiff interacted with healthcare professionals in Oregon at any time.

In sum, a mere peripheral connection to Oregon is insufficient to establish the requisite nexus. For this reason, alone, defendant's motion is granted.

## II.    Oregon's Choice of Law Rules

The Court also finds that Or. Rev. Stat. § 15.430 bars plaintiff's claims. It is undisputed that there exists a conflict between Utah and Oregon's relevant laws. Significantly, Utah has not extended its whistleblower protection statutes to private sector employees. In other words, there is no Utah corollary to Or. Rev. Stat. § 659A.199. But, as addressed herein, there are no relevant Oregon residents or events in this case. As a result, Oregon law simply does not apply. *See* Or. Rev. Stat. § 15.430(6) ("Oregon law governs noncontractual claims in [actions] between an employer and an employee who is primarily employed in Oregon that arise out of an injury that occurs in Oregon"); *Schedler v. FieldTurf USA, Inc.*, 2017 WL 3412205, *3 (D. Or. Aug. 9, 2017) (Oregon law did not apply to the plaintiff's claims by virtue of Or. Rev. Stat. § 15.430(6) where neither the plaintiff nor his employer resided in Oregon, and the injury did not occur in Oregon); *see also Ivie I*, 2021 WL 5167283 at *5 ("[h]ad Oregon intended for its employment laws to cover

employees who 'partially' work in Oregon or to cover injuries that occurred outside of Oregon, the legislature would not have drafted [this statute] so narrowly").

Oregon's choice of law rules further cement that Utah, rather than Oregon, law should govern. If the laws of more than one jurisdiction arguably apply to an issue, a federal court entertaining a state law claim applies the choice-of-law rules of the state where it is located. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999). The first consideration is whether there is an actual conflict between Oregon law and that of another state. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 951 (9th Cir. 2005) (citation omitted). Where, as here, a conflict exists, the plaintiff must affirmatively prove that Oregon law is the most appropriate law to apply under the general and residual approach to conflicts of laws found in Or. Rev. Stat. § 15.445. *Alterra Am. Ins. Co. v. James W. Fowler Co.*, 347 F.Supp.3d 604, 611-12 (D. Or. 2018). This approach, among other things, looks to the domiciles of the parties, the place of injury, and the place of injurious conduct, which here would be the locations relevant to plaintiff's termination. *Id.*

Given that plaintiff's opposition wholly fails to address defendant's choice of law analysis, she has not met her burden in demonstrating that Oregon's interest somehow outweighs the interests of all other possible states. Or. Rev. Stat. § 15.445; *see also Anderson*, 477 U.S. at 252 (in order to defeat a motion for summary judgment "there must be evidence on which the jury could reasonably find for the [non-moving party]"); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment"). Defendant's motion is granted on this basis as well.

## III.    Due Process Clause/Fourteenth Amendment

Even presuming state law permitted Or. Rev. Stat. § 659A.199 to apply in this context, the Due Process Clause of the U.S. Constitution's Fourteenth Amendment puts the facts of this case

outside Oregon's legislative jurisdiction. "[W]hen one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning." *State v. Kitzman*, 323 Or. 589, 602, 920 P.2d 134 (1996). In order to apply its law, a state "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (citation and internal quotations omitted). As such, "[t]he Due Process Clause prohibit[s] the application of state law which is only casually or slightly related to the litigation." *Id.* at 819.

As addressed in Section I, even with the benefit of additional discovery, plaintiff has not set forth facts demonstrating that defendant made any relevant decisions related to her employment or discharge in Oregon, and defendant is not headquartered in Oregon (nor does plaintiff or any decisionmaker reside here). And her connection to this state – namely, that one of the three territories she oversaw happened to include a small part of Eastern Oregon (i.e. an area that is not densely populated by people or commerce), which she never set foot in during the dispositive time period, but in relation to which she nonetheless received compliance training – cannot be characterized as "significant." Interpreting Oregon law to apply beyond its borders in this context would therefore violate the Due Process Clause. For this additional reason, defendant is entitled to summary judgment.

**CONCLUSION**

For the reasons stated above, defendant's Motion for Summary Judgment (doc. 268) is GRANTED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 18th day of February, 2026.


_____
/s/Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge